UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

        Defendants,        CASE NO.: 8:09-cv-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

        Relief Defendants.
_____/

### RECEIVER'S UNOPPOSED MOTION TO EXPAND THE SCOPE OF RECEIVERSHIP AND INCORPORATED MEMORANDUM OF LAW

Burton W. Wiand, as Receiver, by and through his attorneys and pursuant to 28 U.S.C. § 754, Fed. R. Civ. P. 66, and M.D. Fla. Local Rule 3.01, hereby moves the Court to expand the scope of receivership to include Venice Jet Center, LLC, and Tradewind, LLC. The Receiver has uncovered information showing that each of these entities was purchased and/or funded with ill-gotten gains. As explained below, there is some urgency for the inclusion of these entities in receivership in order to preserve their

assets for eventual distribution to investors with cognizable claims and other creditors. In support of this motion, the Receiver states as follows:

1. On January 21, 2009, the Plaintiff, Securities and Exchange Commission ("Commission"), initiated this action in order to prevent Defendants from further defrauding investors of the hedge funds that they managed.

2. That same day, this Court entered an Order appointing Burton W. Wiand as Receiver of all the assets, properties, books and records and all other items held in the name of Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking Ira Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (collectively, the "Receivership Entities"). (Dkt. 8, Order Appointing Receiver).

3. Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Dkt. 8).

4. The Commission determined that Defendant Arthur Nadel ("Nadel") used the investment companies that he controlled, Scoop Capital and Scoop Management, and Relief Defendants Valhalla Management, Inc. and Viking Management, LLC, to defraud investors of the hedge funds that the companies managed, Relief Defendants Scoop Real Estate, L.P.;

Valhalla Investment Partners, L.P.; Victory Fund, LTD; Victory IRA Fund, LTD; Viking Ira Fund, LLC; and Viking Fund, LLC (collectively, "the Hedge Funds"). (Dkt. 1, Compl., ¶¶ 5-7).

5. The Commission contends that the Defendants violated federal securities laws from at least January 2008 forward by "massively" overstating investment returns and the value of fund assets to investors and providing false account statements to investors. (Dkt. 1, Compl., ¶¶ 3 and 36). The Commission also contends that Nadel misappropriated investor funds by transferring $1.25 million from Viking IRA Fund, LLC and Valhalla Investment Partners, LP to secret bank accounts. (Dkt. 1, Compl., ¶ 5).

6. This Court found and concluded that the Commission demonstrated a *prima facie* case that the Defendants committed multiple violations of federal securities laws. (Dkt. 8 at p. 2).

7. During the course of his preliminary investigation, the Receiver uncovered evidence that Defendants' violations of federal securities laws began no later than 2003. *See* Receiver's Decl. in Support of the Mot. to Expand the Scope of Receivership ¶¶ 10-12, which is being filed along with this motion ("Receiver's Decl."). For each year from 2003 through 2007 (and, as shown by the Commission, in 2008), Nadel caused Receivership Entities to grossly overstate the value of the Hedge Funds and to report to investors overstated values and other false performance indicators. *Id.* As detailed in the Receiver's Declaration (*id.* ¶ 11), following are the actual values of the Hedge Funds and the values as represented to investors as of December 31, 2003 through 2007:

|  | Value as of 12/31/03 ($) | Value as of 12/31/04 ($) | Value as of 12/31/05 ($) | Value as of 12/31/06 ($) | Value as of 12/31/07 ($) |
|---|---|---|---|---|---|
| **Actual Value** | 80,820,378.06 | 143,073,367.23 | 132,731,986.70 | 63,715,094.39 | 18,042,860.67 |
| **Value Represented To Investors** | 128,953,973.27 | 216,868,604.46 | 274,387,098.31 | 282,379,592.45 | 313,960,110.28 |

8. The Receiver also uncovered evidence that Scoop Capital and Scoop Management received substantial amounts of money from the Hedge Funds in the form of management, profit incentive, and/or advisory fees (*id.* ¶ 13), and in all likelihood a significant amount of the proceeds of Nadel's fraud made its way into other accounts controlled by him and/or his wife, Marguerite Nadel (including at least $685,000 in 2003 and 2004 and $1,003,500 in 2008). *Id.* ¶ 14.

