UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                                                  Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

      Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

      Relief Defendants.
_____/

**RECEIVER'S SECOND UNOPPOSED MOTION TO EXPAND THE SCOPE OF
RECEIVERSHIP AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to 28 U.S.C. § 754, Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 3.01, Burton W. Wiand, as Receiver, moves the Court to expand the scope of the receivership in this case to include Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/2007; and Laurel Mountain Preserve Homeowners Association, Inc. The Receiver's investigation has revealed the first two entities and the trust were funded with ill-gotten gains. As explained below, all three entities

and the trust should be placed in receivership in order to preserve their assets and bring them under the Receiver's control.

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent the defendants from further defrauding investors of hedge funds managed by them. That same day, the Court entered an order appointing Burton W. Wiand as Receiver of all the assets, properties, books, and records and all other items held in the name of Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). *See generally* Order Appointing Receiver (Doc. 8). On January 27, 2009, the Court entered an order expanding the scope of the receivership and appointing the Receiver as receiver also over Venice Jet Center, LLC, and Tradewind, LLC (all of the entities in receivership are referred to collectively as the "Receivership Entities"). *See* Jan. 27, 2009, Order (Doc. 17).

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." Order Appointing Receiver at 1-2.

The Commission concluded that Defendant Arthur Nadel ("Nadel") used Scoop Capital, Scoop Management, Valhalla Management, Inc., and Viking Management, LLC, to defraud investors of the hedge funds those companies managed, Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; and Viking Fund, LLC (collectively, the "Hedge Funds"). *See* Compl. ¶¶ 5-7 (Doc. 1). The Commission contends the defendants violated federal securities laws from at least January 2008 forward by "massively" overstating investment returns and the value of fund assets to investors and providing false account statements to investors. *See id.* ¶¶ 3, 36. The Commission also contends that Nadel misappropriated investor funds by transferring $1.25 million from Viking IRA Fund and Valhalla Investment Partners to secret bank accounts. *See id.* ¶ 5. The Court found the Commission demonstrated a *prima facie* case that the defendants committed multiple violations of federal securities laws. *See* Order Appointing Receiver at 2.

During the course of his investigation, the Receiver has uncovered evidence that the defendants' violations of federal securities laws began no later than 2003. *See* Receiver's Decl. in Support of the Mot. to Expand the Scope of Receivership ¶¶ 10-12 (Doc. 16) (the "Receiver's January Declaration"). For each year from 2003 through 2007 (and, as shown by the Commission, in 2008), Nadel caused Receivership Entities to grossly overstate the value of the Hedge Funds and to report to investors overstated values and other false performance indicators for those funds. *Id.* As detailed in the Receiver's January Declaration (*id.* ¶ 11), following are the actual values of the Hedge Funds and the purported year-end values represented to investors from 2003 through 2007:

|  | Value as of 12/31/03 ($) | Value as of 12/31/04 ($) | Value as of 12/31/05 ($) | Value as of 12/31/06 ($) | Value as of 12/31/07 ($) |
|---|---|---|---|---|---|
| **Actual Value** | 80,820,378.06 | 143,073,367.23 | 132,731,986.70 | 63,715,094.39 | 18,042,860.67 |
| **Value Represented To Investors** | 128,953,973.27 | 216,868,604.46 | 274,387,098.31 | 282,379,592.45 | 313,960,110.28 |

The Receiver also uncovered evidence that Scoop Capital and Scoop Management received substantial amounts of money from the Hedge Funds in the form of management, profit incentive, and/or advisory fees (*see* Receiver's Decl. in Support of the 2d Unopposed Mot. to Expand the Scope of Receivership ("Receiver's Decl.") ¶ 9, being filed along with this motion), and in all likelihood a significant amount of the proceeds of Nadel's fraud made its way into other accounts controlled by him and/or his wife, Marguerite "Peg" Nadel (including at least $6,426,000.00 between 2003 and 2009). *See id.* ¶ 12.

During the course of his investigation, the Receiver also learned that other businesses and a trust were funded with proceeds of Nadel's fraudulent scheme. *See, e.g.*, *id.* ¶¶ 10-14. Specifically, the Receiver's investigation indicates that Nadel funded Laurel Mountain Preserve, LLC ("Laurel Mountain"), Laurel Preserve, LLC ("Laurel Preserve"), and the Marguerite J. Nadel Revocable Trust UAD 8/2/2007 (the "Trust") with Receivership Entities' money (and proceeds of his fraud). *Id.* ¶¶ 16-29. Laurel Preserve and the Trust appear to hold assets (the former in the form of approximately 430 acres of land for residential development, and the latter in the form of money), and the Receiver believes their prompt inclusion in this receivership will ensure that those assets are preserved.

