UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

Defendants,                                    CASE NO.: 8:09-cv-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

Relief Defendants.
_____/

## RECEIVER'S OPPOSITION TO EMERGENCY MOTION
## TO MODIFY ORDER APPOINTING RECEIVER

Burton W. Wiand, as Receiver, by and through his undersigned counsel, hereby

opposes the Emergency Motion to Modify Order Appointing Receiver and Memorandum of

Law (the "Motion to Modify") filed by General Electric Capital Corporation ("GECC") and

VFS Financing ("VFS") (collectively the "Lenders"). In further support of this Opposition

40591335v1

the Receiver submits the Affidavit of Roger Wright Jernigan with exhibits and Declaration of Receiver Burt W. Wiand, which are being filed contemporaneously with this Opposition.

## DISCUSSION

I.    **Emergency Relief is Improper Since the Receiver has Secured the Aircraft and is Currently Evaluating the Aircraft's Potential Benefit to the Estate Without Any Prejudice to the Lenders' Rights.**

1.    The Lenders' request for relief on an emergency basis is not justified under the record facts.  The Lenders filed an unverified motion, without supporting affidavits, demanding that the Receiver immediately "turn over possession" of the following two airplanes:  (1) a Cessna Model 550, Serial Number 550-096, Registration Number N153TH (the "Cessna"); and (2) a Lear Jet Model 31A-131, Registration Number N319SC (the "Lear Jet") (collectively the "Aircraft").   In addition, the Lenders also seek authority to immediately take possession of the books, records, maintenance reports, and maintenance logs and to "liquidate the collateral." (Motion to Modify, ¶ 15.)

2.    Based on the sworn testimony filed with the Court, the Aircraft and related documentation are completely secure and being properly maintained  (Jernigan Aff., ¶¶ 4-6.) Moreover, the insurance and maintenance service plan are current.  (Jernigan Aff., ¶¶ 6, 11.)

3.    The Receiver is currently in the process of evaluating Estate assets, including the Aircraft, and investigating whether the Secured Lenders have perfected their putative security interests.  (Wiand Dec., ¶ 6.)  The Receiver is also seeking a current appraisal of the Aircraft.  (Wiand Dec., ¶ 6.)  Specifically, the Receiver is analyzing whether any equity

exists in the Aircraft and whether the Aircraft are capable of generating revenue which may ultimately benefit the Estate. (Wiand Dec., ¶ 6.)

4.      The Receiver is considering returning the Lear Jet to charter service through Fair Wind Air Charters, a premier operation that supplies experienced crew and maintenance. (Jernigan Aff.,¶¶ 12-13; Wiand Dec., ¶ 6.) Preliminary indications suggest that the Lear Jet is capable of generating sufficient revenue to cover both its fixed and variable costs and potentially provide additional monies to the Estate. (Jernigan Aff., at ¶ 13.)

5.      Accordingly, it is improper for the Court to consider the Lenders' Motion on an Emergency basis or to grant the requested relief at this juncture.

II.     **Even Assuming the Lenders are Allowed to Intervene and the Court Considers the Lenders' Unsworn, Unsupported Allegations, each of the Lenders' Concerns are Either Unsupported by the Sworn Facts or Moot.**

6.      First, the Lenders' alleged concern that the Maintenance Service Plan "Power by the Hour" is subject to cancellation because the aircraft have not be "flown or engines run at least every 21 days" is unfounded. (Motion to Modify, ¶ 14.) In reality, in addition to flight time, the Aircraft engines are regularly ground run, and measures to reinstate the Maintenance Service Plan referenced in the Motion to Modify are readily available at a nominal cost should the Aircraft ever fall out of compliance. (Jernigan Aff., ¶¶ 8-9.)

7.      Second, the Lenders cite to their concern that an "air frame maintenance program called 'Smart Parts' is "subject to being cancelled if the aircraft is not properly stored and cared for . . ." (Motion to Modify, ¶ 14.) In reality, the Smart Parts Policy

expired in November 2008 prior to the appointment of the Receiver and was not renewed. (Jernigan Aff., ¶ 10.)

8.     Although the Lenders are undoubtedly familiar with the charter operator Fair Wind Air Charter ("Fair Wind") considering the number of aircraft already service with this charter service in which the Lenders have an interest, the Lenders allege concern that they have "no idea what maintenance programs are in place of the 135 charter operator." (Motion to Modify, ¶ 14.) In actuality, the Aircraft are not currently available on 135 charter certificate, so this concern is also moot. (Jernigan Aff.,¶ 13.) In addition, any maintenance necessary to return the Lear Jet to charter certificate can be promptly accomplished at the Aircraft's current location at a nominal cost. (Jernigan Aff., at ¶¶ 11-13.)

9.     More troubling is the Receiver's concern that the Lenders' efforts may be serving to undermine the Receivership and hindering the Receiver's efforts to market the Aircraft. Specifically, the Receiver has learned that the Lenders' Motion to Modify has directly chilled negotiations with a prospective bidder for the Lear Jet from the Receivership since the bidder believes it may be able to acquire the Aircraft at a lower price from the Lenders. (Jernigan Affidavit at ¶ 15.)

