UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SECURITIES AND EXCHANGE
COMMISSION,**

      **Plaintiff,**

v.                                                                               **CASE NO. 8:09-cv-87-T-26TBM**

**ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.**

      **Defendants,**

**SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT**

      **Relief Defendants.**
_____/

### PLAINTIFF'S RESPONSE OPPOSING NON-PARTIES GENERAL ELECTRIC CAPITAL CORPORATION AND VFS FINANCING'S MOTION TO INTERVENE

#### I. Introduction

The Court should deny the joint Motion to Intervene by General Electric Capital Corporation ("GECC") and VFS Financing (jointly, the "Non-parties"), because they have not established the necessary legal grounds to intervene, their intervention would complicate and delay this litigation, and any interests they do have are adequately protected now. GECC and VFS provide little legal or factual basis for seeking intervention, instead attaching a proposed motion to modify the Receivership, supported by little or no evidence, and presenting only three concerns the Court-appointed Receiver is already addressing. In this context, allowing GECC

and VFS to intervene and litigate modifying the Receivership would only cost the Receivership time and money while injecting collateral issues into the Commission's case. At the same time, as shown by the Receiver's response to the Non-parties' Motion to Intervene and proposed Emergency Motion to Modify Order Appointing Receiver and Memorandum of Law, it is clear the Receiver is adequately protecting the Non-parties' interests.

## II. Factual and Procedural Background

The Commission filed suit on January 21, 2009 alleging Defendants Arthur Nadel Scoop Capital, LLC, and Scoop Management, LLC conducted a large-scale hedge fund fraud by greatly misleading investors regarding the value and profitability of accounts with funds the defendants controlled, advised, and managed. Commission's Complaint (D.E. 1); Commission's Emergency Motion and Memorandum of Law in Support of Temporary Restraining Order and Other Emergency Relief (D.E. 2). Through a motion and consents the Commission sought, and the Court granted, among other things, emergency relief against the Defendants and Relief defendants freezing their assets, prohibiting violations of the anti-fraud provisions of the federal securities laws, and appointing a receiver over the defendant and relief defendant entities (D.E. 2-3, 6, 7-9). The Court, upon the Receiver's motion, later expanded the Receivership to include Venice Jet Center, LLC and Tradewind, LLC, two entities controlled by the defendants and funded with money from defrauded hedge fund investors. (D.E. 15-17). Nadel then consented to a preliminary injunction essentially extending the mandates of the emergency relief through the final resolution of this case. (D.E. 24, 29).

GECC and VFS claim to be secured creditors who have financed Tradewind's purchase of two aircraft, which they now wish to take possession of because they claim to have concerns (though no evidence) regarding maintenance of the planes. Emergency Motion to Modify Order

Appointing Receiver and Memorandum of Law ("Non-Parties Emergency Motion") attached as Exhibit A to the Non-Parties' Motion to Intervene (D.E. 32). Tradewind is also the registered owner of both aircraft. Affidavit of Receiver Burton Wiand at ¶ 6, attached in support of Receiver's Opposition to Emergency Motion to Modify Order Appointing Receiver (hereinafter cited as "Receiver's Opposition"). The Receiver is in control of Tradewind, has overseen the proper maintenance of the two aircraft, and can generate new revenue from a charter service within at most three weeks. Affidavit of Roger Wright Jernigan, attached in support of Receiver's Opposition (hereinafter cited as "Jernigan Affid."). The Non-parties' attempt to intervene and take the airplanes has caused at least one prospective buyer of Tradewind's Lear Jet to delay making an offer in the hope of paying a lower price to the Non-parties later. Jernigan Affid. at ¶ 15.

### III. Memorandum Of Law

#### A. Exchange Act Section 21(g) Bars Intervention

Section 21(g) of the Exchange Act provides in pertinent part that:

> . . . no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

Although the language of the statute does not mention intervention, some federal courts have held that, nonetheless, the statute operates as an "impenetrable wall" to a third party intervening in a Commission enforcement action absent the Commission's consent. *SEC v. Wozniak*, No. 92 C 4691, 1993 WL 34702 at *1 (N.D. Ill. Feb. 8, 1993) (denying motion to intervene by investor who asserted he was a victim of the fraud alleged in the Commission's complaint because the Commission would not consent). The United States Supreme Court has also acknowledged Section 21(g)'s barrier to those trying to insert private claims into Commission enforcement

3

actions. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n. 17 (1979) (allowing private plaintiff to employ offensive collateral estoppel without having joined prior Commission lawsuit involving similar facts, because pursuant to Section 21(g) "the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired") (citing *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2nd Cir. 1972)).

