# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                                                 Case No. 8:09-cv-87-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

      Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

      Relief Defendants.
_____/

### DECLARATION OF ASHLEY BRUCE TREHAN IN SUPPORT OF RECEIVER'S MEMORANDUM IN OPPOSITION TO EMERGENCY MOTION FOR PROTECTIVE ORDER FILED BY R. CRAIG HARRISON

Ashley Bruce Trehan declares as follows:

1. I am an attorney with Fowler White Boggs P.A. ("Fowler White") in Tampa, Florida. I make this declaration in support of the Receiver's Memorandum in Opposition to Emergency Motion for Protective Order filed by R. Craig Harrison.

2. I am one of the attorneys who represents Burton W. Wiand, who the Court has appointed Receiver over defendant Scoop Capital, LLC; defendant Scoop Management, Inc.;

all of the relief defendants; Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; and the Laurel Mountain Preserve Homeowners Association, Inc. (all of the entities and the trust in receivership are referred to collectively as the "Receivership Entities"). (*See* Jan. 21, 2009 Order Appointing Receiver (Doc. 8); Jan. 27, 2009, Order (Doc. 17); Feb. 11, 2009, Order (Doc. 44).)

3. Since the appointment of Mr. Wiand as Receiver, I and other professionals that Mr. Wiand has retained (including other lawyers and accountants) have continued our investigation, which has included extensive background and factual investigation into the assets owned by the Receivership Entities. We have reviewed documents located in the offices of certain Receivership Entities (located at 1618 Main Street, Sarasota, FL 34236); documents obtained from the accountant for Receivership Entities; information stored on Receivership Entities' computer network; documents obtained from other businesses controlled by Nadel; documents obtained from financial institutions and other third parties, including lawyers and others who assisted Nadel's business with their transactions; and information available in the public record.

4. During the course of our investigation, we became aware of a property located at 3966 Country View Road, Sarasota, Florida 34233 (the "Country View Property"). The Receiver has reason to believe that the land was purchased with the funds of investors who were defrauded as a result of the scheme perpetrated by Nadel.

5. Warranty deeds recorded in Sarasota County, Florida, show that Nadel purchased the Country View Property on June 29, 2001, and on the same day granted the

property to himself as trustee for Land Trust No. 3966 Country View Dated June 29, 2001. A true and correct copy of each of the Warranty Deeds reflecting these transfers are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

6. Harrison's name and contact information is listed on both of these deeds, both as the closing agent and as a witness. (Ex. A at 1; Ex. B at 1.)

7. A mortgage recorded in Sarasota County, Florida, shows that, on June 29, 2001, Nadel executed a mortgage on the Country View Property. A true and correct copy of the mortgage is attached hereto as **Exhibit C**. The first signature on the last page of the mortgage appears to belong to Harrison. (Ex. C at 13.)

8. In order to further investigate this property and the potentiality for including it as an asset within the receivership in this case, Fowler White initiated contact with Harrison. This contact was based on the information set forth in the aforementioned deeds and mortgage, all of which are available in the public record. (Exs. A-C.)

9. Kathleen Liever, another attorney with Fowler White, spoke to Harrison more than once to obtain more information on the Country View Property. My knowledge of these conversations is based on representations made to me by both Ms. Liever and by Harrison.

10. Harrison requested that Ms. Liever serve him with a formal subpoena for documents in this case.

11. Following Harrison's request, Ms. Liever prepared a subpoena, which I signed on behalf of the Receiver, on or about February 23, 2009. Harrison attached a copy of the subpoena as Exhibit A to the Motion.

12. Based on (i) Mr. Harrison's representations and (ii) the Verified Return of Service (a true and correct copy of which is attached hereto as **Exhibit D**), the law firm Lyons, Beaudry, & Harrison P.A. was served with the subpoena, to Harrison's attention, on the morning of March 3, 2009.

13. On March 3, 2009, Harrison called Ms. Liever, who was (and is, at the time of the filing of this Declaration) in San Francisco, California, attending an attorney conference. Ms. Liever's assistant transferred the call to me, and Mr. Harrison and I spoke for several minutes. This conversation occurred at approximately 11 a.m. (EST).

14. First, Harrison expressed a concern regarding the subpoena's deadline of March 6, 2009, for producing documents. In light of the apparent delay in service, I agreed to extend the deadline to March 13, 2009. I never represented to Harrison that the Receiver would pursue any relief if Harrison were unable to meet this deadline.

15. Next, Harrison expressed concerns regarding violating the attorney-client privilege. He explained that, previously, he had been involved in a case in which the court made a ruling that apparently spelled out which documents were and were not protected by the attorney-client privilege.

16. I made no representations to Harrison regarding our substantive position on his claim for privilege. Indeed, he had not given us any detail (such as a privilege log) as to which documents he contended were privileged. When Harrison asked exactly what documents we were seeking, I explained that we are seeking the documents reflected in the subpoena, which would include essentially his entire file on the transaction.

17. During this conversation, Harrison made no representations whatsoever about filing a motion for protective order. At no point in the conversation was it apparent to me that we had any dispute with Harrison regarding production of documents. My recollection is that the tone of the conversation was agreeable and amicable.

18. On March 4, 2009, at approximately 3:13 p.m. (EST) Harrison filed the Emergency Motion for Protective Order.

19. The Motion states that Harrison "attempted to contact counsel for the Receiver to amicably resolve this issue to no avail." (Mot. ¶ 9.) However, Harrison never represented to me that he intended on seeking a protective order from the Court. Up until the point at which I received a copy of Motion, I had been under the impression that Harrison would produce all non-privileged documents responsive to the subpoena. Indeed, this would be the normal course of the discovery process in a federal court case such as this.

20. Our communications never reflected any disagreement – much less a disagreement that required Court intervention – between counsel for the Receiver and Harrison.

21. On March 4, 2009, at approximately 4:35 p.m. (EST) I called Harrison in a good-faith attempt to resolve the (apparent) dispute without the need for the Court's intervention. I told Harrison that we would be willing to work with him if he (i) withdrew his motion and (ii) agreed to produce all non-privileged documents along with a privilege log reflecting any documents that he contended were privileged. I was more than willing to cooperate with Harrison in light of his claims of privilege.

22. Harrison rejected this arrangement and insisted that he required a Court Order prior to producing <u>any</u> documents to Fowler White. Based on my conversations with Harrison and on his Motion, Harrison would like for the Court to perform an *in camera* review of Harrison's file(s) that relate to the Country View Property and then to make a ruling as to which of those documents fall within the attorney-client privilege. (*See* Mot. ¶¶ 6, 8; Memo. in Support of Mot. at 4 ("In further aid to the Court in making this inquiry, Movant suggests that the Court make an in camera inspection of the file."))

I declare under the penalty of perjury that the foregoing is true and correct and is executed this 5th day of March, 2009.

s/ Ashley Bruce Trehan
Ashley Bruce Trehan, FBN 0043411
Email: atrehan@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL 33601
(813) 228-7411
Fax No: (813) 229-8313

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Arthur G. Nadel
Register No. 50690-018
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

s/ Ashley Bruce Trehan
Ashley Bruce Trehan, FBN 0043411
Email: atrehan@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL 33601
(813) 228-7411
Fax No: (813) 229-8313