# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                  Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

      Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

      Relief Defendants.
_____/

## RECEIVER'S THIRD UNOPPOSED MOTION TO EXPAND THE SCOPE OF RECEIVERSHIP AND INCORPORATED MEMORANDUM OF LAW

Pursuant to 28 U.S.C. § 754, Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 3.01, Burton W. Wiand, as Receiver, moves the Court to expand the scope of the receivership in this case to include the Guy-Nadel Foundation, Inc (the "Foundation"). The Receiver's investigation has revealed the Foundation was funded with ill-gotten gains. As explained below, the Foundation should be placed in receivership in order to preserve its assets and bring it under the Receiver's control.

**BACKGROUND**

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent the defendants from further defrauding investors of hedge funds managed by them. That same day, the Court entered an order appointing Burton W. Wiand as Receiver of all the assets, properties, books, and records and all other items held in the name of Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). (*See generally* Order Appointing Receiver (Doc. 8).) On January 27, 2009, the Court entered an order expanding the scope of the receivership and appointing the Receiver as receiver also over Venice Jet Center, LLC, and Tradewind, LLC (*See* Order, Jan. 27, 2009 (Doc. 17).) On February 11, 2009, the Court entered an order expanding the scope of the receivership and appointing the Receiver as receiver also over Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; and the Laurel Mountain Preserve Homeowners Association, Inc. (*See* Order, Feb. 11, 2009 (Doc. 44).) All of the entities and the trust in receivership are hereinafter referred to collectively as the "Receivership Entities."

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of

the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver at 1-2.)

The Commission concluded that Defendant Arthur Nadel ("Nadel") used Scoop Capital; Scoop Management; Valhalla Management, Inc.; and Viking Management, LLC to defraud investors of the hedge funds those companies managed, Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; and Viking Fund, LLC (collectively, the "Hedge Funds"). (*See* Compl. ¶¶ 5-7 (Doc. 1).) The Commission contends the defendants violated federal securities laws from at least January 2008 forward by "massively" overstating investment returns and the value of fund assets to investors and providing false account statements to investors. (*Id.* ¶¶ 3, 36.) The Commission also contends that Nadel misappropriated investor funds by transferring $1.25 million from Viking IRA Fund and Valhalla Investment Partners to secret bank accounts. (*Id.* ¶ 5.) The Court found the Commission demonstrated a *prima facie* case that the defendants committed multiple violations of federal securities laws. (Order Appointing Receiver at 2.)

During the course of his investigation, the Receiver has uncovered evidence that the defendants' violations of federal securities laws began no later than 2003. (Receiver's Decl. in Support of the Mot. to Expand the Scope of Receivership ¶¶ 10-12 (Doc. 16) (the "Receiver's January Declaration").) For each year from 2003 through 2007 (and, as shown by the Commission, in 2008), Nadel caused Receivership Entities to grossly overstate the value of the Hedge Funds and to report to investors overstated values and other false performance indicators for those funds. (*Id*.) As detailed in the Receiver's January

Declaration (¶ 11), following are the actual values of the Hedge Funds and the purported year-end values represented to investors from 2003 through 2007:

|  | Value as of 12/31/03 ($) | Value as of 12/31/04 ($) | Value as of 12/31/05 ($) | Value as of 12/31/06 ($) | Value as of 12/31/07 ($) |
|---|---|---|---|---|---|
| **Actual Value** | 80,820,378.06 | 143,073,367.23 | 132,731,986.70 | 63,715,094.39 | 18,042,860.67 |
| **Value Represented To Investors** | 128,953,973.27 | 216,868,604.46 | 274,387,098.31 | 282,379,592.45 | 313,960,110.28 |

The Receiver also uncovered evidence that Scoop Capital and Scoop Management received substantial amounts of money from the Hedge Funds in the form of management, profit incentive, and/or advisory fees. (*See* Receiver's Decl. in Support of the 2d Unopposed Mot. to Expand the Scope of Receivership ("Receiver's February 10 Decl.") ¶ 9 (Doc. 37).) In all likelihood, a significant amount of the proceeds of Nadel's fraud made its way into other accounts controlled by him and/or his wife, Marguerite "Peg" Nadel (including at least $6,426,000.00 between 2003 and 2009). (*See id.* ¶ 12.) During the course of his investigation, the Receiver also learned that other businesses and a trust were funded with proceeds of Nadel's fraudulent scheme. (*See, e.g.*, *id.* ¶¶ 10-14.)

The information gathered during the Receiver's investigation also shows that money derived from Nadel's scheme was used to purchase and/or fund other entities, including the Guy-Nadel Foundation, Inc. (*See* Receiver's Decl. in Support of the 3d Unopposed Motion to Expand the Scope of Receivership ("Receiver's Declaration") ¶¶ 16-23, being filed simultaneously with this Motion.)

**Guy-Nadel Foundation, Inc.**

As detailed in the Receiver's Declaration, the Foundation was formed by Nadel in December 2003 as a non-profit corporation for "charitable, educational and scientific

4

purposes." (Receiver's Decl. ¶ 17.) The Foundation's principal address is the Office; its directors are Nadel, Mrs. Nadel, and Mrs. Nadel's son and daughter, Geoff Quisenberry and Alexandra Quisenberry, respectively; and its incorporator and registered agent is Nadel. (*Id*. ¶¶ 17-19.)

