UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                    Case No.: 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

    Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT
PARTNERS, L.P., VALHALLA
MANAGEMENT, INC., VICTORY
FUND, LTD, VIKING IRA FUND, LLC,
VIKING FUND LLC, AND VIKING
MANAGMENET, LLC,

    Relief Defendants.
_____/

## AMENDED MOTION FOR
## PAYMENT OF REASONBALE ATTORNEYS' FEES

Comes Now, the law firm of Cohen, Jayson and Foster, and moves this Court for an order permitting the payment of reasonable attorneys fees to Cohen, Jayson and Foster for its past and continuing work on behalf of Arthur Nadel in this, and the related criminal case. In support of this request, the undersigned would show:

### FACTUAL BACKGROUND

1.    On January 20, 2009, representatives of the SEC met with Marguerite Nadel, wife of Arthur Nadel, in Sarasota, Florida, and requested her assistance in turning over documents the SEC thought relevant to their inquiry concerning the investment funds listed as defendants and relief defendants in this action. Mrs. Nadel fully complied with the requests of the SEC, and also

Dockets.Justia.com

executed her consent to the entry of a Preliminary Injunction. (Doc. 3) Mrs. Nadel's consents were submitted to the Court on January 21, 2009, as part of the SEC's application for a Temporary Restraining Order (Doc. 2), This Court thereafter granted the SEC's request for the Temporary Restraining Order, and for appointment of a Receiver (Doc. 8). The Court's Orders froze all accounts and assets of the Nadels, but did provide, with the consent of the SEC, that Mrs. Nadel receive $10,000 for her personal living expenses, and an additional $10,000 for attorneys' fees from accounts otherwise subject to the Court-ordered asset freeze. (Doc. 4 at II C) According to other documents filed in this case, including a declaration of the Receiver (Doc. 36), Mrs. Nadel has continued to cooperate with the SEC and the Receiver.

2. On January 27, 2009, Arthur Nadel voluntarily surrendered to agents of the FBI as soon as he was advised that a criminal complaint and warrant had been issued for his arrest. Following a detention hearing in Tampa before U.S. Magistrate Judge Mark Pizzo, Arthur Nadel was ordered detained and removed to the Southern District of New York, from where the criminal complaint had originated. Pursuant to Title 18 U.S. Code, Section 3145(b), Nadel sought *de novo* review of the detention order issued by Judge Pizzo. This review was heard by U.S. District Judge Denise Cote in the Southern District of New York, who set conditions of release for Nadel which included the requirement that he post a $1 million cash bond and obtain four responsible personal sureties to guarantee another $4 million in the event of his failure to appear as ordered. Mr. Nadel's bond may well have been set at this high level because he was financially unable to hire private guards to insure he would not violate house arrest. Apparently hiring private guards as a condition of pre-trial release has become virtually *de rigeur* in high-dollar securities fraud cases in the Southern and Eastern Districts of New York. See *United States v. Madoff*, 586 F.Supp.2d, 2009 WL 56987 (S.D.N.Y.); *United States v. Dreier*, Case No. 09-cr-00085 (SDNY); *United States v. Brooks*, Case No. 06-cr-00550 (SDNY); *Cf. United States*

2

*v. Sabhnani*, 493 F.3d 63 (2d Cir., 2007). Having had all of his, and his wife's assets frozen by Order of this Court, Mr. Nadel is unable to come close to posting the bond set by Judge Cote.

3. Mr. Nadel has not yet been indicted in the Southern District of New York, nor has any criminal information been filed. By agreement of the parties to the criminal case, the defendant is being held on the criminal complaint, and the time for the filing of a formal charge has been extended. The undersigned law firm has spent a considerable amount of time in defense of Mr. Nadel's civil and criminal cases, both in Tampa and in New York, including participation in three federal court hearings. The undersigned law firm entered a limited appearance in the New York case because the Nadel family was and is without funds to retain us for the entire case. Likewise, neither this firm, nor any other, has entered a general appearance in this matter because the Nadels are unable to afford counsel. Mr. Nadel's failure to answer the Complaint in this case precipitated the SEC's filing of its Motion for Entry of Default, which has since been denied without prejudice. The Court did provide Arthur Nadel until April 6, 2009, with or without counsel, to file a response to Plaintiff's complaint (Doc. 60).

