UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                   Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

      Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

      Relief Defendants.
_____/

**RECEIVER'S FOURTH UNOPPOSED MOTION TO EXPAND THE SCOPE OF
RECEIVERSHIP AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to 28 U.S.C. § 754, Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 3.01, Burton W. Wiand, as Receiver, moves the Court to expand the scope of the receivership in this case to include Lime Avenue Enterprises, LLC ("Lime"), and A Victorian Garden Florist, LLC (d/b/a Mr. Florist A Victorian Garden) ("Victorian Garden"). The Receiver's investigation has revealed both Lime and Victorian Garden were funded with

ill-gotten gains. As explained below, Lime and Victorian Garden should be placed in receivership in order to preserve their assets and to bring them under the Receiver's control.

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent the defendants from further defrauding investors of hedge funds managed by them. That same day, the Court entered an order appointing Burton W. Wiand as Receiver of all the assets, properties, books, and records and all other items held in the name of Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). (*See generally* Order Appointing Receiver (Doc. 8).)

The Court subsequently granted three motions to expand the scope of the receivership and appointed the Receiver as receiver over the following:

- Venice Jet Center, LLC, and Tradewind, LLC (Order, Jan. 27, 2009 (Doc. 17))
- Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; and the Laurel Mountain Preserve Homeowners Association, Inc. (Order, Feb. 11, 2009 (Doc. 44))
- The Guy-Nadel Foundation, Inc. (Order, Mar. 9, 2009 (Doc. 68))

All of the entities and the trust in receivership are hereinafter referred to collectively as the "Receivership Entities."

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver at 1-2.)

The Commission concluded that Defendant Arthur Nadel ("Nadel") used Scoop Capital; Scoop Management; Valhalla Management, Inc.; and Viking Management, LLC to defraud investors of the hedge funds those companies managed, Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; and Viking Fund, LLC (collectively, the "Hedge Funds"). (*See* Compl. ¶¶ 5-7 (Doc. 1).) The Commission contends the defendants violated federal securities laws from at least January 2008 forward by "massively" overstating investment returns and the value of fund assets to investors and providing false account statements to investors. (*Id.* ¶¶ 3, 36.) The Commission also contends that Nadel misappropriated investor funds by transferring $1.25 million from Viking IRA Fund and Valhalla Investment Partners to secret bank accounts. (*Id.* ¶ 5.) The Court found the Commission demonstrated a *prima facie* case that the defendants committed multiple violations of federal securities laws. (Order Appointing Receiver at 2.)

During the course of his investigation, the Receiver has uncovered evidence that the defendants' violations of federal securities laws began no later than 2003. (Receiver's Decl. in Support of the Mot. to Expand the Scope of Receivership ¶¶ 10-12 (Doc. 16) (the "Receiver's January Declaration").) For each year from 2003 through 2007 (and, as shown

by the Commission, in 2008), Nadel caused Receivership Entities to grossly overstate the value of the Hedge Funds and to report to investors overstated values and other false performance indicators for those funds. (*Id*.) As detailed in the Receiver's January Declaration (¶ 11), following are the actual values of the Hedge Funds and the purported year-end values represented to investors from 2003 through 2007:

|  | Value as of 12/31/03 ($) | Value as of 12/31/04 ($) | Value as of 12/31/05 ($) | Value as of 12/31/06 ($) | Value as of 12/31/07 ($) |
|---|---|---|---|---|---|
| **Actual Value** | 80,820,378.06 | 143,073,367.23 | 132,731,986.70 | 63,715,094.39 | 18,042,860.67 |
| **Value Represented To Investors** | 128,953,973.27 | 216,868,604.46 | 274,387,098.31 | 282,379,592.45 | 313,960,110.28 |

The Receiver also uncovered evidence that Scoop Capital and Scoop Management received substantial amounts of money from the Hedge Funds in the form of management, profit incentive, and/or advisory fees. (*See* Receiver's Decl. in Support of the 2d Unopposed Mot. to Expand the Scope of Receivership ("Receiver's February 10 Decl.") ¶ 9 (Doc. 37).) In all likelihood, a significant amount of the proceeds of Nadel's fraud made its way into other accounts controlled by him and/or his wife, Marguerite "Peg" Nadel (including at least $14,966,000.00 between 2003 and 2009). (*See id.* ¶ 12.) During the course of his investigation, the Receiver also learned that other businesses, a trust, and a foundation were funded with proceeds of Nadel's fraudulent scheme. (*See, e.g.*, *id.* ¶¶ 10-14; *see also* Receiver's Decl. in Support of the 3rd Unopposed Mot. to Expand the Scope of Receivership ("Receiver's March 6 Decl.").)

The information gathered during the Receiver's investigation also shows that money derived from Nadel's scheme was used to purchase and/or fund other entities, including Lime and Victorian Garden (*See* Receiver's Decl. in Support of the 4th Unopposed Motion to

Expand the Scope of Receivership ("Receiver's Declaration") ¶¶ 16-29, being filed contemporaneously with this Motion.)

**Lime Avenue Enterprises, LLC, and A Victorian Garden Florist, LLC**

As detailed in the Receiver's Declaration, Lime was formed in August 2006 for "any and all lawful business." (Receiver's Decl. ¶ 17.) Initially, Mrs. Nadel was appointed Lime's manager, but Nadel was later added as a managing member of Lime. (*Id*. ¶ 18.) According to Lime's 2007 tax return, which was prepared in the Fall of 2008, Scoop Capital was the managing member of Lime, holding a 100% share of Lime's profits, losses, and capital. (*Id*.) Lime's principal address is the Scoop Capital office. (*Id*.)

