UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

                                CASE NO. 8:09-cv-87-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

        Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT

        Relief Defendants.
_____/

## PLAINTIFF'S RESPONSE OPPOSING NON-PARTY INVESTORS' MOTION TO INTERVENE

### I. Introduction

Twenty-two investors defrauded by Nadel, Scoop Capital, LLC, and Scoop Management, Inc. have filed a Motion to Intervene and Opposition to Motion to Pay Attorney Fees Filed by Arthur Nadel and Memorandum in Support of Motion to Intervene and Opposition to Motion to Pay Attorney Fees ("Motion to Intervene"), asking to participate in every aspect of this case. Because these investors (the "Movants") have not established the necessary legal grounds, the Court should deny their Motion to Intervene. The Commission sympathizes with victims of the Defendants' securities fraud, but allowing the Movants to intervene would complicate and delay

this litigation, while any interests the Movants have are adequately protected by the Court-appointed Receiver. Other than their status as defrauded investors, the Movants provide little legal or factual basis for seeking intervention. Allowing them to intervene and litigate in pursuit of their own personal interests would likely interfere with the Commission's case and cost the Receivership time and money by injecting collateral issues into this litigation.

## II.  Factual and Procedural Background

The Commission filed suit on January 21, 2009 alleging the Defendants conducted a large-scale hedge fund fraud by greatly misleading investors about the value and profitability of accounts with funds the Defendants controlled, advised, and managed. Commission's Complaint (D.E. 1); Commission's Emergency Motion and Memorandum of Law in Support of Temporary Restraining Order and Other Emergency Relief (D.E. 2). Through a motion and consents, the Commission sought and the Court granted, among other things, emergency relief against the Defendants and Relief defendants freezing their assets, prohibiting violations of the anti-fraud provisions of the federal securities laws, and appointing a Receiver over the defendant and relief defendant entities  (D.E. 2-3, 6, 7-9). The Court, upon the Receiver's motions, later expanded the Receivership to include multiple other entities and assets and dispose of property to benefit the Receivership. (D.E. 17, 44, 52, 67, 68, 81).[1]  Nadel meanwhile consented to a preliminary injunction essentially extending the mandates of the emergency relief through the final resolution of this case.  (D.E. 24, 29).

---

[1] *See also* Receiver's Declaration in Support of the Securities and Exchange Commission's Opposition to the Amended Motion for Payment of Reasonable Attorneys' Fees, which the Commission submitted as its Exhibit 1 in opposing Nadel's amended fees motion (D.E. 84), and which describes the Receiver's extensive efforts, findings, and results so far.

### III. Memorandum of Law

#### A. Exchange Act Section 21(g) Bars Intervention

Section 21(g) of the Exchange Act provides in pertinent part that:

> . . . no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

Although the language of the statute does not mention intervention, some federal courts have held that, nonetheless, the statute operates as an "impenetrable wall" to a third party intervening in a Commission enforcement action absent the Commission's consent. *SEC v. Wozniak*, No. 92 C 4691, 1993 WL 34702 at *1 (N.D. Ill. Feb. 8, 1993) (denying motion to intervene by investor who asserted he was a victim of the fraud alleged in the Commission's complaint because the Commission would not consent). The United States Supreme Court has also acknowledged Section 21(g)'s barrier to those trying to insert private claims into Commission enforcement actions. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n. 17 (1979) (allowing private plaintiff to employ offensive collateral estoppel without having joined prior Commission lawsuit involving similar facts, because pursuant to Section 21(g) "the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired") (citing *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2nd Cir. 1972)).

Other courts have followed suit. For example, in *SEC v. Homa*, 2000 WL 1468726, (N.D. Ill Sept. 29, 2000), *aff'd* 17 Fed. Appx. 441 (7th Cir. 2001) (unpublished), the district court denied a motion to intervene by one of the defendant's creditors. The court found that "the language of Section 21(g) is plain and unambiguous," and that language "clearly bars [the creditor] joining the SEC's enforcement action as a party." *Id.* at *2. *See also SEC v. Cogley*, No. 98CV802, 2001 WL 1842476 at *3-*4 (S.D. Ohio March 21, 2001) (denying bankruptcy

trustee's motion to intervene in enforcement action and finding that "after reviewing the legislative history, and reviewing other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention"). Section 21(g)'s prohibition is broad enough to prohibit defendants from bringing their own claims in Commission actions, even when they arise from the same or similar facts. *SEC v. Thrasher*, No. 92 CIV 6987 (JFK), 1995 WL 456402 at *3 (S.D.N.Y Aug. 2, 1995) (Section 21(g) bars defendant's third-party claims); *SEC v. Egan*, 821 F.Supp. 1274, 1275 (N.D. Ill. 1274) (same).

