UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                            Case No.: 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

    Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT
PARTNERS, L.P., VALHALLA
MANAGEMENT, INC., VICTORY
FUND, LTD, VIKING IRA FUND, LLC,
VIKING FUND LLC, AND VIKING
MANAGMENET, LLC,

    Relief Defendants.
_____/

## RESPONSE OF COHEN, JAYSON, AND FOSTER TO INTERVENOR'S MOTION TO INTERVENE AND IN OPPOSITION TO MOTION TO PAY ATTORNEY'S FEES

Comes Now, the law firm of Cohen, Jayson, and Foster, and files this Response to Intervenor's Motion to Intervene and In Opposition to Motion To Pay Attorney's fees (Doc. 82).

1. On March 10, 2009, the undersigned law firm, on behalf of Arthur Nadel, filed a motion to modify the asset freeze imposed by this Court so that reasonable attorney's fees could be paid for the legal services this firm has rendered, and continues to render in Arthur Nadel's criminal and civil cases. (Doc. 69)

Dockets.Justia.co

2. On March 17, Intervenors filed a motion seeking to have this Court deny the law firm's motion for fees because, 1) "the fees counsel will receive from the mortgage and note are in excess of $130,000, which is much more than the fees they request" (paragraph 13); 2) a violation of the asset freeze has been committed which under the clean hands doctrine prevents any award of fees (memorandum of law at p.4); and 3) Nadel has failed to demonstrate an independent source for the funds sought to be used for legal fees (memorandum at p. 4). Intervenor's motion attaches as Exhibit 1 a publicly recorded Assignment of Note and Mortgage signed by Marguerite Nadel for the benefit of Cohen, Jayson and Foster, dated February 9, 2009.

3. As this Court and Intervenor are aware, Arthur Nadel has been incarcerated since January 27, 2009, the day he turned himself in to authorities. While initially housed in Pinellas County, Nadel was removed from this district on February 5, 2009, and is currently incarcerated in the Metropolitan Correctional Center in New York City. Discussions of monies available to pay for Mr. Nadel's representation have occurred for the most part with Marguerite Nadel, Arthur's wife.

4. Intervenor at different points in the motion asserts that Mrs. Nadel "is subject to the Freeze Order" (paragraph 6); that Mrs. Nadel "has acted in concert with Arthur Nadel and subject to the freeze order" (page 5 of memorandum); and "even if Mrs. Nadel is not subject to the freeze order, the expected payment . . . is in excess of $130,000 . . ." (memorandum at page 5).

5. To be clear, the note and mortgage attached to Intervenor's motion were never owned, individually or jointly, by Arthur Nadel. They were the property of Mrs. Nadel individually. Mrs Nadel is neither a defendant nor relief defendant in this action. Neither the mortgage nor note has been the subject of any action by the Receiver or the SEC, even though

their existence is of public record. Mrs. Nadel is simply not subject to the asset freeze in the same manner as her husband, the defendants, and the relief defendants.

6. In meetings with attorneys Barry Cohen and Todd Foster and CPA Elliott Buchman, whose affidavit is attached hereto, Mrs. Nadel, who is 70 years old, represented that she had assets of her own accumulated prior to her marriage to Mr. Nadel a few years ago. Mrs. Nadel stated that the mortgage and note she offered to transfer to the law firm represented far less than the amount of money she had earned or acquired independently of Arthur's conduct as alleged by the SEC. Although the assignment by Mrs. Nadel is dated February 9, 2009, discussions concerning the independent source of money for legal fees occurred many days before that. (It should also be noted that there were other assets of Arthur Nadel not yet seized at the time the Nadels were seeking representation that were never considered as a source of payment for legal fees.)

7. Ordinarily, when a mortgage or note is assigned, and one seeks to obtain funds from that assignment, steps are taken either to foreclose and evict the current tenant, or otherwise collect on any current and outstanding balances due. This was not done here. After looking further into this matter, the law firm determined that the property secured by Mrs. Nadel's mortgage, although purchased by her with independent funds, was acquired with a check from Scoop Capital. Without discounting Mrs. Nadel's representation that her independent funds exceeded this amount, so as not to give the appearance of an arguable violation of the freeze Order, the law firm elected not to attempt to collect any money, foreclose, sell, or otherwise act with respect to the mortgage or note. At Friday's hearing, counsel will prove independent sources of Mrs. Nadel's funds.

8. When counsel for Intervenors inquired whether we would oppose his motion to Intervene, we advised that we would not as the facts, whether argued by the SEC or the Intervenor, will be the same. The undersigned was hopeful that Intervenor and the SEC would use the hearing as an opportunity to discuss the potential for Mr. Nadel's cooperation with them. Mr. Nadel has already taken some steps in this direction, and it will be demonstrated how the continued involvement of counsel in this matter is in the best interests of the Receiver and investors. The law firm will also clarify how it perceives its role in this case, as well as in the criminal case pending in the Southern District of New York.

