UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

                Defendants,                CASE NO.: 8:09-cv-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

                Relief Defendants.
_____/

**RECEIVER'S UNOPPOSED MOTION FOR POSSESSION OF AND TITLE TO THE REAL PROPERTY LOCATED AT 131 GARREN CREEK ROAD, FAIRVIEW, N.C.**

Pursuant to 28 U.S.C. § 754, Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 3.01, Burton W. Wiand, as Receiver, moves the Court for possession of and title to the real property located at 131 Garren Creek Road, Fairview, North Carolina 28730 ("the Property"), which is a secondary residence of the Nadels, located in the mountains of North Carolina. The Receiver's investigation has revealed that the purchase of the Property was

funded with ill-gotten gains. As explained below, title to and possession of the Property should be transferred to the Receiver to preserve it as an asset of the receivership estate.

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent the Defendants from further defrauding investors of hedge funds managed by them. That same day, the Court entered an Order appointing Burton W. Wiand as Receiver for Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). (*See generally* Order Appointing Receiver (Doc. 8).)

The Court subsequently granted four motions to expand the scope of the receivership and appointed the Receiver as receiver over the following:

- Venice Jet Center, LLC, and Tradewind, LLC (Order, Jan. 27, 2009 (Doc. 17));
- Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; and the Laurel Mountain Preserve Homeowners Association, Inc. (Order, Feb. 11, 2009 (Doc. 44));
- The Guy-Nadel Foundation, Inc. (Order, Mar. 9, 2009 (Doc. 68));
- Lime Avenue Enterprises, LLC, and A Victorian Garden Florist, LLC (Amended Order, March 17, 2009 (Doc. 81)).

All of the entities and the trust in receivership are hereinafter referred to collectively as the "Receivership Entities."

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver ¶¶ 1-2.)

The Commission concluded that Defendant Arthur Nadel ("Nadel") used Scoop Capital; Scoop Management; Valhalla Management, Inc.; and Viking Management, LLC to defraud investors of the hedge funds those companies managed, Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; and Viking Fund, LLC (collectively, the "Hedge Funds"). (*See* Compl. ¶¶ 5-7 (Doc. 1).) The Commission contends the Defendants violated federal securities laws from at least January 2008 forward by "massively" overstating investment returns and the value of fund assets to investors and providing false account statements to investors. (*Id.* ¶¶ 3, 36.) The Commission also contends that Nadel misappropriated investor funds by transferring $1.25 million from Viking IRA Fund and Valhalla Investment Partners to secret bank accounts. (*Id.* ¶ 5.) The Court found the Commission demonstrated a *prima facie* case that the Defendants committed multiple violations of federal securities laws. (Order Appointing Receiver ¶ 2.)

During the course of his investigation, the Receiver has uncovered evidence that the Defendants' violations of federal securities laws began no later than 2003 (and likely earlier). (Receiver's Decl. in Support of the Mot. to Expand the Scope of Receivership ¶¶ 10-12 (Doc. 16) (the "Receiver's January Declaration").) For each year from 2003 through 2007 (and, as

3

shown by the Commission, in 2008), Nadel caused Receivership Entities to grossly overstate the value of the Hedge Funds and to report to investors overstated values and other false performance indicators for those funds. (*Id*.) As detailed in the Receiver's January Declaration (¶ 11), the actual values of the Hedge Funds and the purported year-end values represented to investors from 2003 through 2007 are as follows:

|  | Value as of 12/31/03 ($) | Value as of 12/31/04 ($) | Value as of 12/31/05 ($) | Value as of 12/31/06 ($) | Value as of 12/31/07 ($) |
|---|---|---|---|---|---|
| **Actual Value** | 80,820,378.06 | 143,073,367.23 | 132,731,986.70 | 63,715,094.39 | 18,042,860.67 |
| **Value Represented To Investors** | 128,953,973.27 | 216,868,604.46 | 274,387,098.31 | 282,379,592.45 | 313,960,110.28 |

The Receiver also uncovered evidence that Scoop Capital and Scoop Management received substantial amounts of money from the Hedge Funds in the form of management, profit incentive, and/or advisory fees. (*See* Receiver's Decl. in Support of the Unopposed Motion for Possession of and Title to the Real Property Located at 131 Garren Creek Road, Fairview, N.C. (the "Receiver's Declaration") ¶¶ 12-15, being filed contemporaneously with this Motion.) A significant amount of the proceeds of Nadel's fraud made its way into other accounts controlled by him and/or his wife, Marguerite "Peg" Nadel ("Mrs. Nadel"), including at least $18,181,396.56, as of December 31, 2008. (*Id.* ¶¶ 16-23.)

During the course of his investigation, the Receiver also learned that other businesses, a trust, and a foundation were funded with proceeds of Nadel's fraudulent scheme. (*Id.* ¶¶ 3-6, 19-21.) In addition, a significant amount of the proceeds of Nadel's fraud made its way into entities controlled by Nadel, including at least $12,727,441.52 from Scoop Capital and Scoop Management. (*Id.* ¶¶ 19-20.)

The information gathered during the Receiver's investigation also shows that money derived from Nadel's scheme was used to purchase and/or fund other assets, including the Property (Receiver's Declaration ¶¶ 21-32.) Notably, the Property was purchased on June 14, 2004, and at that time Nadel was already operating his scheme and essentially all of his and his wife's income was derived from that scheme. (*Id.* ¶¶ 21-23.)

