**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                        Case No. 8:09-cv-87-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

      Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

      Relief Defendants.
_____/

## RECEIVER'S FIRST INTERIM MOTION FOR ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF COSTS TO RECEIVER AND HIS PROFESSIONALS

Burton W. Wiand, as Receiver, by and through his undersigned counsel and pursuant to Rule 66 of the Federal Rules of Civil Procedure and the Court's Order Appointing Receiver dated January 21, 2009 (the "Order Appointing Receiver"; Doc. 8), respectfully moves this Court for the entry of an order awarding fees, costs, and reimbursement of costs to the Receiver and his professionals. This motion covers all fees and costs incurred from the Receiver's date of appointment, January 21, 2009, through February 28, 2009. The

Securities and Exchange Commission's (the "SEC" or "Commission") Standardized Fund Accounting Report ("SFAR") for this period is attached hereto as **Exhibit A**.[1]

I.  **Case Background and Status.**

The Order Appointing Receiver and subsequent Orders expanding the scope of the Receivership appointed the Receiver as receiver for (a) Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") (collectively referred to as "Defendants"); (b) Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Victory IRA Fund, Ltd.; Victory Fund, Ltd.; Viking IRA Fund, LLC; and Viking Fund LLC (collectively referred to as the "Hedge Funds"); (c) Relief Defendants Valhalla Management, Inc. and Viking Management (which, along with Scoop Capital and Scoop Management, are collectively referred to as the "Investment Managers"); and (d) Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; Laurel Mountain Preserve Homeowners Association, Inc.; Marguerite J. Nadel Revocable Trust UAD 8/2/07; Guy-Nadel Foundation, Inc.; Lime Avenue Enterprises, LLC; and A Victorian Garden Florist, LLC (all of the foregoing are collectively referred to as the "Receivership Entities") (*See* Order, January 21, 2009 (Doc. 8); Order, January 27, 2009 (Doc. 17); Order, February 11, 2009 (Doc. 44); Order, March 9, 2009 (Doc. 68); Order, March 17, 2009 (Doc. 81)).

---

[1] The SEC provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "Billing Instructions"). The Billing Instructions are a new policy recently implemented by the Commission. The Billing Instructions contain specific instructions for, among other things, the content of motions for fees and method of accounting for time billed to receivership matters. The SFAR is one of the new requirements contained in the Billing Instructions.

On April 3, 2009, the Receiver filed his First Interim Report (the "First Interim Report") (Doc. 103), which contains comprehensive and detailed information regarding the case background and status; the recovery and disposition of assets; financial information on Receivership Entities; the proposed course of action to be taken regarding assets in the Receivership estate; and related (and/or contemplated) litigation involving Receivership Entities. The Receiver incorporates the First Interim Report into this Motion for Fees and has attached a true and correct copy of the First Interim Report as **Exhibit B** for the Court's convenience.

## II. Professional Services Rendered.

Paragraph 4 of the Order Appointing Receiver authorizes the Receiver to

> [a]ppoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of the Defendants and Relief Defendants, and exercising the power granted by this Order, subject to approval by this Court at the time the Receiver accounts to the Court for such expenditures and compensation.

Pursuant to this paragraph, the Receiver retained PDR Certified Public Accountants ("PDR") to provide accounting services; Riverside Financial Group ("Riverside") to provide financial analyses; E-Hounds, Inc. ("E-Hounds") to provide computer forensic services, and Fowler White Boggs P.A. ("Fowler White") to provide legal services (collectively, the "Professionals"). As described in the First Interim Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve the Receivership assets, and attempt to locate and recover additional assets. These services

are for the benefit of aggrieved investors, creditors, and other interested parties of the Receivership Entities. The Receiver has not previously sought the reimbursement of any fees or costs in this matter for himself or his Professionals.

A.    **The Receiver.**

The Receiver requests the Court award him fees for the professional services rendered from January 21, 2009, through February 28, 2009, in the amount of $59,080. The standard hourly rate which the Receiver charges clients is $450. However, the Receiver agreed that for purposes of his appointment as the Receiver, his hourly rate would be reduced to $350 per hour, representing a little more than a twenty-two percent (22%) discount off the standard hourly rate which he charges clients in comparable matters. This rate was set forth in the Commission's Emergency Motion for Appointment of Receiver and Memorandum of Law (the "Emergency Motion," Doc. 6) granted by the Court on January 21, 2009.

