# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                       Case No. 8:09-cv-87-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

       Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

       Relief Defendants.
_____/

## RECEIVER'S UNOPPOSED REQUEST FOR LEAVE TO FILE COMPLAINT
## PURSUANT TO TITLE 14 CFR PART 16

Burton W. Wiand, as Receiver, seeks leave to file a Part 16 Complaint before the Federal Aviation Administration ("FAA") pursuant to Title 14, Code of Federal Regulations, Part 16 (Rules of Practice for Federally Assisted Airport Enforcement Proceedings) against the City of Venice ("the City"). The purpose of this proposed action is to protect and preserve the rights and value of the Venice Jet Center, LLC ("VJC"), an asset of the Receivership.

# INTRODUCTION

The SEC instituted this action to "halt [an] ongoing fraud, maintain the status quo, and preserve investor assets. . . ." (Dkt. 1, Compl., ¶ 7.) Burton W. Wiand was appointed by this Court as the Receiver for Defendants Scoop Capital, LLC and Scoop Management, Inc. and all Relief Defendants by Order Appointing Receiver (Dkt. 8) entered January 21, 2009. The Receivership was expanded to include VJC by order entered January 27, 2009 (Dkt. 17).[1] VJC has applied for and been denied permits by the City to build aircraft hangars. The Receiver believes the denial, in violation of federal law, has diminished VJC's value and seeks to pursue the appropriate administrative remedy to obtain relief. The Receiver is currently soliciting offers for the sale of VJC and hopes to recover a significant sum of money through the transaction. The City is actively attempting to frustrate the Receiver's efforts to maximize the proceeds of a sale of the VJC. As detailed below, the City's actions to impede the sale appear to be part of the City's attempts to acquire VJC itself and terminate VJC's lease. VJC's rights to develop its business is guaranteed by its lease agreement and federal regulations. It is the Receiver's view that the institution of a proceeding with the FAA will be an efficient and economical means of enforcing VJC's rights and this proceeding will inure to the benefit of the defrauded investors.[2]

---

[1] VJC is a Florida limited liability company, organized on April 18, 2006, of which Arthur Nadel was previously a managing member.

[2] Pursuant to the Order Appointing Receiver (Dkt. 8), the Receiver has the duty and authority to: "[i]nstitute such actions and legal proceedings, for the benefit and on behalf of the Defendants and Relief Defendants and their investors and other creditors as the Receiver deems necessary . . . ." Dkt. 8 at ¶ 2. The discretion provided to the Receiver to initiate actions pursuant to the Order Appointing Receiver does not clearly encompass the institution
(footnote cont'd)

## BACKGROUND

1.  In June of 1947 and pursuant to the Surplus Property Act of 1944, the federal government conveyed Venice Municipal Airport ("the Airport"), a general aviation facility, to the City of Venice, Florida. As a result, the City is bound by the terms of a quitclaim deed incorporating legal duties that arise from the Surplus Property Act. See 49 U.S.C. § 47151, *et seq*.

2.  As the sponsor for federal grants received by the Airport as part of the Airport Improvement Program ("AIP")[3], the City is obligated to comply with federal law and related FAA sponsor assurances. See 49 U.S.C. § 47107 (2009). In connection with aeronautical operations, airport sponsors regularly lease space to Fixed Base Operators (FBOs) that in turn offer a range of services to the aviation community, including but not limited to: aircraft maintenance, fueling and line service, flight instruction, and hangar space. VJC is one such FBO that entered into a 25-year lease, containing a 5 year renewal option, with the City on May 23, 2006. Pursuant to the lease, VJC was obligated to pay the City approximately $9,500 per month, in addition to all taxes and assessments as they became due, in return for the right to "[c]onduct any commercial aeronautical activity permitted under the Minimum

---

of a Part 16 Complaint. Therefore, the Receiver brings this matter to the Court's attention for approval prior to proceeding.

[3] The AIP was authorized by the Airport and Airway Improvement Act of 1982 ("AIAA"), as amended, 49 U.S.C. § 47101, *et seq*. The source of AIP funds is the Aviation Trust Fund ("ATF"), which was established by Congress in 1970 to provide funding for aviation capital investment programs. AIP funds are discretionary and distributed annually by the FAA.

Standards for Commercial Aeronautical Activities at Venice Municipal Airport . . . ." ("Minimum Standards Document")[4].

