UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

              Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

              Defendants,             CASE NO.: 8:09-cv-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

              Relief Defendants.
_____/

**RECEIVER'S UNOPPOSED MOTION FOR POSSESSION OF AND TITLE TO THE REAL PROPERTY LOCATED AT 15576 FRUITVILLE ROAD, SARASOTA, FL**

Pursuant to 28 U.S.C. § 754, Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 3.01, Burton W. Wiand, as Receiver, moves the Court for possession of and title to the real property located at 15576 Fruitville Road, Sarasota, FL 34240 ("the Property"), which is a residential property purchased by the Nadels and rented to third parties. The Receiver's investigation has revealed that the Property was purchased and financed with ill-

gotten gains. As explained below, title to and possession of the Property should be transferred to the Receiver to preserve it as an asset of the receivership estate.

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent Defendants from further defrauding investors of hedge funds managed by them. That same day, the Court entered an Order appointing Burton W. Wiand as Receiver for Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). (*See generally* Order Appointing Receiver (Doc. 8).)

The Court subsequently granted four motions to expand the scope of the receivership and appointed the Receiver as receiver over the following:

- Venice Jet Center, LLC, and Tradewind, LLC (Order, Jan. 27, 2009 (Doc. 17));
- Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; and the Laurel Mountain Preserve Homeowners Association, Inc. (Order, Feb. 11, 2009 (Doc. 44));
- The Guy-Nadel Foundation, Inc. (Order, Mar. 9, 2009 (Doc. 68));
- Lime Avenue Enterprises, LLC, and A Victorian Garden Florist, LLC (Amended Order, March 17, 2009 (Doc. 81)).

All of the entities and the trust in receivership are hereinafter referred to collectively as the "Receivership Entities."

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver ¶¶ 1-2.)

The Commission concluded that Defendant Arthur Nadel ("Nadel") used Scoop Capital; Scoop Management; Valhalla Management, Inc.; and Viking Management, LLC to defraud investors of the hedge funds those companies managed, Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; and Viking Fund, LLC (collectively, the "Hedge Funds"). (*See* Compl. ¶¶ 5-7 (Doc. 1).) The Commission contends Defendants violated federal securities laws from at least January 2008 forward by "massively" overstating investment returns and the value of fund assets to investors and providing false account statements to investors. (*Id.* ¶¶ 3, 36.) The Commission also contends that Nadel misappropriated investor funds by transferring $1.25 million from Viking IRA Fund and Valhalla Investment Partners to secret bank accounts. (*Id.* ¶ 5.) The Court found the Commission demonstrated a *prima facie* case that Defendants committed multiple violations of federal securities laws. (Order Appointing Receiver ¶ 2.)

During the course of his investigation, the Receiver has uncovered evidence that Defendants' violations of federal securities laws began no later than 2003 and, according to Nadel's own admission, before then. (*See* Receiver's Second Interim Report (the "Interim Report") at 7-15 (Doc. 141); Receiver's Decl. in Support of the Mot. to Expand the Scope of

Receivership ¶¶ 10-12 (Doc. 16) (the "Receiver's January Declaration"); Receiver's Decl. in Support of the Mot. for Possession of and Title to the Real Property Located at 15576 Fruitville Road, Sarasota, FL. (the "Receiver's Fruitville Road Declaration") ¶¶ 9-11, 22-25, being filed along with this motion.) For each year from 2003 through 2007 (and, as shown by the Commission, in 2008), Nadel caused Receivership Entities to grossly overstate the value of the Hedge Funds and to report to investors overstated values and other false performance indicators for those funds. (*See* Interim Report at 7-10; Receiver's Jan. Decl. ¶¶ 10-12.) As detailed in the Receiver's January Declaration (at paragraph 11), the actual values of the Hedge Funds and the purported year-end values represented to investors from 2003 through 2007 are approximately as follows:

|  | Value as of 12/31/03 ($) | Value as of 12/31/04 ($) | Value as of 12/31/05 ($) | Value as of 12/31/06 ($) | Value as of 12/31/07 ($) |
|---|---|---|---|---|---|
| **Actual Value** | 80,820,378.06 | 143,073,367.23 | 132,731,986.70 | 63,715,094.39 | 18,042,860.67 |
| **Value Represented To Investors** | 128,953,973.27 | 216,868,604.46 | 274,387,098.31 | 282,379,592.45 | 313,960,110.28 |

Further, Nadel essentially admitted in letters he wrote for family at the time of his disappearance in January of this year that he had perpetrated his scheme beginning before 2003. (*See* Receiver's Fruitville Road Decl. ¶¶ 23-24; *id.* Ex. A (noting that trading losses dated back to 1998); *id.* Ex. B (noting that for more than ten years Nadel believed he could trade out of "this mess").)

