UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                       Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

       Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

       Relief Defendants.
_____/

**RECEIVER'S FIFTH MOTION TO EXPAND THE SCOPE OF RECEIVERSHIP
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to 28 U.S.C. § 754, Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 3.01, Burton W. Wiand, as Receiver, moves the Court to expand the scope of the receivership in this case to include Viking Oil & Gas, LLC ("**Viking Oil**"). The Receiver's investigation has revealed that Viking Oil was funded with ill-gotten gains from a fraudulent scheme involving Nadel and certain of the Receivership Entities (as hereinafter defined). Therefore, the Receiver requests ownership and control of Viking Oil be transferred to the

Receiver.  As explained below, Viking Oil should be placed in receivership in order to preserve its assets and to bring them under the Receiver's control.  The Receiver files contemporaneously with this motion his Declaration in Support of the Fifth Motion to Expand the Scope of Receivership (the "**Viking Oil Declaration**").

The Receiver has advised both of Viking Oil's managing members and current owners, Christopher D. Moody and Neil V. Moody (the "**Moodys**"), of the relief sought herein.  Without admitting the factual statements herein or in the Viking Oil Declaration, the Moodys have no objection to and consent to the expansion of the Receivership over Viking Oil.  (Viking Oil Decl. ¶ 20.)

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("**Commission**") initiated this action to prevent the defendants from further defrauding investors of hedge funds managed by them.  Scoop Capital, LLC ("**Scoop Capital**"); Scoop Management, Inc. ("**Scoop Management**"); Valhalla Management, Inc. ("**Valhalla Management**"); and Viking Management, LLC ("**Viking Management**") are hereinafter collectively referred to as the "**Investment Managers**."  Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; and Viking Fund, LLC are hereinafter collectively referred to as the "**Hedge Funds**."  The Commission concluded that Defendant Arthur Nadel ("**Nadel**") used the Investment Managers to defraud investors of the Hedge Funds those companies managed.  (*See* Compl. ¶¶ 5-7 (Doc. 1).)

The Commission contends that Nadel, Scoop Capital, Scoop Management, and certain Receivership Entities violated federal securities laws from at least January 2008 forward by "massively" overstating investment returns and the value of fund assets to investors and providing false account statements to investors. (*Id.* ¶¶ 3, 36.)

The Court found the Commission demonstrated a *prima facie* case that the defendants committed multiple violations of federal securities laws and thus entered an order appointing Burton W. Wiand as Receiver of all the assets, properties, books, and records and all other items held in the name of the following entities:.

1. Defendants Scoop Capital and Scoop Management; and
2. Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC.

(*See generally* Order Appointing Receiver dated Jan. 21, 2009 (Doc. 8) (the "**Order Appointing Receiver**").) Subsequently, in four separate Orders, the Court appointed Burton W. Wiand as Receiver over Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; the Laurel Mountain Preserve Homeowners Association, Inc.; the Guy-Nadel Foundation, Inc.; Lime Avenue Enterprises, LLC; and A Victorian Garden Florist, LLC (d/b/a Mr. Florist A Victorian Garden). (Docs. 17, 44, 68, and 79.) All of the entities and the trust in receivership are hereinafter referred to collectively as the "**Receivership Entities**." The Court's appointment of Mr. Wiand as Receiver over all of these entities was consolidated in the Order Reappointing Receiver, filed June 3, 2009. (Doc. 140.)

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver at 1-2.)

During the course of his investigation, the Receiver has uncovered evidence that violations of federal securities laws began no later than 2003. (*See* Receiver's Second Interim Report (the "**Interim Report**"); Receiver's Decl. in Support of the Mot. to Expand the Scope of Receivership ¶¶ 10-12 (Doc. 16) (the "**Receiver's January Declaration**").) For each year from 2003 through 2007 (and, as shown by the Commission, in 2008), the Hedge Fund Receivership Entities grossly overstated the value of the Hedge Funds and reported to investors overstated values and other false performance indicators for those funds. (*See* Interim Report at 7-10; Receiver's Jan. Decl. ¶¶ 10-12.) As detailed in the Receiver's January Declaration (¶ 11), following are the actual values of the Hedge Funds and the purported year-end values represented to investors from 2003 through 2007:

|  | **Value as of 12/31/03 ($)** | **Value as of 12/31/04 ($)** | **Value as of 12/31/05 ($)** | **Value as of 12/31/06 ($)** | **Value as of 12/31/07 ($)** |
|---|---|---|---|---|---|
| **Actual Value** | 80,820,378.06 | 143,073,367.23 | 132,731,986.70 | 63,715,094.39 | 18,042,860.67 |
| **Value Represented To Investors** | 128,953,973.27 | 216,868,604.46 | 274,387,098.31 | 282,379,592.45 | 313,960,110.28 |

The Receiver also uncovered evidence Nadel and the Investment Managers (among others) received significant fees, including "performance fees," "advisory fees," and "incentive fees." (*See* Viking Oil Decl. ¶ 10.)

