UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

          Defendants,

CASE NO.: 8:09-cv-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

          Relief Defendants.
_____/

## RECEIVER'S DECLARATION IN SUPPORT OF THE
## FIFTH MOTION TO EXPAND THE SCOPE OF RECEIVERSHIP

Burton W. Wiand declares as follows:

1.     I am an attorney with Fowler White Boggs P.A. ("**Fowler White**") in Tampa, Florida.

2.     This Declaration is being filed in support of my Fifth Motion to Expand the Scope of Receivership, which seeks to include Viking Oil & Gas, LLC.

## Receiver's Appointment and Investigation

3. In the January 21, 2009, Order Appointing Receiver (Doc. 8), the Court appointed me Receiver over

    a. Defendants Scoop Capital, LLC ("**Scoop Capital**") and Scoop Management, Inc. ("**Scoop Management**"); and

    b. Relief defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc. ("**Valhalla Management**"); Victory IRA Fund, Ltd.; Victory Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC ("**Viking Management**").

Scoop Real Estate, Valhalla Investment, Victory IRA, Victory Fund, Viking IRA, and Viking Fund are collectively referred to hereinafter as the "**Hedge Funds**." Scoop Capital, Scoop Management, Valhalla Management, and Viking Management are collectively referred to hereinafter as the "**Investment Managers**."

4. Subsequently, in four separate Orders, the Court also appointed me as Receiver over Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; the Laurel Mountain Preserve Homeowners Association, Inc.; the Guy-Nadel Foundation, Inc.; Lime Avenue Enterprises, LLC, and A Victorian Garden Florist, LLC. (Docs. 17, 44, 68, and 79.)

5. All of the entities and the trust in receivership are referred to collectively as the "**Receivership Entities**." The Court's appointment of me as Receiver over all of these

2

entities was consolidated in the Order Reappointing Receiver, filed June 3, 2009. (Doc. 140.)

6. Since my appointment as Receiver, I and professionals that I have retained (including lawyers, an accountant, and a financial analyst) have continued our investigation, which has included the following actions:

    a. Gathering evidence from people associated with Nadel and/or the Receivership Entities.

    b. Gathering evidence from persons responsible for maintaining the financial books of Receivership Entities and other businesses controlled by Nadel.

    c. Gathering evidence from persons responsible for assisting the Receivership Entities and other business controlled by Nadel with their transactions.

    d. Operating other businesses controlled by Nadel.

    e. Performing accounting services.

    f. Administering the Hedge Funds.

7. We have also reviewed the following:

    a. Documents that were located in the offices of the Hedge Funds and Investment Managers (the "**Office**"), which was located at 1618 Main Street, Sarasota, Florida 34236.[1]

---

[1] Subsequent to my appointment, these documents were relocated to the offices of Fowler White Boggs P.A. in Tampa, Florida.

b. Documents obtained from the accountant for Receivership Entities.

c. Information stored on Receivership Entities' computer network.

d. Documents obtained from other businesses controlled by Nadel.

e. Documents obtained from financial institutions and other third parties, including lawyers and others who assisted Nadel's businesses with their transactions.

f. Information available in the public record.

g. Information provided through the cooperation of Neil V. Moody and Christopher D. Moody (the "**Moodys**").

### The Fraudulent Investment Scheme

8. On January 21, 2009, the SEC filed its Emergency Motion and Memorandum of Law in Support of Temporary Restraining Order and Other Emergency Relief (the "**SEC Emergency Motion**") (Doc. 2) and supporting papers. On January 26, 2009, I submitted the Receiver's Declaration in Support of the Receiver's Unopposed Motion to Expand the Scope of Receivership (the "**Receiver's January Declaration**") (Doc. 16). On June 9, 2009, I submitted the Receiver's Second Interim Report (the "**Interim Report**") (Doc. 141).

9. As shown in the SEC Emergency Motion, the Receiver's January Declaration, and the Interim Report, Nadel, Scoop Capita, and Scoop Management (directly and through the other Receivership Entities) defrauded investors in the six Hedge Funds by "massively overstating the value of investors' interests in [the Hedge Funds]." (SEC Emerg. Mot. at 2, 6.). The Hedge Funds and Investment Managers were operated as part of a fraudulent investment scheme (the "**scheme**") from at least 2003 forward. This scheme began no later

than 2003 and continued through the time Nadel fled in January 2009. During this time, the value of the Hedge Funds as represented to investors was significantly overstated. The investment returns and performance as represented to investors were based on those overstated numbers and thus were also false.

10. As part of the scheme, Nadel and the Investment Managers received significant fees, including "performance fees," "advisory fees," and "incentive fees." Those fees totaled tens of millions of dollars.

