UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                          Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

    Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT,

    Relief Defendants.
_____/

### RECEIVER'S MOTION TO ENJOIN STATE COURT PROCEEDINGS AND FOR POSSESSION OF JEWELRY

Pursuant to Rule 66 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651, and Rule 3.01 of the Local Rules for the Middle District of Florida, Burton W. Wiand, as Receiver, moves the Court for an order (1) permanently enjoining court proceedings in *Paolino v. Neil V. Moody and Christopher D. Moody*, Case No. 2009-ca-001876 (Cir. Ct. 12th Judicial Cir., Sarasota County, Fla.) (the "**Paolino Proceeding**"), to the extent that the plaintiff in that action seeks to recover assets that were acquired with the proceeds of the

fraudulent scheme that underlies this case; and (2) for ownership and possession of the jewelry described herein (the "**Jewelry**"), which is currently held by a receiver appointed in the Paolino Proceeding.

The Receiver files contemporaneously with this motion an affidavit of Christopher D. Moody and Neil V. Moody (the "**Moody Affidavit**"). Notably, neither Christopher D. Moody nor Neil V. Moody (collectively, the "**Moodys**") objects to the relief sought in this motion. (Moody Aff. ¶ 8.) The evidence submitted by the Receiver in this motion and in the affidavit establishes that the Jewelry was purchased with proceeds of the fraudulent scheme that underlies this case. Therefore, the Receiver seeks ownership and possession of this Jewelry for the benefit of defrauded investors. As explained below, this necessitates a stay of the Paolino Proceeding to the extent that plaintiff seeks to recover assets funded with proceeds of the fraudulent scheme which underlies this case. Without such a stay of litigation and transfer of the Jewelry, Paolino would recover at the expense of all other defrauded investors. Such recovery would result in unlawful preferential treatment of Paolino.

**Background**

Documents previously filed in this Securities & Exchange Commission enforcement action (the "**Commission Proceeding**") set forth the details of the fraudulent investment scheme that underlies this action (the "**scheme**"). (*See, e.g.*, Receiver's 3d Interim Report dated August 17, 2009 (Doc. 176); Receiver's Declaration dated January 26, 2009 (Doc. 16).) On January 21, 2009, the Court appointed Burton W. Wiand as Receiver over Relief Defendants Valhalla Management, Inc. ("**Valhalla Management**"); Valhalla Investment

Partners, L.P. ("**Valhalla Investment Partners**"); Viking Management, LLC ("**Viking Management**"); Viking Fund, LLC ("**Viking Fund**"); and Viking IRA Fund, LLC ("**Viking IRA Fund**").[1] (Order Appointing Receiver (Doc. 8).) These entities are referred to hereinafter as the "**Business Entities**". The Receiver's investigation revealed that the Moodys were officers of Receivership Entity Valhalla Management, which was the general partner of Valhalla Investment Partners. The Moodys were also co-managing members of Receivership Entity Viking Management, which was the managing member of Viking Fund and Viking IRA Fund. (*See also* Moody Aff. ¶ 2.)

The Moodys received from the Business Entities a combination of performance allocations and management fees (the "**Fees**"). Previous filings in the Commission Proceeding demonstrate that the Fees received by the Moodys were used to purchase a number of assets, including an investment interest in Quest Energy Management Group, Inc., through Viking Oil & Gas, LLC (*see* Docs. 151, 152, 153), and stock and notes related to Bonds.com Group, Inc. (*see* Docs. 154, 166, 169). (*See also* Receiver's 3d Interim Report (Doc. 176) § V.E.)

The Receiver's investigation, aided with the cooperation and assistance of the Moodys, also revealed the Moodys invested $400,000 in Queen's Wreath Jewels, Inc. ("**Queen's Wreath**"), a jewelry store in Sarasota, Florida, with each of the Moodys receiving

---

[1] The Court also has appointed Burton W. Wiand as Receiver over Scoop Capital, LLC; Scoop Management, Inc.; Scoop Real Estate, L.P.; Victory IRA Fund, Ltd.; Victory Fund, Ltd.; Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; the Laurel Mountain Preserve Homeowners Association, Inc.; the Guy-Nadel Foundation, Inc.; Lime Avenue Enterprises, LLC; A Victorian Garden Florist, LLC; Viking Oil & Gas, LLC; and Home Front Homes, LLC. (Docs. 8, 17, 44, 68, 79, 140, 153, and 172.)

a 20% interest in Queen's Wreath. (Moody Aff. ¶ 4.a; Moody Aff. Exs. B, C.) The Moodys also made a series of loans to Queen's Wreath. (Moody Aff. ¶ 4.b; Moody Aff. Ex. B.) Further, the Moodys loaned an additional $750,000 to Queen's Wreath for the purchase of the Jewelry. (Moody Aff. ¶ 4.c; Moody Aff. Exs. A, B.) The funds the Moodys invested in and loaned to Queen's Wreath were proceeds of the scheme. (*See* Moody Aff. Ex. B; *see also* Receiver's 3d Interim Report (Doc. 176) § V.E.3.)

