UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                     Case No. 8:09-cv-87-T-26TBM

ARTHUR NADEL;
SCOOP CAPITAL, LLC;
SCOOP MANAGEMENT, INC.

       Defendants,

SCOOP REAL ESTATE, L.P.;
VALHALLA INVESTMENT PARTNERS, L.P.;
VALHALLA MANAGEMENT, INC.;
VICTORY IRA FUND, LTD.;
VICTORY FUND, LTD.;
VIKING IRA FUND, LLC;
VIKING FUND, LLC; AND
VIKING MANAGEMENT, LLC

       Relief Defendants.
_____/

### AFFIDAVIT OF CHRISTOPHER D. MOODY AND NEIL V. MOODY

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

       Christopher D. Moody and Neil V. Moody depose and say as follows:

       1.    We, Christopher D. Moody and Neil V. Moody, are adults and otherwise competent to make this affidavit, which we understand will be used by the Receiver, Burton W. Wiand, to support a motion (the "**Motion**") (1) to enjoin state court proceedings in *Paolino v. Neil V. Moody and Christopher D. Moody*, Case No. 2009-ca-001876 (Cir. Ct.

12th Judicial Cir., Sarasota County, Fla.) (the "**Paolino Proceeding**") and (2) for possession of the jewelry identified in the list attached hereto as **Exhibit A** (the "**Jewelry**"), which is currently held by a receiver appointed in the Paolino Proceeding.

2.   Until the time of the commencement of this Receivership on January 21, 2009, we were officers of Valhalla Management, which was the general partner of Valhalla Investment Partners. We were also co-managing members of Viking Management, which was the managing member of Viking Fund and Viking IRA Fund. These five entities are referred to collectively as the "**Business Entities**."

3.   We received from the Business Entities a combination of performance allocations and management fees (the "**Fees**").

4.   We entered into a number of agreements and transactions with Queen's Wreath Jewels, Inc. ("**Queen's Wreath**"). Queen's Wreath operates as a jewelry store in Sarasota, Florida. As detailed in the Transaction Summary attached hereto as **Exhibit B**, we purchased stock from, made loans to, and purchased jewelry from Queen's Wreath.

    a.   **Stock.** On or about January 31, 2006, we executed a Stock Issuance Agreement with Tina T. Little, President and shareholder of Queen's Wreath. A true and correct copy of the Stock Issuance Agreement is attached hereto as **Exhibit C**. Under that agreement, we each purchased 20% (200 shares) of outstanding stock in Queen's Wreath for $200,000. As a result of this $400,000 total investment, we each received a 20% interest in Queen's Wreath.

b. **Loans.** Between March 7, 2006, and July 6, 2006, Christopher D. Moody made three loans to Queen's Wreath. Those loans totaled $96,738.00 and operated as a line of credit from which Queen's Wreath would draw. On or about January 1, 2008, the line of credit was lowered to $61,095.75. (Ex. B at 1.) Neil V. Moody also loaned $36,739.45 to Queen's Wreath. (Ex. B at 3.)

c. **Jewelry.** Between January 14, 2008, and July 30, 2008, we each paid $375,000.00 (totaling $750,000.00) to Queen's Wreath as a loan to purchase an inventory of jewelry. Subsequently, Queen's Wreath made payments totaling $45,382.50 to each of us (totaling $90,765.00), which reduced the balance of each of our loans for purchase of the jewelry inventory to $329,617.50. (Exs. A, B.) Therefore, the total balance of the loans to purchase jewelry inventory owed to us was $659,235.00.

5. On or about April 7, 2009, we executed an Agreement to Transfer Stock and Mutual Release (the "**Transfer Agreement**"). A true and correct copy of the Transfer Agreement is attached hereto as **Exhibit D**. Pursuant to the Transfer Agreement, we transferred our stock in Queen's Wreath to Tina Little; released Queen's Wreath from liability for the monies owed to us for prior loans; and released Queen's Wreath from liability for the $659,235.00 it borrowed from us to purchase the Jewelry. (Ex. D at 2.)

6. The Transfer Agreement also acknowledges that Queen's Wreath

a. holds the Jewelry as a consignee for us;

    b.  will, subject to the Sarasota Court's approval, hold the Jewelry for sale in the ordinary course of business; and

    c.  will hold the proceeds of any sales of the Jewelry, "less the consignment fee of twenty (20%) percent to be disbursed as directed by a Court of competent jurisdiction."

  7.  Upon information and belief, the jewelry is currently being held in a safe deposit box, to which the receiver in the Paolino Proceeding and counsel for Queen's Wreath have keys.

  8.  We have no objection to and support the Receiver's Motion.

**[signatures on following page]**

We declare under penalty of perjury that the foregoing is true and correct.

_____
Christopher D. Moody

8/24/09
_____
Date executed


_____
Neil V. Moody

8/20/09
_____
Date executed