UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,
Plaintiff,

v.  CASE NO. 8:09 cv 87-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

      Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD.,
VICTORY FUNDS, LTD.,
VIKING IRA FUND, LLC,
VIKING FIND, LLC,
VIKING MANAGEMENT,
VENICE JET, LLC, and
TRADEWIND, LLC.

      Relief Defendants.
_____/

## LOUIS PAOLINO'S RESPONSE TO RECEIVER'S MOTION TO ENJOIN STATE COURT PROCEEDINGS AND FOR POSSESSION OF JEWELRY

LOUIS PAOLINO ("Paolino") responds to Receiver's Motion To Enjoin State Court Proceedings And For Possession Of Jewelry filed on August 25, 2009 and states as follows:

    1. The Reciever's Motion is legally wrong, procedurally deficient, and factually incorrect.

A. **Priority Between Receiverships**

2. On February 10, 2009, the Honorable Charles Williams, Circuit Court Judge of the Twelfth Judicial Circuit, appointed Robert Elliott as Receiver in the case of Paolino v. Moody, Case No. 2009 CA 001876 NC.

3. Subsequent to Judge Williams' Order, Elliott took possession of the jewelry at issue in this case and obtained a Receiver's Bond.

4. As Florida's Second District Court of Appeal explains, receiverships are extensions of the court itself. See Edenfield v. Crisp, 186 So. 2d 545, 549 (Fla. 2d DCA 1966). It is not Paolino, or any other person, who is in control of this jewelry; it is the Twelfth Judicial Circuit of the State Court of Florida.

5. Accordingly, the issue this Court is faced with is which of two competing receiverships take priority.

6. The United States Supreme Court has spoken on the issue of priority between state and federal court receiverships. As between a state and federal court, the receiver who first takes possession controls the property. See Harkin v. Brundage, 276 U.S. 36, 48 S. Ct. 268, 75 L. Ed. 457 (1928). All issues relating to the subject property must be addressed by the first appointing court. See Malloy v. Gunster, Yoakley, Valdes-Fauli, and Stewart, P.A., 850 So.2d 578, 581 (Fla. 2d DCA 2003).

7. As stated by the U.S. Supreme Court:

> The principle which should govern in a conflict of jurisdiction like this has been a number of times stated by the court. As between two courts of concurrent and coordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do so, because it may not have obtained prior physical possession by its receiver of the property in dispute; but where the jurisdiction is not the same or

> concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction.

See Harkin, 276 U.S. at 43.

8. In this case, 1) Paolino filed first; and 2) the state court receiver Elliot took possession first. Under either scenario outlined in Harkin, then, the state court receivership has priority.

9. This principle is well-established. It was earlier established by the U.S. Court of Appeals for the Fifth Circuit:

> When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment with invades or disturbs the possession of the property while it is in the custody of the court which has seized it.

See Empire Trust Co. v. Brooks, 232 F. 641, 644 (5th Cir. 1916).

10. This principle also acknowledged (as it must be) by Florida's Second District Court of Appeal:

> When a state and federal court have concurrent jurisdiction over the same parties and the same subject matter, the court in which jurisdiction first attached should determine the controversy and decide every issue properly raised in the case before it.

See Mallory, 850 So.2d at 581.

11. This principle has also been adopted by leading treatise writers. See e.g. Wright and Miller, Federal Practice and Procedure, §2985 (2009):

> In other words, all rights to the property in question must be adjusted by the appointing court for so long as it has jurisdiction, which is until the receivership is terminated.

12. Therefore, for these reasons, the Receiver has no legal right to impose priority of its receivership on to the pre-existing state court receivership.

**B.     Procedural Shortcomings**

13. The Motion also lacks a vital procedural element. As previously raised by LandMark Bank in its earlier objections, <u>the Moodys are not a party to the Federal Receivership or subject to any claims in the operative Complaint</u>. While the general public and Receiver Wiand regularly blur these distinctions, the Moodys are neither a Defendant nor a Relief Defendant in the pending action. Even in a court of equity, one cannot impose remedies pursuant to non-existent causes of action.

14. A receivership is a pre-judgment remedy. All of a receivership's assets are subject to an eventual trial against defendants who may wish to interpose defenses. While Art Nadel may not choose to interpose defenses, the Moodys (or other entities that may be enjoined), very well may do so. But to do so, the Moodys must first be made a part of the action and have a cause of action pled against them. It is irrelevant whether or not the Moodys agree or disagree with the Receiver's pending Motion. <u>See</u> <u>Edenfield,</u> 186 So. 2d at 598.

15. What Receiver Wiand is attempting to do is to use a pre-judgment remedy against Art Nadel to seize assets from Chris and Neil Moody. However, it does so at the expense of those who have independent claims against the Moodys. This is the very definition of a violation of due process.

