UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                    Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL;
SCOOP CAPITAL, LLC;
SCOOP MANAGEMENT, INC.;

        Defendants,

SCOOP REAL ESTATE, L.P.;
VALHALLA INVESTMENT PARTNERS, L.P.;
VALHALLA MANAGEMENT, INC.;
VICTORY IRA FUND, LTD.;
VICTORY FUND, LTD.;
VIKING IRA FUND, LLC;
VIKING FUND, LLC; AND
VIKING MANAGEMENT, LLC

        Relief Defendants.
_____/

**RECEIVER'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO ENJOIN
STATE COURT PROCEEDINGS AND FOR POSSESSION OF JEWELRY**

Burton W. Wiand, as Receiver (the "**Receiver**"), by and through his undersigned counsel, files this reply memorandum (the "**Reply**") in support of the Receiver's motion to enjoin state court proceedings and for possession of jewelry (the "**Motion**"; Doc. 177). Louis Paolino, the plaintiff in *Paolino v. Moody, et al.*, Case No. 2009 CA 1876 NC (12th Jud. Cir. Sarasota County, Fla.) (the "**Paolino Proceeding**"), opposes the Motion (*see* the "**Response**"; Doc. 181), and seeks to have the jewelry at issue (the "**Jewelry**") remain in possession of the state-court receiver, Robert Elliott (the "**Paolino Receiver**"). However, Paolino was one investor among

hundreds in the fraudulent scheme that underlies this action and is not entitled to a preference over the other investors.

Indeed, what Paolino seeks to do would severely undermine this and every other SEC receivership. He seeks a ruling allowing him to proceed with his attempts to recover his claimed damages from the fraudulent investment scheme underlying this receivership through assets purchased with the proceeds of that scheme. If allowed to do so, then all defrauded investors would have a right to pursue those same assets for their personal benefit, and the resulting "free-for-all" would attack the same assets the Receiver has been charged with recovering for the benefit of <u>all</u> defrauded investors.[1] In other words, investors' piecemeal "free-for-all" litigation efforts would directly and substantially interfere with, and thus subvert, this Receivership. *See, e.g.*, *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985) (noting that injunction orders are necessary to "prevent[] piecemeal resolution of issues that call for a uniform result"); *see also Liberte Capital Group, LLC v. Capwill*, 148 Fed. App'x 426, 431 (6th Cir. 2005) (affirming district court's refusal to trace investor assets, even when doing so was possible); *SEC v. Elliott*, 953 F.2d 1560, 1570 (11th Cir. 1992) ("[S]ince the[] creditors occupied the same legal position as other creditors, equity would not permit them a preference; for equality is equity." (internal quotations omitted)).

## Background

The details of the fraudulent investment scheme that underlies this action (the "**scheme**") are set forth in previous pleadings. (*See, e.g.*, Receiver's Decl. dated July 14, 2009 (Doc. 152).)

---

[1] Paolino's counsel already has filed another lawsuit on behalf of two other investors in Nadel's scheme, *Bell, et al. v. Moody, et al.*, Case No. 2009 CA 014378 (12th Jud. Cir. Sarasota County, Fla.) (the "**Bell Proceeding**"). The Bell Proceeding also seeks assets that were acquired with Receivership funds and thus will interfere with the Receivership. The Receiver is preparing to file a motion to enjoin that action. All arguments discussed herein and in the Motion would apply with equal force to the Bell Proceeding.

From at least 2003 until the time of the commencement of the Receivership on January 21, 2009, Christopher D. Moody and Neil V. Moody (collectively, the "**Moodys**") were officers of Valhalla Management, Inc., which was the general partner of Valhalla Investment Partners, L.P., and also were co-managing members of Viking Management, Inc., which was the managing member of Viking Fund, LLC, and Viking IRA Fund, LLC. These five entities are referred to collectively as the "**Business Entities**." All of these entities are in receivership. The Moodys received from the Business Entities a combination of performance allocations and management fees (the "**Fees**"). (*Id*. ¶ 3.)

