UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,           CASE NO. 8:09-cv-0087-T-26TBM

vs.

ARTHUR NADEL,
SCOOP CAPITAL, LLC
SCOOP MANAGEMENT, INC.,
      Defendants.

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.
VALHALLA MANAGEMENT, INC.,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

      Relief Defendants.
_____/

**MOTION OF INTERVENER, WILLIAM F. BISHOP, TO DISSOLVE INJUNCTION
STAYING PROSECUTION OF STATE FORECLOSURE ACTION, AWARD
ADEQUATE PROTECTION PAYMENTS, ORDER THE RECEIVER TO
DISCLOSE AGREEMENT WITH CONTRACT PURCHASERS,
OR GRANT OTHER RELIEF**

      COMES NOW, William F. Bishop, as Trustee of the William F. Bishop

Revocable Trust u/a/d 6/12/08 ("William F. Bishop"), by and through his

undersigned counsel, and hereby moves this court for an order dissolving the

injunction staying prosecution of state foreclosure action with respect to Home

Front Homes, LLC, filed by William F. Bishop, awarding adequate protection

payments, directing the Receiver to disclose agreement with contract purchasers,

Exhibit "1"

Dockets.Justia.com

or granting other relief and hereby alleges as follows:

## I.    The Basis for the Motion

1.    William F. Bishop is the owner and holder of a certain Promissory Note dated June 1, 2004 (the "Note"), which is secured by a Real Estate Mortgage and Security Agreement dated August 24, 2004 (the "Mortgage"), by virtue of an Assignment of Mortgage dated June 12, 2008 (the "Assignment"), on the following described real property located in Sarasota County, Florida, commonly known as 512 Paul Morris Drive, Sarasota, FL 34233 and more particularly described as:

> Lot 81, MORRIS INDUSTRIAL PARK, as per plat thereof recorded in Plat Book 28, Page 18, of the Public Records of Sarasota County, Florida.

(the "Property"). A copy of the Note and Mortgage and Assignment are attached hereto as composite Exhibit "A".

2.    The Property was sold to Home Front Homes, LLC ("HFH") on May 24, 2006. Pursuant to an Agreement between William F. Bishop and HFH, entered into on February 23, 2007 (the "Assumption Agreement"), HFH agreed to assume and be liable for the payment of the Note. A copy of the Assumption Agreement is attached hereto as composite Exhibit "B".

3.    On or about July 14, 2009, William F. Bishop commenced a foreclosure action in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (Case No. 2009-CA-011903-NC) against, *inter alia*, HFH, for defaulting under the Note, Mortgage, and Assumption Agreement (the "State Foreclosure Action").

2

4. On or about August 11, 2009, Burton Wiand (the "Receiver"), in his capacity as Receiver in the instant case, filed in the State Foreclosure Action a "Notice of Appointment of Federal Receiver over Defendant Home Front Homes, LLC and Filing of Order Enjoining Action that Disturb Assets" (the "Notice"). Attached to the Notice were copies of an Order Appointing Receiver, entered on January 21, 2009 and an Order Reappointing Receiver entered on June 3, 2009. Also attached to the Notice was a copy of an Order, dated August 10, 2009 (the "HFH Order"), granting the Sixth Unopposed Motion to Expand Receivership to Include Home Front Homes LLC, filed by the Receiver in this action on August 7, 2009.

5. The Order Reappointing Receiver enjoins all persons, including creditors, who have actual notice of the Order, from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which affect the property of Receivership Entities, without prior permission from this Court. The HFH Order specifically includes HFH within the ambit of the Order Appointing and Reappointing Receiver.

6. The above-described orders enjoin William F. Bishop from prosecuting the State Foreclosure Action, without prior permission from this court.

7. The amount due and owing under the Note is approximately $619,394.60 as of September 1, 2009, including principal and interest. The note has been in default since May 24, 2009, and no subsequent payments have been made. William F. Bishop has incurred costs, including filing fees and search fees,

3

together with attorney's fees, exceeding $10,000.00 in the aggregate.

8.    According to the 2009 tax assessment for the Property, the Property has a just market value of $583,800.00, which is less than the indebtedness owed on the Property. A copy of the 2009 Tax assessment of the Property is attached hereto as Exhibit "C". Accordingly, there is no equity in the Property from which the Receiver could derive a benefit for the defrauded parties in the instant case.

9.    According to an article published by the Sarasota Herald Tribune on August 12, 2009, the Gramatica Group continues to occupy and operate in the Property, and HFH is being operated by a contract purchaser, the Gramatica Group, who allegedly has an agreement with the Receiver to buy HFH. It is unknown whether the purchase of HFH includes the Property. See August 12, 2009 Sarasota Herald Tribune article "Gramatica brothers to purchase Home Front", a copy of which is attached as Exhibit "D".

10.    In the Receiver's Third Interim Report dated August 17, 2009, the Receiver states, in relevant part:

> On or about August 4, 2009, the Receiver entered into an agreement to sell Home Front Homes in exchange for $800,000.00 as follows: $600,000.00 by wire transfer as well as a secured promissory note in the principal amount of $200,000.00. On August 10, 2009, the Court expanded the Receivership to include Home Front Homes. (Doc. 170).    The proposed sale will provide $280,000.00 to the Receivership, which includes the promissory note, and will give the purchasers the opportunity to resolve claims of creditors of Home Front Homes. The remainder of the sale proceeds will be paid to M&I Bank to satisfy a $3 million loan that was secured by the assets of Home Front Homes. The Receiver will obtain Court approval to finalize the sale of Home Front Homes and will file a motion for approval in the immediate future. If the Court approves the sale, the

closing will take place, and the promissory note will be due and
payable eighteen months thereafter.

See Third Interim Report, Article V(A)(8), page 31-32.

11.　　Whether the revenue and profits from the operation of HFH are
going into the Receivership estate, or into the pockets of the contract purchasers,
is unclear from the Receiver's Third Interim Report. Any revenues and/or profits
derived from the operation of HFH at this time is coming at the expense of William
F. Bishop, as HFH is essentially operating from the location of the Property at no
cost, because William F. Bishop is not receiving any payments.

12.　　It is widely reported, and supported by county wide statistics, that
commercial property in the area where the Property is located is likely to decline in
value in the immediate future. In addition, the use of the Property by the
Gramatica Group (or anyone else operating a commercial business therein)
necessitates repair and causes depreciation in value of the infrastructure over
time.

13.　　William F. Bishop is 82 years of age, and the monthly mortgage
payment of $6,831.09 is a substantial portion of his retirement income. Thus, the
failure to pay the mortgage, or to allow the completion of the State Foreclosure
Action, works a substantial hardship on the moving party. Without the mortgage
payments, William F. Bishop is likely to lose his home.

14.　　The Property is a commercial manufacturing facility, and no benefit
or good will accrues to HFH by operating in that particular location. Even if the

value of the Property location is claimed by the Receiver to be a benefit to the receivership estate, then the Receiver and/or contract purchaser, the Gramatica Group, should be ordered to bring the mortgage current, pay the mortgage in accordance with its terms, and reimburse William F. Bishop for his attorney's fees and costs to adequately protect the interests of William F. Bishop. Alternatively, the injunction against prosecution of the State Foreclosure Action should be lifted immediately, so that William F. Bishop's interest may be protected.

