# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                                             Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

        Defendants,

SCOOP REAL ESTATE, L.P.
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC,

        Relief Defendants.

_____/

## RECEIVER'S RESPONSE IN OPPOSITION TO WILLIAM F. BISHOP'S MOTION TO INTERVENE AND MOTION TO DISSOLVE INJUNCTION STAYING PROSECUTION OF STATE FORECLOSURE ACTION

Carl R. Nelson, FBN 0280186
Gianluca Morello, FBN 034997
Ashley Bruce Trehan, FBN 0043411
FOWLER WHITE BOGGS P.A.
P.O. Box 1438
Tampa, FL  33601
T: (813) 228-7411
F: (813) 229-8313
Attorneys for the Receiver, Burton W. Wiand

Dockets.Justia.com

On September 11, 2009, non-party William F. Bishop moved (1) to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure (the "Motion to Intervene") (Doc. 193) and (2) to dissolve the injunction freezing his state foreclosure action, to award to him adequate "protection payments," and to order the Receiver to disclose an agreement with a former buyer of receivership entity Home Front Homes, LLC ("Home Front Homes") (the "Motion to Dissolve Injunction") (Doc. 193-2). Essentially, Bishop argues that he is a secured creditor and that his personal financial circumstances and the sale of Home Front Homes warrant his intervention in this case and the Court's lifting of the stay of third-party proceedings so that he may pursue his individual foreclosure action involving the premises owned by and housing Home Front Homes (the "real property").

As discussed below and in the Receiver's Declaration in Support of His Response in Opposition to William F. Bishop's Motion to Intervene and Motion to Dissolve Injunction Staying Prosecution of State Foreclosure Action (the "Receiver's Declaration"),[1] the key purported circumstances relied upon by Bishop to argue for intervention and additional relief have changed substantially or do not reflect reality. Specifically, despite the Receiver's significant efforts, the sale of Home Front Homes was not completed, and the company recently ceased operations and shut its doors. Further, the real property may have equity and thus may be of benefit to the Receivership Estate.

In essence, Bishop, like other creditors, simply is a secured mortgagee of unoccupied real estate owned by a Receivership Entity. Significantly, Bishop's contentions place him in the same position as many other secured and unsecured creditors: he was harmed by Arthur

---

[1] The Receiver's Declaration is being filed contemporaneously with this Opposition.

Nadel's investment scheme; he is suffering significant financial hardship; and he will have an opportunity to make a claim in a court-approved claims process, at which time he will have the value and priority of his claim determined along with those of all other claims in a single, efficient proceeding that avoids piecemeal considerations. When, as here, a creditor's only potential "injury" would be a delay in enforcing its right, intervention and lifting the receivership stay are both unwarranted. *See FTC v. Med Resorts Int'l*, 199 F.R.D. 601, 607-609 (N.D. Ill. 2001). As this Court has previously held, the claims process will afford due process to <u>all</u> investors and creditors, including Bishop. (*See* Order dated Aug. 5, 2009 (Doc. 169) at 3.)

## BACKGROUND

Documents previously filed in this Securities & Exchange Commission ("SEC") enforcement action detail the fraudulent investment scheme that underlies this action (the "scheme"). (*See, e.g.*, Receiver's 3d Interim Rep. (Doc. 176); Receiver's Decl. dated Jan. 26, 2009 (Doc. 16).) On January 21, 2009, the Court appointed Burton W. Wiand as Receiver in this action (Doc. 8) and later reappointed him as Receiver (the "Order Reappointing Receiver") (Doc. 140). The Court directed the Receiver to "marshal and safeguard" the Receivership Entities' assets and to "take whatever actions are necessary for the protection of the investors . . . ." (*Id*. at 2.) Pertinent to Bishop's motions, the Court enjoined "all persons, including creditors, banks, investors, or others, with actual notice of this Order . . . from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the Receivership Entities." (*Id*. ¶ 15.)

