EXECUTION VERSION

## AGREEMENT REGARDING CLAIMS AND OBLIGATIONS

THIS AGREEMENT REGARDING CLAIMS AND OBLIGATIONS (the "Agreement") is made and entered into as of December 7, 2009 (the "Effective Date"), by and between **NORTHERN TRUST, NA**, (the "Bank") and **BURTON W. WIAND**, as Court-appointed Receiver (the "Receiver") in the action styled *Securities and Exchange Commission v. Arthur Nadel, et al.*, Case No: 8:09-cv-87-T-26TBM (the "Action") (the Bank and the Receiver are sometimes collectively referred to herein as the "Parties" and each is a "Party").

### WITNESSETH

WHEREAS, the United States District Court for the Middle District of Florida, Tampa Division (the "Court"), appointed Burton W. Wiand as Receiver in the Action for a number of entities, including the Venice Jet Center, LLC, a Florida limited liability company (the "Company") and Scoop Capital, LLC ("Scoop Capital"), a Florida limited liability company. All of the receivership entities in the Action are collectively referred to as the "Receivership."

WHEREAS, the Receivership has certain liabilities outstanding with the Bank and certain assets subject to the Bank's liens, as generally described in Exhibit A.

WHEREAS, Tristate Aviation Group of Florida ("Tristate Aviation") desires to purchase the assets owned by the Company, and the Receiver desires to sell the Company's assets to Tristate Aviation (the purchase of the Company's assets contemplated by Tristate Aviation is referred to herein as the "Transaction"); and

WHEREAS, in consideration of the terms of the Transaction, and with the approval of the Court, the Bank and the Receiver desire to fully settle any and all claims on the outstanding liabilities and claims involving the Receivership, pursuant to the terms and conditions set forth herein;

NOW, THEREFORE, for and in consideration of the mutual promises, covenants and agreements contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Receiver agree as follows:

### OPERATIVE TERMS

Section 1. <u>Contingency</u>. The Bank and the Receiver understand and agree that the obligations of the Parties to perform as set forth in this Agreement are contingent upon a final order of the Court approving the Transaction and this Agreement (the "Contingency"). The form of the motion and Order approving the Transaction and this Agreement shall be approved by the Bank and the title company being used in the Transaction.

Section 2. <u>Settlement Proceeds</u>. Upon execution and delivery of this Agreement and satisfaction of the Contingency, the Receiver will cause to be paid to the

1

42413517v5

**EXHIBIT 2**

EXECUTION VERSION

Bank the sum of money in the Certificate Deposit described in <u>Exhibit A</u>, including all accrued interests earned therefrom but not yet paid. Said amount being paid is in consideration for the Bank's execution and delivery of this Agreement.

Section 3.   <u>Bank Release</u>. Upon execution and delivery of this Agreement and in consideration of the Settlement Proceeds, as well as satisfaction of the Contingency, except as otherwise provided in this Agreement, the Bank hereby releases, and forever discharges the Receiver, the Company and Scoop Capital of any claims and debts related to the loans set forth on <u>Exhibit A</u>. However, nothing in this paragraph or the Agreement shall release the Bank's mortgage or liens against the Company's assets to be sold pursuant to the Transaction and the Property (as defined herein).

Section 4.   <u>The Sale of the Company's Assets</u>. In consideration of the execution and delivery of this Agreement and satisfaction of the Contingency, the Bank and the Receiver understand and agree that if the Court approves a higher price than the price contemplated in the Transaction for sale of the Company's assets, the Bank shall be entitled to receive fifty percent (50%) of the difference between the higher price and the Transaction price, which amount shall be paid to the Bank as soon as practicable.

Section 5.   <u>Fruitville Road Property</u>. In consideration of the execution and delivery of this Agreement and satisfaction of the Contingency, the Bank and the Receiver understand and agree that upon the Receiver's closing on the sale of the Fruitville Road property (the "<u>Property</u>" and more particularly described on <u>Exhibit A</u>), the Bank shall be paid, in full satisfaction of the mortgage on the Property, the principal amount of the mortgage owed at the time when the Property became an asset of the Receivership, exclusive of all fees and penalties (the "<u>Mortgage</u>"); provided a sale of the Property is closed within one year of the date of the Court's order approving this Agreement and the Transaction. If the sale of the Property is not closed within one year from the date of the Court's order approving this Agreement and the Transaction, following the expiration date of the one-year period, the Receiver will agree to further negotiate in good faith with the Bank regarding the disposition of the Property.

Section 6.   <u>Retained Claims</u>. The Bank and the Receiver understand and agree that the execution and delivery of this Agreement, as well as satisfaction of the Contingency, shall not constitute a waiver or release of any claims the Bank may have against any guarantors of the liabilities released against the Receiver and the Receivership in this Agreement or liens against the Company's assets to be sold pursuant to the Transaction and the Property.

Section 7.   <u>Depository Relationship</u>. In consideration of the execution and delivery of this Agreement by the Bank and satisfaction of the Contingency, the Receiver agrees that the Receivership shall continue to use the Bank as one of its principal depository banks with no minimum account balance requirements.

Section 8.   <u>Release and Covenant Not to Sue</u>. In consideration of the execution and delivery of this Agreement and satisfaction of the Contingency, the Receiver, on behalf of the Receivership, (i) releases, acquits, satisfies, and forever

2

42413517v5

EXECUTION VERSION

discharges the Bank, its parents, subsidiaries affiliates, successors and assigns, and each of their directors, officers, employees and agents (the "Released Bank Parties"), of and from all causes of action, liabilities, suits, debts, accounts, controversies, agreements, damages, judgments, claims and demands whatsoever, in law or in equity, which the Receivership ever had, now has, or which hereafter can, shall or may have, against the Released Bank Parties, and (ii) covenants not to sue or bring any action in litigation, arbitration or other legal or equitable proceedings against the Released Bank Parties relating to Arthur Nadel, the Company, Scoop Capital, or the individuals and entities named or described in the above referenced Action or in the Receivership. Notwithstanding anything in this Section 8, the direct claims of any individual or entity not included within the Receivership are not the subject of this release.

