EXHIBIT 12

Doc ID: 016855350021 Type: CRP
Recorded: 12/13/2005 at 04:05:47 PM
Fee Amt: $74.00 Page 1 of 21
Workflow# 1887353
Buncombe County, NC
Otto W. DeBruhl Register of Deeds
BK **4151** PG **1686-1706**

2006000989
MCDOWELL CO, NC
PRESENTED & RECORDED: FEE $75.00
02-13-2006 01:56:20 PM
Patricia A. Reel
REGISTER OF DEEDS
BY: CAROLYN I REEL
DEPUTY REGISTER OF DEEDS
BK:CRP **857**
PG:**485-506**

2005008737
MCDOWELL CO, NC FEE $74.00
PRESENTED & RECORDED:
12-06-2005 02:09:09 PM
Patricia A. Reel
REGISTER OF DEEDS
BY: JANE B MCGEE
ASSISTANT REGISTER OF DEEDS
BK:CRP **849**
PG:**808-828**

**THIS DOCUMENT CONTAINS A NOTICE PROVISION UPON TRANSFER OF ALL OR ANY PART OF THE REAL PROPERTY LEGALLY DESCRIBED HEREIN. SEE ARTICLE VII, SECTION 1.**

After recording mail to:
Carolina Mountain Land Conservancy
P.O. Box 2822
Hendersonville, NC 28793

*mail to: Powell + Deutsch*
*75 North Market St. #71*
*Mail BASE Asheville NC 28801*

NORTH CAROLINA          A portion of Parcel ID Number: 0637.00-81-0433
BUNCOMBE AND MCDOWELL COUNTIES

## DEED OF CONSERVATION EASEMENT
## LAUREL MOUNTAIN PRESERVE PROPERTY

This Grant of Conservation Easement (hereinafter "**Conservation Easement**") is made this 1st day of **December**, 2005, by Laurel Mountain Preserve LLC, whose primary address is 131 Garren Creek Road, Fairview NC, 28730 (hereinafter "**Grantor**") and CAROLINA MOUNTAIN LAND CONSERVANCY, a North Carolina nonprofit corporation, with an address of Post Office Box 2822, Hendersonville, NC 28793 (hereinafter "**Grantee**").

### RECITALS & CONSERVATION PURPOSES

Whereas, **Grantor** is the sole owner in fee simple of the property consisting of 168.794 acres more or less, located in the Broad River Township, Buncombe and McDowell Counties, North Carolina, which is a portion of the property described in instruments recorded in Book 3487, Page 9, Buncombe County Registry and Book 762, Page 157, McDowell County Registry (the 168.794 acres hereinafter referred to as the "**Property**") and further described in Exhibit A attached hereto and by this reference incorporated herein; and

Whereas, the **Property** is depicted on a survey dated September 10, 2005 entitled "Composite Map for Laurel Mountain Preserve" (hereinafter the "**Survey**"), prepared by David E. Summey, P.L.L.C. and recorded in Plat Book 100, Page 81, Buncombe County Registry and recorded in Plat Book 11, Page 85, McDowell County Registry; and

THIS DEED IS BEING RE-RECORDED TO CORRECT THE PLAT BOOK AND PAGE NUMBER OF THE PLAT RECORDED IN MCDOWELL COUNTY REGISTRY. I AM THE ATTORNEY WHO DRAFTED THE ORIGINAL.

ROBERT J. DEUTSCH, attorney

Whereas, **Grantee** is a publicly supported, tax-exempt nonprofit organization and a qualified organization under Sections 501(c)(3) and 170(h), respectively, of the Internal Revenue Code, as amended, and the regulations promulgated thereunder, and not a private foundation under Code §509, whose primary purpose is the preservation, protection, or enhancement of land in its natural, scenic, historical, agricultural, forested and/or open space condition; and

Whereas, **Grantor** and **Grantee** recognize that the **Property** in its present state is a *"natural scenic, rural or open area"* that has not been subject to significant development and is a significant natural area which provides a *"relatively natural habitat of fish, wildlife, or plants, or similar ecosystem"* as that phrase is used in Section 170(h)(4)(A)(ii) of the Internal Revenue Code. More specifically the **Easement Area** has:

(i) Perennial streams which are a critical resource supplying fresh water to the Catawba River watershed as well as supporting aquatic wildlife;

(ii) Approximately 37 acres of what appears to be historically unlogged, old growth forest including portions of most forest types found onsite. Old growth forests are the rarest forested conditions found in the eastern United States today offering an atypical glimpse of forest conditions prior to European colonization and deforestation;

(iii) Rich and acidic cove forest communities which are High Priority Conservation Areas because they contain the highest numbers of rare species and total species diversity and density of forests onsite. They also provide important wildlife habitat;

(iv) Rare plant species which have been designated and tracked by the North Carolina Natural Heritage Program as critical biological elements to the state of North Carolina. Such species found on the property include "significantly rare" *Coreopsis latifolia*, and "watch list" plant species such as *Helianthus glaucophyllus, Smilax biltmoreana, Tsuga caroliniana, Trillium cuneatum* and other species mentioned in the baseline documentation. In addition the property may host populations of other rare plant species such as Mountain Heartleaf which has been found upslope to the southeast near Round Mountain.

(v) Critical Wildlife species such as Yellow-bellied Sapsucker and 39 other probable bird species, 17 of which are listed by Partners in Flight as priority conservation species within the Southern Blue Ridge Region.

Whereas, **Grantor** and **Grantee** further recognize the **Property** provides *"open space for the scenic enjoyment of the general public"* as that phrase is used in Section 170(h)(4)(iii) of the Internal Revenue Code. More specifically, the **Property** is visible from State Roads 1100 and 1106 to the north, and has:

(i) Viewsheds from south-facing slopes in the road vicinity and south-facing slopes, ridges and peaks from Edmundson Mountain and Wildcat Knob;

(ii) Close proximity to the Pisgah National Forest and Gamelands, although it does not directly abut. Hickorynut Gamelands and other private forested land surround the property, although this land is not necessarily protected from development. The connectivity of all forested land in the general vicinity of the property is

2

profoundly important for plant and animal migration and diversity.