9. During the course of his preliminary investigation, the Receiver also learned that since 2004 Nadel purchased, formed, and/or funded other businesses which he controls and in which he has a full or partial interest. *Id.* ¶¶ 6, 15. Specifically, in relevant part the evidence shows that Nadel purchased and/or funded Venice Jet Center, LLC ("VJC"), and Tradewind, LLC ("Tradewind"), with Receivership Entities' money (and proceeds of his fraud). *Id.* ¶¶ 17-30.

10. Importantly, both VJC and Tradewind appear to be suffering financially from Nadel's legal problems, and the Receiver believes their prompt inclusion into this receivership will preserve them as viable businesses with potential to generate assets for the receivership estate. *Id.* ¶¶ 18, 29. Without direction from the Receiver, the two companies are likely to lose value (and likely will go out of business) to the prejudice of the receivership estate and ultimately investors and other creditors. As a result, there is some urgency to this request.

A. **Venice Jet Center, LLC**

As detailed in the Receiver's Declaration at paragraphs 16 through 23, VJC owns and operates a fixed base operation at the Venice Airport in Venice, Florida. *Id.* ¶¶ 20-22. VJC is a Florida limited liability company formed in April 2006, has a principal address that is the office of the Receivership Entities, and Nadel is its registered agent and managing member. *Id.* ¶ 16. Although Mrs. Nadel may have a 50% interest in VJC, the information gathered by the Receiver shows that the assets of VJC were purchased with money from Scoop Capital, LLC ("Scoop Capital") (and thus with proceeds of Nadel's fraud), and that Scoop Capital continued to fund VJC following the acquisition. *Id.* ¶¶ 17, 21-23. Specifically, the evidence shows that Scoop Capital purchased the fixed base operations for approximately $2,793,587.12 and that in 2006 alone VJC received at least another $325,000 from Scoop Management. *Id.* ¶¶ 22-23.

B. **Tradewind, LLC**

As detailed in the Receiver's Declaration at paragraphs 24 through 29, Tradewind owns and controls at least 5 aircraft and owns airport hangars at the Newnan-Coweta County Airport in Georgia. *Id.* ¶ 25. Tradewind was formed in Delaware in January 2004, and registered for the first time in Florida in March 2008. *Id.* ¶ 24. Nadel is its managing member and registered agent, and Tradewind's principal address is the office of the Receivership Entities. *Id.* Although it appears that Mrs. Nadel has an interest in Tradewind, Tradewind was funded with money from Scoop Capital, Scoop Management, and other proceeds of Nadel's scheme. Specifically, according to Tradewind's balance sheet it has received loans of $2,490,146.77 from Scoop Captial and $80,000.00 from Scoop Management. *Id.* ¶¶ 26. The Receiver has evidence of at least $3,296,000.00 being

transferred from Scoop Capital to Tradewind or for Tradewind's benefit (for example, to purchase planes now owned by Tradewind) and of at least $221,000.00 being transferred from Scoop Management to Tradewind. *Id.* ¶¶ 27-28. Tradewind's balance sheet also reflects a loan of $676,575 from Nadel and his wife, which likely also consists of proceeds of Nadel's fraud. *Id.* ¶¶ 14, 26.

11. Because evidence shows that the assets held by both VJC and Tradewind were purchased, and/or the companies' operations were funded with money from Receivership Entities (and Nadel's fraud), those entities should be included in this receivership. Indeed, with Nadel's disappearance and legal problems, those entities are essentially "rudderless" and at imminent risk of going out of business. That eventuality would severely impact the value of VJC and Tradewind (and their assets) to the receivership estate and, ultimately, investors and other creditors.