**Laurel Mountain Preserve, LLC; Laurel Preserve, LLC;**
**<u>Laurel Mountain Preserve Homeowners Association, Inc.</u>**

As detailed in the Receiver's Declaration at paragraphs 16 through 24, Laurel Mountain, Laurel Preserve, and the Laurel Mountain Preserve Homeowners Association, Inc.

(the "HOA"), are entities formed by Nadel in connection with the purchase and planned residential development of an approximately 430-acre tract of land near Asheville, North Carolina. Laurel Mountain was formed in December 2003 and "withdrawn" in January 2006. *See* Receiver's Decl. ¶ 16. Its principal address was the Office, and its manager and member was Nadel. *See id.* Laurel Preserve was formed in February 2006, and its principal address is the Office, Nadel is its manager and registered agent, and the address for the "Registered Office" is a home in Fairview, N.C., titled in the names of Nadel and his wife. *See id.* ¶ 17. Although Laurel Preserve's 2006 Operating Agreement identifies Nadel and his wife as members of Laurel Preserve with each having made a "capital contribution" of $750, the more recent Laurel Preserve 2007 federal income tax return indentifies Scoop Capital as owner of 100% of Laurel Preserve. *See id.* The HOA was formed in March 2006, its principal address is the Nadel's Fairview home, and its registered agent is Nadel. *See id.* ¶ 18. The HOA appears to have been formed to act as the homeowners association following the development and sale of homes on the 430-acre tract. *See id.* ¶ 24.

The Receiver's investigation has revealed that title to the 430-acre tract of land has been held in the name of Laurel Preserve since February 2006. *See id.* ¶ 19. The land was originally purchased by Laurel Mountain in 2003, and in 2006 Laurel Preserve was created and the land held by Laurel Mountain was "sold" to Laurel Preserve. *See id.* The evidence shows that Laurel Mountain provided financing for Laurel Preserve's "purchase" of the land in the form of a $2,900,00 loan. *See id.*

Both Laurel Mountain and Laurel Preserve were funded with proceeds of Nadel's scheme. According to their balance sheets, Laurel Mountain received at least $1,594,753.09

in the form of "loans" from Receivership Entities (Scoop Capital, Scoop Management, and Tradewind) and at least $214,467.80 from Nadel and his wife. *See id.* ¶ 20. Similarly, Laurel Preserve received at least $1,122,273.52 in the form of "loans" from Receivership Entities (Scoop Capital, Scoop Management, and Tradewind) and at least $929,434.45 from Laurel Mountain (as noted above, the Receiver's investigation has revealed that Laurel Mountain's "loan" to Laurel Preserve was $2,900,000.00). *See id.* ¶ 21. To date, the Receiver has identified transfers of at least $467,760.00 from Scoop Capital to or for the benefit of Laurel Mountain between February 2004 and March 2005. *See id.* ¶ 22. Further, he has identified transfers of at least $541,000.00 from Scoop Capital to Laurel Preserve between September 2006 and January 2009. *See id.* ¶ 23.

In sum, Nadel controlled Laurel Mountain and Laurel Preserve, and funded them with proceeds of his investment scheme either directly through transfers of money from Scoop Capital and Scoop Management or indirectly through transfers of money from his personal accounts, from Tradewind, LLC, and from Laurel Preserve to Laurel Mountain.

**The Marguerite J. Nadel Revocable Trust UAD 8/2/2007**

According to the Receiver's investigation, the Trust was created on August 2, 2007, and Mrs. Nadel is its trustee. *See id.* ¶ 25. That investigation revealed that the Trust was funded entirely with proceeds of Nadel's scheme through (1) a transfer of $500,000.000 from Scoop Management in August 2007 and (2) a transfer of $150,000.00 from Scoop Capital on the day before Nadel fled. *See id.* ¶¶ 26-29. It also revealed that Nadel controlled the account in which the money held by the Trust purchased and sold securities. *See id.* ¶ 26. Significantly, as alleged in the criminal complaint against Nadel, in an apparent note Nadel

left for his wife before fleeing, he instructed her to "use the trust (yours) to your benefit as much and as soon as possible." *United States v. Nadel*, Case No. 09 MAG 169 (S.D.N.Y.), Compl. ¶ 17, attached as Exhibit 14 to the Receiver's Declaration.

Because the Receiver's investigation has revealed that Laurel Mountain, Laurel Preserve, and the Trust were funded with money from Receivership Entities, and thus Nadel's investment scheme, all three should be included in this receivership. The HOA should also be included in the receivership to allow the Receiver to efficiently administer and ultimately sell the real estate assets of Laurel Preserve.

## **MEMORANDUM OF LAW**

The Court's power to supervise an equity receivership and determine the appropriate action to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Id.* at 1566 (citing *SEC v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 372 (5th Cir. 1982)).