10.     Lastly, if the Court were to permit the Lenders to take possession of the Aircraft and the Lenders are subsequently unable to liquidate the Aircraft promptly, the potential deficiency claim against the Estate could increase significantly. Since Trade Wind LLC, another Receivership Entity, is a licensed FAA airplane dealer, the Receiver is in a position to market and sell the Aircraft at a significantly higher price which would reduce

40591335v1

any deficiency claim for the benefit of all claimants to the Estate. (Jernigan Affidavit at ¶14; Wiand Dec., ¶ 7.)

11.     The Lenders' emergency request for relief is nothing more than an attempt to shortcut the Receivership claims process and jump ahead of other claimants. A creditor's claim in the Receivership typically recognizes that the Receiver controls, possesses and manages such property and assets and merely seeks a determination of the validity and priority of the creditor's claim upon the final disposition of the frozen funds and assets. *SEC v. Homa*, 2000 WL 1468726, *3-4 (N.D. Ill. 2000). The fairest and most efficient method of addressing the Lenders' potential claims in this Receivership, which involves a multitude of parties and potential claims, is to have the Lenders bring their claim before the Receiver instead of allowing the Lenders to intervene and take possession of the Aircraft.

## III.     This Court Has Wide Discretion to Deny the Lenders' Request as Contrary to Receivership Purposes.

12.     It is axiomatic that receivers may be appointed "to effectuate the purposes of the federal securities laws." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972). Further, the Court's power to supervise an equity receivership and determine the appropriate action to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Id.* at 1566 (citing *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982)).

40591335v1

5

13.     Here, the Order Appointing Receiver (Doc. 8) directs the Receiver to "marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order at introductory paragraph.) Further, the Receiver is to "[t]ake immediate possession of all property, assets and estates of every kind of the Defendants and Relief Defendants . . . ." (Order at ¶ 1.) By Order entered January 27, 2009 (Doc. 17), the scope of the receivership was expanded to include Venice Jet Center, LLC (the entity which operates the airport where the Aircraft are maintained) and Tradewind, LLC (the registered owner of the Aircraft). (Wiand Dec., ¶¶ 3, 6.) As observed by this Court, "Title to all property, real or personal . . . of the Defendants or Relief Defendants and their principals . . . is vested by operation of law in the Receiver." This necessarily includes the Aircraft at issue. Then, the Receiver is to "[p]resent to this Court a report reflecting the existence and value of the assets of the Defendants and Relief Defendants and of the extent of liabilities . . . ." (Order at ¶ 3.)

14.     The Receiver must maintain possession of the Aircraft in order to fulfill his duties under the Order appointing him, and to ensure an equitable result for all defrauded investors and other creditors. (Wiand Dec., ¶¶ 6-8.) Considering the magnitude and scope of the assets at issue, allowing each party with a purported interest in certain property to come forward and litigate claims individually would severely disrupt the Receivership. (Wiand Dec., ¶¶ 6-8.) Allowing movants to take possession of the Aircraft would amount to cherry picking of assets and an inequitable exercise of a preference, which are not in the best interest of all investors and creditors and is not warranted by any purported "emergency."

40591335v1

15.   Just as the appointment of a receiver is authorized by the broad equitable powers of the Court . . . any distribution of assets by such a receiver is to be done equitably and fairly with similarly situated investors or customers treated similarly. *See Elliot*, 953 F.2d at 1569. Entitlement to assets under state law is not dispositive of entitlement under federal equity receivership. *United States v. Vanguard Inv. Co.*, 6 F.3d 22, 226 (4th Cir. 1993). As the *Vanguard* Court noted, "a district court supervising such a receivership has the discretionary power to deny these equitable remedies as inimical to receivership purposes even though they are or might be warranted under controlling law." *Id.* The orderly disposition of the assets of the receivership under the Order Appointing Receiver cannot occur if individual creditors are allowed to intervene on an alleged "emergency" basis—that is, the entire process will be subverted by the relief sought by movants.

WHEREFORE, the Receiver respectfully requests that the Court deny the Emergency Motion to Modify Order Appointing Receiver and for such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a copy of the document and a notice of electronic filing to the following:

Scott A. Masel, Esquire
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131

Andre J. Zamorano, Esquire
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131

A. Christopher Kasten, II, Esq.
Bush Ross, P.A.

40591335v1

P.O. Box 3913
Tampa, Florida 33601-3913

<div style="margin-left:40%">

s/ Carl R. Nelson
Carl R. Nelson, FBN 0280186
cnelson@fowlerwhite.com
Gianluca Morello, FBN 034997
gianluca.morello@fowlerwhite.com
Ashley M. Trehan, FBN 0043411
ashley.trehan@fowlerwhite.com
Donald R. Kirk, FBN 105767
dkirk@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL 33601
(813) 228-7411
Fax No: (813) 229-8313
Attorneys for the Receiver Burton W. Wiand

</div>

40591335v1