Other courts have followed suit. For example, in *SEC v. Homa*, No. 99 C 6895, 2000 WL 1468726, (N.D. Ill Sept. 29, 2000), *aff'd* 17 Fed. Appx. 441 (7th Cir. 2001) (unpublished), the district court denied a motion to intervene by one of the defendant's creditors. The court found that "the language of Section 21(g) is plain and unambiguous," and that language "clearly bars [the creditor] joining the SEC's enforcement action as a party." *Id.* at *2. *See also SEC v. Cogley*, No. 98CV802, 2001 WL 1842476 at *3-*4 (S.D. Ohio March 21, 2001) (denying bankruptcy trustee's motion to intervene in enforcement action and finding that "after reviewing the legislative history, and reviewing other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention"). Section 21(g)'s prohibition is broad enough to prohibit defendants from bringing their own claims in Commission actions, even when they arise from the same or similar facts. *SEC v. Thrasher*, No. 92 CIV 6987 (JFK), 1995 WL 456402 at *3 (S.D.N.Y Aug. 2, 1995) (Section 21(g) bars defendant's third-party claims); *SEC v. Egan*, 821 F.Supp. 1274, 1275 (N.D. Ill. 1274) (same).

Even those courts that have held Section 21(g) did not automatically bar a third party from intervening have expressed skepticism about allowing wholesale intervention in Commission enforcement actions. *See, e.g., SEC v. TLC Investments and Trade Co.*, 147 F.Supp.2d 1031, 1040 (C.D. Cal. 2001) (citing "sound policy reasons why, if consolidation is prohibited, intervention also should be" and explaining that "[w]ithout a bar on intervention, §

4

21(g) could easily be eviscerated: while a private action could not be consolidated with an SEC action, those proceeding in a private action could merely end that action and instead intervene in the SEC's action"); *SEC v. Credit Bancorp Ltd.*, 194 F.R.D. 457, 468 (S.D.N.Y. 2000) (allowing permissive intervention on the unique facts of the case but noting that "intervention has been traditionally disfavored, given courts' hesitation to allow scores of investors and other interested persons from becoming full-fledge parties to governmental enforcement actions").

That is because Congress has charged the Commission with the statutory responsibility of enforcing the federal securities laws. *See, e.g., Official Committee of Unsecured Creditors of Worldcom, Inc., v. SEC*, 467 F.3d 73, 82 (2nd Cir. 2006). To that end, Congress has afforded the Commission considerable discretion in how to carry out that mandate. The courts have also frequently deferred to the Commission's experience and expertise in determining the appropriate remedies to seek in enforcement actions. *Id.; SEC v. Bear Stearns & Co.*, Case No. 03 CIV 2937 WHP (et al.), 2003 WL 22000340 at *3 (S.D.N.Y. Aug. 25, 2003) ("the SEC in its role as *parens patriae*, is presumed to represent the interests of the investing public aggressively and adequately").

The Commission sought appointment of a Receiver to provide investors and creditors with an officer who can marshal assets quickly, fairly, and systematically for their benefit. Allowing the Non-parties to intervene and take assets that Nadel obtained with investor funds would run counter to the very purpose and approach of the Receivership. If there is any legitimate concern about their interest (and, as the Receiver demonstrates, that seems unlikely), it would not be an equitable exercise of the receivership remedy to give priority to GECC and VFS before the Receiver can untangle the money trails and fairly determine the actual interests of all involved. *See, e.g., Credit Bancorp*, 194 F.R.D. at 464 ("[j]ust as the appointment of a receiver

5

is authorized by the broad equitable powers of the Court, the argument goes, any distribution of assets by such a receiver is to be done equitably and fairly-with similarly situated investors or customers treated similarly").