The Receiver's investigation has revealed that the Foundation was funded with proceeds of Nadel's scheme. (*Id*. ¶ 20.) Specifically, between December 2004 and December 2008, the Foundation received at least seven transfers of money from Scoop Capital and the Nadels' personal accounts, totaling $2,850,000.00. (*Id*.) The investigation has also revealed that the Foundation was deeded several real estate lots located in North Carolina from (1) Nadel and his wife and (2) Laurel Mountain Preserve, LLC (one of the Receivership Entities), respectively. (*Id*. ¶¶ 21-23.) These transactions took place at the same time that Nadel was perpetrating his fraudulent scheme, and essentially all of the Nadels' income was derived from that scheme. (*Id*.)

In sum, Nadel had at least partial control of the Foundation; funded it with proceeds of his investment scheme either directly through transfers of money from Scoop Capital or indirectly through transfers of money from his and his wife's personal accounts; and transferred property to it from himself and his wife and from Laurel Mountain Preserve, LLC, one of the Receivership Entities. (*Id*. ¶¶ 17-23.)

## **MEMORANDUM OF LAW**

The Court's power to supervise an equity receivership and determine the appropriate action to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230

(D.C. Cir. 1989). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Id.* at 1566 (citing *SEC v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 372 (5th Cir. 1982)).

Such discretion may be properly exercised in the form of expansion of a receivership where a party seeking expansion establishes (1) a commingling of funds, (2) intertwined business operations, (3) utilization of an identical business address or identical offices and addresses, (4) or co-identity of officers, directors, or principals. *See SEC v. Elmas Trading Corp.,* 620 F. Supp. 231, 233 (D. Nev. 1985), *aff'd*, 805 F.2d 1039 (9th Cir. 1986); *see also Elliott,* 953 F.2d at 1565, n.1 (holding that court may extend equitable receivership over related entities).

In determining whether or not to extend a receivership to include related entities, a federal court has broad discretion to disregard corporate separateness and form and to give effect to the substance of the enterprise. *Elmas Trading Corp.,* 620 F. Supp. at 233. A corporate entity may be disregarded under federal law "in the interests of public convenience, fairness, and equity . . . ." *Id.* at 234; *see In re Bowen Transp., Inc.*, 551 F.2d 171, 179 (7th Cir. 1977) (stating that "[t]he separate corporateness of affiliated corporations owned by the same parent may be equally disregarded under the proper circumstances."). The key goal behind a proposed receivership expansion should be "to ensure that all available assets are brought within the receivership and may properly be distributed to creditors." *Id.* at 233.

Given the Court's wide discretion and authority, the receivership estate in this case should be expanded to encompass the Foundation. As discussed above and in the Receiver's Declaration, the evidence uncovered by the Receiver's investigation shows that the

Foundation was funded with proceeds of Nadel's investment scheme directly through transfers of money from Scoop Capital and/or indirectly through transfers from the Nadels' personal financial accounts. Additionally, the Foundation received North Carolina real property from Laurel Mountain Preserve and the Nadels. Laurel Mountain Preserve was funded with proceeds of Nadel's scheme. Similarly, the Nadels purchased the lot they deeded to the Foundation at a time (December 2003) when Nadel was already perpetrating his scheme, and essentially all of the Nadels' income was derived from that scheme. (Feb. 10 Decl. ¶¶ 16-23.) Thus, the assets transferred to the Foundation were either ill-gotten gains or funded with ill-gotten gains that resulted from Nadel's fraudulent scheme.

In short, the information gathered thus far shows (i) that Receivership Entities' money – which was raised from investors – was diverted by Nadel into the Foundation, and (ii) that Nadel and his family controlled the Foundation.

This Court's Order Appointing Receiver already requires the Receiver to "marshal and safeguard all of the assets of the Receivership Entities and take whatever actions are necessary for the protection of the investors." (Doc. 8). Marshalling and safeguarding the property and assets of the Foundation are necessary to protect investors and to preserve the assets' value. Notably, this Court's Order Appointing Receiver contemplates the expansion of the receivership. The Order expressly states:

> In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, *extending this receivership over any person or entity holding such investor funds*.

(Doc. 8 ¶ 24 (emphasis added).)

Because (1) the Court has the authority to expand the receivership to include the Foundation; (2) the evidence shows that Nadel misappropriated funds from the Receivership Entities to the Foundation; and (3) expansion of the receivership is necessary for the protection of the investors and the receivership estate, the Receiver respectfully requests that this Court modify the Order Appointing Receiver or otherwise expand the Receivership to include The Guy-Nadel Foundation, Inc.

**LOCAL RULE 3.01(G) CERTIFICATION OF COMPLIANCE**

The undersigned counsel for the receiver has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

# CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

>Arthur G. Nadel
>Register No. 50690-018
>MCC New York
>Metropolitan Correctional Center
>150 Park Row
>New York, NY  10007

>s/ Gianluca Morello
>Carl R. Nelson, FBN 0280186
>cnelson@fowlerwhite.com
>Gianluca Morello, FBN 034997
>gianluca.morello@fowlerwhite.com
>Maya M. Lockwood, FBN 0175481
>mlockwood@fowlerwhite.com
>Ashley Bruce Trehan, FBN 0043411
>ashley.trehan@fowlerwhite.com
>FOWLER WHITE BOGGS P.A.
>P.O. Box 1438
>Tampa, FL  33601
>T: (813) 228-7411
>F: (813) 229-8313
>Attorneys for the Receiver, Burton W. Wiand

40611919v1