4. While he has been unable to defend himself before this Court, Arthur Nadel did, on February 2, 2009, voluntarily meet with representatives of the SEC, waived his right to a hearing on the temporary restraining order, and consented to the entry of the preliminary injunction. (Doc. 24-2). Unlike Mrs. Nadel, for whom the SEC agreed to provide funds for legal defense and personal living expenses, no such provision has been offered the defendant, who remains incarcerated in the Metropolitan Correctional Center in New York City, unable to this point, to comply with any of the requirements of this Court's orders, or prepare legal responses or pleadings.

5. As the attached statement of Arthur Nadel[1] demonstrates, he is without assets to hire an attorney, but requests the law firm of Cohen, Jayson and Foster represent him.

6. The SEC recognized that counsel was necessary in this matter and specifically recommended that Mrs. Nadel be provided funds to retain an attorney. Certainly Mr. Nadel's need for legal assistance is much greater than that of his wife. More to the point, he has a Sixth Amendment right to counsel of his choice in the pending criminal case, and an equitable right to be represented in this matter. According to declarations of the Receiver, the alleged fraud commenced in or before 2003. (Doc. 37 at pp. 7-9). Mr. Nadel is 76 years old and Mrs. Nadel is 70 years old. Both had assets prior to 2003, and they certainly earned at least some income independent of the alleged fraud after 2003. Arthur Nadel requests a hearing to determine his right to funds to defend himself in the criminal and SEC case.

7. As noted, no hearing was held prior to the entry of the January 21, 2009, Temporary Restraining Order freezing Arthur Nadel's assets.

## MEMORANDUM

The SEC sought and obtained its asset freeze *ex parte,* without having to prove a nexus between the assets seized (and to be seized) and the alleged fraudulent conduct. Nor was there a judicial assessment of the likelihood that any particular class of frozen assets ultimately would be "adjudged forfeitable" at trial. See, *Caplin & Drysdale v. United States*, 491 U.S. 617, 631 (1989). It is submitted that the continuation of the asset freeze without a post-seizure hearing on the defendant's right to retain criminal counsel with untainted assets violates Mr. Nadel's right to due process of law. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1965), (holding that a fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'); See also, *United States v. Holy Land Foundation for Relief and*

---

[1] The undersigned attempted to get this document notarized, but there was no notary available in the jail where Nadel is being held.

4

*Development*, 493 F.3d 469, 475-76 (5th Cir. 2007). In *Mathews*, the Supreme Court identified three specific factors which must be considered in determining what process is due in the present circumstances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the administrative burden that the additional or substitute procedural requirement would entail." 424 U.S. 319, 334-35, quoted in *United States v. Farmer*, 274 F. 3d 800, 803-04 (4th Cir. 2001). None of the *Mathews* factors have been considered thus far because the Nadels have agreed to aid the Receiver and the SEC as requested. Their cooperation has resulted in the present predicament. The time has come for Mr. Nadel to assert certain basic rights.

Although the Supreme Court left open for the Second Circuit's decision on remand the question "whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed," *United States v. Monsanto*, 491 U.S. 600, 615 n. 10 (1989), the Second Circuit ultimately answered this question in the affirmative, *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991), as have all other circuits that have considered the issue, except for Eleventh. Moreover, the exceptionality of the Eleventh Circuit's position is probably due to change. In *United States v. Register*, 182 F.3d 820,835-36(11th Cir. 1999), the Court indicated that in view of *United States v. Monsanto*, 491 U.S. 600 (1989) ("Monsanto III)," in an appropriate case, it would re-examine its contrary holding in *United States v. Bissell*, 866 F.2d 1343, 1352-53 (11th Cir. 1989), which, "alone among the circuits" refused to recognize the Fifth Amendment right to a post-seizure pretrial hearing. The court in *Register* cited *United States v. Jones*, 160 F. 3d 641, 647 (10th Cir. 1998); *United States v. Michelle's Lounge*, 39 F.3d 684, 700-01 (7th Cir. 1994); *United States v. Monsanto*, 924 F.2d 1186, 1203 (2d Cir. 1991)(:"Monsanto IV"); *United States v. Crozier*, 777 F.2d 1376, 1384(9th Cir. 1985); *United States v. Lewis*, 759 F.2d 1316, 324-25