One of Lime's assets is a building, which was purchased in August 2006, that houses a flower shop. (*Id*. ¶¶ 19-21) The flower shop is owned by Victorian Garden, which is a Florida limited liability company formed in April 2005, that is controlled by Mrs. Nadel and was funded in whole or in part with proceeds of Nadel's scheme. (*Id*. ¶ 21.) Victorian Garden's principal address is Lime's building, and Mrs. Nadel is Victorian Garden's registered agent and managing member. (*Id*. ¶ 22.)

The Receiver's investigation has revealed that Lime and Victorian Garden were purchased and/or funded with proceeds of Nadel's scheme. (*Id*. ¶ 24.) Specifically, between February 2006 and December 2008, Nadel, his wife, and/or Scoop Management have made at least twenty-three (23) transfers of money directly to or for the benefit of Lime and/or Victorian Garden from their joint financial accounts, totaling $777,109.62. (*Id*. ¶¶ 26-28.) At all times during the existence of Lime and Victorian Garden and the Nadels' involvement

with the florist located in the Lime building, Nadel was perpetrating his scheme, from which essentially all of the Nadels' income was derived. (*Id.* ¶ 29.)

In sum, Nadel had at least partial control of Lime; his wife had at least partial control of Lime and Victorian Garden; and both Lime and Victorian Garden were fund with proceeds of Nadel's investment scheme through transfers of money from his and his wife's personal accounts. (*Id.* ¶¶ 17-29.)

## **MEMORANDUM OF LAW**

The Court's power to supervise an equity receivership and determine the appropriate action to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Id.* at 1566 (citing *SEC v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 372 (5th Cir. 1982)).

Such discretion may be properly exercised in the form of expansion of a receivership where a party seeking expansion establishes (1) a commingling of funds, (2) intertwined business operations, (3) utilization of an identical business address or identical offices and addresses, (4) or co-identity of officers, directors, or principals. *See SEC v. Elmas Trading Corp.,* 620 F. Supp. 231, 233 (D. Nev. 1985), *aff'd*, 805 F.2d 1039 (9th Cir. 1986); *see also Elliott,* 953 F.2d at 1565, n.1 (holding that court may extend equitable receivership over related entities).

In determining whether or not to extend a receivership to include related entities, a federal court has broad discretion to disregard corporate separateness and form and to give

6

effect to the substance of the enterprise. *Elmas Trading Corp.,* 620 F. Supp. at 233. A corporate entity may be disregarded under federal law "in the interests of public convenience, fairness, and equity . . . ." *Id.* at 234; *see In re Bowen Transp., Inc.*, 551 F.2d 171, 179 (7th Cir. 1977) (stating that "[t]he separate corporateness of affiliated corporations owned by the same parent may be equally disregarded under the proper circumstances."). The key goal behind a proposed receivership expansion should be "to ensure that all available assets are brought within the receivership and may properly be distributed to creditors." *Id.* at 233.

Given the Court's wide discretion and authority, the receivership estate in this case should be expanded to encompass Lime and Victorian Garden. As discussed above and in the Receiver's Declaration, the evidence uncovered by the Receiver's investigation shows that Lime and Victorian Garden were funded with proceeds of Nadel's investment scheme through transfers from the Nadels' personal financial accounts during the same time when Nadel was perpetrating his scheme, from which essentially all of the Nadels' income was derived. (Feb. 10 Decl. ¶¶ 16-23.) Thus, the assets (including the building) transferred to Lime and to Victorian Garden either were ill-gotten gains or were funded with ill-gotten gains that resulted from Nadel's fraudulent scheme.

In short, the information gathered thus far shows (i) that Receivership Entities' money – which was raised from investors – was diverted by Nadel into Lime and Victorian Garden, and (ii) that Nadel and his wife controlled Lime and Victorian Garden.

This Court's Order Appointing Receiver already requires the Receiver to "marshal and safeguard all of the assets of the Receivership Entities and take whatever actions are necessary for the protection of the investors." (Doc. 8). Marshalling and safeguarding the

property and assets of Lime and Victorian Garden are necessary to protect investors and to preserve the assets' value. Notably, this Court's Order Appointing Receiver contemplates the expansion of the receivership. The Order expressly states:

> In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, *extending this receivership over any person or entity holding such investor funds*.

(Doc. 8 ¶ 24 (emphasis added).)

Because (1) the Court has the authority to expand the receivership to include Lime and Victorian Garden; (2) the evidence shows that Nadel misappropriated funds from Receivership Entities to Lime and Victorian Garden; and (3) expansion of the receivership is necessary for the protection of the investors and the receivership estate, the Receiver respectfully requests that this Court modify the Order Appointing Receiver or otherwise expand the Receivership to include Lime Avenue Enterprises, LLC, and A Victorian Garden Florist, LLC.

## **LOCAL RULE 3.01(G) CERTIFICATION OF COMPLIANCE**

The undersigned counsel for the receiver has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

>Arthur G. Nadel
>Register No. 50690-018
>MCC New York
>Metropolitan Correctional Center
>150 Park Row
>New York, NY 10007

>s/ Gianluca Morello
>Carl R. Nelson, FBN 0280186
>cnelson@fowlerwhite.com
>Gianluca Morello, FBN 034997
>gianluca.morello@fowlerwhite.com
>Maya M. Lockwood, FBN 0175481
>mlockwood@fowlerwhite.com
>Ashley Bruce Trehan, FBN 0043411
>ashley.trehan@fowlerwhite.com
>FOWLER WHITE BOGGS P.A.
>P.O. Box 1438
>Tampa, FL 33601
>T: (813) 228-7411
>F: (813) 229-8313
>Attorneys for the Receiver, Burton W. Wiand

40619037v1