Even those courts that have held Section 21(g) did not automatically bar a third party from intervening have expressed skepticism about allowing wholesale intervention in Commission enforcement actions. *See, e.g., SEC v. TLC Investments and Trade Co.*, 147 F.Supp.2d 1031, 1040 (C.D. Cal. 2001) (citing "sound policy reasons why, if consolidation is prohibited, intervention also should be" and explaining that "[w]ithout a bar on intervention, § 21(g) could easily be eviscerated: while a private action could not be consolidated with an SEC action, those proceeding in a private action could merely end that action and instead intervene in the SEC's action"); *SEC v. Credit Bancorp Ltd.*, 194 F.R.D. 457, 468 (S.D.N.Y. 2000) (allowing permissive intervention on the unique facts of the case but noting that "intervention has been traditionally disfavored, given courts' hesitation to allow scores of investors and other interested persons from becoming full-fledge parties to governmental enforcement actions"). Here, the Movants seek to intertwine their private lawsuit with a Commission enforcement action in which the Court has already appointed a Receiver to protect their interests.

Courts hesitate to mash together these different types of litigation because Congress has charged the Commission with the statutory responsibility of enforcing the federal securities laws. *See, e.g., Official Committee of Unsecured Creditors of Worldcom, Inc., v. SEC*, 467 F.3d 73, 82

(2nd Cir. 2006). To that end, Congress has afforded the Commission considerable discretion in how to carry out that mandate. The courts have also frequently deferred to the Commission's experience and expertise in determining the appropriate remedies to seek in enforcement actions. *Id.; SEC v. Bear Stearns & Co.*, 2003 WL 22000340 at *3 (S.D.N.Y. Aug. 25, 2003) ("the SEC in its role as *parens patriae*, is presumed to represent the interests of the investing public aggressively and adequately").

The Commission sought appointment of a Receiver to provide investors and creditors with an officer who can marshal assets quickly, fairly, and systematically for all their benefit. Allowing the Movants to intervene and pursue their personal interests would run counter to the very purpose and approach of the Receivership. Granting the Movants' intervention would likely encourage other investors to seek the same, and the Receiver and the Commission might soon be entangled in multiple collateral disputes as each group of intervening investors and their respective lawyers tried to impose their own preferences on this case. The Receiver's duty is to act fairly on behalf of all investors or creditors. *See, e.g., Credit Bancorp*, 194 F.R.D. at 464 ("[j]ust as the appointment of a receiver is authorized by the broad equitable powers of the Court, the argument goes, any distribution of assets by such a receiver is to be done equitably and fairly-with similarly situated investors or customers treated similarly"). However, his job will become harder and more expensive if he must consult or litigate against each individual investor with the resources to intervene and attempt to impose his or her wishes on these proceedings.

The Movants' situation is much like the investors in *Wozniak, Homa,* and *Cogley*, who sought to intervene generally as defrauded investors. As discussed below, the Movants do not have a direct interest in whether the Commission seeks or the Court imposes disgorgement or a civil penalty against the defendants, as the primary purpose of disgorgement is to deprive

securities law violators of their ill-gotten gains, while the purpose of a civil penalty is to punish and deter violators. *See SEC v. Kane*, 2003 WL 1741293 at *2 (S.D.N.Y. April 1, 2003)("'By enacting the Penalty Act, Congress sought to achieve the dual goals of punishment of the individual violator and deterrence of future violations.'") quoting *SEC v. Moran*, 944 F.Supp. 286, 296 (S.D.N.Y.1996) (citations omitted).