## MEMORANDUM OF LAW

Under the circumstances currently confronting this Court and Arthur Nadel, payment of attorneys fees from the Receivership is an appropriate exercise of this Court's discretion. While the SEC argues that the purpose of the asset freeze in this case was to facilitate disgorgement, "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *SEC v. Gonzalez de Castilla*, 170 F.Supp. 2d 427, 430 (S.D.N.Y., 2001). It is submitted that Arthur Nadel is in desperate need of counsel to respond to the cases against him. However, this is not inconsistent with Nadel's desire to assist the Receiver and investors, through counsel.

Given the complexities of this case in combination with the pending criminal matter, this Court's discretion should be exercised in favor of a limited modification of the freeze for reasonable attorney fees. See, *e.g., CFTC v. Noble Metals*, 67 F.3d 766, 775 (9th Cir. 1995) (although frozen assets fell "far short" of amount needed to compensate alleged victims, district court had discretion to approve attorneys fee application in light of fact that wrongdoing is not yet proved); *SEC v. Dowdell*, 175 F. Supp.2d 850, 855-56 (W.D. Va., 2001) (attorneys fee

application granted where court recognized that lawyers are essential to the presentation of issues in complex legal matters).

Without counsel, Nadel, who is 76 years old, in failing health and eyesight, and without access to the records he needs to review for preparation of his defense, (partly because he is in maximum security lock up in New York City) will be incapable of defending himself and complying with the Orders of this Court. The interplay between the civil and criminal cases also present a special circumstance, which heightens the complexity of the situation and Mr. Nadel's need for experienced counsel to remain involved.

Respectfully submitted,

_____
BARRY A. COHEN, ESQ.
Florida Bar No.: 0096478
bcohen@tampalawfirm.com
TODD A. FOSTER, ESQ.
Florida Bar No.: 0325198
tfoster@tampalawfirm.com
MICHAEL L. RUBINSTEIN, ESQ
Florida Bar No.: 0032143
mrubinstein@tampalawfirm.com
COHEN, JAYSON & FOSTER, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send an electronic notice to: **Morgan Bentley**, Counsel for Intervenors; **Carl R. Nelson, Esquire**, Counsel for the Receiver, **Burton W. Wiand, Esquire**; and **Scott Masel, Senior Trial Counsel**, Securities and Exchange Commission.

BARRY A. COHEN, ESQ.
Florida Bar No.: 0096478
bcohen@tampalawfirm.com
TODD A. FOSTER, ESQ.
Florida Bar No.: 0325198
tfoster@tampalawfirm.com
MICHAEL L. RUBINSTEIN, ESQ
Florida Bar No.: 0032143
mrubinstein@tampalawfirm.com
COHEN, JAYSON & FOSTER, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

 Plaintiff,

v.

Case No.: 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

 Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT
PARTNERS, L.P., VALHALLA
MANAGEMENT, INC., VICTORY
FUND, LTD, VIKING IRA FUND, LLC,
VIKING FUND LLC, AND VIKING
MANAGMENET, LLC,

 Relief Defendants.
_____/

## AFFIDAVIT OF ELLIOTT BUCHMAN IN SUPPORT OF COHEN, JAYSON & FOSTER'S AMENDED MOTION FOR PAYMENT OF REASONABLE ATTORNEY'S FEES

 I, ELLIOTT BUCHMAN, do hereby swear, affirm and attest to the following statements as true and accurate:

 1. I am a CPA working with the law firm of Cohen Jayson and Foster. I know that Arthur Nadel has sought the law firm's representation in his criminal and SEC matters. In connection with that, Mrs. Peg Nadel came to the law firm attempting to make financial arrangements for the firm to represent her husband.

 2. I recall attending a meeting with Barry Cohen, Todd Foster and Peg Nadel where we discussed the availability of any assets that would not be subject to forfeiture or the asset freeze, and therefore available for payment of legal fees for the defense of Arthur Nadel.

3. Mrs. Nadel informed attorneys Cohen and Foster and me that she had acquired the mortgage in question with her own funds accumulated from before her marriage to Arthur Nadel. Attorneys Cohen and Foster and I believe that based upon Mrs. Nadel's representation, this asset would not be subject to any restrictions of conveyance.

4. Subsequently, we learned that Mrs. Nadel had deposited her own independent funds into Scoop Capital, and that the check used to purchase the condominium was drawn on the Scoop Capital account. We decided, in light of the asset freeze, not to pursue this asset until we could obtain further clarification of the situation.

5. Although other potential sources of payment for legal fees were identified, these were rejected because we were unsure if they were subject to the freeze.

6. On March 18, 2009, attorneys Cohen and Foster and I spoke again with Mrs. Nadel about the assignment of the mortgage and note. She confirmed her earlier statement to us that she had acquired more than this amount of money independent of Arthur Nadel and used it to acquire that asset.

_____
Elliott Buchman

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

SWORN TO AND SUBSCRIBED BEFORE me on this 19th day of March, 2009, by Elliott Buchman, who [ ] is personally known to me, or [ ] has produced as identification his Driver's License, _____, and who did take an oath, and acknowledged before me that the information contained herein is true and correct to the best of his knowledge and belief.

_____
Notary Public, State of Florida
Printed Name

KEVIN K. KALWARY
Notary Public - State of Florida
My Commission Expires Mar 6, 2010
Commission # DD 625533
Bonded By National Notary Assn.