## THE GARREN CREEK ROAD PROPERTY

As detailed in the Receiver's Declaration, Nadel and Mrs. Nadel purchased the Property on June 14, 2004. (*Id.* ¶ 25.) Nadel transferred two payments, one for $5,000 and one for $68,000, from his personal account at SouthTrust Bank to cover the cash due at closing for the purchase of the Property. (*Id.* ¶¶ 26-30.) Those funds were directly traceable to one of the receivership entities, Scoop Capital: a check for $85,000 relating to "acquisition of Garren Creek NC house" was written on a Scoop Capital bank account and deposited into Nadel's personal account at SouthTrust from which he made the two payments totalling $73,000 to cover the cash due at closing on the purchase of the Property. (*Id.* ¶ 31.)

In addition, the Receiver's investigation has revealed that Nadel and Mrs. Nadel used proceeds of Nadel's scheme to pay the mortgage on the Property. (*Id.* ¶ 32.) Specifically, 52 mortgage payments for the Property, totaling $77,366.28, were made between 2006 and 2008 from a joint account at Northern Trust Bank held in Nadel's and Mrs. Nadel's name. (*Id.*) During that time, at least $80,000 were deposited into that Northern Trust bank account directly from Scoop Capital or Scoop Management, and additional money was deposited from other accounts controlled by the Nadels in which money from Scoop Capital or Scoop Management had been deposited. (*Id.* ¶ 33.) At all times during which payments by the

Nadels were made relating to the Property, Nadel was perpetrating his scheme, and essentially all of Nadel's and Mrs. Nadel's income was derived from that scheme. (*Id.* ¶¶ 21-23, 34.)

In sum, information reviewed by the Receiver shows that the Property was purchased and financed with proceeds of Nadel's investment scheme through transfers of money from his personal account and his and his wife's joint account. (*Id.* ¶¶ 24-35.)

## **MEMORANDUM OF LAW**

The Receiver was appointed by Order dated January 21, 2009 (the "Order") (Doc. 8), to, among other things, "marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order at 1-2.) In relevant part, Paragraph 17 of the Order states:

> 17. Title to all property, real or personal, . . . of the Defendants or Relief Defendants and their principals, whereever located within or without this state, is vested by operation of law with the Receiver[.]

By operation of Paragraph 17, Nadel's interest in the Property already has been vested in the Receiver as Nadel was a principal of one or more Defendants (i.e., Scoop Management and Scoop Capital).

The evidence reviewed by the Receiver shows that proceeds of Nadel's scheme (i.e., investor funds) were transferred and used to purchase and maintain the Property. As noted above, the Receiver has not identified any source of income for Nadel or Mrs. Nadel that was not in some manner funded with money from Nadel's fraudulent investment scheme. Further, the $5,000 check to Coldwell Banker and the $68,000 wire transfer to Cogburn Goosman Brasil & Rose, P.A., used to fund the down payment for the Property were directly

traceable to funds from Scoop Capital. Finally, the $77,366.28 from the Northern Trust bank account used to pay the monthly mortgage payments on the Property were made from a bank account in which money from Scoop Capital or Scoop Management had been deposited. As a result, full title to and possession of the Property should be transferred to the Receiver so that it may be preserved for the benefit of the receivership estate.

Transfer to the Receiver is consistent with the Order. Paragraph 1 of the Order authorizes the Receiver to:

> 1. Take immediate possession of all property, assets and estates of every kind of the Defendants and Relief Defendants, whatsoever and wheresoever located belonging to or in the possession of the Defendants and Relief Defendants, including but not limited to . . . all real property of the Defendants and Relief Defendants wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court[.]

Paragraph 24 of the Order states:

> 24. In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds.

Pursuant to the spirit of these paragraphs, and the Court's wide discretion over this receivership, *see, e.g.*, *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989), the portion of ownership interest in the Property that has not been vested in the Receiver by operation of Paragraph 17 of the Order should be transferred to the Receiver and the Receiver should be authorized to take physical possession of the Property because the Property was funded with proceeds of Nadel's scheme. Short of taking actual physical possession and title of the Property, the Receiver has

no way of ensuring that its value is being preserved for the Receivership estate and, ultimately, for injured investors and other creditors of the Receivership Entities.

WHEREFORE, the Receiver respectfully requests this Court enter an order giving the Receiver possession of and title to the real property located at 131 Garren Creek Road, Fairview, North Carolina 28730, currently titled in the name of Nadel and his wife.

## LOCAL RULE 3.01(g) CERTIFICATE OF COUNSEL

Counsel for the Receiver has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

> Arthur G. Nadel
> Register No. 50690-018
> MCC New York
> Metropolitan Correctional Center
> 150 Park Row
> New York, NY 10007

> s/ Gianluca Morello
> Carl R. Nelson, FBN 0280186
> cnelson@fowlerwhite.com
> Gianluca Morello, FBN 034997
> gianluca.morello@fowlerwhite.com
> FOWLER WHITE BOGGS P.A.
> P.O. Box 1438
> Tampa, FL 33601
> T: (813) 228-7411
> F: (813) 229-8313
> Attorneys for the Receiver, Burton W. Wiand

40612276v1