The Receiver commenced services immediately upon his appointment. The activities of the Receiver are set forth in the First Interim Report. *See* Exhibit B. The Receiver has billed his time for these activities in accordance with the Billing Instructions. The Billing Instructions request that this Motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed. The Billing Instructions identify each such business enterprise or litigation matter as a separate "project." Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories. At this early stage of this Receivership, the work of the Receiver and Fowler White has been focused on investigating the fraud and related activities underlying this matter; locating and taking control of Receivership assets; and investigating

and pursuing additional assets for the Receivership as set forth in detail in the Interim Report. The Receiver's time for services rendered for this work on the Receivership during the time covered by this Motion for each specific Activity Category is as follows:[2]

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 33.2 | $10,220 |
| Business Operations | 28.9 | $9,590 |
| Case Administration | 111.4 | $37,590 |
| **TOTAL** | **173.5** | **$57,400** |

A copy of the statement summarizing the services rendered and costs incurred for the foregoing is attached hereto as **Exhibit C**.

At this point only one litigation matter (or "project") has been formally commenced by the Receiver. *See* Discussion of Home Front Homes litigation immediately below.

---

[2] The Activity Categories set forth by the Commission in the Billing Instructions for Legal Activities are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure; and (6) Employee Benefits/Pensions, which is defined as reviewing issues such as severance, retention, 401k coverage and continuance of pension plan. The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate. In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for the time spent on such work, but has not charged any amount for this work.

1. <u>Home Front Homes Litigation</u>.  This is a lawsuit against Brian C. Bishop, a former employee who also had an ownership interest in Home Front Homes, an operating business.[3]  Home Front Homes sued Mr. Bishop for breach of non-compete covenants in his employment agreement and a purchase agreement (wherein Home Front Homes purchased the assets, goodwill, and customers of Home Front, Inc. owned by Mr. Bishop), as well as breach of a promissory note and tortious interference with a business relationship.  Since ending his employment with Home Front Homes, Mr. Bishop started a competing business in direct violation of his non-compete agreement and had solicited Home Front Homes customers.  The Receiver, through Home Front Homes, instituted this litigation to preserve the value of Home Front Homes for the Receivership estate.  This matter has been settled and the litigation is no longer pending.  A copy of the statement summarizing the services rendered and costs incurred for time covered by this Motion for this project is attached hereto as **Exhibit D**.  From January 21, 2009 through February 28, 2009, 21.2 hours have been spent on this project and the total amount of compensation requested is $4,659.90.  *See* Footnote 4 *infra* for costs incurred in connection with this project.  The Receiver's time for services rendered for this project for this same period for each specific Activity Category is as follows:

---

[3] For more information regarding Home Front Homes please refer to Section V.B.7 of the First Interim Report.  As explained in the Interim Report, Home Front Homes has not been placed into receivership, but one of the Receivership Entities holds a majority interest in that business.

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 4.8 | $1,680.00 |
| **TOTAL** | **4.8** | **$1,680.00** |

**B.     Fowler White Boggs P.A.**

The Receiver requests the Court award Fowler White fees for professional services rendered and costs incurred from January 21, 2009, through February 28, 2009, in the amounts of $196,588.38 and $10,385.76,[4] respectively. As an accomodation to the Receiver, Fowler White reduced the hourly rates of the Receiver's counsel as provided in the Fee Schedule attached hereto as **Exhibit F**.

Fowler White started providing services immediately upon the appointment of the Receiver. The activities of Fowler White for the time covered by this Motion are set forth in the First Interim Report. *See* Exhibit B. Fowler White has billed time for these activities in accordance with the Billing Instructions. As discussed above, at this early stage of this Receivership, the work of the Receiver and Fowler White has been focused on investigating the fraud and related activities underlying this matter; locating and taking control of Receivership assets; and investigating and pursuing additional assets for the Receivership as detailed in the Interim Report. From January 21, 2009, through February 28, 2009, Fowler White's time for services rendered for this work on the Receivership for each specific Activity Category is as follows:

---

[4] A categorization and summary of all costs for which Fowler White seeks reimbursement is attached hereto as **Exhibit E**.