3. The lease covers three separate parcels of land totalling approximately 9.7 acres. One parcel is entirely vacant. A building and hangers were located on sections of the other two parcels. Pursuant to obligations under the lease, VJC was required to demolish and rebuild the old hangers and refurbish the existing building, which it did. The rebuilt hangers were filled upon completion in approximately the Fall of 2007.

4. Subsequent to the construction, the need for new aircraft storage space grew to the extent that certain aircraft were stored in areas not designed or suitable for indoor storage.[5] In May 2008, VJC applied to the City for approval to construct four new hangars on approximately 2.5 acres of vacant land. VJC sought to build four "box hangars," designed

---

[4] This document is incorporated into the lease and discusses the general operational requirements for FBOs and the City's purported goals and philosophy concerning Airport operations:

> [T]he City of Venice's goal in adopting these standards it to encourage development of quality aeronautical services and to make the airport available for commercial aeronautical activities on a fair and reasonable term without unjust discrimination . . . . It is the intent of the City of Venice to offer the maximum variety of aviation related services in order to maximize the choice of service providers to the public using the airport.

Despite the above communicated goals and intent of the City, Venice has over the past year and a half discriminated against VJC and taken active measures to *limit* aviation related services to the public.

[5] The Minimum Standards Document specifies the FBO is responsible for supplying "storage and parking and area for utility and support facilities . . . ." It was, therefore, in part VJC's responsibility to ensure that sufficient storage and support facilities existed for its operations.

4

to service medium-sized aircrafts, including smaller jets and turboprops. The site plan was reviewed by the City departments, and no flaws have been reported. By June 2008, VJC was ready to proceed to the final building stage. The City Council refused to permit the construction.

5. In a letter dated December 4, 2008, directed to the Interim Manager of the City of Venice, the FAA unequivocally communicated that "*[t]he FAA agrees that the City of Venice appears to be unnecessarily delaying the expansion of the Venice Jet Center.* The FAA believes the airport sponsor's primary concern in the development of airport properties should be meeting aeronautical demand . . . . These delays created by the city appear to be restricting aeronautical access to the Airport, *which is inconsistent with federal grant assurances and the Surplus Property Deed restrictions.*" (emphasis added). The FAA has not waivered from its position that the actions of the City were and continue to be inconsistent with its federal obligations.

6. The City also sought a legal opinion as to whether it had authority to deny VJC's request to construct hangars. City Attorney, Mr. Robert C. Anderson, in conjunction with outside counsel, Kaplan Kirsch & Rockwell, provided the City with a comprehensive legal opinion. This opinion is consistent with the position of the FAA and advised that "[t]he City of Venice would run a significant risk of being found in violation of its grant assurances if it denied the Jet Center's request to construct additional hangar space on its leasehold."[6]

---

[6] The 13-paged legal memorandum explained that "[a]n airport sponsor's prime obligation is to operate the airport for aeronautical use, including the opportunity for leaseholders to develop airport property for aeronautical use" and provided examples of supporting case law.
(footnote cont'd)

7. Yet, the City continued to prevent construction of the hangars. On February 19, 2009, the FAA wrote to the City once again and stated "In sum, the City of Venice may and should approve the construction of hangers in the area you mention. The land is designated for aeronautical use, and the FAA has even processed a 'pen and ink' change to the 2000 ALP incorporating hangers in this vicinity. . . . ***In accordance with my previous advice concerning airport compliance matters, this proposal should be forwarded to this office without further delay.***" (emphasis added). No action was taken on behalf of the City to conform to the FAA's request.

8. City officials have more recently expressed the view that the establishment of the Receivership will allow the City an advantage in its quest to acquire VJC. On March 10, 2009, the Receiver met with the City Council and again requested approval to build the hangars on behalf of VJC.[7] The City formally denied the Receiver's request and intimated that VJC's lease was void now that the company is in receivership. Further, the City has

---

The legal opinion further stated that "[t]he fact that the City has allowed other tenants to build and lease out hangars would make the City vulnerable to charges of unjust discrimination if it denied Jet Center the right to build hangars." The City incurred approximately $20,000 of tax payers' monies in legal fees to obtain the legal memorandum, which merely reinforced a conclusion already communicated by the FAA.