The Receiver also uncovered evidence that Scoop Capital and Scoop Management received substantial amounts of money from the Hedge Funds in the form of management, profit incentive, and/or advisory fees. (*See* Receiver's Fruitville Road Decl. ¶¶ 11-15.) A significant amount of the proceeds of Nadel's fraud made its way into other accounts

4

controlled by him and/or his wife, Marguerite "Peg" Nadel ("Mrs. Nadel"), including at least over $18,000,000 as of December 31, 2008. (*Id.* ¶¶ 16-20.)

During the course of his investigation, the Receiver also learned that other businesses, a trust, and a foundation were funded with proceeds of Nadel's fraudulent scheme. In addition, a significant amount of those proceeds of Nadel's fraud made its way into entities controlled by Nadel, including at least $12,727,441.52 from Scoop Capital and Scoop Management. (*Id.* ¶¶ 19, 20.)

The information gathered during the Receiver's investigation also shows that money derived from Nadel's scheme was used to purchase and/or fund other assets, including the Property. (*See id.* ¶¶ 26-42.) Notably, the Property was purchased on March 5, 2003, and at that time Nadel was already operating his scheme and essentially all of his and his wife's income was derived from that scheme. (*Id.*)

## THE FRUITVILLE ROAD PROPERTY

As detailed in the Receiver's Fruitville Road Declaration, Nadel and Mrs. Nadel purchased the Property on March 5, 2003. (*Id.* ¶ 28.) To purchase the Property, Nadel paid a $5,000 deposit and $201,163.93 at closing. (*Id.* ¶¶ 30-32.) Nadel did not take a mortgage out on the property until March 27, 2003. (*Id.* ¶ 36.) To cover the majority of cash due at closing for the purchase of the Property Nadel used $131,170.97 from an account at SouthTrust Bank in the name of Intex Trading Corporation ("Intex"). (*Id.* ¶ 31.) As explained in detail in the Receiver's Fruitville Road Declaration, Intex was the General Partner of Scoop Investments, Ltd., which is the predecessor of Relief Defendant and Receivership Entity Victory Fund, Ltd. (*Id.* ¶ 33.) Scoop Investments, Ltd. was renamed

5

Victory Fund, Ltd on November 27, 2002. (*Id.*) Nadel created Intex and at all times was its sole director and officer. (*Id.* ¶ 34.) On December 20, 2002, Intex was replaced by Receivership Entity Scoop Capital as Victory Fund's general partner. (*Id.* ¶ 33.)

The $131,170.97 from Intex's SouthTrust Bank account used to satisfy the bulk of the cash due at closing is directly traceable to receivership entities and Nadel's scheme. (*Id.*) Between February 2002 and January 2003, approximately $533,375.90 was deposited into Intex's account at SouthTrust Bank directly from accounts held in the names of Relief Defendants and Receivership Entities Valhalla Management, Inc. and Viking Management, Inc. (*Id.* ¶ 35.) Specifically, $20,089.76 was transferred from Viking Management, LLC, and $513,286.14 was transferred from Valhalla Management, Inc. (*Id.*)

Another $70,000 used to pay the balance of the money due at closing, and the $5,000 used to pay the deposit on the purchase of the Property, were paid with funds from a Northern Trust Bank of Florida account held in the names of Nadel and his wife (the "4320 Account"). (*Id.* ¶ 32.) Further, from at least July 2003 through November 2004, payments on the mortgage on the Property were made from the 4320 Account. (*Id.* ¶ 37.) During that period, $15,994.28 was made in mortgage payments. In 2003 and 2004, the time during which money in the 4320 Account was used to fund part of the purchase price and mortgage payments for the Property, at least $50,000 was deposited into that account from Intex's SouthTrust Bank account, and over $1,150,000.0 was deposited from Scoop Management, Inc.'s bank account. (*Id.* ¶ 38.)