From at least 2003 forward, (a) the Moodys owned Valhalla Management and Viking Management; (b) Neil V. Moody was the president and director of Valhalla Management and a manager of Viking Management; and (c) Christopher D. Moody was the vice president of Valhalla management and a manager of Viking Management. (*Id*. ¶ 11.) The Moodys received in the aggregate $42,434,563.65. (*Id*. ¶ 12.) Money received from Nadel's scheme was used by the Moodys to fund Viking Oil. (*Id*. ¶ 13.) Viking Oil was a company formed by the Moodys to make personal investments in an oil and gas venture. (*Id*.) The Receiver believes that Viking Oil has significant value and that it is important for the Receiver to secure control of this asset. (*Id*. ¶ 19.)

## **MEMORANDUM OF LAW**

The Court's power to supervise an equity receivership and determine the appropriate action to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Id.* at 1566 (citing *SEC v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 372 (5th Cir. 1982)).

Such discretion may be properly exercised in the form of expansion of a receivership where a party seeking expansion establishes (1) a commingling of funds, (2) intertwined business operations, (3) utilization of an identical business address or identical offices and addresses, (4) or co-identity of officers, directors, or principals. *See SEC v. Elmas Trading Corp.,* 620 F. Supp. 231, 233 (D. Nev. 1985), *aff'd*, 805 F.2d 1039 (9th Cir. 1986); *see also*

*Elliott,* 953 F.2d at 1565, n.1 (holding that court may extend equitable receivership over related entities).

In determining whether or not to extend a receivership to include related entities, a federal court has broad discretion to disregard corporate separateness and form and to give effect to the substance of the enterprise. *Elmas Trading Corp.,* 620 F. Supp. at 233. A corporate entity may be disregarded under federal law "in the interests of public convenience, fairness, and equity . . . ." *Id.* at 234; *see In re Bowen Transp., Inc.*, 551 F.2d 171, 179 (7th Cir. 1977) (stating that "[t]he separate corporateness of affiliated corporations owned by the same parent may be equally disregarded under the proper circumstances."). The key goal behind a proposed receivership expansion should be "to ensure that all available assets are brought within the receivership and may properly be distributed to creditors." *Id.* at 233.

Viking Oil was funded with proceeds of Nadel's investment scheme through transfers from the Hedge Funds to the Investment Managers, from the Investment Managers to the Moodys, and then from the Moodys to Viking Oil. Thus, the investments in Viking Oil were ill-gotten gains that resulted from Nadel's fraudulent scheme. Given the Court's wide discretion and authority and the consent of Viking Oil's managing members (without admitting the factual statements herein or in the Viking Oil Declaration), the receivership estate in this case should be expanded to encompass Viking Oil.

Additionally, this Court's Order Appointing Receiver already requires the Receiver to "marshal and safeguard all of the assets of the Receivership Entities and take whatever actions are necessary for the protection of the investors." (Doc. 8). Marshalling and safeguarding the property and assets of Viking Oil are necessary to protect investors and to

preserve the assets' value. Notably, this Court's Order Appointing Receiver contemplates the expansion of the receivership. The Order expressly states:

> In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, *extending this receivership over any person or entity holding such investor funds*.

(Doc. 8 ¶ 24 (emphasis added).)

Because (1) the Court has the authority to expand the receivership to include Viking Oil; (2) the evidence shows that funds from the scheme were used by the Moodys to fund Viking Oil; and (3) expansion of the receivership is necessary for the protection of the investors and the receivership estate, the Receiver respectfully requests that this Court modify the Order Appointing Receiver or otherwise expand the Receivership to include Viking Oil & Gas, LLC.

## **LOCAL RULE 3.01(g) CERTIFICATION OF COMPLIANCE**

The undersigned counsel for the receiver has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

>Arthur G. Nadel
>Register No. 50690-018
>MCC New York
>Metropolitan Correctional Center
>150 Park Row
>New York, NY  10007

>s/ Carl R. Nelson
>Carl R. Nelson, FBN 0280186
>cnelson@fowlerwhite.com
>Gianluca Morello, FBN 034997
>gianluca.morello@fowlerwhite.com
>Maya M. Lockwood, FBN 0175481
>mlockwood@fowlerwhite.com
>Ashley Bruce Trehan, FBN 0043411
>ashley.trehan@fowlerwhite.com
>FOWLER WHITE BOGGS P.A.
>P.O. Box 1438
>Tampa, FL  33601
>T: (813) 228-7411
>F: (813) 229-8313
>Attorneys for the Receiver, Burton W. Wiand

40998565v3