11. From at least 2003 forward, (a) the Moodys owned Valhalla Management and Viking Management; (b) Neil V. Moody was the president and director of Valhalla Management and a manager of Viking Management; and (c) Christopher D. Moody was the vice president of Valhalla Management and a manager of Viking Management.

12. As a result of their participation with the Receivership Entities, the Moodys received in the aggregate $42,323,563.65.

    a. From 2003 to 2008, Neil V. Moody received $14,675,314.07 from Valhalla Management and $8,803,350.43 from Viking Management. In total, Neil V. Moody received $23,478,664.50 from the Investment Managers.

    b. From 2003 to 2008, Christopher D. Moody received $12,189,776.48 from Valhalla Management and $6,655,122.67 from Viking Management. In total, Christopher D. Moody received $18,844,899.15 from the Investment Managers.

## Viking Oil & Gas, LLC

13. The information gathered during our investigation shows that money the Moodys received from the scheme was used to fund Viking Oil & Gas, LLC ("**Viking Oil**"). Viking was a company formed by the Moodys to make personal investments in an oil and gas venture.

14. Viking Oil is a Florida limited liability company formed in January 2006 for "any and all lawful business for which a limited liability company may be organized under the Florida Limited Liability Company Act." (*See* Article III of Viking Oil's Articles of Organization, dated January 11, 2006, filed with the Florida Secretary of State and attached hereto as **Exhibit A**.)

15. Neil V. Moody and Christopher D. Moody were managers of Viking Oil. (Ex. A Art. VII. *See also* Viking Oil's Annual Reports for the years 2007 and 2008, filed with the Florida Secretary of State and attached hereto collectively as **Exhibit B**.) Viking Oil's principal address is the Office's former address. (Ex. A at 3; Ex. B at 1, 2.)

16. The information we have gathered thus far indicates that Viking Oil was funded with proceeds of the scheme.

17. Specifically, of the $23,478,664.50 Neil V. Moody received from the Investment Managers, he used **$2,666,666.66** to fund Viking Oil. According to documents located in the Office and information from financial institutions provided by the Moodys, Neil V. Moody has made at least the following transfers of money to Viking Oil:

| DATE | PAYEE | AMOUNT |
|---|---|---|
| 2/2/06 | Viking Oil & Gas, LLC | $1,200,000.00 |
| 4/10/06 | Viking Oil & Gas, LLC | $800,000.00 |
| 4/11/07 | Viking Oil & Gas, LLC | $666,666.66 |
| | | |
| | TOTAL: | $2,666,666.66 |

18. Similarly, of the $18,844,899.15 Christopher D. Moody received from the Investment Managers, he used **$1,666,666.66** to fund Viking Oil. According to documents located in the Office and information from financial institutions that was provided by the Moodys to date, Christopher D. Moody made at least the following transfers of money to Viking Oil:

| DATE | PAYEE | AMOUNT |
|---|---|---|
| 2/2/06 | Viking Oil & Gas, LLC | $600,000.00 |
| 4/10/06 | Viking Oil & Gas, LLC | $400,000.00 |
| 4/11/07 | Viking Oil & Gas, LLC | $666,666.66 |
| | | |
| | TOTAL: | $1,666,666.66 |

19. The funds invested in Viking Oil were used to purchase an investment interest in Quest Energy Management Group, Inc. ("Quest"). Between February 2006 and April 2007, through Viking Oil, Neil and Chris Moody invested $4 million with Quest. (*See* register, general ledger, and deposit tickets, collectively attached hereto as **Exhibit C**.) Therefore, Viking Oil has significant value, and it is important for me to secure control of this asset.

20. I have advised both Neil V. Moody and Christopher D. Moody of the relief sought in the Fifth Motion to Expand Scope of Receivership to include Viking Oil, which is

being filed contemporaneously with this Declaration, and they have no objection to the relief sought therein (though the Moodys make no admissions as to the factual statements herein).

## Conclusion

21. The Investment Managers' income was derived from the on-going fraudulent scheme. The Investment Managers made payments to Neil V. Moody and Christopher D. Moody. Those payments were used to fund Viking Oil. Because Viking Oil was funded with proceeds of the scheme, and because its investment interest in Quest would be valuable to the Receivership estate, the scope of the Receivership should be expanded to include Viking Oil.

I declare under the penalty of perjury that the foregoing is true and correct and is executed this 14th day of July, 2009.

_____
Burton W. Wiand, as Receiver
c/o FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd.
Suite 1700
Tampa, FL 33602
Tel. 813.228.7411
Fax 813.229.8313
bwiand@fowlerwhite.com