Queen's Wreath sold a portion of the Jewelry,[2] and it paid down the $750,000 loan to $659,235. (*See* Moody Aff. ¶ 4.c ; Moody Aff. Ex. B.) The other loans had a collective balance due of $97,835.20. (*See id*.) On or about April 7, 2009, Queen's Wreath transferred ownership of the remaining Jewelry to the Moodys in exchange for their interest in the company and in satisfaction of all outstanding loans. (*See* Moody Aff. Exs. B, D.) This transfer was conditioned on Queen's Wreath retaining the Jewelry on consignment and receiving a commission in connection with the sale of any of that jewelry. (*See id*.)

On or about February 4, 2009, Louis D. Paolino, Jr., an investor in the scheme, commenced the Paolino Proceeding against the Moodys seeking to recover damages arising from that scheme. A copy of the Complaint in the Paolino Proceeding is attached hereto as **Exhibit 1**. On February 11, 2009, on Paolino's motion, the circuit court appointed Robert Elliott "as receiver for the purpose of holding and managing those assets identified in the attached Inventory."[3] Mr. Elliott is referred to in this motion as the "**Paolino Receiver**." A copy of the order appointing the Paolino Receiver is attached hereto as **Exhibit 2**. Upon

---

[2] The sold items do not appear on Exhibit A to the Moody Affidavit.

[3] The "Inventory" is the same document attached as Exhibit A to the Moody Affidavit.

4

information and belief, the Jewelry is currently being held in a safe deposit box, to which the Paolino Receiver and counsel for Queen's Wreath have keys.

**Memorandum in Support**

The Court's power to stay the Paolino Proceeding is derived from (1) the All Writs Act (28 U.S.C. § 1651) and (2) the inherent powers of an equity court to fashion relief. *See generally SEC v. Credit Bancorp, Ltd.*, 93 F. Supp. 2d 475 (S.D.N.Y. 2000).

The All Writs Act empowers United States District Courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). An injunction of a state court proceeding falls within the scope of the All Writs Act. *See, e.g., Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002). Although the Anti-Injunction Act (28 U.S.C. § 2283) sometimes precludes a district court from enjoining state court proceedings, injunctions sought by receivers in SEC enforcement actions are often exempt from such preclusion. *See, e.g., Credit Bancorp, Ltd.*, 93 F. Supp. 2d at 476 (granting the receiver's motion for an order under the All Writs Act and the inherent power of the Court to stay a competing state court proceeding); *see also SEC v. Wencke*, 577 F.2d 619, 622-23 (9th Cir. 1978) (enjoining further proceedings in a related state-court receivership because doing so "was necessary for the [federal] receivership to achieve its purposes"). Pursuant to a federal court's inherent power under the All Writs Act, "a federal court may enjoin actions in other jurisdictions that would undermine its ability to reach and resolve the merits of the dispute before it." *Credit Bancorp, Ltd.*, 93 F. Supp. 2d at 476 (internal quotation marks omitted).

Independently of the All Writs Act, the Court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C. Cir. 1989). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Id.* at 1566 (citing *SEC v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 372 (5th Cir. 1982)). The purpose of establishing a receivership is "to protect the estate property and ultimately return that property to the proper parties in interest," and a receiver is vested with the duty and authority to marshal and preserve assets to effectuate an orderly, efficient, and equitable administration. *Credit Bancorp, Ltd.*, 93 F. Supp. 2d at 476-77; *see also* 28 U.S.C. § 754 (noting that a receiver "appointed in any civil action or proceeding involving property . . . shall be vested with complete jurisdiction and control of all such property with the right to take possession thereof."). "Such efforts would be rendered meaningless if third parties are permitted to obtain judgments against the estate and thereby deplete its assets." *Id.* at 477 (internal quotation marks omitted). Therefore, a district court presiding over an equity receivership in a Commission enforcement action has the power to stay "competing actions." *Id.*

As in *Credit Bancorp*, this Court's Order Appointing Receiver requires the Receiver to "marshal and safeguard all of the assets of the Receivership Entities and take whatever actions are necessary for the protection of the investors." (Doc. 8). The Order expressly states:

> In the event that the Receiver discovers that funds of persons who have invested in the Corporate Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable,

> extending this receivership over any person or entity holding such investor funds.