16. At bottom, Receiver Wiand is attempting to have the proverbial "cake and eat it too". Neither the Securities and Exchange Commission nor the U.S. Attorney's Office have made any claims against the Moodys, yet they wish for this Court to exercise jurisdiction over the Moodys by taking their assets. At the same time, the Moody-fund investors have claims

against the Moodys that are separate and apart from any actions against Art Nadel. These claims include a breach of fiduciary duty and the like. Yet, the relief requested by Receiver Wiand's Motion eviscerates the investors' ability to prosecute their claims. Because the Moodys are neither Defendants nor Relief Defendants, the Court has no jurisdiction to strip the investors of their right to proceed with an independent action for relief against the Moodys, whether the relief sought is pre- or post-judgment.

17. Therefore, until claims are made against the Moodys in the operative Complaint, the Court cannot exercise jurisdiction over them by granting pre-judgment relief as to their assets.

**C.  Jewelry at Issue is Not the Moodys'**

18. The recently filed affidavit of Chris and Neil Moody demonstrates that Receiver Wiand's Motion is factually incorrect and that Receiver Wiand's is attempting to seize property that is actually owned by Queen's Wreath Jewels, Inc. ("Queen's Wreath") not by the Moodys as Wiand claims.

19. The Moody affidavit establishes that Queen's Wreath owns the jewelry. According to the affidavit, Queen's Wreath borrowed $675,000 from the Moodys to purchase the jewelry. In exchange the Moodys took a $675,000 note from Queen's Wreath.

20. The affidavit shows that the Moodys then released the $675,000 loan:

> **RELEASE:** The Moodys release the corporation [Queen's Wreath] from any liability for sums loaned by the Moodys to the corporation <u>including but not limited to the approximate $675,000 used for the purchase of the jewelry described on Exhibit "B"</u> and the sum of approximately $112,929 owed to Chris Moody and $22,492 owed to Neil Moody for other loans made by the Moody's to the corporation from time to time.

21. Given this Release, the Moodys no longer hold a note from Queen's Wreath. Even if the jewelry was collateral for the note (for which no evidence exists) that lien is gone.

22. Based on the Moody affidavit, the party in ownership of the jewelry is <u>Queen's Wreath</u>. There is not even a note owed to the Moodys – it was released. The jewelry at issue is one step removed even from the Moodys themselves and further highlights the inappropriateness of the Receiver's Motion.

23. One final comment is that Paolino's arguments apply not just to Paolino's state court receivership, but to all those investor members of Viking IRA, Viking Fund, LLC, and Valhalla Investment Partners, LP. In none of those entities was Art Nadel the managing member, or even a partner. Instead, they were managed by the Moodys. To summarily lump these parties together without any allegation against the Moodys in the currently pending Complaint before this Court is to prejudice an entire class of investors who have independent claims against the Moodys.

WHEREFORE, the Receiver's Motion should be denied for the following reasons:

- Case law dictates that the receivership court first in possession of property should hear all issues related to that property;
- The SEC Complaint has made no claims against the Moodys;
- Even if the above two statements were not true, the Moodys' own affidavit reflects that the jewelry at issue is owned by Queen's Wreath and not the Moodys, nor does Queen's Wreath owe money to the Moodys.

## MEMORANDUM

"A district court has broad powers and wide discretion to determine the appropriate relief in equity receivership." As a result, a district court may use summary, or abbreviated,

procedures in receivership cases. <u>Securities and Exchange Commission v. Elliot</u>, 953 F. 2d 1560, 1566 (11th Cir. 1992), <u>rev'd in part on other grounds</u> 998 F.2d 922 (11th Cir. 1993). However, such does not mean an absence of procedure at all, nor does it allow due process to be eliminated. <u>Id</u>. The Receiver's current motion is nothing more than a request to use summary proceedings to violate Paolino's due process rights.

The Receiver's request for the court to summarily order the transfer of assets owned by the Moodys over to the Receiver is the type of deprivation of property rights that cannot be countenanced. "Summary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses." <u>Id</u>. at 1567.

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2009, I electronically served the foregoing with the Clerk of the Court by using the CM/ECF system. . I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Arthur G. Nadel Register No. 50690-018
Metropolitan Correctional Center, New York 150 Park Row
New York, NY 10007

The Honorable Charles E. Williams
Lynn N. Silvertooth Judicial Center
2002 Ringling Blvd.
Sarasota, Florida 34237

/s/ Morgan R. Bentley
Morgan R. Bentley, Esq.
Florida Bar No. 0962287
200 S. Orange Avenue
Sarasota, Florida 34236
941-329-6624 (telephone)
941-552-7172 (facsimile)
mbentley@williamsparker.com
Attorneys for Louis Paolino

1036277_1.docx