On January 21, 2009, the Court appointed Burton W. Wiand as Receiver and directed him to "take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver (Doc. 8) at 2.) He was reappointed by order dated June 3, 2009. (Order Reappointing Receiver, Doc. 140.) The Order Reappointing Receiver requires the Receiver to apply to the Court for possession of any "funds of persons who have invested in the Receivership Entities [that] have been transferred to other persons or entities . . . ." (Order Reappointing Receiver ¶ 23.) It also enjoined all persons from disturbing property that relates to this Receivership:

> Without prior permission from this Court, during the period of this receivership all persons, including . . . investors, or others, . . . with actual notice of this Order, are enjoined. . . from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the Receivership Entities . . . .

(*Id*. ¶ 15.)

The evidence submitted by the Receiver in his Motion, this Reply, and the Affidavit of Christopher D. Moody and Neil V. Moody in support of the Motion (the "**Moody Affidavit**"; Doc. 178) establishes that the Jewelry was purchased with the Fees, which were proceeds of the

scheme. The order appointing the Paolino Receiver, dated February 10, 2009, confirms that Jewelry was purchased with proceeds of the scheme. (Mot. (Doc. 177) Ex. 2 ¶¶ 7-13.)

<u>Argument</u>

I. **THE FEDERAL DISTRICT COURT HAS JURISDICTION OVER THE JEWELRY.**

Paolino asserts that the Motion is "legally wrong." (Resp. ¶ 1.) However, all but one of the cases Paolino cites that address the Court's authority to enjoin the Paolino Proceeding <u>precede</u> the enactment of the All Writs Act – the precise statute upon which the Motion is based. 28 U.S.C. § 1651; *see Harkin v. Brundage*, 276 U.S. 36 (1928); *Empire Trust Co. v. Brooks*, 232 F. 641 (5th Cir. 1916).[2] To the extent those cases discuss a federal court's power to enjoin a state-court proceeding, they do not consider the pivotal intervening impact of the All Writs Act, which confers upon all federal courts the power to enjoin other proceedings, including those in state court. Even if those cases do apply, they would support the Receiver's motion rather than Paolino's position.

A. **The Court Has the Authority to Enjoin the Paolino Proceeding Because that Action Continues to Interfere with the Receivership and to Undermine the Receiver's Efforts.**

This Court's authority is well established. As mentioned in the Receiver's Motion, the All Writs Act gives this Court the power to enjoin the Paolino Proceeding. 28 U.S.C. § 1651(a); *see also SEC v. Credit Bancorp, Ltd.*, 93 F. Supp. 2d 475 (S.D.N.Y. 2000); *SEC v. Wencke*, 577 F.2d 619, 622-23 (9th Cir. 1978) ("***Wencke I***"); *SEC v. Wencke*, 622 F.2d 1363, 1370 (9th Cir. 1980) ("***Wencke II***"). Specifically, "[f]ederal Courts have the power, if necessary, to . . . impose a receivership free from interference in other court proceedings." *Eller Indus., Inc. v. Indian*

---

[2] The third case, *Malloy v. Gunster, Yoakley, Valdes-Fauli, and Stewart, P.A.*, 850 So. 2d 578 (Fla. 2d DCA 2003), is easily distinguished because, *inter alia*, it considered a state court's power to enjoin proceedings, which, as a result, does not implicate the All Writs Act.

*Motorcycle Manufacturing, Inc.*, 929 F. Supp. 369, 372 (D. Colo. 1995) (citing *Wencke II* and finding that the federal district court had "exclusive jurisdiction" with respect to the administration, possession, and control over receivership assets).

> [W]here a court has appointed a receiver and obtained jurisdiction over the receivership estate, as here, the power to stay competing actions falls within the court's inherent power to prevent interference with the administration of that estate. The power of a receivership court to prevent the commencement, prosecution, continuation, or enforcement of such actions has been recognized specifically in the context of securities fraud cases.

*Credit Bancorp*, 93 F. Supp. 2d at 477 (citations omitted) (finding that allowing the separate action to proceed "would thwart this Court's January 21 order directed at obtaining an orderly and equitable administration of the estate").

"[T]he preservation of the receivership estate is paramount." *SEC v. Pittsford Capital Income Partners, LLC*, 2007 WL 61096, *2 (W.D.N.Y. Jan. 5, 2005) (denying judgement creditors' motion to terminate preliminary injunction and to permit enforcement of state-court judgment where the motion would have allowed them to proceed to enforce prior judgment against receivership assets); *see also Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654(5th Cir. 1985) (noting appellate decisions that have "upheld orders enjoining broad classes of individuals from taking any action regarding receivership property"); *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2007) (noting that "the court's power of injunction in a receivership proceeding arises from its power over the assets in question").