15.　　In addition to the foregoing, or in the alternative, the Receiver should be ordered to disclose the terms of the alleged agreement with the Gramatica Group, so that the treatment of William F. Bishop's interest in the Property can at least be determined, and William F. Bishop will be able to take appropriate action.

16.　　William F. Bishop is an innocent party, who received no benefit from the Defendants herein, and accordingly, should not suffer a catastrophic personal detriment because other persons who came to know and trust the Defendants herein trusted the Defendants with the investment of their money in order to realize unreasonable rates of return.

WHEREFORE, William F. Bishop respectfully moves this court for an order directing the Receiver and/or the Gramatica Group, to pay the arrearage on the mortgage, including all interest, costs and attorney's fees, or, alternatively, enter an order lifting the injunction of the State Foreclosure Action, or order the Receiver to disclose the terms of the alleged agreement with the Gramatica Group, so that the intended treatment of William F. Bishop's interest in the Property can at least be

determined and responded to appropriately, or that the court grant such other and further relief as may be just and appropriate under the circumstances.

## II.    Memorandum of Law in Support of Motion

1.    The United States Supreme Court held that "a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *Marshall v. People of State of New York,* 254 U.S. 380, 385 (1920) (emphasis added). The Eighth Circuit has also ruled with respect to a receiver's right when dealing with other creditors that "a receiver acquires no rights greater than those of the estate to which he has succeeded and must recognize liens and equities existing at the time of the receivership." *East v. Crowdus,* 302 F.2d 645, 650 (8th Cir. 1962) (quotation omitted). Courts have repeatedly held that a creditor does not lose its interest in pledged collateral simply because other assets of a debtor may be subject to a receivership order. *Citizens Banking Co. v. Monticello State Bank*, 143 F.2d 261 (8th Cir. 1944); *In re Hollins,* 215 215 F. 41 (2d Cir. 1914).  In fact, for a non-insider, a secured claim can only be set aside in egregious circumstances of fraud or overreaching. See *In Re N&D Properties, Inc.*, 799 F.2d 726 (11th Cir. 1986).

2.    In this case, the monthly mortgage payments that rightfully belong to William F. Bishop are being used for the benefit of HFH, the receivership, or the contract purchaser for HFH.   A receiver takes receivership property subject to any liens and encumbrances, and a receiver may not augment the

7

receivership estate with property which does not rightfully belong to it. *East v. Crowdus*, 302 F.2d 645, 650 (8th Cir.1962); *Citizens Banking Co. v. Monticello State Bank*, 143 F.2d 261 (8th Cir.1944)). By disregarding William F. Bishop's secured interest, the Receiver impermissibly augments the receivership estate with property not belonging to it.

A. <u>The Stay Order Specifically Should Not Apply to the State Foreclosure Action.</u>

3. In *United States v. Acorn Tech. Fund, L.P.,* 429 F.3d 438 (3d Cir. 2005), the Third Circuit acknowledged the dearth of legal authority dealing with relief from stay in non-bankruptcy receiverships, and found that bankruptcy principles are an appropriate analogy for the rights at issue here. In fact, the Third Circuit stated:

> A receiver must be given a chance to do the important job of marshaling and untangling a company's assets ... [n]evertheless, an appropriate escape valve, which allows potential litigants to petition the court for permission to sue, is necessary so that litigants are not denied a day in court during a lengthy stay

*Id.*at 443. The *Acorn* court relied on the *Wencke* standard, established by the Ninth Circuit in a trilogy of cases involving an SEC receivership and Walter Wencke. *Id.*; *SEC v. Wencke*, 742 F.2d 1230, 1232 (9th Cir. 1984).

4. The *Wencke* standard sets forth factors a District Court should consider when deciding whether to partially or wholly lift a stay of litigation entered pursuant to a receivership order. The *Wencke* standard is utilized by courts when deciding whether to partially or wholly lift a stay of litigation entered

pursuant to a receivership order. See *United States v. Acorn Tech. Fund, L.P.,* 429 F.3d at 444 (citing to other courts utilizing the *Wencke* standard: United States v. ESIC Capital, Inc., 685 F.Supp. 483 (D.Md.1988); United States v. First Wall St. SBIC, L.P.,1998 U.S. Dist. LEXIS 9487, at *4 (S.D.N.Y. 1998); FTC v. 3R Bancorp, 2005 WL 497784 (N.D. Ill. 2005), 2005 U.S. Dist. LEXIS 12503; FTC v. Med Resorts Int'l, Inc., 199 F.R.D. 601 (N.D.Ill.2001); EC v. Capital Consultants, LLC, 2002 WL 31470399 (D. Or. 2002), 2002 U.S. Dist. LEXIS 6775; SEC v. TLC Invs. & Trade Co., 147 F.Supp.2d 1031 (C.D.Cal.2001).) [1]

    5.    Under the *Wencke* standard, when a movant seeks to assert claims against the entity in receivership, the Court considers:

    (a)    whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed;

    (b)    the time in the course of the receivership at which the motion for relief from the stay is made; and

    (c)    the merit of the moving party's underlying claim.

See *id.* Generally, the test "simply requires the district court to balance the

---

[1] See also *S.E.C. v. Madison Real Estate Group, LLC,* --- F.Supp.2d ----, 2009 WL 2497392 *1 (D.Utah 2009); *U.S. v. Petters,* Slip Copy, 2008 WL 5234527 *3 (D.Minn. 2008); *S.E.C. v. Byers,* 592 F.Supp.2d 532, 536 (S.D.N.Y. 2008); *U.S. Small Business Admin. v. Smith, Stratton, Wise, Heher, & Brennan* (Not Reported in F.Supp.2d), 2006 WL 237511 *7, (E.D. Pa. 2006); *S.E.C. v. TLC Investments and Trade Co.,* 147 F. Supp.2d 1031, 1039 (C.D.Cal.,2001); *F.T.C. v. Med Resorts Intern., Inc.,* 199 F.R.D. 601, 608 (N.D.Ill. 2001); *S.E.C. v. Universal Financial,* 760 F.2d 1034, 1038 (C.A.9 (Cal.) 1985).

interests of the Receiver and the moving party." *SEC v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985).

Status Quo and Substantial Injury.

6.      The Fifth Amendment to the United States Constitution provides that "No person shall be ... deprived of ... property ... without due process of law, nor shall private property be taken for public use without just compensation." U.S. Const. Amend V.   Due process of law requires adequate notice, hearing and procedures to contest the deprivation of property. See *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). William F. Bishop's security interest in the Property and his right recover the value of his collateral constitute property rights protected by the Fifth Amendment. See *In re Townley*, 256 B.R. 697, 700 (Bankr. D.N.J. 2000) ("The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment."); *In re Briggs Transp. Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985) (protecting secured creditor's Fifth Amendment property rights); *In re Holly's, Inc.*, 140 B.R. 643, 686 (Bankr. W.D. Mich. 1992) (same).

7.      As a secured creditor, William F. Bishop will suffer substantial economic injury and his constitutionally protected property rights will be violated without relief from the stay. William F. Bishop is being denied any ability to recover on or protect his secured interest in the Property.  Because William F. Bishop has legitimate claims to this collateral, a continuation of the stay, especially without adequate protection, is far from preserving the status quo. The

10

injunction inappropriately prevents William F. Bishop from exercising his rights and does nothing to protect those rights, which are legally superior to the rights of other investors and claimants who hold unsecured, subordinate claims.