2

On August 10, 2009, the Court expanded the Receivership to include Home Front Homes, a company which was funded with proceeds of the scheme and which, until recently, manufactured, marketed, and sold energy-efficient panelized homes. (*See* Order (Doc. 172); *see also* Receiver's Decl. in support of the Receiver's Sixth Unopposed Mot. to Expand Receivership ("Home Front Homes Decl.") (Doc. 171) ¶¶ 6, 37.) Prior to this SEC enforcement action, according to documents, Home Front Homes entered into an agreement with Bishop to assume and be liable for the payment of a promissory note, which is secured by a real estate mortgage and security agreement. (*See* Mot. to Dissolve Inj. at 2 & Exs. A & B thereto.) Sometime after Home Front Homes ceased its payments under the note, mortgage, and assumption, Bishop commenced a foreclosure action against Home Front Homes. (*Id*. at 2.) Bishop acknowledges that his foreclosure action is enjoined and seeks relief from that injunction. (*Id*. at 3-6.)

As noted above, the current pertinent facts are substantially different from those upon which Bishop relies. Although in August 2009, the Receiver and a buyer executed a Binding Term Sheet for the sale of Home Front Homes (Home Front Homes Decl. ¶¶ 34-35; Receiver's Decl. ¶¶ 4-5; *see also* Mot. to Dissolve Inj. Ex. D), the buyer walked out of the deal, and thus the sale was not closed.[2] (Receiver's Decl. ¶¶ 6-8.) Without a buyer or the influx of external capital, Home Front Homes recently had to cease operations. (*Id*. ¶ 8.) Now, the Receiver is investigating whether Home Front Homes and its assets have any remaining value for the Receivership, including examining the value of the real property

---

[2] For this reason, Bishop's request to "order the Receiver to disclose agreement with contract purchasers" is moot. (*See* Mot. to Dissolve Inj. at 1.)

which secures Bishop's note. (*Id.* ¶¶ 10-11.) A preliminary appraisal indicates the real property has over $200,000 in equity and thus is of benefit to the Receivership Estate.

The Court has already denied other parties', including secured creditors', requests to intervene. (*See* Order dated Feb. 11, 2009 (Doc. 45) ("1st Intervention Order"); Order dated Mar. 19, 2009 (Doc. 88) ("2d Intervention Order"); Order dated Aug. 5, 2009, (Doc. 169) ("3d Intervention Order").) Although in every instance the Court found the proposed intervenors had failed to address multiple factors enumerated in Rule 24 of the Federal Rules of Civil Procedure (Doc. 45 at 3; Doc. 88 at 2; Doc. 169 at 2-3), in one order the Court also cited other reasons – which are equally applicable here – for denying intervention:

> The Court concludes again that allowing intervention by [a third-party secured creditor] in these proceedings would result in the ***delay of the adjudication of the merits of this case*** with respect to the Plaintiff and Defendants and would ***encourage other non-party creditors and investors to seek intervention*** with the attendant consequences of this Court and the parties having to engage in unnecessary and premature collateral litigation.

(3d Intervention Order at 2 (emphasis added).) The Court also "express[ed] its utmost confidence in the skills and ability of the Receiver to protect the financial interests of [the third-party secured creditor] with regard to the assets at issue." (*Id.* at 2-3.) Thus, the Court has already determined that (1) at this stage, assertions arising out of a security interest in receivership property fail to satisfy the intervention criteria set forth in Rule 24, and (2) to date, no intervenor has shown an ability to better protect pertinent rights than the Receiver.

## ARGUMENT

The purpose of appointing a receiver in an SEC enforcement action is to effect an "orderly and efficient administration of the estate." *FTC v. 3R Bancorp*, 2005 WL 497784,

*3 (N.D. Ill. Feb. 23, 2005) (citing *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). Bishop's intervention and requested substantive relief would unnecessarily interfere with that process. Bishop's intervention also would be improper because (1) the Securities and Exchange Act of 1934 (the "Exchange Act") bars intervention as a matter of law; (2) there is no evidence the disposition of this action would impair or impede Bishop's ability to protect his interest; (3) there is no evidence the Receiver would not adequately represent Bishop's interest in the real property; (4) the claims and distribution process determined by the Receiver and this Court would be a more efficient, streamlined approach for addressing Bishop's claim; and (5) intervention would encourage other non-party creditors a to seek intervention.