Section 9.  No Admission of Liability.  The Parties have entered into this Agreement in order to amicably resolve any and all claims the Bank may have against the Company, Scoop Capital, or the Receivership.  The execution and delivery of this Agreement shall not constitute any admission of liability by the Bank.

Section 10.  Costs and Fees.  To the extent not described in this Agreement, each Party shall bear its or his own costs, attorney's fees, and other expenses.

Section 11.  Notices.  Any notice, request, information or other document to be given hereunder to any Parties by any other party shall be in writing and shall have been deemed to have been given (i) when personally delivered, sent by facsimile (with hard copy to follow) or sent by reputable overnight express courier (charges prepaid), or (ii) five (5) days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another is specified in writing, notices, demands and communications to the Receiver and The Bank shall be sent to the addresses indicated below:

    (a)    If intended for the Receiver:

        Burton W. Wiand, Receiver
        Venice Jet Center / Scoop Capital
        3000 Bayport Drive, Suite 600
        Tampa, Florida 33607
        Attention: Burt Wiand

    (b)    If intended for The Bank:

        Northern Trust, NA
        1515 Ringling Blvd # 400
        Sarasota, Florida 34236-6769
        Attn: Peter Biegel

42413517v5

EXECUTION VERSION

With copy to:
Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A.
2700 Bank of America Plaza
101 East Kennedy Boulevard
Tampa, Florida 33602-1102
Attn: Roberta A. Colton, Esq.

Any party may change the address to which notices hereunder are to be sent by giving written notice of such change of address as provided above.

Section 12. <u>Entire Agreement; Amendments</u>. This Agreement and the instruments delivered pursuant hereto constitute the entire agreement between the Parties hereto and supersede all prior written agreements and understanding, oral or written, between the Parties relating to the subject matter hereof. Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the Party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument. This Agreement, although initially drawn by one of the Parties hereto, shall not be construed for or against either party as a result thereof in any dispute pertaining to this Agreement or the transaction contemplated hereby, but this Agreement shall be interpreted in accordance with language hereof in an effort to reach the result intended thereby.

Section 13. <u>Governing Law and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Florida. This Agreement shall be subject to the exclusive jurisdiction of the United States District Court, Middle District of Florida, Tampa Division, in Hillsborough County in the State of Florida to the exclusion of the courts of any other state or country, and the Bank hereby irrevocably submit to the jurisdiction of the Court with respect to any claim arising out or in connection with this Agreement.

Section 14. <u>Venue</u>. In the event litigation should arise to enforce or interpret this Agreement, the Bank hereby agrees that the proper venue shall be in the United States District Court, Middle District of Florida, Tampa Division, in Hillsborough County in the State of Florida.

Section 15. <u>Captions</u>. The captions in this Agreement are inserted for convenience of reference only and in no way define, describe, or limit the scope or intent of this Agreement or any of the provisions hereof.

Section 16. <u>Binding Effect</u>. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns; provided, however the delivery of the Agreement by one party shall not be binding upon either until both Parties have fully executed same.

EXECUTION VERSION

Section 17.  <u>Waiver</u>.  No waiver by either party hereto of any condition or any breach of any term, covenant, representation or warranty contained in this Agreement shall be deemed or construed as a further or continuing waiver of such condition or breach or waiver of any other or subsequent condition or the breach of any other term, covenant, representation or warranty contained in this Agreement.

Section 18.  <u>Severability</u>.  If any provision of this Agreement is determined to be illegal or unenforceable, such provision will be deemed amended to the extent necessary to conform to applicable law or, if it cannot be so amended without materially altering the intention of the Parties, it will be deemed stricken and the remainder of the Agreement will remain in full force and effect.

Section 19.  <u>Attorneys' Fees</u>.  In any action or dispute, at law or in equity, that may arise under or otherwise relate to this Agreement, the prevailing party will be entitled to, from the non-prevailing party, reimbursement of its attorneys' fees (including, but not limited to, attorneys' fees, paralegals' fees and legal assistants' fees), costs and expenses incurred in the preparation for and in connection with any trial, appeal or bankruptcy proceeding.

Section 20.  <u>Counterparts</u>.  Any number of counterparts of this Agreement may be executed and each such executed counterpart shall be deemed to be an original.

[Signature Page Next]

EXECUTION VERSION

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the date first above written.

NORTHERN TRUST, NA

By: _____
Name: Peter L Biegel
Its: Senior Vice President/Senior Banking Officer

BURTON W. WIAND, as Court-appointed Receiver in the action styled *Securities and Exchange Commission v. Arthur Nadel, et al.*, Case No: 8:09-cv-87-T-26TBM

_____

EXECUTION VERSION

# EXHIBIT A

## RECEIVERSHIP ASSETS & LIABILITIES
## WITH
## NORTHERN TRUST, NA
(see attached)

1. Loan to the Company in the original principal amount of $2.0 million, secured by the assets of the Company and a related Swap Agreement between the Company and the Bank.

2. Loan to Scoop Capital in the original principal amount of $1.5 million, secured by a certificate of deposit number 2840259664 in the principal amount of $1.5 million (the "Certificate of Deposit") and a related Swap Agreement between Scoop Capital and the Bank.

3. Loan to Arthur and Marguerite Nadel in the principal amount of $191,250, secured by a mortgage on the real property at 15576 Fruitville Road, Sarasota, FL 34240 (the "Property").

42413517v5