Whereas, **Grantor** believes that with the careful use of the conservation easement, the resources, habitat, beauty and unique ecological character (hereinafter "Conservation Values") of the **Property** can be protected in a manner that permits continuing private ownership of land and its subsequent use and enjoyment, and **Grantor** is willing to forego forever the right to fully exploit the financial potential of the **Property** by encumbering the **Property** with this **Conservation Easement**;

Whereas the protection of the natural and open space characteristics of the **Property** will yield significant public benefits, as evidenced by:

1. The policies and purposes of the Clean Water Management Trust Fund, N.C.G.S. Section 113-145.1 et seq., which recognizes the importance of protecting riparian buffers in protecting and conserving clean surface water;

2. The policies and purposes of the Uniform Conservation and Historic Preservation Agreements Act, N.C.G.S. Section 121-34 et seq., which provides for the enforceability of restrictions, easements, covenants or conditions "appropriate to retaining land or water areas predominantly in their natural, scenic or open condition or in agricultural, horticultural farming or forest use," and which provides for tax assessment of lands subject to such agreements "on the basis of the true value of the land and improvement less any reduction in value caused by the agreement."

3. The policies and purposes of the special North Carolina Conservation Tax Credit Program which encourages contributions of land for conservation purposes as set forth in N.C.G.S. Section 105-130.34 and Section 105-151.12 et seq.

4. The "Million Acres Initiative," enacted in June 2000, N.C.G.S. 113A-240, which provides that the state shall encourage, facilitate, plan, coordinate, and support appropriate federal, State, local, and private land protection efforts so that an additional one million acres of farmland, open space and conservation lands are permanently protected by December 31, 2009; and

5. North Carolina General Statute 139-2 et seq. provides that "it is hereby declared that the farm, forest and grazing lands of the State of North Carolina are among the basic assets of the State and the preservation of these lands is necessary to protect and promote the health, safety and general welfare of its people. It is hereby declared to be the policy of the legislature to provide for the conservation of the soil and resources of this State."; and

Whereas **Grantor** and **Grantee** have the common purposes of conserving the **Conservation Values** described in the preceding paragraphs, and **Grantor** further intends that the **Conservation Values** of the **Property** be conserved and maintained by permitting only those land uses on the **Property** that do not significantly impair or interfere with them, including, but not limited to, those land uses relating to recreational uses of the land and more specifically:

Laurel Mountain Preserve

    (i)    The development and maintenance of hiking, biking, and walking trails including trail signs;

    (ii)   A reasonable number of picnic tables and benches;

    (iii)  Providing that all trails and picnic areas etc. are developed and located in a way so as not to impair the aforementioned significant Conservation Values of the land.

Whereas, the **Conservation Values** are of great importance to the **Grantor**, to the **Grantee** and to the people of North Carolina and this nation; and

Whereas, the characteristics of the **Property**, its current use and state of improvement, are described in a report entitled Laurel Mountain Preserve Baseline Documentation, dated July 2005, (hereinafter "**Report**") prepared by Equinox Environmental Consultation and Design, Inc. for the **Grantor**, which consists of maps, reports, and onsite photographs, a summary of which is attached as Exhibit B to this **Conservation Easement**. The **Grantor** worked with the **Grantee** and Equinox Environmental Consultation and Design, Inc. to ensure that the report is a complete and accurate description of the **Property** as of the date of this **Conservation Easement**. The report will be used by the **Grantor** and **Grantee** to assure that any future changes in the use of the **Property** will be consistent with the terms of this **Conservation Easement**. However, the **Report** is not intended to preclude the use of other evidence to establish the present condition of the **Property** if there is a controversy over its use, and

Whereas **Grantor** owns the entire fee simple interest in the **Property** including the entire mineral estate subject to any liens, encumbrances, restrictions or covenants of record and all holders of liens or other encumbrances upon the **Property** have agreed to subordinate their interest in the **Property** to this **Conservation Easement**; and

Whereas the Uniform Conservation and Historic Preservation Agreements Act, N.C.G.S. 121-34 et seq., provides for the enforceability of restrictions, easements, covenants, or conditions appropriate to retaining land or water areas predominantly in their natural, scenic or open condition or in agricultural, horticultural, farming or forest use; and

NOW, THEREFORE, as an absolute gift of no monetary consideration but in consideration of the mutual covenants, terms, conditions and restrictions hereinafter set forth, the **Grantor** hereby unconditionally and irrevocably give, grant and convey forever and in perpetuity to the **Grantee**, its successors and assigns, and the **Grantee** hereby accepts, a Deed of **Conservation Easement** of the nature and character and to the extent hereinafter set forth in, over, through and across the **Property**, together with the right to preserve and protect the **Conservation Values** thereof as described in the Recitals herein.

## ARTICLE I. PURPOSE OF EASEMENT

The purposes of this **Conservation Easement** are to protect and conserve the value of the **Property's** natural habitat, water quality, and scenic qualities and it shall be so held, maintained,

and used therefore. It is the further purpose of this **Conservation Easement** to prevent any use of the **Property** that will significantly impair or interfere with the preservation of said **Conservation Values**. **Grantor** intends that this **Conservation Easement** will restrict use of the **Property** to such activities as are consistent with the purposes of conservation.

## ARTICLE II. DURATION OF EASEMENT

This **Conservation Easement** shall be perpetual. It is an easement in gross, runs with the land, and is enforceable by **Grantee** against **Grantor**, its representatives, successors, assigns, lessees, agents and licensees.

## ARTICLE III. RIGHTS RESERVED TO GRANTOR

**Grantor** reserves certain rights accruing from ownership of the **Property**, including the right to engage in or permit others to engage in uses of the **Property** that are not inconsistent with the purpose(s) of this **Easement**. All rights reserved by **Grantor** are reserved for **Grantor**, its representatives, successors, and assigns, and are considered to be consistent with the conservation purposes of this **Conservation Easement**. The following rights are expressly reserved:

1.    Construction. The right to construct structures except those existing on the date of this **Conservation Easement** is permitted only in accordance with the paragraphs below.

    1.1    Roads and Trails: **Grantor** reserves the right to keep open and passable all existing trails on the **Property** at the time of this **Conservation Easement**, the general locations of which are shown in the **Report**. A reasonable number of hiking trails may be created anywhere on the **Property** so long as the network of trails does not degrade the **Conservation Values** of the **Property**.

    1.2    Recreational Structures: **Grantor** reserves the right to construct a reasonable number of benches, boardwalks picnic tables, fire rings and where necessary railings, stairs, and footbridges.