## MEMORANDUM OF LAW

The Court's power to supervise an equity receivership and determine the appropriate action to be taken in the administration of the receivership is extremely broad. *Sec. Exchange Comm'n v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Id.* at 1566 (citing *Sec. Exchange Comm'n v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 372 (5th Cir. 1982)).

Such discretion may be properly exercised in the form of expansion of a receivership where a party seeking expansion establishes (1) a commingling of funds, (2) intertwined business operations, (3) utilization of an identical business address or identical offices and

addresses, (4) or co-identity of officers, directors, or principals. *See SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985), *aff'd*, 805 F.2d 1039 (9th Cir. 1986); *see also Elliott,* 953 F.2d at 1565, n.1 (holding that court may extend equitable receivership over related entities).

In determining whether or not to extend a receivership to include related entities, a federal court has broad discretion to disregard corporate separateness and form and to give effect to the substance of the enterprise. *Elmas Trading Corp.,* 620 F. Supp. at 233. A corporate entity may be disregarded under federal law "in the interests of public convenience, fairness, and equity[.]" *Id.* at 234; *see In re Bowen Transp., Inc.*, 551 F.2d 171, 179 (7th Cir. 1977) (stating that "[t]he separate corporateness of affiliated corporations owned by the same parent may be equally disregarded under the proper circumstances."). The key goal behind a proposed receivership expansion should be "to ensure that all available assets are brought within the receivership and may properly be distributed to creditors." *Id.* at 233.

Given the Court's wide discretion and authority, the receivership estate in this case should encompass VJC and Tradewind. As discussed above and in the Receiver's Declaration, the evidence uncovered thus far shows that VJC's assets were purchased with money from Scoop Capital, that at least some of Tradewind's assets were purchased with money from Scoop Capital, and that both VJC and Tradewind received large amounts of money directly from Receivership Entities. Further, the evidence shows that even though both VJC and Tradewind received money from Nadel and/or his wife, that money likely consisted of money misappropriated from Receivership Entities. Finally, documents and information obtained by the Receiver show that Nadel controls both VJC and Tradewind and

that they share an office with the Receivership Entities. In short, the information gathered thus far shows that Receivership Entities' money – which was raised from investors – was diverted by Nadel into VJC and Tradewind (and other businesses), that Nadel controlled those businesses and Receivership Entities, and that he controlled them from the office of the Receivership Entities.

This Court's Order Appointing Receiver already requires the Receiver to "marshal and safeguard all of the assets of the Receivership Entities and take whatever actions are necessary for the protection of the investors." (Dkt. 8). Marshalling and safeguarding the property and assets of VJC and Tradewind are necessary to protect investors and to preserve the assets' value. Notably, this Court's Order Appointing Receiver contemplates the expansion of the receivership. The Order expressly states:

> In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, *extending this receivership over any person or entity holding such investor funds*.

(Dkt. 8, ¶ 24) (emphasis added).

Because (1) the Court has the authority to expand the receivership to include VJC and Tradewind; (2) the evidence shows that Nadel misappropriated funds from the Receivership Entities to VJC and Tradewind; and (3) expansion of the receivership is necessary for the protection of the investors and the receivership estate, the Receiver respectfully requests that this Court modify the Order Appointing Receiver or otherwise expand the Receivership to include Venice Jet Center, LLC and Tradewind, LLC.

**LOCAL RULE 3.01(g) CERTIFICATION OF COMPLIANCE**

In accordance with Local Rule 3.01(g), the undersigned counsel for the Receiver conferred with counsel for the Commission and is authorized to represent to the Court that this motion is unopposed.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a copy of the document and a notice of electronic filing to the following:

> Scott A. Masel, Esquire
> Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1800
> Miami, FL 33131
>
> Andre J. Zamorano, Esquire
> Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1800
> Miami, FL 33131

Respectfully submitted,

s/ Gianluca Morello
Carl R. Nelson, FBN 0280186
cnelson@fowlerwhite.com
Gianluca Morello, FBN 034997
gianluca.morello@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL 33601
(813) 228-7411
Fax No: (813) 229-8313
Attorneys for the Receiver, Burton W. Wiand

40573827v1