Such discretion may be properly exercised in the form of expansion of a receivership where a party seeking expansion establishes (1) a commingling of funds, (2) intertwined business operations, (3) utilization of an identical business address or identical offices and addresses, (4) or co-identity of officers, directors, or principals. *See SEC v. Elmas Trading Corp.,* 620 F. Supp. 231, 233 (D. Nev. 1985), *aff'd*, 805 F.2d 1039 (9th Cir. 1986); *see also Elliott,* 953 F.2d at 1565, n.1 (holding that court may extend equitable receivership over related entities).

In determining whether or not to extend a receivership to include related entities, a federal court has broad discretion to disregard corporate separateness and form and to give effect to the substance of the enterprise. *Elmas Trading Corp.,* 620 F. Supp. at 233. A corporate entity may be disregarded under federal law "in the interests of public convenience, fairness, and equity[.]" *Id.* at 234; *see In re Bowen Transp., Inc.*, 551 F.2d 171, 179 (7th Cir. 1977) (stating that "[t]he separate corporateness of affiliated corporations owned by the same parent may be equally disregarded under the proper circumstances."). The key goal behind a proposed receivership expansion should be "to ensure that all available assets are brought within the receivership and may properly be distributed to creditors." *Id.* at 233.

Given the Court's wide discretion and authority, the receivership estate in this case should be expanded to encompass Laurel Mountain, Laurel Preserve, the HOA, and the Trust. As discussed above and in the Receiver's Declaration (and in the Receiver's January Declaration), the evidence uncovered by the Receiver's investigation shows that Laurel Mountain, Laurel Preserve, and the Trust were funded with proceeds of Nadel's investment scheme directly through transfers of money from Scoop Capital and/or Scoop Management and/or indirectly through transfers from Tradewind, LLC and Nadel's personal financial accounts and from transfers between Laurel Preserve and Laurel Mountain. Further, it shows that Nadel had control of Laurel Mountain, Laurel Preserve, and the Trust's investments, and the address for Laurel Mountain and Laurel Preserve (and the HOA) was either the Receivership Entities' principal address or a home titled in part in Nadel's name. In short, the information gathered thus far shows that Receivership Entities' money – which was

raised from investors – was diverted by Nadel into Laurel Mountain, Laurel Preserve, and the Trust, and that Nadel had full or significant control over all of them (and the HOA).

This Court's Order Appointing Receiver already requires the Receiver to "marshal and safeguard all of the assets of the Receivership Entities and take whatever actions are necessary for the protection of the investors." (Doc. 8). Marshalling and safeguarding the property and assets of Laurel Mountain, Laurel Preserve, and the Trust are necessary to protect investors and to preserve the assets' value. Notably, this Court's Order Appointing Receiver contemplates the expansion of the receivership. The Order expressly states:

> In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, *extending this receivership over any person or entity holding such investor funds*.

(Doc. 8, ¶ 24) (emphasis added).

Because (1) the Court has the authority to expand the receivership to include Laurel Mountain, Laurel Preserve, the HOA, and the Trust; (2) the evidence shows that Nadel misappropriated funds from the Receivership Entities to Laurel Mountain, Laurel Preserve, and the Trust; and (3) expansion of the receivership is necessary for the protection of the investors and the receivership estate, the Receiver respectfully requests that this Court modify the Order Appointing Receiver or otherwise expand the Receivership to include Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; Laurel Mountain Homeowners Association, Inc.; and the Marguerite J. Nadel Revocable Trust UAD 8/2/2007.

## LOCAL RULE 3.01(G) CERTIFICATION OF COMPLIANCE

In accordance with Local Rule 3.01(g), the undersigned counsel for the Receiver conferred with counsel for the Commission and is authorized to represent to the Court that this motion is unopposed. Further, several times counsel for the Receiver attempted to confer with defendant Arthur Nadel, who has appeared *pro se*, but there was no answer at the phone number for the Federal Bureau of Prisons facility housing him.

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a copy of the document and a notice of electronic filing to the following:

> Scott A. Masel, Esquire
> Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1800
> Miami, FL  33131

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

> Andre J. Zamorano, Esquire
> Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1800
> Miami, FL  33131
>
> Arthur Nadel, *pro se*
> Register No. 50690-018
> FTC Oklahoma City
> Federal Transfer Center
> P.O. Box 898801
> Oklahoma City, OK 73189

s/ Gianluca Morello
Carl R. Nelson, FBN 0280186
cnelson@fowlerwhite.com
Gianluca Morello, FBN 034997
gianluca.morello@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL 33601
T: (813) 228-7411
F: (813) 229-8313
Attorneys for the Receiver, Burton W. Wiand

40588928v1