Courts such as *Credit Bancorp* that have allowed private parties to intervene in enforcement actions have done so only where those parties demonstrated a direct interest in the litigation. For example, in *Credit Bancorp*, the court allowed former customers of an investment firm to intervene to argue a receiver should return securities in their names obtained in the actual fraud underlying the Commission's lawsuit. *Id*. at 469. Significantly, the *Credit Bancorp* court also based its ruling on the fact that the defrauded investors "are likely to have extensive participation in this case whether or not intervention is allowed." *Id*. In *SEC v. Kings Real Estate Investment Trust*, 222 F.R.D. 660 (D. Kan. 2004), the court allowed an investor to intervene to argue that $1 million the trust was holding was actually his. The Non-parties' interest in the airplanes does not bear the same direct connection to the Commission's litigation as that of the investors in these cases. As secured creditors of Tradewind (now controlled by the Receiver), the Non-parties may at some point have a hypothetical breach of contract action related to their notes. However, such a suit and the notes at issue – even in the unlikely circumstance litigation ever became necessary – do not directly relate to Commission's securities fraud action.

As explained below and through the Receiver's Opposition, the Non-Parties' interest is not at risk – they are in fact in the same situation as before the Receiver took over Tradewind – and their claims are appropriately heard through submitting a claim to the Receiver. *Credit Bancorp*, 194 F.R.D. at 468 ("[i]f, as a number of intervenors assert, their primary interests lie in safeguarding their rights to assets presently held by the Receiver, then summary proceedings

would presumably be adequate to the task at hand. Such proceedings are relatively commonplace where an equity receiver has been appointed to marshal assets, and the handling or distribution of those assets is a matter of dispute"). *See also*, *CFTC v. Chilcott Portfolio Management, Inc.*, 725 F.2d 584, 586 (10th Cir.1984) (explaining preference for claimants to use process established through court's equity powers instead of pursuing numerous actions as parties).

### B. The Non-Parties Are Not Entitled to Intervention under Rule 24

Even if Section 21(g) did not bar GECC and VFS from intervening in this action, the Court should not allow them to intervene because they fail to satisfy the requirements for intervention under Fed.R.Civ.P. 24. The Non-parties' motion did not address the standards under this rule, so we address them below.

### 1. Intervention as of Right

Rule 24(a)(2) permits intervention as of right when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2).

An applicant seeking to intervene as of right under this rule must demonstrate: (1) its application is timely; (2) it has an interest relating to the property or transaction that is the subject of the action; (3) it is so situated that disposition of the action, as a practical matter, may impair or impede its ability to protect that interest; and (4) the parties to the action inadequately represent its interest. *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302-03 (11th Cir. 2008). A failure to prove even one of these elements requires a court to deny a motion to intervene. *Keith*

7

*v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985).

The Non-parties fail to establish the second, third, and fourth requirements for intervention as of right. They do not have a legally protectable interest relating to the property or transaction that is the subject of the Commission's securities enforcement action, and disposition of the Commission's case will not impede their ability to protect their interests in their notes. Additionally, the Receiver adequately represents the interests of the Non-parties and investors.

GECC and VFS really have only a collateral, speculative, and **economic** interest in the subject matter of the Commission's lawsuit, and this does not support intervention as of right. *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). In *Mt. Hawley*, the Eleventh Circuit held that a personal representative could not intervene in litigation between an insurer and its insured, because the personal representative had no legally protectable interest in the insurance policy at issue there – only an economic interest in having more money for recovery in his wrongful death suit against the insured. *Id.* Such an economic interest does not support intervention. *Id.* (citing *United States v. South Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991)). Similarly, GECC and VFS have nothing but an economic interest in what happens within the Commission's enforcement case: they have no authority to affect or choose the claims or remedies the Commission seeks for securities fraud. At most the Non-parties may understandably hope the Commission's case does not affect a potential source of recovery for any litigation they may hypothetically bring over notes for which they worry Tradewind may not protect the collateral.

This economic interest is too speculative to support intervention under Rule 24(a)(2), since it is contingent on GECC and VFS having to sue Tradewind and succeeding in that litigation. *Id.* and at n. 6 ("Rigaud's interest is purely speculative because it is contingent upon

his prevailing against Muria International and Sandy Lake Properties in the wrongful death action") (agreeing with district courts and holding that the outcome of litigation is too speculative to be a legally protectable interest for intervention purposes).

Since GECC and VFS cannot show an interest relating to the property or transaction that is the subject of this action, they of course cannot establish disposition of this action, as a practical matter, may impair or impede their ability to protect that interest. *NBD Bank*, 159 F.R.D. at 507 ("[b]ecause they fail to satisfy the second prong of the test under Rule 24(a)(2), petitioners necessarily fail to meet the third prong") (citing *Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir.1982) ("[b]ecause applicants fail to assert an interest relating to the property or transaction which is the subject of the [underlying] action, . . . it follows that applicants also have no direct legally protectable interest that could be impaired or impeded.")).