(8th Cir. 1985); and *United States v. Long*, 654 F.2d 911, 915-16 (3d Cir. 1981). See also, *United States v. Noriega*, 746 F.Supp. 1541, 1543-45 (S.D. Fla. 1990) and *United States v. Farmer*, 274 F.3d 800, 803 (4th Cir. 2001). It appears that in an appropriate case the Eleventh Circuit probably would overrule *Bissell* and join the other circuits in holding that the Due Process Clause requires a post-seizure pretrial hearing.

In *Farmer, supra*, the Fourth Circuit considered the three *Mathews* factors and concluded that due process required that the defendant be afforded a hearing for the limited purposes of allowing him to prove "by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel" for his criminal case. 274 F.3d at 805, citing *Michelle's Lounge, supra*, 39 F.3d at 701.

In *United States v. All Funds on Deposit in Bank of America Account Number 207-00426 in the name of Jaeggi,* 2007 WL 3076952 (E.D.N.Y. 2007), Judge Feuerstein applied the rule in *Farmer* and in *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1988), in evaluating the defendant's request for a hearing on his claim that pre-trial restraint of assets was interfering with his Sixth Amendment right to counsel in violation of his Fifth Amendment right under the Due Process Clause. In conformity with the so-called *Jones-Farmer* rule, the Court held that a post-restraint pretrial hearing was required where the defendant "(1) demonstrates to the court's satisfaction that he has no assets, other than those restrained, with which to retain private counsel and provide for himself and his family; and (2) makes a prima facie showing that the assets are not forfeitable." Quoting *Jones*, 160 F.3d at 647 and *Farmer*, 274 F.3d at 805. Judge Feuerstein wrote that with regard to lack of any assets other than those restrained, the defendant bears the burden of persuasion, while he has only a burden of production in showing that certain assets are not forfeitable. *Jones,* 160 F.3d at 647. District courts have broad discretion to determine the need for a hearing. *Farmer*, 274 F.3d at 805.

To be clear, Mr. Nadel is not seeking to set aside the February 9, 2009, Preliminary Injunction. On the contrary, he affirms his willingness to accept responsibility by assisting the Receiver in the recovery of assets for the benefit of investors. In the present civil case he invokes the equity jurisdiction of this Court and respectfully seeks a modification of the asset freeze to permit him to compensate attorneys at Cohen, Jayson & Foster, P.A. for reasonable attorney fees to defend himself, including to respond to the SEC's complaint.

The Court froze Mr. Nadel' assets to preserve funds for "disgorgement" at the conclusion of this case. Disgorgement is an equitable remedy. *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 n. 9 (11th Cir. 2005). It is intended not to compensate victims, but to force a defendant to account for all profits reaped through securities law violations, and to transfer such property to the court, even if it exceeds actual damages to victims. *SEC v. Tome*, 833 F.2d 1086,1096 (2d Cir. 1987); *SEC v. Commonwealth Chem. Sec., Inc.*, 547 F.2d 90, 102 (2d Cir. 1978) (Friendly, J.). The emphasis on public protection rather than compensatory relief illustrates the equitable nature of the remedy. *SEC v. Petrofunds, Inc.*, 420 F.Supp. 958, 960 (S.D.N.Y. 1976) (Weinfeld, J.) Upon awarding disgorgement the district court may exercise its discretion in deciding to direct the funds to the United States Treasury, or to victims. *SEC v. Fischbach Corp.*, 133 F.3d 170, 175-76 (2d Cir. 1997). Although it is true that in a disgorgement case the property to be returned in not limited to that which was obtained through wrongdoing, the SEC must nevertheless prove that the "disgorgement figure reasonably approximates the amount of unjust enrichment." This has not been done. Moreover, "[a]s a corollary to this rule, the district court may not disgorge profits obtained without the aid of any wrongdoing." *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999).