Although the Commission may ultimately move the Court to place money paid towards disgorgement or civil penalties with the Receiver for distribution to investors, and has already opposed Nadel's attempt to invade the asset freeze for his own purposes, neither form of relief is designed to compensate injured investors. Similarly, the Movants have no definable interest in the size of the penalty the Court imposes in this case, as the decisions of how civil penalties are distributed and whether to establish a Fair Fund (to permit the Receiver to distribute such relief to investors) are purely discretionary with the Commission and the Court.

The Movants' interests and potential claims are appropriately protected and heard through submitting a claim to the Receiver. "If, as a number of intervenors assert, their primary interests lie in safeguarding their rights to assets presently held by the Receiver, then summary proceedings would presumably be adequate to the task at hand. Such proceedings are relatively common-place where an equity receiver has been appointed to marshal assets, and the handling or distribution of those assets is a matter of dispute" Credit *Bancorp*, 194 F.R.D. at 468. *See also*, *CFTC v. Chilcott Portfolio Management, Inc.*, 725 F.2d 584, 586 (10th Cir.1984) (explaining preference for claimants to use process established through court's equity powers instead of pursuing numerous actions as parties).

### B. The Movants Are Not Entitled to Intervention under Rule 24

Even if Section 21(g) did not bar the Movants from intervening in this action, the Court

should not allow them to intervene because they fail to satisfy the requirements for intervention under Fed.R.Civ.P. 24. The Movants' motion did not speak to Rule 24's standards, so we address them below.

### 1. Intervention as of Right

Rule 24(a)(2) permits intervention as of right when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2).

An applicant seeking to intervene as of right under this rule must demonstrate: (1) its application is timely; (2) it has an interest relating to the property or transaction that is the subject of the action; (3) it is so situated that disposition of the action, as a practical matter, may impair or impede its ability to protect that interest; and (4) the parties to the action inadequately represent its interest. *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302-03 (11th Cir. 2008). A failure to prove even one of these elements requires a court to deny a motion to intervene. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985).

The Movants fail to establish the second, third, and fourth requirements for intervention as of right. They do not have a legally protectable interest relating to the property or transaction that is the subject of the Commission's securities enforcement action, and disposition of the Commission's case will not impede their ability to protect their interests. Finally, the Receiver adequately represents their interests in whatever assets they may ultimately seek to claim.

The Movants have only an *economic* interest in the subject matter of the Commission's lawsuit, and this does not support intervention as of right. *Mt. Hawley Ins. Co. v. Sandy Lake*

*Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). In *Mt. Hawley*, the Eleventh Circuit held that a personal representative could not intervene in litigation between an insurer and its insured, because the personal representative had no legally protectable interest in the insurance policy at issue there – only an economic interest in having more money for recovery in his wrongful death suit against the insured. *Id*. Such an economic interest does not support intervention. *Id.* (citing *United States v. South Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991)). The Movants have a similar economic interest in what happens within the Commission's enforcement case and the Receivership, but they have no authority to affect or choose the claims or remedies the Commission or the Receiver seeks. At most the Movants may understandably hope the Commission's case and the Receiver's actions result in additional money going to the Receivership, and the Receiver ultimately approving their claim. This economic interest is too speculative to support intervention under Rule 24(a)(2). *Id*.

Since the Movants cannot show the required interest for intervening, they also cannot establish that disposition of this action, as a practical matter, may impair or impede their ability to protect that interest. *NBD Bank*, 159 F.R.D. at 507 ("[b]ecause they fail to satisfy the second prong of the test under Rule 24(a)(2), petitioners necessarily fail to meet the third prong") (citing *Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir.1982) ("[b]ecause applicants fail to assert an interest relating to the property or transaction which is the subject of the [underlying] action, . . . it follows that applicants also have no direct legally protectable interest that could be impaired or impeded.").

The Movants also do not meet the fourth requirement for Rule 24(a)(2) intervention, because the Receiver will adequately protect their economic interests apart from the Commission's case. *SEC v. Homa*, 2000 WL 1468726 at *2 (intervention denied to claimant of

aircraft and airport facilities because claimant could seek relief from Receiver with court review); *SEC v. TLC Investments*, 147 F.Supp.2d at 1041-42 (intervention denied because Receiver shares similar goals with intervenors, adequately protecting their interests and intervenors will receive due process through the Receiver's claims process) (citing, among other cases, *SEC v. Elliott*, 953 F.2d 1560, 1566-67 (11th Cir. 1992)). "Although not all investors and creditors share the same interests, it is in all their interests to maximize the value of the assets under the receivership. This is what the Receivership is charged with doing." *SEC v. Byers*, No. 08 Civ. 7104 (DC), 2008 WL 5102017 at *1 (Nov. 25, 2008).