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 680.70 | $152,366.18 |
| Asset Disposition | 11.20 | $2,380.00 |
| Business Operations | 104.40 | $14,641.50 |
| Case Administration | 112.00 | $23,543.55 |
| Claims Administration and Objections | 3.50 | $677.25 |
| **TOTAL** | **911.80** | **$193,608.48** |

A copy of the statement summarizing the services rendered and costs incurred for the foregoing is attached hereto as **Exhibit G**. The total hours billed by each Fowler White professional and their respective total amount of billing is set forth on Exhibit G.

Fowler White professionals also provided services in connection with the Home Front Homes litigation (or project) discussed above.

1. Home Front Homes Litigation.

The total hours billed by each Fowler White professional and their respective total amount of billing as well as a summary of the services provided are set forth on Exhibit D. The time for services rendered for this project for the period covered by this Motion for each specific Activity Category is as follows:

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 16.40 | $2,979.90 |
| **TOTAL** | **16.40** | **$2,979.90** |

C.  **PDR Certified Public Accountants**

The Receiver requests the Court award PDR fees for professional services rendered from January 21, 2009 through February 28, 2009 in the amount of $44,794.00. PDR started providing services for the Receivership on January 22, 2009. PDR has billed time for these services in accordance with the Billing Instructions. Because PDR's work for the period covered by this motion could be allocated to specific Receivership Entities and/or related entities, PDR has billed its time separately for each entity and indicated the appropriate Activity Category for each time entry.[5] Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit H**. The total hours billed by each PDR professional and their respective total amount of billing are set forth on composite Exhibit H. PDR's statements also include a summary of the total time spent on each relevant Activity Category in connection with each Receivership Entity (or "project" as identified in the Billing Instructions). For a discussion of entities delineated in the statements, please refer to Section V.B. of the First Interim Report.

---

[5] The Activity Categories that apply to PDR and Riverside as set forth in the Billing Instructions for Financial Activities are as follows: (1) Accounting/Auditing, which is defined as activities related to maintaining and auditing books of account, preparation of financial statements and account analysis; (2) Business Analysis, which is defined as preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility studies; (3) Corporate Finance, which is defined as review financial aspects of potential mergers, acquisitions and disposition of company or subsidiaries; (4) Data Analysis, which is defined as management information systems review, installation and analysis, construction, maintenance and reporting of significant case financial data, lease rejection, claims, etc.; (5), Status Reports, which is defined as preparation and review of periodic reports as may be required by the Court; (6) Litigation Consulting, which is defined as providing consulting and expert witness services relating to forensic accounting, etc.; (7) Forensic Accounting, which is defined as reconstructing books and records from past transactions and bringing accounting current, tracing and sourcing assets; (8) Tax Issues, which is defined as analysis of tax issues and preparation of state and federal tax returns; and (9) Valuation, which is defined as appraising or reviewing appraisals of assets.

D.   **Riverside Financial Group**

The Receiver requests the Court award Riverside fees for professional services rendered from January 21, 2009 through February 28, 2009 in the amount of $14,962.50. Riverside started providing services for the Receivership on January 27, 2009. Riverside has billed time for these services in accordance with the Billing Instructions. Because Riverside's work for the period covered by this motion could be allocated to specific Receivership Entities and/or related entities, Riverside has billed its time separately for each entity and indicated the appropriate Activity Category for each time entry. Copies of the statements summarizing the services rendered by Riverside for the pertinent period are attached as composite **Exhibit I**. The total hours billed by the Riverside professional and his respective total amount of billing is set forth on Exhibit I. Riverside's statements also include a summary of the total time spent in each relevant Activity Category in connection with each Receivership Entity (or "project" as identified in the Billing Instructions). For a discussion of entities delineated in the statements, please refer to Section V.B. of the First Interim Report.