[7] The Receiver previously submitted a similar written request to City Mayor Ed Martin on February 2, 2009. The correspondence discussed that "it is essential and imperative and [the Receiver's] duty to do everything in [his] power to have the Venice Jet Center continue to operate so that the assets of the entity are preserved for future Order of the Court. [The Receiver] is further charged to operate the Venice Jet Center to move it forward so it increases in value or at least does not lose value." Another letter to the Mayor and Council Members followed on February 25, 2009, on behalf of the Receiver. The letter asked that the City release its hold on the hangars construction and cited to correspondence from the FAA that demonstrated any further delay was unreasonable.

recently publically expressed *its* intent to buy VJC for a nominal amount, which would negatively effect the Receivership estate.

9. As discussed below, the law concerning the filing of a Part 16 Complaint substantiates that such a proceeding against the City is well-founded. The Receiver has considered the potential expense of such an enforcement action and has determined that, in light of the benefit that would inure to the receivership, it is in the best interests of the receivership to institute a Part 16 Complaint to the FAA. The purpose of this proceeding would be to assure VJC's right to develop this property, maximizing its value.

**LEGAL BASIS FOR INSTITUTING A PART 16 PROCEEDING**

**A. VJC Is Entitled To Bring A Part 16 Complaint Against The City Of Venice**

The federal government assists the development of civil aviation through various legislative acts that are designed to develop airport facilities. See BMI Salvage Corp. v. Federal Aviation Aviation Administration, 272 Fed. Appx. 842, 846 (11th Cir. 2008). The AIP permits the government to allocate federal funds to airports, contingent on certain assurances made by the airport "sponsors" who receive the federal funds. Id.; 49 U.S.C. § 47101, *et seq*. After accepting an AIP grant, the sponsor's assurances become a binding obligation between the airport sponsor and the federal government. BMI Salvage Corp., 272 Fed. Appx. at 846. The FAA assigns broad responsibilities to the FAA Administrator to regulate air commerce in the interest of safety, security, and development of civil aeronautics. See 49 U.S.C. § 40101, *et seq*. It is the responsibility of the FAA Administrator

to ensure airport sponsors comply with the assurances made when receiving federal funds. BMI Salvage Corp., 272 Fed. Appx. at 846.

The FAA promulgated a set of regulations that apply to "[a]ll proceedings involving Federally-assisted airports" including proceedings that concern failed federal obligations on behalf of an airport sponsor. 14 C.F.R. § 16.1(a) (Rules of Practice). A person "directly and substantially affected" by an airport sponsor's noncompliance with its legal duties under the AIP is entitled to file a complaint with the FAA ("Part 16 Complaint") and initiate an administrative enforcement action. See 14 C.F.R. § 16.23(a); see e.g., Grayson v. DeKalb County, GA., FAA Docket No. 16-05-13 (February 1, 2006) (Final Agency Decision)); Airborne Tactical Advantage Co., LLC v. Peninsula Airport Commission, 2006 WL 753016, *1 (E.D. Vir. 2006) (discussing there is no private cause of action for a violation of 49 U.S.C. § 47107 but a right to initiate an administrative enforcement action with the FAA). Any person "[d]oing business with an airport and paying fees or rentals to the airport shall be considered directly and substantially affected . . ." by any alleged violation of assurances made and/or obligations assumed by an airport sponsor under the AIP. See 14 C.F.R. § 16.23(a); 49 U.S.C. § 47107. When filing a Part 16 Complaint, the complainant must demonstrate it made "good faith efforts to resolve the disputed matter informally prior to the filing" and that there is "[n]o reasonable prospect for timely resolution of the dispute." See 14 C.F.R. § 16.21(b).

VJC has paid approximately $228,000 in rent to the City, plus expended $100,000 in development costs, and has been denied the ability to develop its leasehold due to delay tactics taken by the City and its Council in direct contravention of assurances made under

federal law. VJC, therefore, has standing to file a Part 16 Complaint with the FAA and instituting a proceeding may assist the potential sale of VJC.[8]

B. The Receiver Has A Good Basis To Submit A Part 16 Complaint

The City is obligated as a sponsor receiving AIP funding to make the Airport available "for public use on reasonable terms and without unjust discrimination ***to all types, kinds and classes of aeronautical activities***, including commercial aeronautical activities offering services to the public at the airport." See Fed. Aviation Admin., Assurances, Airport Sponsors, Part C: Sponsor Certification, ¶ 22(a)[9] (emphasis added); 49 U.S.C. § 47107(a)(1) (permitting approval of a grant application only if written assurance is provided that "the airport will be available for public use on reasonable conditions and without unjust discrimination"). Indeed, "[o]perating the airport for aeronautical use is a sponsor's primary obligation. Part of this primary obligation is the opportunity for leaseholders to develop airport property for aeronautical use." BMI Salvage Corp., 272 Fed. Appx. at 852 (citing United States Constr. Corp. v. City of Pompano Beach, Fl., FAA Docket No. 16-00-14, 2002 WL 1821882 (July 10, 2002) (Final Agency Decision)).