Between December 2004 and the collapse of Nadel's scheme in January 2009, mortgage payments for the Property, totaling $53,798.45, were made from another joint

account at Northern Trust held in Nadel's and Mrs. Nadel's name (the "8757 Account"). (*Id.* ¶ 39.) During that time, at least $80,000 was deposited into the 8757 Account directly from Scoop Capital or Scoop Management, and additional money was deposited into it from other accounts controlled by the Nadels in which money from Scoop Capital or Scoop Management had been deposited. (*Id.* ¶ 40.)

At all times during which payments by the Nadels were made relating to the Property, Nadel was perpetrating his scheme, and essentially all of Nadel's and Mrs. Nadel's income was derived from that scheme. (*Id.* ¶¶ 10, 11, 22-24.) In sum, information reviewed by the Receiver shows that the Property was purchased and financed with proceeds of Nadel's scheme and money from Receivership Entities through money paid out of Intex's and Nadel and his wife's joint accounts. (*Id.* ¶¶ 31-40.)

## MEMORANDUM OF LAW

The Receiver was appointed by Order dated January 21, 2009, to, among other things, "marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver at 1-2 (Doc. 8).) In relevant part, Paragraph 17 of the Order Appointing Receiver states:

> 17. Title to all property, real or personal, . . . of the Defendants or Relief Defendants and their principals, whereever located within or without this state, is vested by operation of law with the Receiver[.]

By operation of Paragraph 17, to the extent Nadel had an interest in the Property through his trust or otherwise, that interest already has been vested in the Receiver. (*See* Receiver's Fruitville Road Decl. ¶ 29.)

The evidence reviewed by the Receiver shows that proceeds of Nadel's scheme (i.e., investor funds) were used to purchase and finance the Property. As noted above, the Receiver has not identified any source of income for Nadel or Mrs. Nadel that was not in some manner funded with money from Nadel's fraudulent investment scheme. In addition, money used at the closing of the purchase of the Property, to pay the purchase deposit, and to pay monthly mortgage payments was directly or indirectly traceable to the Receivership Entities and Nadel's scheme. As a result, full title to and possession of the Property should be transferred to the Receiver so that it may be preserved for the benefit of the receivership estate and, ultimately, defrauded investors and others with valid claims.

Transfer to the Receiver is consistent with the Order Appointing Receiver. Paragraph 1 of that Order authorizes the Receiver to:

> 1. Take immediate possession of all property, assets and estates of every kind of the Defendants and Relief Defendants, whatsoever and wheresoever located belonging to or in the possession of the Defendants and Relief Defendants, including but not limited to . . . all real property of the Defendants and Relief Defendants wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court[.]

Paragraph 24 of that Order states:

> 24. In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds.

Transfer to the Receiver is also consistent with the Court's wide discretion over this equitable receivership. *See, e.g.*, *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989).

Accordingly, the Receiver should be granted title to and authorized to take physical possession of the Property because the Property was funded with proceeds of Nadel's scheme. Short of taking actual physical possession and title of the Property, the Receiver has no way of ensuring that its value is being preserved for the Receivership estate and, ultimately, for injured investors and other creditors of the Receivership Entities.

WHEREFORE, the Receiver respectfully requests this Court enter an order giving the Receiver possession of and title to the real property located at 15576 Fruitville Road, Sarasota, FL 34240, currently titled in the name of the Arthur Nadel Revocable Trust UAD November 3, 2004, and the Marguerite J. Nadel Revocable Trust UAD November 3, 2004.

## **LOCAL RULE 3.01(g) CERTIFICATE OF COUNSEL**

Counsel for the Receiver has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

> Arthur G. Nadel
> Register No. 50690-018
> MCC New York
> Metropolitan Correctional Center
> 150 Park Row
> New York, NY  10007

s/ Gianluca Morello
Carl R. Nelson, FBN 0280186
cnelson@fowlerwhite.com
Gianluca Morello, FBN 034997
gianluca.morello@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL 33601
T: (813) 228-7411
F: (813) 229-8313
Attorneys for the Receiver, Burton W. Wiand

40988094v1