(Doc. 8 ¶ 24.) Here, the Jewelry was purchased with investor funds and would add significant value to the Receivership estate. (*See* Moody Aff. Ex. B.) Marshalling and safeguarding the Jewelry are necessary to protect all investors and to preserve the assets' value.

The Receiver is acting for the benefit of all defrauded investors, including Paolino, while Paolino, by instituting a separate action, is acting solely for his own benefit. Allowing Paolino to proceed with his action and the Paolino Receiver to liquidate the Jewelry would provide Paolino with all of the benefit of the assets funded with proceeds of the scheme at the expense of all other defrauded investors. This would result in an improper preference to Paolino. *See, e.g.*, *SEC v. George*, 426 F.3d 786, 799 (6th Cir. 2005) ("'[E]quality is equity' as between 'equally innocent investors'. . . ." (citing the original "Ponzi scheme" opinion, *Cunningham v. Brown*, 265 U.S. 1, 13 (1924))); *see also SEC v. Elliott*, 953 F.2d 1560, 1570 (11th Cir. 1992).

The Paolino Proceeding prevents the Receiver from fulfilling his duties to marshal and safeguard the Jewelry, as well as any other assets purchased with proceeds of the scheme that the plaintiff in the Paolino Proceeding might seek to recover. In essence, the Paolino Proceeding is a "competing action" that may be enjoined to further the administration of the Receivership estate. *See Credit Bancorp, Ltd.*, 93 F. Supp. 2d at 477. Therefore, pursuant to the All Writs Act, (1) the Paolino Proceeding should be permanently enjoined to the extent that the plaintiff in that case seeks to recover assets that were purchased with proceeds of the

scheme, and (2) possession and ownership of the Jewelry should be transferred to the Receiver.

## LOCAL RULE 3.01(g) CERTIFICATION OF COMPLIANCE

The undersigned counsel for the receiver has conferred with counsel for the SEC, and the SEC does not object to the relief sought in this Motion.

Counsel for Paolino does object. In an effort to resolve this dispute and to obtain the voluntary transfer of the Jewelry to the Receiver, the Receiver offered to recommend to the Court that Paolino's reasonable attorney fees incurred in connection with the appointment of the Paolino Receiver to take possession of the Jewelry be treated as an administrative expense in this Receivership, and thus payable from funds held as part of the Receivership estate. However, Paolino's counsel rejected this proposal.[4]

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. This will send a Notice of Filing to all counsel who have appeared in this action, including Paolino's counsel, Morgan R. Bentley. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

---

[4] Based on previous statements by Paolino's counsel to the press and the Receiver, it is likely that he will complain that the Receiver has not played an active role in acquiring the Moodys' assets and has otherwise not been diligent in pursuing the Moodys. These uninformed accusations would be wrong. The Receiver has diligently pursued a multitude of avenues, including the Moodys. In relevant part, those efforts led to an agreement that the Moodys will neither transfer any assets of value owned by them nor remove them from the state without prior written notice to the Receiver. (*See generally* 3d Interim Report § V.E.) They also led to the Moodys' cooperation with the Receiver to achieve an orderly, voluntary, and systematic transfer to the Receivership of the Moodys' assets that were acquired with proceeds of the scheme.

Arthur G. Nadel
Register No. 50690-018
Metropolitan Correctional Center, New York
150 Park Row
New York, NY 10007

I further certify that I mailed the foregoing document, its supporting affidavit, and the notice of electronic filing by first-class mail to the court presiding over the Paolino Proceeding at the following address:

The Honorable Charles E. Williams
2000 Main Street Room 108
Sarasota, Florida 34237

                                                        s/ Carl R. Nelson
Carl R. Nelson, FBN 0280186
cnelson@fowlerwhite.com
Gianluca Morello, FBN 034997
gianluca.morello@fowlerwhite.com
Maya M. Lockwood, FBN 0175481
mlockwood@fowlerwhite.com
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL 33601
T: (813) 228-7411
F: (813) 229-8313
Attorneys for the Receiver, Burton W. Wiand