The Paolino Proceeding continues to "interfere with the administration of [a receivership] estate" because it is causing (and, in the future, may cause) valuable assets that were indisputably purchased with proceeds of the scheme to be withheld from the Receiver and, in turn, from hundreds of defrauded investors for the benefit of a single investor, Paolino. *See Wencke II*, 622 F.2d at 1370. If the Paolino Proceeding reaches a final judgment in favor of Paolino, those assets

(including the Jewelry) would be distributed to a single investor at the expense of all other defrauded investors. Therefore, the Jewelry should be transferred to the Receiver and the Paolino Proceeding should be enjoined to the extent it involves any other efforts to recover assets traceable to proceeds of the scheme underlying this case.

## B. The Cases Paolino Cites Support a Stay of the Paolino Proceeding.

Even if the cases Paolino relies upon do apply here, they establish that Wiand, as the first-appointed receiver, is entitled to the Jewelry (and all other assets traceable to proceeds of the scheme). Paolino relies on *Harkin v. Brundage*, 276 U.S. 36, 43 (1928), to argue that "the receiver who first takes possession controls the property . . . ." (Resp. ¶¶ 6-8.) Paolino misapplies *Harkin*. When, as here, there are two "competing receiverships" in two courts of concurrent and coordinate jurisdiction, it is irrelevant which court first obtains actual possession of the property at issue.³ *Harkin*, 276 U.S. at 43. Instead, "the court which first obtains ***jurisdiction and constructive possession*** of property by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do so, because it may not have

---

³ "Concurrent and coordinate jurisdiction" means that the "the issues in the two suits are the same, and their subject-matter substantially identical . . . ." *Empire Trust*, 232 F. at 645. Here, the Paolino Proceeding is effectively a subset of the Commission Proceeding. Paolino's allegations are derived from precisely the same fraudulent scheme that underlies this action. The Paolino complaint (Mot. Ex. 1) alleges that "Viking [Fund, LLC,] was ultimately managed by Defendants ***in conjunction with others***." (Mot. Ex. 1 ¶ 1(emphasis added).) Those "others" are Nadel and the management companies through which Nadel operated the fraudulent investment scheme. The complaint also notes that Viking Fund, LLC – a Relief Defendant and Receivership Entity in this action – "was created and managed . . . for the express purpose of operating a fraudulent investment scheme . . . ." (Mot. Ex. 1 ¶ 6.) Again, that "fraudulent investment scheme" is the same scheme that underlies this SEC enforcement action. Paolino alleges that he relied on fraudulent misrepresentations related to a Receivership Entity's investment performance and suffered damages as a result. (*See generally id.*) These allegations are not unique to Paolino but also apply to every investor who was defrauded by the fraudulent investment scheme. *See also SEC v. Credit Bancorp, Ltd.*, 93 F. Supp. 2d 475, 477 (S.D.N.Y. 2000) (enjoining separate action because, *inter alia*, (1) the factual and legal issues were the same and would thus risk "duplicative discovery and inconsistent rulings," and (2) "the [SEC] action before this Court is a comprehensive one, whereas the [separate action] is not," noting a risk of piecemeal litigation).

obtained prior physical possession by its receiver of the property in dispute . . . ." *Id.* (emphasis added). The other cases Paolino cites are in accord. *See Empire Trust Co. v. Brooks*, 232 F. 641, 644 (5th Cir. 1916) ("'We think the law of this court is well established to be that jurisdiction over the property was acquired by the state courts when the receiver was appointed, the judicial process served, and the receiver duly qualified, although the . . . receiver had not taken actual possession of the property.'" (citing *Palmer v. Texas*, 212 U.S. 118, 129 (1909)); *see also Malloy v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A.*, 850 So. 2d 578, 581 (Fla. 2d DCA 2003). The last pertinent case cited by Paolino, *Edenfield v. Crisp*, 186 So. 2d 545, 549 (Fla. 2d DCA 1966), merely reiterates the principle that a receiver is an "agent of the Court" whose possession of receivership assets is also the court's possession.