8. Additionally, the Property, already worth substantially less than William F. Bishop's loan on it, is an asset likely depreciating by time and certainly by use. As stated above, William F. Bishop relies on the monthly mortgage payment on the Property for his income and HFH's default has left him in dire financial straights. Accordingly the status quo is not worth maintaining, as the Property will not benefit the defrauded investors, and the injury being done to William F. Bishop and his family by staying the State Foreclosure Action is substantial. See *U.S. v. ESIC Capital, Inc.* 685 F. Supp. 483, 485 D.Md.,1988 (concluding that single unemployed mother's interest in lifting a stay to enforce a lien "preponderates over any interest the receiver may have in maintaining status quo").

Time In the Course of the Receivership.

9. The second *Wencke* factor deals with the time in the course of the receivership at which the motion for relief from the stay is made. In the context of unsecured creditors seeking relief from the stay, courts are "reluctant to set a clear cut-off date after which a stay should be presumptively lifted [because] [t]he second Wencke prong is inherently case-specific." *United States v. Acorn Tech. Fund, L.P.,* 429 F.3d 438, 450 (3d Cir. 2005). While the cases do not address unique constitutional and adequate protection issues presented by creditors with

11

secured claims, to the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard.

10. Here, William F. Bishop's constitutional property rights are immediate, continuing and cannot be placed on hold. Even in a bankruptcy case, the adequate protection requirement is immediate, continuing and constant. See 11 U.S.C. § 362. From the first moment of a bankruptcy case, a debtor must adequately protect the interests of secured creditors and must segregate and account to secured creditors with respect to their cash collateral. See 11 U.S.C. § 363. Likewise, from inception of a bankruptcy case, a debtor is prohibited from using cash collateral without the secured creditors consent unless the debtor provides adequate protection and obtains permission from the Bankruptcy Court. *Id.*

11. These protections in bankruptcy are mandated by the Fifth Amendment to the Constitution. In re Briggs Transp. Co., 780 F.2d at 1342. Thus, because William F. Bishop has a constitutionally protected property interest, the appropriate timing in the course of the receivership to provide relief from a stay or adequate protection is immediate and this factor weighs heavily in favor of lifting the stay.

<u>William F. Bishop has a Meritorious Foreclosure Action.</u>

12. Lastly, in a determination of whether to lift a stay against litigation, courts applying the *Wencke* standard consider the merits of the movant's underlying claim. Under this standard, claimants need not establish likelihood of

12

success on the merits of their underlying claim. See *Universal Fin.*, 760 F.2d at 1038. Courts applying the *Wencke* standard only need to determine whether the claimant has a "colorable claim that entitles [it] to a trial on the merits." *Wencke*, 742 F.2d at 1232 (holding that district court abused its discretion when it ruled on merits of movants' intended claim in proceeding to lift stay).

13.     In the instant case, William F. Bishop has clear and unambiguous foreclosure claims under Exhibits "A" and "B" attached. William F. Bishop's claims are protected by the Fifth Amendment. If the Court's Orders are construed to stay William F. Bishop's rights, then those orders deprive William F. Bishop of his constitutionally protected property rights. This deprivation has occurred without prior notice or an opportunity to be heard. William F. Bishop's claims are far more than colorable, which weighs heavily in favor of relief from the stay.

14.     Because all the factors enunciated in *Wencke* favor lifting the stay, and because of his constitutionally protected property rights, William F. Bishop requests relief from the stay to pursue his rights and remedies against HFH, or for adequate protection of his interests, or for other relief, described herein.

15.     Based on the foregoing, William F. Bishop should be allowed to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) so that the court may consider the merits of his argument contained herein.

WHEREFORE, William F. Bishop respectfully moves this court for an order directing the Receiver and/or the Gramatica Group, to pay the arrearage on the mortgage, including all interest, costs and attorney's fees, or, alternatively, enter an

13

order lifting the injunction of the State Foreclosure Action, or order the Receiver to disclose the terms of the alleged agreement with the Gramatica Group, so that the treatment of William F. Bishop's interest in the Property can at least be determined and responded to, or that the court grant such other and further relief as may be just and appropriate under the circumstances.

CERTIFICATE OF COMPLIANCE WITH M.D. FLA. L.R. 3.01(g)

WE HEREBY CERTIFY that, in accordance with M.D. Fla. L.R. 3.01(g), the undersigned has conferred with Gianluca Morello, counsel for the Receiver, who indicated the Receiver objected to and would oppose this motion and Scott A. Masel, who indicated the Securities & Exchange Commission objected to and would oppose this motion.

By: James L. Essenson, Esq.
Florida Bar No. 0359033
Barbara J. Welch, Esq.
Florida Bar No. 0624683
LAW FIRM OF JAMES L. ESSENSON
2071 Main Street
Sarasota, Florida 34237
Telephone: (941) 954-0303
Fax: (941) 951-7739
Email address: essenson@verizon.net
Attorney for William F. Bishop, as Trustee of the William F. Bishop Revocable Trust u/a/d 6/12/08

**CERTIFICATE OF SERVICE**

I hereby certify that on the _11th_ day of September, 2009, I electronically filed the foregoing document with the Clerk of the Court using

14

CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: James L. Essenson, Esq.
Florida Bar No. 0359033
Barbara J. Welch, Esq.
Florida Bar No. 0624683
LAW FIRM OF JAMES L. ESSENSON
2071 Main Street
Sarasota, Florida 34237
Telephone: (941) 954-0303
Facsimile: (941) 951-7739
Email address: essenson@verizon.net
Attorney for William F. Bishop, as Trustee of the William F. Bishop Revocable Trust u/a/d 6/12/08

## SERVICE LIST

Securities and Exchange Commission v. Nadel et al./
Case No. 8:09-cv-0087-T-26TBM

Regular U.S. Mail

Arthur G. Nadel,
Register No. 50690-018
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007
Defendant, Pro Se

Electronically by CM/ECF System

Todd Alan Foster, Esq.
Cohen, Jayson & Foster, P.A.
201 E. Kennedy Blvd., Suite 1000
P.O. Box 172538
Tampa, FL 33672-2538
Telephone:   813-225-1655
Facsimile:   813-225-1921
tfoster@tampalawfirm.com
Attorney for Defendant, Arthur Nadel
J. Thomas Cardwell, Esq.
tom.cardwell@akerman.com
Kathryn B. Hoeck, Esq.
Kathy.hoeck@akerman.com
Akerman Senterfitt
420 S. Orange Ave., Suite 1200
P.O. Box 231
Orlando, FL 32802-0231
Telephone:   407-423-4000
Facsimile:   407-843-6610
Attorneys for Interested Party, LandMark Bank of Florida

R. Craig Harrison, Esq.
Lyons & Beaudry, P.A.
1605 Main Street, Suite 1111
Sarasota, FL 34236
Telephone:   941-366-3282
Facsimile:   941-954-1484
craig@lyonsbeaudryharrison.com
Attorney for Movant, R. Craig Harrison

Donald R. Kirk, Esq.
dkirk@fowlerwhite.com
Maya M. Lockwood, Esq.
mlockwood@fowlerwhite.com
Gianluca Morello, Esq.
Gianluca.morello@fowlerwhite.com
Carl Richard Nelson, Esq.
cnelson@fowlerwhite.com
Ashley Bruce Trehan, Esq.
Ashley.trehan@fowlerwhite.com
Fowler, White, Boggs, P.A.