Even if Bishop could intervene, his substantive Motion to Dissolve Injunction should be denied for many of the same reasons as the Motion to Intervene. It also should fail because the Receiver's interests far outweigh Bishop's interests. Bishop is only one of hundreds of creditors of the Receivership Estate. *See SEC v. Wencke*, 742 F.2d 1230, 1232 (9th Cir. 1984) ("*Wencke*").[3]

## I.    INTERVENTION IN THIS SEC ENFORCEMENT ACTION SHOULD BE DENIED FOR SEVERAL INDEPENDENT REASONS.

### A.    Section 21(g) of the Exchange Act Bars Intervention as a Matter of Law.

The SEC has the statutory responsibility to enforce federal securities laws. *See, e.g.*, *Official Comm. of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 82 (2d Cir.

---

[3] *Wencke* is part of a trilogy of Ninth Circuit opinions, each of which enunciated oft-cited rules applying to receiverships in SEC enforcement actions. *See also SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) *and SEC v. Wencke*, 783 F.2d 829 (9th Cir. 1986).

2006). As this Court has acknowledged, some federal courts have held that Section 21(g) of the Exchange Act bars intervention in an SEC enforcement action. *See* 1st Intervention Order at 2; *see also SEC v. Wozniak*, 1993 WL 34702, *1 (N.D. Ill. Feb. 8, 1993) (denying investor's motion to intervene); *SEC v. TLC Invs. and Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) ("Without a bar on intervention, [Section 21(g)] could easily be eviscerated: while a private action could not be consolidated with an SEC action, those proceeding in a private action could merely end that action and instead intervene in the SEC's action"). As a result, Bishop's Motion to Intervene should be denied as a matter of law.

**B.      Bishop is Not Entitled to Intervene Under Rule 24 of the Federal Rules of Civil Procedure.**

Even if Section 21(g) of the Exchange Act does not bar Bishop from intervening in this case as a matter of law, the Court should not allow him to intervene because he fails to satisfy the requirements of Rule 24. Importantly, Bishop's Motion to Intervene cites no case involving either an SEC enforcement action or an equity receivership. This omission is significant because federal courts presiding over SEC enforcement actions where equity receiverships have been established typically deny motions to intervene. Concerns of efficiency, resources of all parties involved, and equity often preclude a creditor from intervening in those cases. *See, e.g.*, *CTFC v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584 (10th Cir. 1984); *SEC v. Credit Bancorp Ltd.*, 194 F.R.D. 457, 468 (S.D.N.Y. 2000). The Receiver was appointed to provide investors and other creditors with an officer who can marshal assets quickly, fairly, and systematically for the benefit of all creditors. Allowing Bishop (or any other non-party) to intervene and interfere with assets that Nadel obtained with investor funds would undermine the very purpose of this equity Receivership.

Bishop brings his motion to intervene as of right under Rule 24(a)(2). Therefore, he must establish each of the following, among other elements: (1) he is so situated that disposition of the action as a practical matter may impair or impede his ability to protect his interest; and (2) the parties to the action will not adequately represent his interest. (1st Intervention Order at 3 (citing *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302-03 (11th Cir. 2008).) Bishop fails to establish either of these requirements.

**1.    Bishop has not shown that disposition of this action may impair or impede his ability to protect his interest in Receivership property.**

Bishop has not and cannot show how disposition of this SEC enforcement action would impair or impede his ability to protect his interest in Receivership property. To the extent Bishop argues that the formerly pending sale of Home Front Homes and the occupation of Home Front Homes' facilities by the buyer impeded his interest in the real property, the sale has since been abandoned, and the offices have been closed. Thus, those purported impediments no longer exist, and Bishop's arguments are moot. (*See* Mot. to Intervene at 7-8 ¶ 7.)