    1.3    Utilities: **Grantor** reserves the right to construct a well or wells to serve allowed improvements and **Property** uses, along with aboveground appurtenances not to exceed 100 square feet.

2.    Existing Improvements.   **Grantor** shall have the right to maintain, remodel, replace and repair existing structures, water tanks, water wells, fences, utilities, and other improvements, and to improve, keep open and keep passable existing roads, and in the event of their destruction, to reconstruct any such existing improvements with another of similar size, function, capacity, location and material.

5

3.   **Timber Harvest**. The right to cut timber or remove or destroy trees shall be permitted upon the **Property** only under the following conditions or for the following purposes:

   3.1   Clearing and restoring vegetative cover that has been damaged or disturbed by forces of nature or otherwise or for the removal of dead wood or trees as necessary to control or prevent imminent hazard, disease or fire.

   3.2   Selective thinning or harvesting trees is permitted, but done only in accordance with contemporary, conservation-based, forest management practices and according to a plan that is consistent with the provisions of this **Conservation Easement**, and prepared by the North Carolina Division of Forest Resources, a registered forester or other qualified biologist. Such plans must be approved by **Grantor** and **Grantee**, and may be amended from time to time by the parties. Such plans shall include a copy of this **Conservation Easement** as an appendix and shall also include a biological inventory of the **Property** if one is available. The purpose of this requirement is to ensure that goal of the forest management plan is consistent with the purpose of this **Conservation Easement.**

   3.3   **Grantor** shall indemnify **Grantee** for all claims of personal injury or property damage, including reasonable attorney fees and costs, occurring on the Property to the extent they are caused by the negligence or intentional act of **Grantor**, its employees, or agents. **Grantee** shall indemnify **Grantor** for all claims of personal injury or property damage, including reasonable attorney fees and costs, occurring on the Property to the extent that they are caused by the negligence or intentional act of **Grantee**, its employees, or agents.

4.   **Recreational Use**. **Grantor** shall have the right to engage in and to permit others to engage in recreational uses of the **Property** including, but not limited to, hiking, camping, picnicking, non-motorized bicycling, lawful hunting and fishing, and other recreational uses that require no buildings, facilities, surface alteration or other development of the land.

5.   **Destruction of Plants and Pruning**. **Grantor** shall have the right to cut and remove diseased trees, shrubs, or other plants, and to cut firebreaks, subject to prior approval by the **Grantee**, except that such approval shall not be required in case of emergency firebreaks. **Grantor** shall also have the right to cut and remove trees, shrubs, or other plants to accommodate the activities expressly allowed under this easement and to maintain open spaces existing at the time of this **Conservation Easement**. There shall be no additional removal, harvesting, destruction or cutting of native trees, shrubs or other plants. Furthermore, except to accommodate the activities expressly permitted in this easement, there shall be no use of fertilizers, plowing, introduction of non-native animals, or disturbance or change in the natural habitat in any manner.

   5.1   The spraying of herbicides to control weeds and undesirable plants shall be allowed, provided that any herbicide shall be applied in accordance with the recommendations and/or requirements on the label of the herbicide and

6

its use shall be consistent with any applicable federal, state, and local laws and regulations.

6.    <u>Excavation</u>. **Grantor** shall have the right to excavate only as necessary to allow the construction of the improvements allowed above, the maintenance of existing hiking trails and the prevention of erosion and/or flooding. There shall be no other excavation or alteration to the topography allowed on the **Property**.

7.    <u>Water Quality and Drainage Patterns</u>. **Grantor** reserves the right to alter the land in furtherance of wetland or riparian restoration activities so long as such activities to restore natural hydrology, or to enhance wetlands or other hydric habitat, are performed in accordance with a habitat improvement plan prepared by a biologist, consultant, or other qualified professional and approved by the **Grantee** and as permitted by state and any other appropriate regulatory authorities. **Grantor** also reserves the right to construct a well or wells to serve allowed improvements.

8.    <u>Signage</u>. No signs or billboards or other advertising displays are allowed on the **Property**, except that signs whose placement, number and design do not significantly diminish the scenic character of the **Property** may be displayed to identify roads or trails and the **Conservation Values** of the **Property**, to identify the name and address of the **Property** and the names of persons living on the **Property**, to give directions, to advertise or regulate permitted uses on the **Property** and proscribe rules, use, and regulations for recreational use of the protected **Property**, to advertise the **Property** for sale or rent, and to post the **Property** to control trespassing.

9.    <u>Predator Control</u>. **Grantor** shall have the right to control, destroy, or trap predatory and problem animals that pose a material threat to humans by means and methods approved by the **Grantee**. The method employed shall be selective and specific to individuals, rather than broadcast, non-selective techniques and shall be in accordance with all pertinent federal, state and local laws and regulations.

10.    <u>Vehicular Use</u>. **Grantor** reserves the right to use motorized vehicles on any road on the **Property** and to use motorized vehicles on the **Property** in furtherance of rights reserved to **Grantor** so long as such use is not for recreational purposes

## ARTICLE IV. PROHIBITED AND RESTRICTED ACTIVITIES

Any activity on, or use of, the **Property** inconsistent with the purposes of this **Conservation Easement** is prohibited. Notwithstanding the foregoing, **Grantor** and **Grantee** have no right to agree to any activity that would result in the termination of this **Conservation Easement** or would cause it to fail to qualify as a "qualified conservation contribution" as described in Section 170(h) of the Internal Revenue Code or any regulations promulgated thereunder, or as a "qualified conservation easement" as described in Section 2031(c)(8)(B) of the Internal Revenue Code or any regulations promulgated thereunder. The **Property** shall be maintained in its natural, scenic, wooded or open condition and restricted from any development or use that would impair or interfere with the conservation purposes of this **Conservation**

Easement set forth above.

Except for those rights specifically reserved to Grantor in Article III and without limiting the generality of the foregoing, the following activities and uses are expressly prohibited or restricted:

1.  Industrial and Commercial Use. Industrial and commercial activities and any right of passage for such purposes are prohibited on the **Property**.

2.  Subdivision. The **Property** may not be divided, subdivided or partitioned, nor conveyed except in its current configuration as an entity.

3.  Development Rights. No development rights that have been encumbered or extinguished by this **Conservation Easement** shall be transferred to other lands pursuant to a transferable development rights scheme or cluster development arrangement or otherwise.