The Non-parties also do not meet the fourth requirement for Rule 24(a)(2) intervention, because the Receiver will adequately protect their economic interests apart from the Commission's case. *SEC v. Homa*, 2000 WL 1468726 at *2 (intervention denied to claimant of aircraft and airport facilities because claimant could seek relief from Receiver with court review); *SEC v. TLC Investments*, 147 F.Supp.2d at 1041-42 (intervention denied because Receiver shares similar goals with intervenors, adequately protecting their interests and intervenors will receive due process through the Receiver's claims process) (citing, among other cases, *SEC v. Elliott*, 953 F.2d 1560, 1566-67 (11th Cir. 1992)). "Although not all investors and creditors share the same interests, it is in all their interests to maximize the value of the assets under the receivership. This is what the Receivership is charged with doing." *SEC v. Byers*, No. 08 Civ. 7104 (DC), 2008 WL 5102017 at *1 (Nov. 25, 2008).

In *Byers,* the entity seeking intervention claimed to have an interest in valuable property

9

and claims that could be "'lost or otherwise jeopardized'" in the Commission's case. *Id*. at *1. Noting the many victims, the large amount of money involved (at least $250 million), and the number of creditors and entities, the *Byers* court observed, "it would not be efficient or effective to permit individual creditors to intervene as parties." *Id*. (citing *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir.1972); *Credit Bancorp*, 194 F.R.D. at 467; *SEC v. Canadian Javelin, Ltd.*, 64 F.R.D. 648, 650 (S.D.N.Y.1974) ("[I]ntervention as of right by victims of alleged securities frauds in an SEC enforcement action is inappropriate").

It is difficult to see how the Non-parties' interest in their notes collateral is harmed by allowing Tradewind to continue running its business under the Receiver's control. One of the Receiver's primary goals is to maximize the number and value of assets recovered, and preserving and enhancing the revenue-generating capacity of the Tradewind aircraft benefits investors and protects Tradewind's ability to comply with its obligations to GECC and VFS. As the Jernigan affidavit submitted by the Receiver explains, while the Receiver is maintaining the value of the Tradewind airplanes, the Non-parties' sudden attempt to interfere with the Receivership and take the airplanes has ironically made it **more** difficult for the Receiver to generate funds by selling one of them, since at least one prospective buyer has now decided to wait for a possible fire sale by the Non-parties rather than make an offer now.

GECC and VFS fail to establish three of the four elements for intervention as of right, and the Court therefore must reject their motion under Rule 24(a)(2).

## 2. Permissive Intervention

Where there is no intervention as of right, a district court may nonetheless exercise its discretion to allow a third party to intervene if (1) an applicant's claim or defense and the main action have a question of law or fact in common, and (2) the proposed intervention will not

unduly delay or prejudice the adjudication of the rights of the original parties. Fed.R.Civ.P. 24(b); *Fox*, 519 F.3d at 1304-05.

GECC and VFS must demonstrate a common issue of law or fact between their still-hypothetical private claims and this enforcement action. Because they have not even addressed this burden, let alone met it, the Court should exercise its discretion and deny permissive intervention. Furthermore, the Non-parties' intervention here would delay adjudication of all issues for both the Commission and the defendants in this case.

GECC and VFS do not make clear what their legal claims might be against Tradewind, and they do not even attempt to explain what legal or factual issues such theoretical claims share with the Commission's suit to enforce the anti-fraud sections of the federal securities laws. They express concerns about maintaining the two aircraft (now shown by the Receiver to be moot or unfounded), supply virtually no evidence to support their concerns, and ask the Court to let them intervene to request the turn over of the aircraft for sale. Non-Parties Emergency Motion at 9. They never clearly articulate what claims or defenses they might eventually bring, even assuming some speculative chain of events. The Non-parties' desire to obtain a quick liquidation of the collateral does not support permissive intervention.

Similarly, because the Commission's action has no question of law or fact in common with whatever claims GECC and VFS **might** eventually bring, allowing them to intervene now will only delay these proceedings. Without supplying any significant evidence, the Non-parties already have caused the Commission and the Receiver to expend time and resources addressing their attempt to intervene and seek modification of the Receivership based on what they themselves categorize merely as concerns. In light of the due process provided by traditional Receivership claims procedures, *SEC v. Elliott* 953 F.2d at 1566-67 (11th Cir. 1992), and the fact

that the Non-parties have not asserted any concrete legal claims, permitting intervention now will likely open the door to additional litigation as the Non-parties use the forum of the Commission's action to explore other concerns they have with how the Receiver conducts Tradewind's business.