Of course, if the district court has authority temporarily to freeze personal assets, it may exercise the "corollary authority to release frozen assets, or lower the amount frozen." *SEC v.*

*Duclaud Gonzalez de Castilla*, 170 F.Supp. 2d 427 (S.D.N.Y. 2001). The court may be called upon to weigh "the disadvantages and possible deleterious effect of a freeze... against the considerations indicating the need for such relief." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082,1105 (2d Cir. 1972).

Because allowing payment of attorney's fees from a portion of frozen assets addresses the equitable discretion of the court, the applicable case law has been "anything but consistent." *SEC v. Lauer*, 445 F.Supp. 2d 1362, 1365-66 (S.D.Fla. 2006), quoting *SEC v. Dowdell*, 175 F.Supp. 2d 850, 855 (W.D.Va. 2001). In *Lauer*, where an application for attorney fees was denied, the court stressed that defendant was not being prosecuted criminally and therefore did not stand to be deprived of his physical liberty. For that reason he had no Sixth Amendment right to counsel, as does Mr. Nadel. 175 F.Supp. 2d at 1368-69. Even more important, the district court noted that Mr. Lauer had previously been granted a modification of his asset freeze, and the Receiver had been ordered to release $10,000 per month for expenses, expressly including attorney's fees. However, Lauer had rejected this modification, and asked that it be withdrawn, while at the same time acknowledging that he had available to him approximately $25,000 a month from "other sources" outside the frozen assets. 445 F.Supp. 2d at 1364. The district court noted that Mr. Lauer "was given the chance to have counsel to represent him but he rejected the deal." The court also found Lauer in contempt of court, because he "failed to disclose numerous assets and diverted assets from the freeze in violation of the very same order of which he now seeks an equitable modification for his own benefit." The court denied Lauer's equitable application for attorney fees explicitly because his "unclean hands have closed the door....". *Id.* at 1366-67.

In contrast, Mr. Nadel's hands are clean insofar as all dealings with the SEC and the Receiver are concerned. He has never misrepresented anything to this Court. As a matter of due

process he is entitled to a hearing to identify untainted assets in aid of his Sixth Amendment rights. As a matter of equity, and notwithstanding the alleged source of any asset, the Court has discretion, which it should exercise to set aside a reasonable attorney fee in connection with Mr. Nadel's civil and criminal defense.

## **LOCAL RULE 3.01(G) CERTIFICATION OF COMPLAINCE**

In accordance with Local Rule 3.01(g), the undersigned has conferred with Scott Masel, Senior Trial Counsel, Securities and Exchange Commission, and Mr. Masel has indicated to the undersigned that the SEC opposes this motion.

Respectfully submitted,

_____
BARRY A. COHEN, ESQ.
Florida Bar No.: 0096478
bcohen@tampalawfirm.com
TODD A. FOSTER, ESQ.
Florida Bar No.: 0325198
tfoster@tampalawfirm.com
MICHAEL L. RUBINSTEIN, ESQ
Florida Bar No.: 0032143
mrubinstein@tampalawfirm.com
COHEN, JAYSON & FOSTER, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2009, I furnished a true and correct copy of the foregoing via US Mail to the Receiver, **Burton W. Wiand, Esquire**, Fowler White, 501 E. Kennedy Boulevard, Suite 1700, Tampa, Florida 33602; and I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send an electronic notice to **Scott Masel**, Senior Trial Counsel, Securities and Exchange Commission.

BARRY A. COHEN, ESQ.
Florida Bar No.: 0096478
bcohen@tampalawfirm.com
TODD A. FOSTER, ESQ.
Florida Bar No.: 0325198
tfoster@tampalawfirm.com
MICHAEL L. RUBINSTEIN, ESQ
Florida Bar No.: 0032143
mrubinstein@tampalawfirm.com
COHEN, JAYSON & FOSTER, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921