In *Byers,* the entity seeking intervention claimed to have an interest in valuable property and claims that could be "'lost or otherwise jeopardized'" in the Commission's case. *Id*. at *1. Noting the many victims, the large amount of money involved (at least $250 million), and the number of creditors and entities, the *Byers* court observed, "it would not be efficient or effective to permit individual creditors to intervene as parties." *Id*. (citing *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir.1972); *Credit Bancorp*, 194 F.R.D. at 467; *SEC v. Canadian Javelin, Ltd.*, 64 F.R.D. 648, 650 (S.D.N.Y.1974) ("[I]ntervention as of right by victims of alleged securities frauds in an SEC enforcement action is inappropriate").

The Movants' interests are not harmed by allowing the Receiver to fulfill his duties and requiring them to make a Receivership claim. One of the Receiver's primary goals is to maximize the number and value of assets recovered, thereby benefitting the Movants' ability to recover through the Receivership process. The Movants fail to the four elements for intervention as of right, and the Court therefore must reject their motion under Rule 24(a)(2).

### 2. Permissive Intervention

Where there is no intervention as of right, a district court may nonetheless exercise its

discretion to allow a third party to intervene if (1) an applicant's claim or defense and the main action have a question of law or fact in common, and (2) the proposed intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Fed.R.Civ.P. 24(b); *Fox*, 519 F.3d at 1304-05.

The Movants are victims of the same securities fraud underlying the Commission's suit, however the Movants cannot bring the same claim or seek the same remedies as the Commission, and their intervention here would delay adjudication of all issues in this case. Permissive intervention is therefore also inappropriate. The Movants do not make clear what their legal claims might be against the Defendants, but even assuming they pursue a private action for securities fraud, that litigation would differ significantly from the Commission's civil enforcement action. The Commission, unlike private securities litigants, does not have to allege and prove investor reliance or harm.[2] Because of the Commission's unique role as a litigant, Courts have been reluctant to let investors intervene to affect Commission cases:

---

[2] *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 751, n. 14 (1975) (noting the Court's holding in *SEC v. National Securities, Inc.*, 393 U.S. 453 (1969), "established that the purchaser-seller rule imposes no limitation on the standing of the SEC to bring actions for injunctive relief under s 10(b) and Rule 10b-5"); *SEC v. National Sec., Inc.*, 393 U.S. 453, 468, n. 9 (1969) (when the SEC sues "there are no 'standing' problems lurking in the case" since "purchase and sale" simply trigger the anti-fraud statutes, avoiding "the complications which may arise in determining who, if anyone, may bring private actions under [sec.] 10(b) and Rule 10b-5."); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963) ("Congress, in empowering the courts to enjoin any practice which operates 'as a fraud or deceit' upon a client, did not intend to require proof of intent to injure and actual injury to the client" and Investment Advisers Act of 1940 and other securities legislation to be liberally construed in a Commission action); *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363-64 (9th Cir. 1993) (distinguishing SEC anti-fraud actions from private actions and explaining why SEC not required to allege reliance and injury); *SEC v. Rind*, 991 F.2d 1486, 1490 (9th Cir.1993) ("a district court may grant the Commission's request for disgorgement even where no injured investors can be identified"); *SEC v. Blavin*, 760 F.2d 706 (6th Cir. 1985); *SEC v. North American Res. & Devel., Corp.*, 424 F.2d 63 (2d Cir. 1970); *SEC v. Prater*, 296 F.Supp.2d 210, 215 (D.Conn. 2003) ("securities laws apply differently to the SEC than they do to a private plaintiff . . . . [T]he SEC is not required to allege or prove that investors relied on Defendants' misrepresentations . . . or that specific investors suffered actual harm . . . .") (citations omitted); *SEC v. Chemical Trust*, U.S., 2000 WL 33231600 at *9 (S.D. Fla. 2000); *SEC v. Kenton Capital, Ltd.*, 69 F.Supp.2d 1, 10 n.6 (D.D.C. 1998) (reliance is an element of a private cause of action under securities laws, but not for an SEC action).