E.   **E-Hounds, Inc.**

The Receiver requests the Court award E-Hounds fees for professional services rendered for January 21, 2009 through February 28, 2009 in the amount of $10,453.12. E-Hounds started providing services for the Receivership on January 22, 2009. The activities of E-Hounds for the time covered by this Motion are described in the Receiver's First Interim Report. *See* Exhibit B, at § V.A. Copies of the statements summarizing the services

rendered for the pertinent period are attached as composite **Exhibit J**.  As an accomodation to the Receiver, E-Hounds has applied courtesy discounts to the statements attached hereto.

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and award the receiver and those appointed by him fees and costs for their services. *See, e.g., Securities and Exchange Commission v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984)  ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *Securities and Exchange Commission v. Custable*, No. 94-C-3755, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *Securities and Exchange Commission v. Mobley*, No. 00-CV-1316, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* (Doc. 8, Order Appointing Receiver, at p. 14).  The determination of fees to be awarded is largely within the discretion of the trial court.  *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944).  In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the receivership.  *See Elliot*, 953 F.2d at 1577.

Here, because of the nature of this case, it was necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal receiverships, securities laws, banking, finance, and trusts and estates.  Further, in order to

perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions were indispensable.

As discussed above, the Receiver and Fowler White have discounted their normal and customary rates as an accomodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida. As this is the Receiver's first motion for fees and costs, the Receiver and his Professionals have not received compensation for their services or for un-reimbursed out-of-pocket costs although they have worked diligently on this matter and continue to do so.

This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties. The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the SEC investigated and filed the initial pleadings in this case, the Receiver has assumed the primary responsibility for the investigation and forensic analysis of the events leading to the commencement of the pending lawsuits, the efforts to locate and gather investors' money, the determination of investor and creditor claims and any ultimate payment of these claims. While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he feels that the fees and costs expended to date were

reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion. *Custable*, 1995 WL 117935, *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight").

## CONCLUSION

Under the terms and conditions of the Order Appointing Receiver, the Receiver, among other things, is authorized, empowered, and directed to engage professionals to assist him in carrying out his duties and obligations. The Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interest of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:[6]

| | |
|---|---|
| Burton W. Wiand | $59,080.00 |
| Fowler White Boggs | $206,974.14 |
| PDR Certified Public Accountants | $44,794.00 |
| Riverside Financial Group | $14,962.50 |
| E-Hounds | $10,453.12 |

---

[6] A proposed order is attached as **Exhibit K**.

**LOCAL RULE 3.01(g) CERTIFICATION OF COUNSEL**

The undersigned counsel for the Receiver is authorized to represent to the Court that the SEC has no objection to the Court's granting this motion. The undersigned counsel is unable to contact Arthur Nadel, who is incarcerated in New York and is not represented by counsel in this action.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

>Arthur G. Nadel
>Register No. 50690-018
>MCC New York
>Metropolitan Correctional Center
>150 Park Row
>New York, NY 10007

>s/ Carl R. Nelson
>Carl R. Nelson, FBN 0280186
>Email: cnelson@fowlerwhite.com
>Gianluca Morello, FBN 034997
>Email: gianluca.morello@fowlerwhite.com
>Maya M. Lockwood, FBN 0175481
>Email: mlockwood@fowlerwhite.com
>Ashley Bruce Trehan, FBN 0043411
>Email: atrehan@fowlerwhite.com
>FOWLER WHITE BOGGS P.A.
>P.O. Box 1438
>Tampa, FL 33601
>(813) 228-7411
>Fax No: (813) 229-8313
>Attorneys for the Receiver Burton W. Wiand

**RECEIVER'S CERTIFICATION**

The Receiver has reviewed this First Interim Motion for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "Motion").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Motion and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Securities and Exchange Commission.

All fees contained in the Motion are based on the rates listed in the Fee Schedule, attached as Exhibit F. Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor. The Receiver is not making a profit on such reimbursable service.

                                                   s/ Burton W. Wiand
                                                   Burton W. Wiand, as Receiver