---

[8] The Receiver submits this request for leave to file a Part 16 Complaint without waiving any right to seek equitable assistance from this Court in the future in bringing potential actions against the City and/or individual Council Members. The Receiver is also not waiving the right to seek potential damages for breach of the lease or under anti-trust laws for the City's apparent predatory conduct.

[9] The assurances given by airport sponsors when receiving federal funding are available at: http://www.faa.gov/airports_airtraffic/airports/aip/grant_assurances/media/airport_sponsor_assurances.pdf.

The City also made assurances it would "[p]ermit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public." See Fed. Aviation Admin., Assurances, Airport Sponsors, Part C: Sponsor Certification, ¶ 23. In fact, the City may not prohibit or limit a kind or class of aeronautical use of the airport unless such action "[i]s *necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.*" See Fed. Aviation Admin., Assurances, Airport Sponsors, Part C: Sponsor Certification, ¶ 22(i) (emphasis added). Moreover, VJC's lease and incorporated documents therein explicitly state "[I]t is the intention of the City of Venice to offer the maximum variety of aviation related services in order to maximize the choice of service providers to the public using the airport."

Despite the clear language in the lease and the sponsor's federal assurances, the City and its Council, have refused to permit hangar construction that would provide utilization of medium-sized aircraft and aviation services to the public. The City's refusal is an unreasonable denial of access to aeronautical development and a violation of grant assurance 22 (Economic Nondiscrimination). The City has purposefully refused to allow the construction of hangars on usable land within the boarders of the Airport in contravention of the requirements of the FAA and the assurances it made under the AIP. In doing so, the City has undermined the Receiver's ability to effectively market VJC and receive a reasonable market value for this asset of the Receivership.

## CONCLUSION

Pursuant to the Order Appointing Receiver, the Receiver is authorized to initiate actions and proceedings for the benefit of the Defendants, Relief Defendants, and their

investors and creditors. See Order Appointing Receiver (Dkt. 8 at ¶ 2). While this paragraph gives the Receiver discretion to institute actions on behalf of the Receivership, because a Part 16 proceeding differs from actions generally initiated by an equity receiver, the Receiver desires to bring this matter to the Court's attention for approval prior to proceeding. The Receiver believes institution of a Part 16 Complaint will enhance the viability of a sale of VJC and the expense incurred in instituting the proceeding if necessary will be reasonable in light of the potential benefit.

WHEREFORE, the Receiver respectfully requests this Court grant leave to institute a Part 16 Complaint with the Federal Aviation Administration against the City of Venice, Florida.

**LOCAL RULE 3.01(g) CERTIFICATION OF COUNSEL**

The undersigned counsel for the Receiver is authorized to represent to the Court that the SEC has no objection to the Court's granting this motion. The undersigned counsel is unable to contact Arthur Nadel, who is incarcerated in New York and is not represented by counsel in this action.

**VERIFICATION**

The factual allegations stated in this Request are true and correct to the best of my knowledge, information, and belief.

s/ Burton W. Wiand, Receiver

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Arthur G. Nadel
Register No. 50690-018
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

                                  **s/Carl R. Nelson**
                                  Carl R. Nelson, FBN 0280186
                                  cnelson@fowlerwhite.com
                                  Gianluca Morello, FBN 034997
                                  Gianluca.morello@fowlerwhite.com
                                  Ashley B. Trehan, FBN 0043411
                                  Ashley.trehan@fowlerwhite.com
                                  Maya M. Lockwood, FBN 0175481
                                  mlockwood@fowlerwhite.com
                                  FOWLER WHITE BOGGS, P.A.
                                  501 E. Kennedy Blvd., Suite 1700
                                  Tampa, FL 33602
                                  Phone (813) 228-7411, Fax (813) 229-8313

                                  Attorneys for the Receiver, Burton W. Wiand