The original, January 21, 2009, appointment of Wiand as Receiver gave this Court immediate jurisdiction and constructive possession over all assets acquired with investor funds, including the Jewelry. *See also Empire Trust*, 232 F. at 644. Based on well established jurisprudence and the appointment orders, (i) Wiand, as the first-appointed receiver, is entitled to possession of the Jewelry (and of all other assets acquired with proceeds of the scheme), and (ii) the Paolino Proceeding must be enjoined to the extent it interferes with the Receiver's efforts to recover assets traceable to proceeds of the scheme. *See also Empire Trust*, 232 F. at 644-45 ("The rule is without exception that the actual or constructive possession of one court through its receiver cannot be disturbed by another of concurrent jurisdiction . . . .").

II. **SUMMARY PROCEEDINGS ARE APPROPRIATE HERE BECAUSE THERE IS NO FACTUAL DISPUTE AND PAOLINO IS NOT ENTITLED TO A PREFERENCE OVER OTHER INVESTORS.**

Paolino asserts that the Motion is "procedurally deficient" and "factually incorrect." (Resp. ¶ 1.) These arguments are intertwined because the process that is due to Paolino depends on the extent to which there is a factual dispute. *See SEC v. Elliott*, 953 F.2d 1560, 1566 (11th

Cir. 1992) ("[A] hearing is not required if there is no factual dispute."). Summarily resolving the limited issue raised by the Motion is within the power of the Court and is appropriate under these facts at this stage of the proceedings. *Id*. at 1571. "[S]ummary proceedings do not per se violate claimants' due process interest." *Id*. Here, the Receiver has filed specific, competent evidence establishing that the Jewelry was purchased with proceeds of the scheme. In response, Paolino makes a few conclusory "factual" assertions but offers no evidence in support. Paolino's dearth of evidence, alone, supports the use of summary proceedings because it establishes there is no factual dispute.[4]

More broadly, investors in the scheme (like Paolino) are not entitled to preferential treatment even when they are able to trace their own investment dollars to specific assets. "[I]n the context of [a] receivership, the remedy of restitution to various investors seeking to trace and reclaim specific assets as originating with them is disallowed as an inappropriate equitable remedy." *Elliott*, 953 F.2d at 1569 (citations omitted). Equity does not permit a preference among creditors who are victims of a Ponzi scheme; "equality is equity." *Id*. at 1570 (internal quotation marks omitted). Here, the Receiver's investigation has revealed that "Nadel treated the Hedge Funds as a single source of money regardless of the Hedge Fund with which investors purportedly invested." (3d Interim Report (Doc. 176) at 15.) Therefore, it would be a fiction and inappropriate to try to separate Paolino's claim from those of other investors simply because

---

[4] Paolino also asserts the Jewelry is not owned by the Moodys and cites only to the clause in the transfer agreement that "releases" the amount originally owed to the Moodys. (Resp. ¶¶ 18-22.) However, the transfer agreement, which is attached to the Moody Affidavit, provides that the Moodys released the amount originally owed to them by Queen's Wreath Jewelry, Inc., in consideration for Queen's Wreath's (i) removal of the Jewelry from its books and (ii) holding the Jewelry on <u>consignment</u> for the Moodys. (*See* Moody Aff. Ex. D (Doc. 178-5) at 1.) A transfer of custody of the Jewelry does not equal a transfer of ownership of the Jewelry. In any event, ownership of the Jewelry is irrelevant to the Court's determination of the Motion; the salient issue is the source of money used to purchase the Jewelry. For this reason, Paolino's contention that the Motion must be denied because the Moodys are not parties to this case is wrong.

he invested in Receivership hedge funds for which the named principals of the general partners were the Moodys. Paolino's claim, if any, will be determined at the appropriate time in the appropriate context, along with <u>all</u> other claims, including <u>all</u> claims arising from investments in the same Receivership hedge funds in which Paolino invested: the Receivership claims process to be established under the supervision of the Court with full consideration of Paolino's (and all other claimants') due process rights. *See also United States v. Petters*, 2008 WL 5234527, *4 (D. Minn. Dec. 12, 2008) ("Without question, once the receivership estate is completed and a distribution is contemplated, there will come a time for those claiming an interest in assets subject to the receivership to make arguments regarding what preferences those interests should have in the distribution scheme. But first, the receiver ***must be given full opportunity to marshal the assets of the receivership estate and then preserve them***." (citing *Credit Bancorp*, 93 F. Supp. 2d at 477) (emphasis added)).