501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Telephone: 813-228-7411 ext: 1195
Facsimile: 813-229-8313
Attorneys for Receiver, Burton W. Wiand

Scott A. Masel, Esq.
masels@sec.gov
Andre J. Zamorano, Esq.
zamoranoa@sec.gov
Securities & Exchange Commission
Miami Branch Office, SERO
801 Brickell Ave., Suite 1800
Miami, FL 33131
Telephone: 305-982-6398
Facsimile: 305-536-4154
Attorneys for Plaintiff, Securities and Exchange Commission

F:\client list\Bishop, William\Federal Case\Pleadings\Motion.Dissolve.2009.9.11.doc

# PROMISSORY NOTE

**Borrower:** **BRIAN C. BISHOP and JEANNE B. BISHOP**

$760,000.00

Effective Date: June 1, 2004
Maturity Date: June 1, 2019

The undersigned Borrower promises to pay to the order of WILLIAM F. BISHOP, as Trustee under Declaration of Trust of Mitzi T. Bishop dated October 27, 1989, as amended, (which together with his successors and assigns are called "Lender") at P. O. Box 20627, Sarasota, FL 34276, or such other place as Lender may specify by written notice to Borrower, the following:

The principal of Seven Hundred Sixty Thousand and 00/100 Dollars ($760,000.00) together with interest thereon from the Effective Date hereof as described below is due on the date(s) described below:

## INTEREST RATE

Commencing on the Effective Date hereof, the outstanding principal balance of the indebtedness evidenced hereby shall bear interest at an annual fixed rate of seven percent (7%). The effective rate of interest shall not exceed the highest rate allowable under the laws of Florida. Interest shall be payable in arrears and shall be computed on the basis of a 360-day year for actual days elapsed.

## PAYMENT

The loan shall be based on a 15 year amortization and principal and interest shall be payable as follows:

Equal monthly installments of principal and interest in the amount of $6,831.09 shall be due and payable commencing thirty days after the Effective Date and continuing on the same day of each month thereafter until the Maturity Date when the remaining principal balance and all accrued unpaid interest shall be due and payable in full on the Maturity Date.

LATE CHARGE. Lender will have the right to impose a late charge equal to five percent (5%) of any payment not received within ten (10) days of the date when due.

PRE-PAYMENT PENALTY: There shall be no penalty for early payment of any sum due under this Note.

1

## DEFAULT/DEFAULT INTEREST

Lender may declare this Note immediately due and payable upon the occurrence of any of the following Events of Default: (i) when permitted under any security agreement or mortgage now or hereafter in effect securing payment hereof; or (ii) upon any default in the payment of any sum due hereunder for more than thirty (30) days; or (iii) upon the insolvency, bankruptcy or dissolution of any Borrower. After maturity, whether by acceleration or otherwise, this Note and any judgment which may be entered hereon shall bear interest at the rate of Eighteen Percent (18%) per annum.

## GENERAL TERMS

Borrower promises to pay (i) all collection costs, including reasonable attorneys fees and paralegal fees, whether incurred in connection with collection, trial, appeal or otherwise; (ii) waives presentment, demand, notice of dishonor and protest.

This Note is secured by a Real Estate Mortgage and Security Agreement of even date encumbering property located in Sarasota County, Florida. The obligation of each party liable under this Note may be enforced in any action to foreclose said mortgage and security agreement by separate action thereon. State of Florida documentary stamps in the amount required by law are affixed to the mortgage securing this Note.

LENDER AND BORROWER, UPON EXECUTION AND ACCEPTANCE HEREOF, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS PROMISSORY NOTE AND/OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER MAKING THE LOAN TO BORROWER.

_____
BRIAN C. BISHOP

_____
JEANNE B. BISHOP

2

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2004166525 8 PGS
2004 AUG 26 01:33 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY,FLORIDA
DCOURSEY Receipt#517429

Doc Stamp-Mort: 2,660.00
Intang. Tax: 1,520.00

PREPARED BY AND RETURN TO:
John M. Dart, Esquire
Ruden, McClosky, Smith, Schuster & Russell, P.A.
1549 Ringling Boulevard, Suite 600
Sarasota, FL 34236.

## REAL ESTATE MORTGAGE
## AND SECURITY AGREEMENT



Date:         August 24, 2004

Mortgagor:   **BRIAN C. BISHOP AND JEANNE B. BISHOP**
             *120 Rose Drive*
             *Venice, FL 34293*

Mortgagee:   **WILLIAM F. BISHOP, as Trustee under Declaration of Trust**
             **of Mitzi T. Bishop dated October 27, 1989, as amended**
             P. O. Box 20627
             Sarasota, FL 34276

Amount of indebtedness secured hereby: $760,000.00

Date final payment due: June 1, 2019.

Mortgaged Real Property:   Lot 81, Morris Industrial Park, as per Plat thereof recorded in Plat
                           Book 28, Page 18, Public Records of Sarasota County, Florida.

    1.    <u>Mortgage</u>. Mortgagor is indebted to Mortgagee in the principal amount stated above
as evidenced by a Promissory Note in the principal sum of $760,000.00, dated June 1, 2004, made by
Mortgagor and delivered to Mortgagee (the "Note"). In consideration of the loan to Mortgagor
evidenced by the Note, Mortgagor mortgages to Mortgagee the Mortgaged Real Property, for the
purposes identified below.

    2.    <u>Secured Indebtedness; Future Advances; Maximum Amount and Time</u>.   This
Mortgage secures the indebtedness of Mortgagor to Mortgagee, as specified above, and (b) all other
indebtedness of Mortgagor to Mortgagee, however and wherever incurred or evidenced, whether
primary, secondary, direct, indirect, absolute, contingent, sole, joint or several, due or to become due,
whether contracted for or acquired now or in the future, whether arising in the ordinary course of
business or otherwise. The total amount of indebtedness secured by this Mortgage may decrease or
increase from time to time, but the total unpaid balance so secured at any one time may not exceed
the maximum principal amount specified above, plus accrued interest and any disbursements made

SAR:128001 1                          1

for the payment of taxes, levies, or insurance on the Mortgaged Property, and for maintenance, repair, protection, and preservation of the Mortgaged Property, with interest on such disbursements, all as provided in this Mortgage.

3.    <u>Payment of Secured Indebtedness</u>.  Mortgagor shall pay all indebtedness and perform all obligations secured by this Mortgage promptly when due.

4.    <u>Additional Collateral</u>.  In addition to the Mortgaged Real Property, this Mortgage encumbers the Additional Collateral listed below (collectively, the "Mortgaged Property").