In any event, Bishop cannot show that disposition of this action may impair or impede his ability to protect his interest because, courts – including this Court – have repeatedly held that a receivership claims process is the appropriate forum for considering interests of secured creditors and allows secured creditors to protect their interests. *See, e.g.*, 3d Intervention Order at 3 (finding that the third-party creditor's due process argument was premature because "the Court has yet to approve a plan for the distribution of assets" and that the creditor could "rest assured that any such plan will afford it all the process that is due under the law with regard to its claimed interest in the assets at issue consistent with the

holding of [*SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992)].”); *SEC v. Homa*, 17 Fed. App’x 441, 446 (7th Cir. 2001) (holding that the intervenor’s claim “would not be impaired, because a forum is available under the Receiver's proposed claims procedure . . . .”). Aside from eliminating the burdensome need for each and every creditor to intervene prior to adjudication of an SEC enforcement action, the claims process and the Court’s oversight of the Receiver ensure protection of Bishop’s and every other creditor’s interests. As a result, the Motion to Intervene should be denied.

### 2. Bishop has not shown that the Receiver will not adequately represent Bishop’s interest in Receivership property.

Bishop similarly has not shown how the Receiver will not adequately represent his interest. As stated above, one of the grounds for Bishop’s Motion to Intervene is now moot because the buyer of Home Front Homes backed out and the real property is now unoccupied. (*See* Mot. to Intervene at 10-11.) Bishop’s only other relevant assertion, that the Receiver will not adequately protect his interest because he purportedly has displayed a “less than sympathetic position” toward Bishop, is unsupported by any facts and, in any event, Bishop does not explain how that somehow means the Receiver will not adequately represent his interest. (*Id*. ¶ 15.)

As an initial matter, Bishop’s assertion is essentially based on the Receiver’s statement in a declaration that Bishop “is pursuing a foreclosure action in an attempt to wrestle [Home Front Homes] real estate assets away from the receivership estate and thus from defrauded investors.” (*See* Mot. to Intervene at 9 ¶ 10 (citing Home Front Homes Decl. ¶ 40).) Although Bishop describes that assertion as inaccurate, in reality that statement is entirely consistent with the purpose and result of a foreclosure action: to foreclose on real

estate so as to benefit from the proceeds of the sale. While Bishop defends his conduct by noting that he instituted the action on July 14, 2009, which was three weeks before Home Front Homes was placed in receivership (*see* Mot. to Intervene ¶ 12), he ignores the abundant evidence available to him of the real property's connection to this Receivership, including (1) that the Receiver became heavily involved in Home Front Homes shortly after the inception of this Receivership; (2) that, beginning no later than on April 3, 2009, the Receiver publicly disclosed that Home Front Homes had been funded with proceeds of Nadel's scheme and qualified for inclusion in the Receivership (*see* 1st Interim Rep. (Doc. 103) at 18-19, 29-30); and (3) that Bishop's son had an interest in Home Front Homes and was aware of its connection to this receivership early on. In short, the facts objectively show that Bishop was trying to wrestle an asset away from the Receivership, and he identifies no evidence showing the Receiver is "less than sympathetic" toward Bishop or that such a position, even assuming it was true, somehow means Bishop's interest will not be adequately protected.

The SEC's and an equity receiver's adequate representation of all parties is <u>presumed</u> and must be rebutted by a proposed intervenor. *See CFTC v. Eustace*, 2005 WL 2862945, *2 (E.D. Pa. Oct. 31, 2005) ("[O]nce a receiver has been appointed, and the parties seeking relief or intervention have the same goal, i.e., protection of investors, there is a presumption that the receiver will adequately represent all parties. In that case, the parties seeking relief were unable to rebut the presumption that the receiver's representation would adequately represent their interests."); *Ruthardt v. U.S.*, 303 F.3d 375, 386 (1st Cir. 2002) ("Adequacy is presumed, although rebuttably so, where a government agency is the representative party.").

Bishop's conclusory (and inaccurate) reference to a "less than sympathetic position of the Receiver" and his purportedly supporting facts do not rebut this presumption.

In *SEC v. Byers*, the court was presented with similar circumstances as here and denied intervention, finding that the attempted intervenors failed to show that the SEC and federal receiver would not adequately represent their interests:

> The Proposed Intervenors have not shown that the Receiver and SEC are not adequately representing their interests in this case. The position of the Proposed Intervenors is no different from that of the other creditors and victims in this case, and, as set forth in my Prior Decision,
>
> > [a]s a practical matter, it does not make sense to allow individual victims and creditors to intervene as parties. There are allegedly 1,400 victims who invested in approximately sixty securities offerings that raised more than $250 million. There are dozens of creditors with divergent claims and interests. There is a complex web of some 120 Wextrust entities and affiliates operating throughout the world. In these circumstances, it would not be efficient or effective to permit individual creditors to intervene as parties.