4.  Commercial Agricultural, Timber Harvesting, Grazing and Horticultural Use. Commercial agricultural, timber harvesting, grazing, horticultural or animal husbandry operations are prohibited on the **Property**.

5.  Disturbance of Natural Features, Plants and Animals There shall be no cutting or removal of trees, or the disturbance of other natural features on the **Property**.

6.  Construction of Buildings and Recreational Use. There shall be no constructing or placing of any building, mobile home, asphalt or concrete pavement, billboard or other advertising display, antenna, utility pole, tower, conduit, line, pier landing, dock or any other temporary or permanent structure or facility on or above the **Property**.

7.  Mineral Use, Excavation, Dredging. There shall be no filling, excavation, dredging, mining or drilling; no removal of topsoil, sand, gravel, rock, peat, minerals or other materials, and no change in the topography of the land in any manner except as necessary for the purpose of combating erosion or incidental to any conservation management activities.

8.  No Biocides. There shall be no use of pesticides or biocides, including, but not limited to, insecticides, fungicides, rodenticides, and herbicides, except as approved by **Grantee** to control invasive species detrimental to the **Conservation Values** of the **Property**, and except as needed around improvements on the **Property** and in existing agricultural fields.

9.  No Dumping. There shall be no storage or dumping of trash, garbage, abandoned vehicles, appliances, or machinery, or other unsightly or offensive material, hazardous substance, or toxic waste on the **Property**. There shall be no changing of the topography through the placing of soil or other substance or material such as land fill or dredging spoils, nor shall activities be conducted on the **Property** that could cause erosion or

siltation on the **Property**.

10.    Water Quality and Drainage Patterns.  There shall be no pollution or alteration of water bodies and no activities that would be detrimental to water purity or that would alter natural water levels, drainage, sedimentation and/or flow in or over the **Property** or into any surface waters; or cause soil degradation or erosion; nor diking, dredging, alteration, draining, filling or removal of wetlands.

11.    Adverse or Inconsistent Uses.  There shall be no other use or activity that is inconsistent with the **Conservation Purposes**.

## ARTICLE V. RIGHTS RESERVED TO GRANTEE, ENFORCEMENT AND REMEDIES

1.    Enforcement.  To accomplish the purposes of this **Conservation Easement**, **Grantee** is allowed to prevent any activity on or use of the **Property** that is inconsistent with the purposes of this **Conservation Easement** and to require the Grantor, all subsequent owners, heirs and assigns to restore such areas or features of the **Property** that may have been damaged by such activity or use. Upon any breach of the terms of this **Conservation Easement** by **Grantor** that comes to the attention of the **Grantee**, the **Grantee** shall, except as provided below, notify the **Grantor** in writing (hereinafter "**First Notice**") of such breach. The **Grantor** shall have thirty (30) days after receipt of the **First Notice** to either correct the conditions constituting such breach or to pursue mediation as described in Article VII Section 9 of this **Conservation Easement**.  In the event that mediation or voluntary compliance is not agreed upon within thirty (30) days of receipt of **First Notice**, the Grantee shall give written notice to **Grantor** of such violation (hereinafter "**Second Notice**") and demand corrective action sufficient to cure the violation and, where the violation involves injury to the **Property** resulting from any use or activity inconsistent with the purpose of this **Conservation Easement**, to restore the portion of the **Property** so injured.  If the **Grantor** fails to agree to mediation or to cure the breach within thirty days after receipt of the **Second Notice** the **Grantee** may enforce this **Conservation Easement** by appropriate legal proceedings including damages, injunctive and other relief. The **Grantee** shall also have the power and authority, consistent with its statutory authority; (a) to prevent any impairment of the **Property** by acts which may be unlawful or in violation of this **Conservation Easement**; (b) to otherwise preserve or protect its interest in the **Property**; and (c) to seek damages from any appropriate person or entity.  Notwithstanding the foregoing, the **Grantee** reserves the immediate right, without notice, to obtain a temporary restraining order, injunctive or other appropriate relief if the breach of the term of this **Conservation Easement** is or would irreversibly or otherwise materially impair the benefits to be derived from this **Conservation Easement**.  The **Grantor** and **Grantee** acknowledge that under such circumstances damage to the **Grantee** would be irreparable and remedies at law will be inadequate.  The rights and remedies of the **Grantee** provided hereunder shall be in addition to, and not in lieu of, all other rights and remedies available to **Grantee** in connection with this **Conservation Easement**.

9

2. <u>Right of Entry and Inspection</u>. **Grantee**, its employees and agents and its successors and assigns, have the right, with reasonable notice, to enter the **Property** once a year for the purpose of inspecting the **Property** to determine if the **Grantor**, **Grantor's** representatives, or assigns are complying with the terms, conditions and restrictions of this **Conservation Easement**. **Grantee** may enter the **Property** without giving reasonable notice to the **Grantor** whenever **Grantee** has reasonable evidence of a violation; in this event **Grantee** will notify **Grantor** of the reasonable evidence prompting **Grantee's** entry of the **Property** in accordance with Article VII, Paragraph 6 below.

3. <u>Acts Beyond **Grantor's** Control</u>. Nothing contained in this **Conservation Easement** shall be construed to entitle **Grantee** to bring any action against **Grantor** for any injury or change in the **Property** caused by third parties, resulting from causes beyond the **Grantor's** control, including, without limitation, fire, flood, storm, and earth movement, or from any prudent action taken in good faith by the **Grantor** under emergency conditions to prevent, abate, or mitigate significant injury to life, damage to property or harm to the **Property** resulting from such causes.

4. <u>Costs of Enforcement</u>. Any costs incurred by **Grantee** in enforcing the terms of this **Conservation Easement** against **Grantor**, including, without limitation, any costs of restoration necessitated by **Grantor's** acts or omissions in violation of the terms of this **Conservation Easement**, shall be borne by **Grantor**.

5. <u>No Waiver</u>. Enforcement of this **Conservation Easement** shall be at the discretion of the **Grantee** and any forbearance by **Grantee** to exercise its rights hereunder in the event of any breach of any term set forth herein shall not be deemed or construed to be a waiver by **Grantee** of such term or of any subsequent breach of the same or of any other term of this easement or of **Grantee's** rights. No delay or omission by **Grantee** in exercise of any right or remedy shall impair such right or remedy or be construed as a waiver.