> Courts have been reluctant to let even investors intervene to affect Commission cases:
>
> Concerns about undue delay and complication resulting from permissive intervention are acute where the Government, and particularly the SEC, is a party to the underlying action . . . . The reason is that the SEC, in its role as *parens patriae,* is presumed to represent the interests of the investing public aggressively and adequately. Reflexive intervention by the public in SEC actions would undermine both the SEC's ability to resolve cases by consent decree and the efficient management of those cases by courts.

*SEC v. Bear, Stearns & Co. Inc.* 2003 WL 22000340 at *3 (citations omitted). *See also SEC v. Everest Management Corp.*, 475 F.2d 1236, 1239-1240 (2nd Cir. 1970) (Explaining how the intervention of a private plaintiff could complicate the Commission's efforts to bring and resolve a large number of enforcement actions). In this case, the Non-parties have shown no basis for intervening in a Commission case with which they have only a tenuous connection. With the Receiver's diligence leading to additional assets and entities coming under his control, allowing GECC and VFS to intervene and attempt to modify the Receivership will likely encourage similar maneuvers by other creditors or investors, leading to additional unnecessary and premature collateral litigation. The Court should deny the Non-parties' request to intervene pursuant to Rule 24(b) as well.

### C. The Court Should Deny the Attempts to Modify the Receivership

The appointment of a Receiver is a well-established equitable remedy available to the Commission in civil enforcement proceedings for injunctive relief. *See, e.g., SEC v. First Financial Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981); Section 22(a) of the Securities Act of 1933, 15

U.S.C. § 77v(a); and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Appointment of a Receiver is particularly appropriate in cases where a defendant, through its management, has defrauded members of the investing public. *First Financial Group of Texas*, 645 F.2d at 438. The Commission joins the Receiver in opposing any attempt to modify the Receivership, particularly an attempted modification inexplicably submitted as an emergency with little evidence behind it. As explained above in the intervention argument, GECC and VFS provide no substantiated grounds for trying to skip ahead of other potential Receivership claimants, and there is no reason why the usual Receivership process would not be sufficient – assuming the they ever even have a claim.

The Receiver in this case cannot fulfill his traditional duties of marshalling and protecting assets for the most equitable overall distribution if creditors and others with the resources to retain counsel may race to court and obtain exceptions to the receivership process for themselves. Such a modification of the Receivership would invite more of the same, eventually undermining the Receiver's ability to pursue assets and implement a unified, equitable approach to making a distribution.

For the foregoing reasons, the Commission respectfully opposes GECC and VFS' Motion to Intervene and Emergency Motion to Modify Order Appointing Receiver and Memorandum of Law, and asks this Court to deny them.

February 10, 2009                                  Respectfully submitted,

                                    By:    s/ Scott A. Masel
                                           Scott A. Masel
                                           Senior Trial Counsel
                                           Florida Bar No. 0007110
                                           Direct Dial: (305) 982-6398
                                           E-mail: masels@sec.gov
                                           *Lead and Trial Counsel*

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Burton W. Wiand, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: bwiand@fowlerwhite.com
*Court-appointed Receiver for Corporate Defendants*
*and Relief Defendants*

Carl R. Nelson, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: cnelson@fowlerwhite.com
*Counsel for Receiver Burton W. Wiand*

Gianluca Morello, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: gianluca.morello@fowlerwhite.com
*Co-counsel for Receiver Burton W. Wiand*

Ashley Bruce Trehan, Esq.

Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: atrehan@fowlerwhite.com
*Co-counsel for Receiver Burton W. Wiand*

      I further certify that on the same date I mailed the foregoing document and the notice of

electronic filing by to the following non-CM/ECF participant:

| | | |
|---|---|---|
| Arthur G. Nadel | and | 3966 Countryview Drive |
| Register No. 50690-018 | | Sarasota, FL 34233 |
| FTC Oklahoma Center | | Via FedEx |
| Federal Transfer Center | | |
| P.O. Box 898801 | | |
| Oklahoma City, OK 73189 | | |
| Via U.S. Mail | | |

                                      s/ Scott A. Masel
                                      Scott A. Masel, Esq.