> Concerns about undue delay and complication resulting from permissive intervention are acute where the Government, and particularly the SEC, is a party to the underlying action . . . . The reason is that the SEC, in its role as *parens patriae,* is presumed to represent the interests of the investing public aggressively and adequately. Reflexive intervention by the public in SEC actions would undermine both the SEC's ability to resolve cases by consent decree and the efficient management of those cases by courts.

*Bear, Stearns & Co. Inc.* 2003 WL 22000340 at *3 (S.D.N.Y 2003) (citations omitted). *See also Everest Management Corp.*, 475 F.2d at 1239-1240 (2nd Cir. 1970) (explaining how intervention of private plaintiff could complicate Commission's efforts to bring and resolve enforcement actions).

In this case, the Movants have no basis for intervening in a Commission case. With the Receiver's diligence leading to additional assets and entities coming under his control, allowing the Movants to intervene will likely encourage similar maneuvers by other creditors or investors, leading to additional unnecessary and premature collateral litigation before the Receiver can even begin a claims process. In light of the due process provided by traditional Receivership claims procedures[3], and the fact that the Movants have not asserted any particular legal claims, permitting intervention now will likely open the door to additional litigation and interveners as the Movants use the forum of the Commission's action to inject their individual positions into the case. Such difficulties are completely unnecessary, since the Receiver is empowered to protect investors' interests and has proven quite capable of doing so. The Court should deny the Movants' request to intervene pursuant to Rule 24(b) as well.

The Commission appreciates the concerns of the Movants, as well as those of other investors who have not been able to retain private counsel. However allowing all defrauded investors to intervene will benefit no one, and can only complicate litigation for the Receiver and

---

[3] *See, e.g., SEC v. Elliott* 953 F.2d at 1566-67 (11th Cir. 1992).

the Commission. For the foregoing reasons, the Commission respectfully opposes the Movants' Motion to Intervene, and asks this Court to deny it.

March 19, 2009                          Respectfully submitted,

                                       By:     s/ Scott A. Masel
                                                   Scott A. Masel
                                                   Senior Trial Counsel
                                                   Florida Bar No. 0007110
                                                   Direct Dial: (305) 982-6398
                                                   E-mail: masels@sec.gov
                                                   *Lead and Trial Counsel*

                                                   Attorney for Plaintiff
                                                   **SECURITIES AND EXCHANGE**
                                                   **COMMISSION**
                                                   801 Brickell Avenue, Suite 1800
                                                   Miami, Florida 33131
                                                   Telephone: (305) 982-6300
                                                   Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Burton W. Wiand, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: bwiand@fowlerwhite.com
*Court-appointed Receiver for Corporate Defendants*
*and Relief Defendants*

Carl R. Nelson, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: cnelson@fowlerwhite.com
*Counsel for Receiver Burton W. Wiand*

Gianluca Morello, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: gianluca.morello@fowlerwhite.com
*Co-counsel for Receiver Burton W. Wiand*

Ashley Bruce Trehan, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 222-7411
Facsimile: (813) 229-8313
Email: atrehan@fowlerwhite.com
*Co-counsel for Receiver Burton W. Wiand*

Maya M. Lockwood, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 228-7411
Facsimile: (813) 229-8313
*Co-counsel for Receiver Burton W. Wiand*

Donald R. Kirk, Esq.
Fowler White Boggs, P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: (813) 228-7411
Facsimile: (813) 229-8313
*Co-counsel for Receiver Burton W. Wiand*

Barry A. Cohen, Esq.
E-mail: bcohen@tamplawfirm.com
Todd A Foster, Esq.
E-mail: tfoster@tampalawfirm.com
Michael L. Rubinstein, Esq.
E-mail:  mrubinstein@tampalawfirm.com
Cohen, Jayson & Foster, P.A.
201 E. Kennedy Boulevard, Suite 100
Tampa, Florida  33602
Telephone:  (813) 225-1655
Facsimile:  (813) 225-1921
*Counsel for Defendant Arthur Nadel*

                                                      s/ Scott A. Masel
                                                     Scott A. Masel, Esq.