### III. THE TRANSFER OF THE PROCEEDS OF THE SALE OF JEWELRY TO PAOLINO WOULD BE A FRAUDULENT TRANSFER.

Even if the Paolino Receiver were able to liquidate the Jewelry for Paolino's benefit, the transfer of those proceeds to Paolino would be a fraudulent transfer under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, *et seq*. ("**FUFTA**"), and thus recoverable by the Receiver. As part of Nadel's scheme, the investment managers, including Receivership Entities Valhalla Management, Inc., and Viking Management, LLC, charged fees to and collected fees from the hedge funds, including Receivership Entities Valhalla Investment Partners, L.P.; Viking Fund, LLC; and Viking IRA Fund, LLC. In turn, using the monies collected from the hedge funds, the investment managers paid Fees to certain individuals, including Christopher D. Moody and Neil V. Moody. Under FUFTA, the investment managers would be "debtors"; the hedge funds would be "creditors"; and the payments of Fees would be "fraudulent transfers."

9

*See* Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b), 726.106(1). The Receiver would be entitled to avoid and recover the transfers of Fees to the Moodys from subsequent transferees, including Paolino. *See* Fla. Stat. §§ 726.108 & 726.109(2). The Jewelry was purchased with the fraudulently transferred Fees, and transfer to Paolino of any proceeds of sale of the Jewelry would be a fraudulent transfer, which would entitle the Receiver to full recovery of those proceeds.

Accordingly, if the Jewelry is not transferred to the Receiver and instead is ultimately liquidated by the Paolino Receiver with proceeds awarded to Paolino, the Receiver would be forced to initiate an action under FUFTA to recover those transfers for the benefit of all defrauded investors. The question then becomes a matter of efficiency and economy: should the Receiver be forced to institute litigation to recover what ultimately belongs in the Receivership? The reasons discussed above – this Court's jurisdiction over the Jewelry, the Court's power to enjoin the Paolino Proceeding, the appropriateness of summary proceedings – establish that such a time-consuming, expensive process should be avoided. Therefore, the Receiver's motion to enjoin the Paolino proceeding and for possession of the Jewelry should be granted for this additional reason.

## Conclusion

Based on the foregoing, and also for the reasons discussed in the Motion (Doc. 177), the Receiver respectfully requests that the Court grant his motion for an order (1) permanently enjoining the Paolino Proceeding to the extent that Paolino seeks to recover assets that were purchased with proceeds of the scheme, and (2) transferring possession and ownership of the Jewelry to the Receiver, Burton W. Wiand.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2009, I electronically filed this document with the Clerk of the Court by using the CM/ECF system. This will send a Notice of Filing to all counsel who have appeared in this action, including Paolino's counsel, Morgan R. Bentley. I further certify that I also served this document on the non-CM/ECF recipients listed below in the manner indicated:

Arthur G. Nadel
**(by mail)**
Register No. 50690-018
Metropolitan Correctional Center, New York
150 Park Row
New York, NY 10007

The Honorable Charles E. Williams
**(by email to his assistant: Lisa Fudge-Schustik [LFudge@jud12.flcourts.org])**
2000 Main Street Room 108
Sarasota, Florida 34237

Robert Elliott (State Court Receiver)
**(by fax – 941-798-3163)**

        s/ Carl R. Nelson
        Carl R. Nelson, FBN 0280186
        cnelson@fowlerwhite.com
        Gianluca Morello, FBN 034997
        gianluca.morello@fowlerwhite.com
        Maya M. Lockwood, FBN 0175481
        mlockwood@fowlerwhite.com
        Ashley Bruce Trehan, FBN 0043411
        ashley.trehan@fowlerwhite.com
        FOWLER WHITE BOGGS P.A.
        P.O. Box 1438
        Tampa, FL 33601
        T: (813) 228-7411
        F: (813) 229-8313
        Attorneys for the Receiver, Burton W. Wiand