(a)    <u>Improvements, Fixtures</u>.  All building, structures, and improvements now or hereafter situated on the Mortgaged Property, and all fixtures or appurtenances erected now or at any time in the future on the Mortgaged Property, of every nature whatsoever, together with any proceeds thereof and any replacements thereof, which are now or may be located in the future on the Mortgaged Property, together with all and singular the tenements, hereditaments, easements and appurtenances thereunder belonging or in any way appertaining, and the rents, issues and profits thereof, and also all the estate, right, title, interest and all claims and demands whatsoever, in law and in equity, of the Mortgagor in and to the same, and every part and parcel thereof, and also all gas and electric fixtures, cabinets, ovens, hoods, vent fans, radiators, heaters, air conditioning equipment, machinery boilers, ranges, elevators and motors, bath tubs, sinks, water closets, water basins, pipes, faucets, washing machines, dryers, stoves, disposals, refrigerators, dishwashers, carpeting, drapes, all electrical conduit, light fixtures, plumbing lines and fixtures, mantels, window screens, screen doors, venetian blinds, storm shutters and awnings, pool equipment and other recreational equipment; owned by Mortgagor now or at any time in the future and located in, on, or under, or used or intended to be used in connection with the operation of the Mortgaged Property, buildings, structures or other improvements, including all extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing.

(b)    <u>Easements</u>.  All easements, rights of way, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interest, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, now or in the future in any way belonging, relating or appertaining to any of the Mortgaged Property, and the reversions, remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of the Mortgagor of, in and to the same.

(c)    <u>Eminent Domain</u>.  All judgments, awards, damages, and settlements rendered or paid after the date hereof, resulting from condemnation proceedings concerning the Mortgaged Property or the taking of the Mortgaged Property or any part of the Mortgaged Property under the power of eminent domain, and Mortgagee may require that any sums payable to Mortgagor as a result of a condemnation proceeding or the exercise of the power of eminent domain concerning the Mortgaged Property be applied to the indebtedness secured by this Mortgage.

SAR 128001.1                                                   2

(d)  Insurance Proceeds. All Mortgagor's right, title and interest in all unearned premiums accrued, accruing, or to accrue under any and all insurance policies provided now or in the future pursuant to the terms of this Mortgage and the Loan Agreement, and all proceeds or sums payable for the loss of or damage to (a) the Mortgaged Property, or (b) rents, revenues, income, profits, or proceeds from leases, concessions, or licenses, of or on any part of the Mortgaged Property.

(e)  Rents and Profits. All rents, issues, profits, proceeds, and revenues derived from room rentals, or from the operation of any business or service located on the Mortgaged Property, but Mortgagor may receive same while this Mortgage is not in default.

5.  Title Covenants. Mortgagor covenants that the Mortgaged Property is free from all encumbrances (other than this Mortgage), that lawful seisin of and good right to encumber the Mortgaged Property are vested in Mortgagor, and that Mortgagor fully warrants the title to the Mortgaged Property and will defend the same against the lawful claims of all persons.

6.  Security Property. To the extent any of the property encumbered by this Mortgage from time to time constitutes personal property subject to the provision of the Uniform Commercial Code, this Mortgage constitutes a "Security Agreement" for all purposes under the Code; and the recording or filing of this Mortgage with any public officer or agency will have the same effect as recording or filing a "Financing Statement" under the Code. Without limitation, Mortgagee, at its election upon any default under this Mortgage, will have all rights and remedies from time to time available to a secured party under the Code with respect to such property. Notwithstanding the foregoing, Mortgagor and Mortgagee intend and agree that, unless and until Mortgagee elects otherwise, all right, title, and interest of Mortgagor in and to the Mortgaged Property and rents constitutes an interest in real property. Without limitation, the parties intend and agree that the inclusion of the Mortgaged Property, rents, or any rights therein or proceeds thereof, in any such financing statement will not operate to alter Mortgagee's rights under this Mortgage, or otherwise available at law or in equity, or to impair the priority of the lien or security interest granted by this Mortgage.

7.  Maintenance and Repair. Mortgagor shall permit, commit, or suffer no waste, impairment, or deterioration of the Mortgaged Property. Mortgagor shall maintain the Mortgaged Property in good condition and repair. If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may take some or all measures that Mortgagee reasonably considers necessary or desirable for the maintenance, repair, preservation, or protection of the Mortgaged Property, and any expenses reasonably incurred by Mortgagee in so doing: (1) are part of the indebtedness secured by this Mortgage; (2) are, at Mortgagee's option, immediately due and payable; and (3) bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured by this Mortgage. Mortgagee has no obligation to care for and maintain the Mortgaged Property, but if Mortgagee takes some measures to care for and maintain the Mortgaged Property, Mortgagee has no obligation to continue those measures or to take other measures.

8. <u>Hazard and Flood Insurance</u>. Mortgagor shall keep all buildings and other improvements now or in the future constituting a part of the Mortgaged Property insured against loss or damage by fire, flood, and other hazards included within the term "extended coverage," and against such other hazards as Mortgagee may require, in the full insurable value (or such lesser amount as Mortgagee may authorize in writing), with an insurer of high financial reputation acceptable to Mortgagee. The policy or policies of insurance must contain a standard mortgagee clause in favor of Mortgagee and must be delivered to Mortgagee. Mortgagor shall pay all premiums and charges for the maintenance and renewal of the insurance, and shall furnish Mortgagee with receipts and proofs of payment not less than ten days before the expiration of each policy without notice or demand from Mortgagee. If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may obtain such insurance for the protection of Mortgagee, and any expenses reasonably incurred by Mortgagee in so doing: (1) is a part of the indebtedness secured hereby; (2) is, at Mortgagee's option, immediately due and payable; and (3) bears interest at the highest lawful rate specified in any note evidencing any indebtedness secured by this Mortgage. In the event of loss, Mortgagee must apply the insurance proceeds either to the reduction of the indebtedness secured by this Mortgage, or to the restoration and repair of the Mortgaged Property, at the option of Mortgagee. Mortgagee shall have the full power to settle or compromise claims under all policies and to demand, receive, and receipt for all sums payable thereunder. In the event of foreclosure of this Mortgage or transfer of the Mortgaged Property in full or partial satisfaction of the indebtedness secured by this Mortgage, all interest of Mortgagor in the policy or policies of insurance (including any claim to proceeds attributable to losses already incurred but not yet paid to Mortgagor) passes to the purchaser, grantee, or transferee.

9. <u>Receiver</u>. If this Mortgage falls into default, Mortgagee is entitled to the appointment of a receiver to take charge of the Mortgaged Property, and the rents, issues, profits, proceeds, and revenues arising from the Mortgaged Property, and hold the same subject to the direction of a court of competent jurisdiction, regardless of the solvency of Mortgagor or the adequacy of the security.

10. <u>Taxes, Assessments and Liens</u>. Mortgagor shall pay all taxes, assessments, liens, and other charges upon or with respect to the Mortgaged Property before they are delinquent, and shall furnish Mortgagee with receipts and proofs of payment at least ten days before the last day allowed for payment free from penalty, without notice or demand from Mortgagee. If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may pay the same, together with any penalty that may have accrued and any related expenses, including reasonable attorneys' fees or the fees of any person employed to aid or give advice in the discharge or adjustment of the matter.

11. <u>Inspection</u>. Mortgagee and Mortgagee's representatives may enter upon the Mortgaged Property for inspection at all reasonable times and in a reasonable manner, both before and after default.