2009 WL 212780, *1 (S.D.N.Y. Jan. 30, 2009); *see also Chilcott Portfolio*, 725 F.2d at 587 ("Like the district court, we believe the claims procedures set up by the Receiver will permit [the intervenor] to protect his claimed interest in assets presently under the control of the Receiver."); *SEC v. Behrens*, 2009 WL 2868221, *1 (D. Neb. Sept. 1, 2009) ("[The intervenor] has not shown why the claims procedure instituted by the Receiver is insufficient to protect any legitimate interests she may have in the subject property. The Receiver is obligated to consider her claims as well as those of other claimants, including the investors allegedly defrauded by the defendants. Disbursal of the assets is subject to the Court's approval."); *CFTC v. Lofgren*, 2003 WL 21639118, *3 (N.D. Ill., July 9, 2003) (denying third party's motion to intervene).

Further, in *Lofgren*, the court analyzed the interests of the government agency, the receiver, and the proposed intervenor:

> Two potential parties represent Sallusto interests, the CFTC and the Receiver. The CFTC's goal is to ***protect the public at large and to stop and deter the future violations of the law***. These goals differ slightly from Sallusto's desire to ***maximize his own recovery***. Thus, it would appear that the CFTC will adequately represent Sallusto's interests insofar as they are primarily concerned with preventing defendants from further dissipating the funds. On the other hand, the Receiver's interests could potentially conflict with Sallusto's goal of maximizing his own recovery. The Receiver[] is not concerned with maximizing Sallusto's individual recovery but rather is concerned with ***maximizing distribution to defrauded investors as a collective group***. In this sense, it could be argued that the Receiver will not adequately represent Sallusto's interests, particularly in this case, where the Receiver has indicated a hesitancy to distribute monies to Sallusto.

*Lofgren*, 2003 WL 21639118 at *3 (emphasis added). Importantly, the court found that "[t]his ***potential*** for inadequate representation ***should not serve as sufficient grounds*** for allowing intervention however." *Id.* (emphasis added). The court held that alternative forums, such as the receivership claims process, would "insure that [the third party's interests [would] not go unprotected." *Id.*

Bishop has not provided any cognizable reason for why his interest as a secured creditor somehow deserves special treatment allowing him to bypass the efficient receivership process. *See SEC v. Behrens*, 2009 WL 2378741, *3 (D. Neb. July 31, 2009) ("The court agrees with the [SEC] that [the intervenor] has not shown why the claims process instituted by the district court and the receiver are inadequate to protect her legitimate interests in the subject property. She has not shown why her claims should be treated any differently from the defendants' other creditors, and is not entitled to intervention as of right

under Fed. R. Civ. P. 24(a)(2).").  The Receivership claims process will be established by the Receiver and the Court as soon as possible.  That process will allow Bishop and other secured creditors, including those whose motions to intervene have already been denied, to assert a claim and will allow the Court to determine the value and priorities of those claims in a single, efficient process that comports with due process requirements.

In the meantime, and as part of the efficient receivership process, the Receiver is examining the value of the real property underlying Bishop's dispute (as well as other real property and all other assets) to determine whether there is any equity or other benefit to the Receivership Estate from maintaining it in Receivership or whether it should be relinquished. (*See* Receiver Decl. ¶ 10.)  Although the sale of Home Front Homes collapsed only approximately one week ago, the Receiver has already obtained a preliminary appraisal of the real property.  Notably, that appraisal valued the real property at $840,000, which, according to Bishop's own assertions, would mean that the real property has approximately $220,600 in equity that would directly benefit defrauded investors and other creditors.  (*Id*. ¶¶ 10-13.)