6. <u>Research and Restoration Activities</u>. **Grantee** has the right, but not the obligation, to undertake research, restoration and any special management necessary (e.g., removal of exotic species, wildlife restoration activities) for species designated by agencies of the State of North Carolina or federal agencies as warranting concern due to small or declining local, regional, or national populations.

## ARTICLE VI. DOCUMENTATION AND TITLE

1. <u>Property Condition</u>. The parties acknowledge that the **Property** has a system of hiking trails and old logging roads, and no other improvements other than as described in Exhibit B and easements and rights of way of record.

2. <u>Title</u>. The **Grantor** covenants and represents that the **Grantor** is the sole owner and is seized of the **Property** in fee simple and has good right to grant and convey the aforesaid **Conservation Easement** on the **Property**; that there is legal access to the

10

Property, that the **Property** is free and clear of any and all encumbrances, except easements of record, none of which would nullify, impair or limit in any way the terms or effect of this **Conservation Easement**; **Grantor** shall defend its title against the claims of all persons whomsoever, and **Grantor** covenants that the **Grantee** shall have the use of and enjoy all of the benefits derived from and arising out of the aforesaid **Conservation Easement**.

3.  Easement Documentation Report. The parties acknowledge that the Report, a copy of which is on file at the offices of **Grantee**, accurately establishes the uses, structures, **Conservation Values** and condition of the **Property** as of the date hereof.

## ARTICLE VII. MISCELLANEOUS

1.  Subsequent Transfers. **Grantor** agrees for itself, its successors and assigns, to notify **Grantee** in writing of the names and addresses of any party to whom the **Property**, or any part thereof, is to be transferred at or prior to the time said transfer is consummated. **Grantor**, for itself, its successors and assigns, further agrees to make specific reference to this **Conservation Easement** in a separate paragraph of any subsequent lease, deed or other legal instrument by which any interest in the **Property** is conveyed.

2.  Conservation Purpose.

2.1  **Grantee**, for itself, its successors and assigns, agrees that this **Conservation Easement** shall be held exclusively for conservation purposes.

2.2  The parties hereto recognize and agree that the benefits of this **Conservation Easement** are in gross and assignable, provided, however that the **Grantee** hereby covenants and agrees, that in the event it transfers or assigns this **Conservation Easement**, the organization receiving the interest will be a qualified organization as that term is defined in Section 170(h)(3) of the Internal Revenue Code, which is organized or operated primarily for one of the conservation purposes specified in Section 170 (h)(4)(A) of the Internal Revenue Code, and **Grantee** further covenants and agrees that the terms of the transfer or assignment will be such that the transferee or assignee will be required to continue to carry out in perpetuity the conservation purposes that the contribution was originally intended to advance, set forth in the Recitals herein.

2.3  This **Conservation Easement** gives rise to a real property right and interest immediately vested in **Grantee**. For purposes of this **Conservation Easement**, the fair market value of **Grantee's** right and interest shall be equal to the difference between (a) the fair market value of the **Easement Area** as if not burdened by this **Conservation Easement** and (b) the fair market value of the **Easement Area** burdened by this **Conservation Easement**.

12

2.4 If at any time **Grantee** or any successor or assignee is unable to enforce this **Conservation Easement** or if **Grantee** or any successor or assignee of **Grantee's** rights under this **Conservation Easement** ceases to exist or ceases to be a "qualified organization" (as defined in the Code) and if, within a reasonable period of time after the occurrence of any of these events, **Grantee** or any successor or assignee fails to assign all of its rights and responsibilities under this **Conservation Easement** to a "qualified organization" and "holder", then the rights and responsibilities under this **Conservation Easement** shall become vested in and fall upon another qualified organization in accordance with a proceeding before, and the order of, any court of competent jurisdiction. **Grantor shall have the right to comment in writing on the selection of an organization or entity to transfer this Conservation Easement to and Grantee shall consider such comments in their decision.**

3. <u>Existing Responsibilities of Grantor and Grantee Not Affected</u>. Other than as specified herein, this **Conservation Easement** is not intended to impose any legal or other responsibility on the Grantee, or in any way to affect any existing obligation to the **Grantor** as owner of the **Property**. Among other things, this shall apply to:

3.1 <u>Taxes</u>. The **Grantor** shall continue to be solely responsible for payment of all taxes and assessments levied against the **Property**. If the **Grantee** is ever required to pay any taxes or assessments on its interest in the **Property**, the **Grantor** will reimburse the **Grantee** for the same.

3.2 <u>Upkeep and Maintenance</u>. The **Grantor** shall continue to be solely responsible for the upkeep and maintenance of the **Property**, to the extent it may be required by law. The **Grantee** shall have no obligation for the upkeep or maintenance of the **Property**.

3.3 <u>Liability and Indemnification</u>. If the **Grantee** is ever required by a court to pay damages resulting from personal injury or property damage that occurs on the **Property**, the **Grantor** shall indemnify and reimburse the **Grantee** for these payments, as well as reasonable attorneys' fees and other expenses of defending itself, unless the **Grantee** has committed a deliberate act that is determined to be the sole cause of the injury or damage. In addition, **Grantor** warrants that **Grantee** shall be maintained as an additional insured on **Grantor's** liability insurance policies covering the **Property**.

4. <u>Construction of Terms</u>. This **Conservation Easement** shall be construed to promote the purposes of the North Carolina enabling statute set forth in N.C.G.S. 121-34 <u>et seq</u>. which authorizes the creation of Conservation Easements for purposes including those set forth in the Recitals herein, and the conservation purposes of this **Conservation Easement**, including such purposes as are defined in Section 170(h)(4)(A) of the Internal Revenue Code.

5. <u>Recording</u>. **Grantee** shall record this instrument and any amendment hereto in timely fashion in the official records of Buncombe and McDowell County, North

12

Carolina, and may re record it at any time as may be required to preserve its rights.

6.      **Notices.** All notices, requests or other communications permitted or required by this Agreement shall be sent by certified mail, return receipt requested, addressed to the parties as set forth above, or to such other addresses such party may establish in writing to the other. All such items shall be deemed given or made three (3) days after being placed in the United States mail as herein provided. In any case where the terms of this **Conservation Easement** require the consent of any party, such consent shall be requested by written notice. Such consent shall be deemed approved unless, within thirty (30) days after receipt of notice, a written response is returned via registered mail. If additional information is required or requested to render a decision, consent will be deemed approved thirty (30) days after receipt of said additional information if a response is not received.