12. <u>Enforcement and Collection Expenses</u>. Mortgagor shall pay all expenses, including attorneys' fees and paralegal fees reasonably incurred by Mortgagee with respect to the collection of the indebtedness secured by this Mortgage or the enforcement of Mortgagee's rights under this

SAR 128001.1

4

Mortgage (including foreclosure or other litigation expenses and such costs and attorneys' fees and paralegal fees as may be incurred on appeal), resulting from any default by Mortgagor, and all such sums: (1) are a part of the indebtedness secured by this Mortgage; (2) are, at Mortgagee's option, immediately due and payable; and (3) bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured by this Mortgage.

13. <u>Acceleration Upon Default</u>. If Mortgagor fails to pay any indebtedness secured hereby or otherwise due hereunder promptly when due and the expiration of any applicable grace period, or if Mortgagor breaches any other covenant of this Mortgage or of any other instrument or document executed or delivered to Mortgagee in connection with this Loan, all of the terms of which are incorporated by reference herein, or otherwise materially defaults, then Mortgagee may declare all indebtedness secured hereby accelerated and immediately due and payable. Mortgagee's failure to declare an acceleration does not impair Mortgagee's right to do so in the event of a continuing or subsequent breach or default.

14. <u>Acceleration Upon Transfer of Mortgaged Property</u>. If all or any part of the Mortgaged Property or any interest therein is sold or transferred by Mortgagor in any manner whatsoever without Mortgagee's prior written consent, Mortgagee may, at Mortgagee's option, declare all of the sums secured by or otherwise due under this Mortgage accelerated and immediately due and payable. Mortgagee waives its option to accelerate if, and only if, prior to the sale or transfer, Mortgagee and the person or persons to whom the property is to be sold or transferred reach an agreement in writing that (i) the credit and such other matters as may be required by Mortgagee (including, without limitation, Mortgagee's approval of the skill, knowledge, ability, business performance, and experience) of such person or persons is satisfactory to Mortgagee; (ii) the interest payable on the sums secured by or otherwise due under this Mortgage will be at such rate as Mortgagee in its sole discretion shall determine; and (iii) Mortgagee receives payment of an assumption fee in an amount determined by Mortgagee in its sole discretion. In determining such rate or payment, or both, Mortgagee may, but is not required to, consider the Mortgagee's costs actually incurred, the creditworthiness of the transferee, the protection of Mortgagee's security, or any one or more of the foregoing. Mortgagee's right to accelerate the Note and foreclose the Mortgage under the conditions specified in this paragraph is included in this Mortgage as a material inducement to Mortgagee's making the loan or loans secured hereby and has been relied upon by Mortgagee in establishing the terms and conditions of the Note and this Mortgage; accordingly, the limitations contained in this paragraph will be strictly construed against Mortgagor and Mortgagor's successor(s) in interest and in favor of Mortgagee. If Mortgagee waives the option to accelerate provided in this paragraph, and if Mortgagor's successor(s) in interest executes a written assumption agreement, in form and substance satisfactory to Mortgagee, undertaking to pay all indebtedness secured hereby and to perform all obligations set forth herein, and if Mortgagor's successor(s) in interest executes such other agreements as Mortgagee may reasonably require, Mortgagee shall release Mortgagor from all obligations under this Mortgage and any note evidencing any indebtedness secured by this Mortgage. If Mortgagee does not waive its option to accelerate as provided in this paragraph, Mortgagee may deal with the successor or successors in interest without in any way discharging or reducing Mortgagor's liability for Mortgagor's obligations secured hereby.

15. <u>No Waiver</u>. No delay by Mortgagee in exercising any option, right, or remedy provided by this Mortgage or otherwise afforded by law shall waive or preclude the exercise of such option during the continuance of any breach or default of this Mortgage. No waiver by Mortgagee of any provision, breach, or default shall be a waiver of any other provision or a consent to any subsequent breach or default.

16. <u>Default Under Other Mortgages</u>. A default by Mortgagor in any term, covenant, or provision of any mortgage held by any other party that may encumber all or part of the Mortgaged Property, now or in the future, at Mortgagee's option constitutes a default of this Mortgage.

17. <u>Bankruptcy</u>. It is a default under this Mortgage if: (1) Mortgagor files a petition in bankruptcy, or for reorganization, or for an arrangement pursuant to the National Bankruptcy Code (or any similar law federal or state, in effect now or in the future); (2) Mortgagor files any other pleading seeking the benefit of any such law, or makes an assignment for the benefit of creditors, or admits in writing its inability to pay its debts as they become due, or suspends payment of its obligations, or takes any action in furtherance of the foregoing; (3) Mortgagor consents to the appointment of a receiver, trustee, liquidator, or other similar official for Mortgagor for the Mortgaged Property; or (4) a petition, answer or other pleading proposing an adjudication of Mortgagor as a bankrupt or Mortgagor's reorganization pursuant to the aforementioned laws, is filed in, and approved by, any court of competent jurisdiction, and the order approving the same is not vacated or stayed within sixty (60) days from entry, or if Mortgagor consents to the filing of any such pleading or fails to timely deny the material allegations therein.

18. <u>Extensions, Leniencies, and Releases</u>. Mortgagee may grant extensions of time for payment and other leniencies with respect to any indebtedness secured by this Mortgage, and may waive or fail to enforce any of Mortgagee's rights hereunder, and may release a portion or portions of the Mortgaged Property from the lien of this Mortgage, without releasing or diminishing the obligation or liability of any person constituting Mortgagor, or any guarantor or endorser.

19. <u>Subrogation</u>. Mortgagee shall be subrogated to the lien (notwithstanding its release of record) of any vendor, mortgagee, or other lienholder paid or discharged by the proceeds of any loan or advance made by Mortgagee to Mortgagor and secured by this Mortgage.

20. <u>Release or Satisfaction</u>. Whenever there is no outstanding obligation secured by or otherwise due under this Mortgage, Mortgagee shall, on written demand by Mortgagor, give a release of this Mortgage in recordable form.

21. <u>Prohibition Against Other Liens</u>. Mortgagor agrees not to create or permit the creation of any other mortgage, charge, lien, or encumbrance against the Mortgaged Property (or any portion of the Mortgaged Property) without obtaining the prior written consent of Mortgagee. Mortgagor agrees that a default by Mortgagor in any term, covenant, or provision of any other mortgage that may encumber the Mortgaged Property now or in the future also constitutes a default hereunder.

22.    General Provisions.  The singular shall include the plural and any gender shall be applicable to all genders when the context permits or implies.  If more than one person constitutes Mortgagor, their covenants and obligations hereunder shall be joint and several.  Mortgagee's rights expressed in this Mortgage are in addition to and cumulative of any other rights and remedies provided by law.  When the context permits, the terms "Mortgagor" and "Mortgagee" shall extend to and include their respective heirs, legal representatives, successors, and assigns.  Any agreement made in the future by Mortgagor and Mortgagee pursuant to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.  Time is of the essence to the performance by Mortgagor of every term, covenant, and condition of this Mortgage and the Note.

23.    Non-Homestead.    Mortgagor covenants that the Mortgaged Real Property does not constitute the homestead of Mortgagor, nor is it contiguous to the homestead of Mortgagor.

LENDER AND BORROWER, UPON EXECUTION AND ACCEPTANCE HEREOF, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE PROMISSORY NOTE SECURED HEREBY, AND/OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER MAKING THE LOAN TO BORROWER.