On the other hand, although Bishop claims there is no equity in the real property, his only "proof" is the Sarasota County Property Appraiser's "Just (Market) Value" estimate of $583,800.  But Bishop has not provided any evidence that the County Appraiser's estimate is an accurate and reasonable estimate of the property's true market value.  To the contrary, it is common knowledge that tax appraisers' estimates are usually lower than amounts obtainable from actual sales.  And in any event, even if Bishop had offered proof of no equity in the real property, the resulting "he said, she said" and, more broadly, this entire exercise are clear

examples of the inefficiencies and disruption created by creditors seeking to intervene in this matter rather than waiting to have their claims adjudicated in a single, efficient claims process after the Receiver has had adequate time to marshal all assets.

### 3. Intervention would unnecessarily set a dangerous precedent.

Bishop, like many other secured creditors, merely holds a note and mortgage on real estate titled in the name of a Receivership Entity and has provided no cognizable reason to single him out of the large group of creditors left in the wake of Nadel's scheme for special treatment (which will burden the receivership). Further, Bishop is not alone among creditors in his alleged financial circumstances. Other secured and unsecured creditors – including another elderly gentleman who holds a note and mortgage secured by real estate owned by a Receivership Entity – are facing significant financial hardship. While the Receiver is sensitive to Bishop's financial hardship, Nadel left many other creditors in the same predicament, and that hardship provides no basis to single out any particular creditor for special treatment, especially since it would negatively impact all other creditors, including many with the same, if not, worse financial hardships.

Allowing Bishop to intervene in this action would set a dangerous precedent, especially because he has not demonstrated any basis for intervening and disrupting this receivership's ongoing marshalling of assets. Bishop's and others' intervention would undermine the efficient administration of this receivership and divert resources and the Receiver's efforts from activities intended to benefit the entire Receivership Estate. Bishop's and other creditors' interests are being adequately protected by the Receiver (and the Court),

and they will receive due process through an efficient claims process. Also for this reason, Bishop's Motion to Intervene should be denied.

## II. BISHOP'S MOTION TO DISSOLVE INJUNCTION SHOULD BE DENIED BECAUSE HIS CONCERNS WILL BE ADDRESSED ONCE A PLAN FOR DISTRIBUTION OF RECEIVERSHIP ASSETS HAS BEEN ESTABLISHED.

Even assuming *arguendo* Bishop satisfied his burden of showing entitlement to intervene, his Motion to Dissolve Injunction should be denied for the same overarching reason that the Motion to Intervene should be denied: the Court's consideration of creditors' claims, including those of secured creditors, should be reserved for a single claims process:

> Without question, once the receivership estate is completed and a distribution is contemplated, there will come a time for those claiming an interest in assets subject to the receivership to make arguments regarding what preferences those interests should have in the distribution scheme. But first, the receiver must be given full opportunity to marshal the assets of the receivership estate and then preserve them.

*U.S. v. Petters*, 2008 WL 5234527, *4 (D. Minn. Dec. 12, 2008) (denying secured creditor's motion to lift receivership stay).

In that motion, Bishop seeks (1) dissolution of the injunction so that he may proceed with his foreclosure action over Receivership property; (2) payment of money owed to Bishop and of his attorney's fees; and (3) an order requiring the disclosure of the agreement for the sale of Home Front Homes by the Receiver. As previously noted, the third requested relief – an order requiring disclosure of the agreement – is moot because the sale collapsed before it was closed (and no "final" agreement was executed), and Home Front Homes has ceased operations.

Further, Bishop cites no legal support for the second-requested relief – payment of money owed from the receivership estate. That request seeks a distribution of Receivership assets on a preferential basis and without a claims process. Specifically, it represents another attempt to bypass the claims process, to have Bishop's claim's priority determined without notice and an opportunity to be heard for other creditors, and to leap ahead of all other creditors. These attempts are contrary to established law. *See Petters*, 2008 WL 5234527, *4 (D. Minn. Dec. 12, 2008); *Homa*, 17 Fed.App'x at 446. Bishop has shown no right to such a bypass of the claims procedure under the circumstances of this Receivership.

The first-requested relief – a dissolution of the injunction against proceeding that disturb Receivership property – is addressed below.