To **Grantor**:                          To the **Grantee**:
Laurel Mountain Preserve LLC              Carolina Mountain Land Conservancy
131 Garren Creek Road                     P.O. Box 2822
Fairview NC 28730                         Hendersonville, NC 28793

7.      **Amendments.** In furtherance of the **Conservation Purposes** of this **Conservation Easement**, neither **Grantor** nor **Grantee** contemplate the amendment of this **Conservation Easement** except in the event of an error in drafting jointly acknowledged by both **Grantor** and **Grantee**, or other rare, unlikely circumstances. If circumstances arise such that an amendment to, or modification of, this **Conservation Easement** would be appropriate, **Grantor** and **Grantee** are free to jointly amend this **Conservation Easement**, provided that no amendment shall be allowed that will affect the qualification of this Conservation Easement as a qualified conservation contribution or the status of **Grantee** under any applicable laws, including Section 170(h). **Grantor** and **Grantee** are free to jointly amend this **Conservation Easement** to meet changing conditions, provided that no amendment will be allowed that is inconsistent with the purposes of this **Conservation Easement** or affects the perpetual duration of this **Conservation Easement**. Such amendment(s) require the written consent of both **Grantor** and **Grantee** and shall be effective upon recording in the public records of Buncombe and McDowell County, North Carolina. **Grantee** and the legal owner or owners of the **Easement Area** or, if the **Easement Area** has been legally subdivided, the owner of that portion of the **Easement Area** affected by such amendment at the time of amendment shall mutually have the right, in their sole discretion, to agree to amendments to this **Conservation Easement** which are not inconsistent with the **Conservation Purposes.**

8.      **Environmental Condition of Property.** The **Grantor** warrants, represents and covenants to the **Grantee** that to the best of its knowledge after appropriate inquiry and investigation that: (a) the **Property** described herein is, and at all times hereafter will continue to be, in full compliance with all federal, state and local environmental laws and regulations, and (b) as of the date hereof there are no hazardous materials, substances,

14

wastes, or environmentally regulated substances (including, without limitation, any materials containing asbestos) located on, in or under the **Property** or used in connection therewith, and that there is no environmental condition existing on the **Property** that may prohibit or impede use of the **Property** for the purposes set forth in the Recitals and the **Grantor** will not allow such uses or conditions.

9.     Mediation.   If a dispute arises between the parties concerning the consistency of any proposed use or activity with the purpose or terms of this **Conservation Easement** that they cannot resolve through unassisted consultation between themselves, and **Grantor** agrees not to proceed with, or shall discontinue, the use or activity pending resolution of the dispute, either party may refer the dispute to mediation by request made in writing upon the other. Within ten (10) days of the receipt of such request, the parties shall select a single trained and impartial mediator. If the parties are unable to agree on the selection of a single mediator, then the parties, within fifteen (15) days of receipt of the initial request will jointly apply to a proper court for the appointment of a trained and impartial mediator. Mediation shall then proceed in accordance with the following guidelines:

9.1     Purpose:  The purposes of the mediation are to (a) promote discussion between the parties; (b) assist the parties in developing and exchanging pertinent information concerning issues in dispute; and (c) assist the parties in developing proposals that enable them to arrive at a mutually acceptable resolution of the controversy. The mediation is not intended to result in any express or de facto modification or amendment of the terms, conditions or restrictions of this **Conservation Easement**.

9.2     Participation:  The mediator may meet with the parties and their counsel jointly or ex parte. The parties agree that they will participate in the mediation process in good faith and expeditiously, attending all sessions scheduled by the mediator. Representatives of both parties having settlement authority will attend sessions as requested by the mediator.

9.3     Confidentiality:  All information presented to the mediator shall be deemed confidential and shall be disclosed by the mediator only with consent of the parties or their respective counsel. The mediator shall not be subject to subpoena by any party. No statements made or documents prepared for mediation sessions shall be disclosed in any subsequent proceeding or construed as an admission of a party.

9.4     Time Period:  Neither party shall be obligated to continue the mediation process beyond a period of ninety (90) days from the date of receipt of the initial request or if the mediator concludes that there is no reasonable likelihood that continuing mediation will result in a mutually agreeable resolution of the dispute.

9.5     Costs:  The cost of the mediator shall be borne equally by **Grantor** and **Grantee**. The parties shall bear their own expenses, including attorney's fees, individually.

9.6     Decisions:  No verbal discussions arising from mediation are binding unless they are written and signed.

14

10.    Entire Agreement.  This instrument sets forth the entire agreement of the parties with respect to the **Conservation Easement** and supersedes all prior discussions, negotiations, understandings or agreements relating to the **Conservation Easement**.  If any provision is found to be invalid, the remainder of the provisions of this **Conservation Easement**, and the application of such provision to persons or circumstances other than those as to which it is found to be invalid, shall not be affected thereby.  The party(ies) hereto intend this document to be an instrument executed under seal.  If any party is an individual, partnership or limited liability company, such party hereby adopts the word "SEAL" following his/her signature and the name of the partnership or limited liability company as his/her/its legal seal.  The Recitals set forth above and the Exhibits attached hereto are incorporated herein by reference.

11.    Indemnity.  The **Grantor** agrees to the fullest extent permitted by law, to defend, protect, indemnify and hold harmless the **Grantee** from and against all claims, actions, liabilities, damages, fines, penalties, costs and expenses suffered as a direct or indirect result of any violation, by any party other than the **Grantee**, of any federal, state, or local environmental or land use law or regulation or of the use or presence of any hazardous substance, waste or other regulated material in, on or under the **Property**.  Grantee shall also indemnify Grantor from any such violation caused by Grantee, its employees, or agents

12.    Interpretation.  This **Conservation Easement** shall be construed and interpreted under the laws of the State of North Carolina, and any ambiguities herein shall be resolved so as to give maximum effect to the conservation purposes sought to be protected herein.