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage the date stated above.

WITNESSES:

_____
Signature of Witness
JANET L. BOYD
(Print or Type Name)

_____
Signature of Witness
Leah Pitts
(Print or Type Name)

_____
BRIAN C. BISHOP

_____
JEANNE B. BISHOP

STATE OF FLORIDA
COUNTY OF SARASOTA

The foregoing instrument was acknowledged before me this 24ᵗʰ day of August, 2004, by BRIAN C. BISHOP and JEANNE B. BISHOP, who are personally known to me or have produced _FL Driver's License_ as identification .

(Affix Notarial Seal)

Print Name:_____

Notary Public -State of Florida

My commission expires_____

Commission Number_____

JANET L. BOYD
MY COMMISSION # DD 031486
EXPIRES: August 30, 2005
Bonded Thru Notary Public Underwriters

Recording     11.00

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2008081310 1 PG
2008 JUN 13 08:58 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY,FLORIDA
CBETHEL  Receipt#1057854



2008081310

PREPARED BY AND RETURN TO:
Mary E. Van Winkle, Esquire
2815 Proctor Road
Sarasota, Florida 34231
(941) 923-1685

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS That, I, WILLIAM F. BISHOP, as Trustee under Declaration of Trust of Mitzi T. Bishop dated October 27, 1989, as amended, Assignor, whose address is P.O. Box 20627, Sarasota, FL 34276, in consideration of the sum of Ten and 00/100 Dollars, and other valuable considerations, received from or on behalf of WILLIAM F. BISHOP, Trustee of the William F. Bishop Revocable Trust dated June 12th 2008, Assignee, whose address is P O. Box 20627, Sarasota, FL 34276, at or before the ensealing and delivery of these presents, the receipt of which is acknowledged, do hereby grant, bargain, sell, assign, transfer and set over unto Assignee all his right, title and interest to a certain mortgage bearing the date of August 24, 2004 made by BRIAN C. BISHOP and JEANNE B. BISHOP in favor WILLIAM F. BISHOP, as Trustee under Declaration of Trust of Mitzi T. Bishop dated October 27, 1989, as amended, recorded in Official Record Instrument # 2004166525, in the Public Records of Sarasota County, Florida with full power to collect and discharge the same, or to dispose of the same in its name, WITHOUT RECOURSE, the following described piece or parcel of land, situate and being said County and State, to wit:

Lot 81, MORRIS INDUSTRIAL PARK, as per plat thereof recorded in Plat Book 29, Page 18, Public Records of Sarasota County, Florida.

Together with the note or obligation described in said mortgage, and the moneys due and in becoming due thereon, with interest from June 12th 2008

TO HAVE AND TO HOLD the same unto Assignee, his heirs, legal representatives, successors and assigns forever.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 12th day of June, 2008

Signed, sealed and delivered
in presence of:

DINA M. VOLACK

DEBRA J. AUSTIN


WILLIAM F. BISHOP, Trustee

State of Florida
County of Sarasota

The foregoing instrument was acknowledged before me this 12th day of June, 2008 by WILLIAM F. BISHOP, as Trustee, who is personally known ✓ OR _____ who produced a driver's license as identification.

My Commission Expires:

Notary Public - State of Florida

MARY E. VAN WINKLE
MY COMMISSION # DD 596063
EXPIRES: December 22, 2010
Bonded Thru Budget Notary Services

## AGREEMENT

BY THIS AGREEMENT dated as of this 23ʳᵈ day of February, 2007, by and among William F. Bishop, as Trustee, under Declaration of Trust of Mitzi T. Bishop, dated October 27, 1989 and amended and restated on January 29, 1993 ("Lender") and Home Front Homes, LLC ("Owner").

A. Lender is the owner and holder of a Promissory Note June 1, 2004, in the amount of $760,000 (the "Note") secured by a Real Estate Mortgage and Security Agreement dated August 24, 2004 recorded in Official Records Instrument 2004166525, Public Records of Sarasota County, Florida (the "Mortgage"). The Note and Mortgage are collectively referred to herein as the "Loan".

B. Owner holds title to the property which is the collateral under the Mortgage (the "Property"). Owner owes Lender for five (5) monthly payments in the amount of $6,831.09 each which were due on the 24ᵗʰ of each month from September 24, 2006 through January 24, 2007 and the Loan is in default as a result of such non-payment and the transfer of the property as set forth in Recital C.

C. Title to the Property was transferred to Owner without the prior written consent of Lender as required by the Mortgage.

D. Lender has agreed to waive such defaults and reinstate the Loan upon the terms and conditions contained herein.

NOW THEREFORE, in reliance upon the representations of the Borrowers, the terms and conditions of the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Accuracy of Recitals. The foregoing recitals are true and accurate.

2. Payments by Owner. Concurrent with the execution of this agreement Owner will: (1) pay to Lender in immediately available funds, the sum of $40,986.54 representing the five (5) monthly payments in the amount of $6,831.09 each which were due on the 24ᵗʰ of each month from September 24, 2006 through January 24, 2007, and the monthly payment in the amount of $6,831.09 which is due February 24, 2007 and, (ii) pay all assessments due to Morris Industrial Park Owners Association, Inc. Owner will make all future monthly payments under the Loan and all payments due under the first mortgage to Regions Bank (f/k/a/ AmSouth Bank) which is secured by the Property as and when they come due. After payment of the foregoing amounts the parties agree that the principal balance outstanding under the Loan as of February 24, 2007 will be $681,638.28.

3. Waiver of Default and Reinstatement. Lender hereby waives all prior defaults under the Loan and any late charges or increased interest, and further agrees to both the reinstatement of the Loan and to the prior transfer of the Property to Owner.

4. Termination Option. Provided that all payments required hereunder and under the Loan are then current, Owner shall have the option, on sixty (60) days prior written notice to

SAR:203646:1

1

Lender, to terminate its obligations under the Loan by delivering to Lender at the expiration of such sixty (60) day period (the "Transfer Date") the following: (i) a quitclaim deed conveying title to the Property to Lender free and clear of any liens or encumbrances other than the Loan, (ii) payment to Lender of monthly payments through the Transfer Date, and (iii) payment of the real estate and tangible personal property taxes due against the Property through the Transfer Date.

5. Nature of the Agreement. Pending termination as permitted under paragraph 4 above, all of the terms and conditions of the Loan shall remain in full force and effect despite the execution of this Agreement.

6. Representation of Counsel. Owner acknowledges that it has read and understands all of the terms and conditions contained herein and in the Loan Documents previously executed and delivered to Lender; that it has been advised to seek the advice of legal counsel of its own selection with regard to this Agreement and the Loan and that it has either done so or voluntarily declined to do so; that it entered into this Agreement of its own free will; and, that fully understands the consequences of failure to comply with the terms and conditions of this Agreement and the documents related to the Loan which were previously executed and delivered to Lender.