A. **The Receiver's Interests in Protecting Investors, Conserving Resources, and Preserving the Status Quo Outweigh Bishop's Arguable Interest in the Property.**

In support of dissolving the injunction, Bishop asks the Court to adopt the standard originally set forth in *Wencke*. This standard pits a receiver's interest in, *inter alia*, protecting receivership property and defrauded investors with those of the movant. *See United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005) ("A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant.") (citing *SEC v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985)); *see also 3R Bancorp*, 2005 WL 497784 at *2 ("[R]elief from a receivership stay should only be granted if the moving party's interests outweigh the interests of the receiver." (citing *Wencke*)). In *Petters*, the court found that the balance favored a denial of the motions because (1) denial would preserve the status quo; (2)

the receiver had "dutifully identified, managed, and preserved the assets for the *best interests of all* (creditors, claimants, and victims alike)"; and (3) the court was not persuaded that the intervenors would suffer substantial injury if the stay was not lifted. *Id.* (emphasis added). Here, Bishop's Motion to Dissolve Injunction fails for these same reasons.

   1.   **Preserving the status quo and preserving assets for the best interest of all.**

"[T]he receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of a movant's claim." *Petters*, 2008 WL 5234527 at *3-*4 (citations omitted); *see also Univ. Fin.*, 760 F.2d at 1038 (refusing to lift receivership stay when it would disturb the status quo and when lifting the stay "would result in a multiplicity of actions in different forums, and would increase litigation costs for all parties while diminishing the size of the receivership estate"); *SEC v. Byers*, 592 F. Supp. 2d 532, 537 (S.D. N.Y. 2008) (denying motion to lift stay: "The Receiver is charged with protecting the investors as a whole, and thus the best way to maintain the status quo is to permit him to carry on with his investigation."); *Med Resorts*, 199 F.R.D. at 607 ("The stay maintains the status quo. It has done precisely that for the last seven months. Rather than decrease the value of [the third parties'] interests, the stay ensures that the value of those interests wil be maintained.").

Despite this well-established rule, Bishop argues that he will suffer "substantial economic injury" if he cannot proceed with his foreclosure action because the property "is an asset likely depreciating by time and certainly by use." (*See* Mot. to Dissolve Inj. at 11 ¶ 8.) But Bishop does not offer any <u>evidence</u> that the property's value is declining, that it will continue to decline for some time, or that, to the extent the value is declining, it will not

bounce back within a reasonable time. Further, his argument ignores that, even assuming real property declines in value with use, the property is now unoccupied and not in use. In short, Bishop has offered no evidence that preserving the property as part of the Receivership estate will not maintain the status quo, and Bishop's Motion to Dissolve Injunction should be denied for this reason.

### 2. No substantial injury.

Bishop also has not demonstrated that he would suffer any substantial, cognizable injury if the stay continues. Bishop's only arguable, potential injury is that he – like every other creditor, including many suffering financial hardship – must wait until the Receiver establishes a claims process under which Bishop can file his claim. When a secured creditor's only potential "injury" would be a delay in enforcing its right, intervention and lifting the receivership stay are both unwarranted. *See Med Resorts Int'l*, 199 F.R.D. at 609. Although Bishop claims that he will suffer financial hardship if he does not receive proceeds from an immediate sale of the real property, he is in the same position as many other creditors and has not shown that hardship justifies intervention or dissolution of the injunction. Unfortunately, large fraudulent investment scheme like Nadel's leave behind large numbers of individuals with financial hardships, and Bishop has not shown any basis for receiving preferential treatment *vis-à-vis* all other creditors, including many who are in similar, if not worse, condition. The goal of this (and every other) receivership is to protect the best interests of the receivership estate as a whole.

Accordingly, Bishop's Motion to Dissolve Injunction should be denied.