13.    Parties.  Every provision of this **Conservation Easement** that applies to the **Grantors** or to the **Grantee** shall likewise apply to their respective heirs, executors, administrators, assigns, and grantees, and all other successors in interest herein

14.    No Extinguishment Through Merger.  **Grantor** and **Grantee** herein agree that should Carolina Mountain Land Conservancy come to own all or a portion of the fee interest in the **Property**, (a) Carolina Mountain Land Conservancy as successor in title to **Grantor** shall observe and by bound by the obligations of **Grantor** and the restrictions imposed upon the **Property** by this **Conservation Easement**, as provided in Article IV.; (b) this **Conservation Easement** shall not be extinguished, in whole or in part, through the doctrine of merger in view of the public interest in its enforcement; and (c) Carolina Mountain Land Conservancy as promptly as practicable shall assign the **Grantee** interests in this **Conservation Easement** of record to another holder in conformity with the requirements of this paragraph, Article VII, Paragraph 14.  Any instrument of assignment of this **Conservation Easement** or the rights conveyed herein shall refer to the provisions of this paragraph, Article VII, Paragraph 14, and shall contain language necessary to continue it in force.

15.    Subsequent Liens.  No provisions of this **Conservation Easement** shall be construed as impairing the ability of **Grantors** to use the **Property** for collateral or

borrowing purposes, provided that any mortgage or lien arising therefrom shall be subordinated to this **Conservation Easement**

16.    Termination of Easement. If it is determined that conditions on or surrounding the **Property** have changed so much that it is impossible to fulfill any of the conservation purposes set forth above, a court with jurisdiction may, at the joint request of both the **Grantor** and **Grantee**, terminate this **Conservation Easement**. If condemnation of a part of the **Property** or of the entire **Property** by public authority renders it impossible to fulfill any of these conservation purposes, the **Conservation Easement** may be terminated through condemnation proceedings. If the **Conservation Easement** is terminated and the **Property** is sold or taken for public use, then, as required by Sec. 1.170A-14(g)(6) of the IRS regulations, the **Grantee** shall be entitled to a percentage of the gross sale proceeds or condemnation award equal to the ratio of the appraised value of this easement to the unrestricted fair market value of the **Property**, as these values are determined on the date of this **Conservation Easement**. The **Grantee** shall use the proceeds consistently with the conservation purposes of this **Conservation Easement**.

17.    No Public Access. Unless otherwise specifically set forth in this **Conservation Easement**, nothing herein shall convey to or establish for the public a right of access over the **Property** or the **Property**.

**This space intentionally left blank. Please proceed to the next page.**

16

TO HAVE AND TO HOLD unto THE CAROLINA MOUNTAIN LAND CONSERVANCY, its successors and assigns, forever. The covenants agreed to and the terms, conditions, restrictions and purposes imposed as aforesaid shall be binding upon **Grantor, Grantor's** representatives, successors and assigns, and shall continue as a servitude running in perpetuity with the **Property**.

IN WITNESS WHEREOF, **Grantor,** by authority duly given, has hereunto caused these presents to be executed by its officers and its seal affixed, to be effective the day and year first above written.

GRANTOR:

Laurel Mountain Preserve LLC

By: _____ (Seal)

Its: _____

GRANTEE:

Carolina Mountain Land Conservancy, a North Carolina Non-profit Corporation

_____
Board President

_____
Board Secretary

(Corporate Seal)

CRP 857 502

Re see CRP 849 825

STATE OF NORTH CAROLINA
COUNTY OF Buncombe

I, Heide Ratzer, a Notary Public, of said State and County, do hereby certify that Arthur Neadel, as manager of Laurel Mountain Preserve LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument on behalf of the Limited Liability Company.

WITNESS my hand and Notarial Seal, this the 20th day of November, 2005.

_____
Notary Public

My commission expires: 9/21/2010

STATE OF NORTH CAROLINA
COUNTY OF Buncombe

I, J. Reginald Hall III, a Notary Public of said State and County do hereby certify that Hilliard Staton personally appeared before me this day and acknowledged that (s)he is the Board Secretary of the Carolina Mountain Land Conservancy, a non-profit corporation, and that by authority duly given and as act of the corporation the foregoing instrument was signed in its name by its Board President, sealed with its corporate seal and attested by himself as its Board Secretary.

WITNESS my hand and Notarial Seal this the 1st day of December, 2005.

_____
Notary Public

My commission expires: May 23, 2009

18

Laurel Mountain Preserve

CRP 857 503

*Rec* CRP 849 826

STATE OF NORTH CAROLINA
COUNTY OF ___ _____ __

The Foregoing Certificate(s) of _____ _____ ____, Notary(ies)
Public, are certified to be correct. This instrument was presented for registration and recorded in
this office in Book_____, page ____.

This ____ day of _____, 20___, at ____ o'clock ____ M.

_____
Register of Deeds

By:_____ _____ ____
Deputy Register of Deeds

STATE OF NORTH CAROLINA
COUNTY OF ___ _____

The Foregoing Certificate(s) of _____ _____ ____, Notary(ies)
Public, are certified to be correct. This instrument was presented for registration and recorded in
this office in Book ____, page _____.

This ____ day of _____ ____, 20___, at ____ o'clock ___ M.

_____
Register of Deeds

By:___ ____ ____ __
Deputy Register of Deeds

19

**EXHIBIT A**

"The Property"

CRP 849 827

Re-rec.

CRP 857 504

All of the 168.794 acre parcel designated as "Approximate Area" as surveyed by David E. Summey, PLLC, and as shown on a plat thereof dated September 10, 2005 and recorded in Plat Book 100, Page 81, Buncombe County North Carolina Registry and also recorded in Plat File ____11____, Slide _85_____, McDowell County North Carolina Registry and further being a portion of Laurel Mountain Preserve, LLC as recorded in Deed Book 3487, Page 9 in the Buncombe County Registry and subject to the restrictions imposed therein.

26

Laurel Mountain Preserve



## EXHIBIT B

CRP 849    828

### Conservation Easement Baseline Documentation Report Summary
(To satisfy Section 1.170A-14(g)(5) of the federal tax regulations)

This is a summary of the uses, structures, conservation values and condition of the protected Easement Area as of December 2005, which has been prepared by Equinox Environmental Consultation & Design, Inc. A copy of the complete Laurel Mountain Preserve Baseline Report is on file at the offices of the Carolina Mountain Land Conservancy.