7. No Other Agreements. The parties agree that this constitutes the full and complete Agreement between the parties and there are no other agreements, oral or written, except as set forth or expressly referred to, herein. This Agreement may not be further modified except in writing, signed by the parties.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

WITNESSES:

Signature of Witness

Michael O. Zucker
Print Name of Witness

Signature of Witness

Christophe D. Moody
Print Name of Witness

LENDER

William F. Bishop, as Trustee

WITNESSES:

_____
Signature of Witness
_____
Print Name of Witness

_____
Signature of Witness
Shelley Bennam
Print Name of Witness


Reg Nadel
_____
Signature of Witness
PEG NADEL
Print Name of Witness

_____
Signature of Witness
Andrew Martin
Print Name of Witness

_____
Signature of Witness
Shelley Bennam
Print Name of Witness

_____
Signature of Witness
_____
Print Name of Witness

Reg Nadel
_____
Signature of Witness
PEG NADEL
Print Name of Witness

_____
Signature of Witness
Geoff Quisenberry
Print Name of Witness

SAR:203646:1

**OWNER**

HOME FRONT HOMES, LLC

By: _____
Karel J. Van Hinloopen Labber, Manager


HOME FRONT HOMES, LLC

By: _____
Clyde A. Connell, Manager


HOME FRONT HOMES, LLC

By: _____
Arthur Nadel, Manager


HOME FRONT HOMES, LLC

By: _____
Brian C. Bishop, Manager

3



# 2009 Detail Information for Parcel 0849-16-0015

Search          Print          Nearby IDs          Districts          2009 TRIM Notice

**Ownership**
HOME FRONT HOMES LLC
512 PAUL MORRIS DR
ENGLEWOOD, FL  34223

**View Another Parcel**
[＿＿＿] - [＿＿＿] - [＿＿＿]   [ Submit ]

**Situs Address**
512 PAUL MORRIS DR
ENGLEWOOD, FL  34223

**Parcel Characteristics**
Land Area:            43,025 (square feet)
Incorporation:        UNINCORPORATED
Delineated District:  RA01
Subdivision Code:     2143
Use Code:             4820
Sec/Twp/Rge:          29-40S-20E
Census (FIPS):        121150027182
Zoning:               PID

**Parcel Description**
LOT 81 MORRIS INDUSTRIAL PARK

**Code Lookups**
[ Choose Code Type ]

2008          << Prior ID          Change Year          Next ID >>          2009

**Preliminary Values**      *(Subject to Change)*
**Just (Market) Value:**    $583,800
   Land Value:             $172,100
   Improvement Value:   $411,700
**Assessed Value:**         $583,800
**Homestead:**              No
**Exemptions:**             $0
**Total Taxable:**          $583,800

Buildings          Exemptions          Value Changes          Documents          Transfers

**Improvements**            *(Preliminary)*
**Total Building Area:** 12,000
**Total Living Area:**   12,000
**Living Units:**        0
**Bed / Bath:**          Bed/0 Bath
**Pool:**                No
**Year Built:**          2004

**Last Sale/Transfer**
**Sale Price:**       $858,200
**Date Sold:**        5/24/2006
**Sales Qual. Code:** 0
**Deed Type:**        WD
**Grantor:**          BISHOP,BRIAN C
**Instrument #:**     2006103576

**Update Date:**  9/11/2009 5:03:00 AM

Home Page          Real Property          Personal Property          Sales Search          Help

Disclaimer The information appearing on this website was extracted from the records of the Sarasota County Property Appraiser's Office. Our goal is to provide the most accurate information available. However, no warranties, expressed or implied, are provided for the data, its use or interpretation. The property values relate to the last valuation date. The data is subject to change. **Copyright @ 2001 - 2009 Sarasota County Property Appraiser. All rights reserved.**

Exhibit "C"

back to article



Printed on page C5

# Gramatica brothers to purchase Home Front

*By Harold Bubil*

*Published: Wednesday, August 12, 2009 at 1:00 a.m.*

To look at Home Front Homes' booth at the Southeast Building Conference in Orlando earlier this month, you would not have suspected that a court-appointed receiver was about to take over the company. There was plenty of activity.

There also was some star power when former Tampa Bay Bucs placekicker Martin Gramatica and his brothers, Bill and Santiago, also former football players, stopped by to meet and greet.

But it was not a paid celebrity appearance. The Gramaticas, through their company, the Gramatica Group, are about to close on the purchase of Englewood-based Home Front, which on Monday was placed in receivership by a federal judge as part of Arthur G. Nadel's alleged Ponzi scheme case.

"It is a done deal," said Martin Gramatica, who helped the Bucs to the Super Bowl title in 2003 and retired after playing the 2008 season with the New Orleans Saints. The purchase "will be finalized very soon. We already feel like we are Home Front."

U.S. District Court Judge Richard Lazzara approved receiver Burton Wiand's motion to take over Home Front, which was mostly owned by Nadel. Nadel's other assets were placed in the receivership after his investment funds collapsed in January. From 2006 to 2009, Nadel transferred more than $2 million into Home Front with money gained from the "fraudulent investment scheme," Wiand said.

The receiver said Home Front is in financial distress, has minimal income, and likely would have gone out of business had it not been put in the receivership.

The Gramatica brothers think they can save the company, "hopefully by bringing in some fresh air and changing everything," Martin Gramatica said. "Our deal is to sell as much product as we can. That is how you get out of the hard times.

Exhibit "D"

"The people in Englewood have done a great job. We are just going to give it a little push on the sales side," he said.

Gramatica and his brothers have long been interested in green building: "We wanted to get involved with a SIPS (structural insulated panel system) manufacturer, and felt like Home Front had the best system."

In the meantime, the judge's order puts a stay on the mortgage foreclosure initiated on the deed to Home Front's Englewood manufacturing plant by the William F. Bishop Revocable Trust. The outstanding balance is $601,000.

William Bishop is the father of Brian Bishop, the man who invented the HFH panel system and founded the company 10 years ago before relinquishing control of the company to Nadel's Scoop Management in 2006.

Brian Bishop left Home Front after the Nadel story broke in January and has since started a new panelized-house construction company, New Panel Homes, in Sarasota.

New Panel Homes also had a booth at the Southeast Building Conference, 50 feet from the Home Front Homes booth -- but it was a long 50 feet.

"New Panel Homes is focused on providing new green panelized building kits throughout the Southeast from our Venice manufacturing plant," said Brian Bishop, reading from a statement. "Brian and Jeanne Bishop have divested their interest in Home Front Homes and have no connection to Home Front Homes LLC or Art Nadel in any way."

The Gramaticas already are running Home Front.

"The Gramatica Group is directing operations of the company as we speak," said Wiand, who added that Nadel investors now have an opportunity to recover lost money. The company can go forward "in strength," and the Gramaticas have a "gentlemen's agreement" to deal with creditors.

"The company is now an asset of the receivership," Wiand said. The Gramatica Group "will purchase certain assets from the receivership. Certain of the liabilities and obligations will not be undertaken. The decision as to exactly what happens with that property hasn't been made yet. The alternatives are that they would reach an accommodation and go forward with the mortgage, or that they would determine not to do that and potentially I would sell the property."

The Bishop trust will have a claim in the receivership, just like any other creditor.

"There might well be discussions between me and Mr. Bishop's attorney with respect to how they would like to resolve that situation," Wiand said.

"The company has a significant backlog of orders and it has a number of transactions that are ongoing at the present time. It has been meeting those delivery schedules and delivering the product pursuant to its contracts. However, because of a number of events, the company is short of cash flow. That is the easiest way to say it. There are significant payables out there to trade creditors."

This story appeared in print on page C5