**B.** **Although Rules Governing Bankruptcies May Be Used as Guidance, Those Rules Do Not Govern this Equity Receivership.**

Finally, recognizing that his Motion to Dissolve Injunction implicitly asks the Court to make a determination of the value and priority of his claim, Bishop asserts that bankruptcy rules of priority should govern this equity receivership. However, in a federal equity receivership, principles of equity govern, the Bankruptcy Code does not apply, and the interests of victims of securities laws violations are paramount. *See, e.g.*, *Quilling v. Trade Partners, Inc.*, 2007 WL 107669, *1 (W.D. Mich. 2007) ("This proceeding is a federal equity receivership and the Bankruptcy Code does not apply."); *Liberte Capital Group, LLC v. Capwill*, 248 Fed. App'x 650, 672 (6th Cir. 2007) ("[B]ankruptcy cases are factually and legally distinguishable from cases concerning equity receiverships . . . ."); *Marion v. TDI, Inc.*, 2006 WL 3742747, *2 (E.D. Pa. 2006) ("[A] bankruptcy proceeding differs significantly from an equity receivership imposed at the request of a government agency such as the SEC. The whole purpose of the SEC proceeding is to remedy violations of the securities laws for the benefit of investors."); *TLC Invs.*, 147 F. Supp. 2d 1031 at 1036 ("[T]he Court concludes that it would be unwise to require the Receiver to follow bankruptcy procedures more than he already is," denying motion to lift stay citing concerns such as delays in approving liquidation of property). Thus, the equities of this Receivership do not warrant an automatic application of the Bankruptcy Code here.

Instead, the Court should consider creditors' priorities – including Bishop's – in a single setting when all creditors have had a chance to submit claims and will have notice and an opportunity to be heard. But even if bankruptcy rules did apply here (which they do not), the application of those rules should be considered when all claims are before the Court and

all claimants have notice and an opportunity to be heard.  In short, under any circumstances, Bishop is not entitled to a determination of the priority (or value) of his claim at this juncture. His Motion to Dissolve Injunction should thus be denied.

## CONCLUSION

Bishop's foreclosure proceeding, his Motion to Intervene, and his Motion to Dissolve Injunction have already disrupted the Receiver's efforts and have required expenditure of limited resources.  Allowing Bishop's foreclosure action to proceed would require the Receiver and his professionals to spend even more time and effort defending litigation, which would further disrupt the Receiver's on-going investigation and marshaling of assets.  It would also set a dangerous precedent that inevitably would spur many other creditors to follow.  The Receiver, who is "charged with protecting" the hundreds of investors who Nadel defrauded and other creditors, should be permitted to continue his investigation and marshaling of assets and to maintain the status quo for all creditors.  Bishop, along with all other creditors and in accordance with due process requirements, will have an opportunity to make a claim and to have his claim and its priority determined in conjunction with all other claims once the Receiver and the Court establish a claims process.  As noted above, although the Receiver understands the financial hardship caused by Nadel's scheme, many creditors are suffering that hardship, and Bishop has not identified any basis for allowing his intervention and the substantive relief that he seeks.

For all of the above reasons, the Receiver respectfully requests the Court deny William F. Bishop's Motion to Intervene Pursuant to Rule 24 of the Federal Rules of Civil Procedure (Doc. 193) and Motion of Intervener, William F. Bishop, to Dissolve Injunction

Staying Prosecution of State Foreclosure Action, Award Adequate Protection Payments, Order the Receiver to Disclose Agreement with Contract Purchasers, or Grant Other Relief (Doc. 193-2).[4]

---

[4] Although Bishop's Motion to Intervene has been scheduled for hearing, the Receiver respectfully suggests that, based on the current facts and his argument as set forth in this Opposition and his supporting Declaration, Bishop's Motion to Intervene should be denied without a hearing.

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that on September 24, 2009, I will mail the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

> Arthur G. Nadel
> Register No. 50690-018
> Metropolitan Correctional Center, New York
> 150 Park Row
> New York, NY 10007

> s/ Gianluca Morello
> Carl R. Nelson, FBN 0280186
> cnelson@fowlerwhite.com
> Gianluca Morello, FBN 034997
> gianluca.morello@fowlerwhite.com
> Ashley Bruce Trehan, FBN 0043411
> ashley.trehan@fowlerwhite.com
> FOWLER WHITE BOGGS P.A.
> P.O. Box 1438
> Tampa, FL 33601
> T: (813) 228-7411
> F: (813) 229-8313
> Attorneys for the Receiver, Burton W. Wiand