*Re-rec*

| | |
|---|---|
| **Donor Name:** | Laurel Mountain Preserve LLC |
| **Address:** | 131 Garren Creek Road, Fairview, NC 28730 |
| **Property Location:** | Off of Old Fort Road |
| **Acres:** | 168.794 acres |
| **Road:** | Bird Creek Estate Rd. |
| **Township:** | Broad River |
| **County:** | Buncombe & McDowell Counties |
| **Tax Parcel ID:** | |
| **Deed Book/Page:** | |

CRP 857    505

### LAND DESCRIPTION

**Topography:** Several peaks surround the property with elevations ranging from 2,600 to 3,450 feet including Cross Mountain (3,420 ft.) to the northwest, Dutchman Ridge (2,682 ft.) to the east, and Round Mountain (3,446 ft.) to the southeast. Elevations within the property range from 1,920 to 2,600 ft.

**Watersheds:** Catawba River

**Streams:** Numerous unnamed tributaries which flow into Bird Creek (Tr) which flows northeast into Crooked Creek and then onto the Catawba River several miles downstream.

**Natural Community Types:** Rich Cove Forest, Acidic Cove Forest, Montane Oak Hickory Forest, Chestnut Oak Forest, Submesic Oak Forest, and Mesic Oak Forest.

### PROPERTY CONDITION AND HISTORY

**Buildings, Structures and Improvements on the Property:** None

**Roads/Trails:** A network of hiking trails, gravel & earth roads and abandoned logging roads exists on the property

**Past Land Use/Disturbance:** The Property, like most of the Southern Appalachians, was probably extensively cut for timber 60-70 years ago, however, approximately 37 acres of old growth forest was identified in the Report. These old growth areas probably exist due to the steep slopes and lack of good access to these areas of the Property. At the time of the Conservation Easement, the Property is intended to be part of a "conservation based" development, and the Property shall serve as the nature preserve for the community and provide it with passive recreational opportunities.

In compliance with Section 1.170A-14(9)(5) of the federal tax regulations, this natural resources inventory is an adequate representation of the property at the time of the conservation easement donation.

_Cristin Lundel_ 11/21/05    _James L. Neal_ 12-1-05
Grantor         Date      Grantee        Date

Patricia A. Reel
Register of Deeds

# McDowell County
# Register of Deeds

### 21 South Main Street, Suite A • Marion, NORTH CAROLINA 28752
Telephone 828-652-4727 • Fax 828-652-1537 • E-Mail preelmcdowell@titlesearcher.com



Filed For Registration: 02/13/2006 01:56:20 PM

Book: CRP 857   Page: 485-506

Document No.: 2006000989

EASEMENT 22 PGS   75.00

Recorder: CAROLYN I REEL

State of North Carolina, County of McDowell

Filed for registration and Duly Recorded this 13TH day of FEBRUARY 2006.

PATRICIA A. REEL, REGISTER OF DEEDS

*Carolyn L. Reel*

By: _____
DEPUTY REGISTER OF DEEDS

## DO NOT REMOVE!

This certification sheet is a vital part of your recorded document. Please retain with original document and submit when re-recording.

# McDowell County
# Register of Deeds

21 South Main Street, Suite A • Marion, NORTH CAROLINA 28752
Telephone 828-652-4727 • Fax 828-652-1537 • E-Mail preelmcdowell@titlesearcher.com

CRP 857 506



* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Filed For Registration: 12/06/2005 02:09:09 PM

Book: CRP 849   Page: 808-828

Document No.: 2005008737

EASEMENT 21 PGS  74.00

Recorder: JANE B MCGEE

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

State of North Carolina, County of McDowell

Filed for registration and Duly Recorded this 06TH day of DECEMBER 2005.

PATRICIA A. REEL, REGISTER OF DEEDS

By:
ASSISTANT REGISTER OF DEEDS
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## DO NOT REMOVE!

This certification sheet is a vital part of your recorded document. Please retain with original document and submit when re-recording.



## EXHIBIT B

CRP 849   828

### Conservation Easement Baseline Documentation Report Summary
### (To satisfy Section 1.170A-14(g)(5) of the federal tax regulations)

This is a summary of the uses, structures, conservation values and condition of the protected Easement Area as of December 2005, which has been prepared by Equinox Environmental Consultation & Design, Inc. A copy of the complete Laurel Mountain Preserve Baseline Report is on file at the offices of the Carolina Mountain Land Conservancy.

*Renee*

| | |
|---|---|
| **Donor Name:** | Laurel Mountain Preserve LLC |
| **Address:** | 131 Garren Creek Road, Fairview, NC 28730 |
| **Property Location:** | Off of Old Fort Road |
| **Acres:** | 168.794 acres |
| **Road:** | Bird Creek Estate Rd. |
| **Township:** | Broad River |
| **County:** | Buncombe & McDowell Counties. |
| **Tax Parcel ID:** | |
| **Deed Book/Page:** | |

CRP 857   505

## LAND DESCRIPTION

**Topography:** Several peaks surround the property with elevations ranging from 2,600 to 3,450 feet including Cross Mountain (3,420 ft.) to the northwest, Dutchman Ridge (2,682 ft.) to the east, and Round Mountain (3,446 ft.) to the southeast. Elevations within the property range from 1,920 to 2,600 ft.

**Watersheds:** Catawba River

**Streams:** Numerous unnamed tributaries which flow into Bird Creek (T1) which flows northeast into Crooked Creek and then onto the Catawba River several miles downstream.

**Natural Community Types:** Rich Cove Forest, Acidic Cove Forest, Montane Oak Hickory Forest, Chestnut Oak Forest, Submesic Oak Forest, and Mesic Oak Forest.

## PROPERTY CONDITION AND HISTORY

**Buildings, Structures and Improvements on the Property:** None

**Roads/Trails:** A network of hiking trails, gravel & earth roads and abandoned logging roads exists on the property.

**Past Land Use/Disturbance:** The Property, like most of the Southern Appalachians, was probably extensively cut for timber 50-70 years ago, however, approximately 37 acres of old growth forest was identified in the Report. These old growth areas probably exist due to the steep slopes and lack of good access to these areas of the Property. At the time of the Conservation Easement, the Property is intended to be part of a "conservation based" development, and the Property shall serve as the nature preserve for the community and provide it with passive recreational opportunities.

In compliance with Section 1.170A-14(g)(5) of the federal tax regulations, this natural resources inventory is an adequate representation of the property at the time of the conservation easement donation.

_Cristen Seidel_  11/21/05          _James R. Neal_  12-1-05
Grantor                 Date          Grantee          Date

25