SECURITIES AND EXCHANGE
COMMISSION,
        Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC.,
SCOOP MANAGEMENT, INC.,

        Defendants.

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY FUND, LTD.,
VIKING IRA FUND, LLC.,
VIKING FUND, LLC., and
VIKING MANAGEMENT, LLC.

        Relief Defendants.
_____/

Case No.: 8:09-cv-0087-T-26TBM
ORAL ARGUMENT REQUESTED

## CITY OF VENICE'S EMERGENCY MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO RECEIVER'S ASSET SALE MOTION

> **STATEMENT OF NECESSITY FOR EMERGENCY CONSIDERATION**
>
> As noted below, the Movant--City of Venice--is not able to respond to the Receiver's Sale Motion by the December 28, 2009 deadline established by this Court's December 14, 2009 order due to needing additional time to conduct due diligence and the fact that the soonest a special meeting of the City Council can be convened after such due diligence is January 5, 2010. As such, and given the intervening holiday period, the City requests this court to consider extending the December 28 deadline before such deadline occurs. The new proposed deadline is January 6, 2010 so as to allow for due diligence and for sufficient noticing of a special City Council meeting to occur on January 5, 2010.

       The City of Venice ("the City"), in accordance with Rule 6, F.R.Civ.P., moves this Court for the entry of an order enlarging the time within which the City may respond to the Receiver's

Motion for Approval of Sale of the Assets of the Venice Jet Center and Agreement with Northern Trust, N.A. (Doc. 254)("Receiver's Motion") and states as follows:

## I. PROCEDURAL BACKGROUND

1. The Receiver's Motion seeks approval of, among other things, his proposed sale and assignment of various assets of the Venice Jet Center, LLC ("VJC") to Tristate Aviation Group of Florida, LLC ("Tristate"). Among the assets is a Lease Agreement dated May 23, 2006 between the City and VJC ("Lease Agreement") and two sub-leases between VJC and third parties. A copy of the Lease Agreement is attached hereto as Exhibit 1. The Receiver's Motion includes a copy of the Asset Purchase Agreement between the Receiver and Tristate dated November 16, 2009. The Receiver's Motion was served on the City's attorney, Robert Anderson, late on the afternoon of Friday, December 11, 2009 via email and a "hard copy" was delivered to the Mayor of the City via regular US Mail on December 15, 2009.

2. On December 14, 2009, this Court entered its Order (Doc. 255) directing the City to file a response to the Receiver's Motion by Monday, December 28, 2009. For the reasons set forth below, the City submits that it is legally and logistically impossible for the City to respond to the Receiver's Motion by December 28, 2009 and that it would be appropriate for this Court to enlarge through January 6, 2009, the time for the City to file a response to the Receiver's Motion.

## II. THE LEASE AGREEMENT

3. As noted on page 12 of the Receiver's Motion, the Lease Agreement provides that the lease may be assigned by the Lessee with the consent of the City provided that such consent may not be unreasonably withheld. The Lease Agreement, at paragraph 14, further provides as follows:

> Lessee may conduct any commercial aeronautical activity permitted under the Minimum Standards for Commercial Aeronautical Activities at Venice Municipal Airport and for which it meets all of the general operational requirements and the applicable minimum standards. A copy of such standards is attached hereto as Exhibit "B". Lessee shall abide by and confirm to all laws, rules, regulations, and requirements applicable now, and as may be adopted in the future, to the demised premises and to any activities conducted thereon.

4. Reference to the Minimum Standards attached as Exhibit B to the Lease Agreement reflects that, at Section 8.A. (page 6), any Operator at the Venice Municipal Airport "may be required to provide evidence of past experience, financial capability and technical ability to perform the proposed services" at the airport. Section 8.B. provides that the City "shall be the sole judge of what constitutes adequate finances and the procedure to base financial information" and that the City may deny requested activity at the airport if a proposed Operator fails to "exhibit adequate financial responsibility".

5. The Lease Agreement also provides, at Paragraph 23, for the Lessee to provide six (6) different types of insurance for the benefit of the City, however, the Receiver's Motion does not reflect that Tristate has secured a binder or commitment to provide such insurance.

6. As noted below, because of certain requirements of Florida law, the proposed special meeting of the City Council is subject to certain notice requirements and, more importantly, the "consent" to the transfer cannot come from the City Manager or the Mayor but may only come from the City Council following a properly noticed meeting which has been preceded by appropriate "due diligence" investigation. Accordingly, city staff have made arrangements to be available on short notice between December 22, and December 30, 2009 within which to review any written information that is produced and to conduct interviews with Tristate.

7. The Receiver has advised undersigned counsel that the City has "known of Tristate for some time" and that information about Tristate has been public since early November. Common knowledge in the community about Tristate (which was only formed on November 6, 2009--see printout from Florida Department of State Division of Corporations attached as Exhibit 2) does not equate to knowledge of the particulars set forth in the Receiver's Motion and the attachments thereto. Moreover, at no time prior to service of the Receiver's Motion, has the Receiver or Tristate ever submitted any formal request to the City to consent to the assignment of the Lease Agreement. Indeed, the Asset Purchase Agreement attached to the Receiver's Motion reflects that it was "effective" as of November 16, 2009 and there is no explanation as to why the Receiver did not immediately submit that agreement to the City at that time with a request to start the process to consider the City's consent to any assignment. Finally, as previously noted, the "process" involved in both vetting a potential assignee at the city staff level and the process for obtaining city approval of this type of issue are not events that could have occurred without some level of formal request being presented---something which did not occur until service of the Receiver's motion.

8. Receiver cites to *Fourchon Docks, Inc. v. Milchem, Inc.*, 1987 WL 8036, 1 (E.D.La. 1987) for the proposition of law that a tenant may seek "a judicial declaration that the withholding of consent was unreasonable and that the sublease was therefore invalid." CITY respectfully contends that Receiver's reliance on *Fourchon* is misplaced insomuch as *Fourchon* expressly rebuts the very actions Receiver takes here. In *Fourchon*, the tenant had failed to comply with its obligation to seek consent for a sublease (thus breaching its lease), and then sought to cure this failure by seeking consent during the cure period. *Id.* The tenant argued that there were no valid reasons for withholding consent, so its request for consent was tantamount to

obtaining consent. *Id.* The *Fourchon* court rejected this argument holding that what a tenant is "not privileged to do is what it did: submit the proposed sublease on a 'take it or take it' basis." *Id.* The *Fourchon* court then expressly disapproved of the notion ostensibly proffered by Receiver here that that since there is no reasonable basis for withholding approval, its request for consent was tantamount to approval. *Id.* The Court then went on to explain that there were, in fact, valid reasons for not approving the proposed lease including several economic issues which may have negatively impacted the owner. *Id.* at 1-2.

### III. THE CITY COUNCIL'S MEETING REQUIREMENTS

9. As noted below in Paragraph 15, the City had previously canceled its late-December meeting because of the holidays. The next *regular* meeting was scheduled for January 12, 2010, and counsel for the City inquired if the Receiver would agree to extend the time to respond through January 13, 2010. However, the Receiver would not agree to this request. Therefore, the City Council proposes to convene at a special meeting on January 5, 2010 so as to be able to file a response to the Receiver's Motion by January 6, 2010.

10. While ultimately there may indeed be no basis for disapproving the assignment, certainly the City is nevertheless entitled to perform its due diligence in making that determination and not be saddled with Receiver's "take it or take it" argument. The City is entitled, if not required, to consider not only the potential assignee's fiscal and practical ability to operate the Venice Jet Center in accordance with the Lease provisions, but also to hear public opinion as to same. In short, the City should not be compelled to address and render a decision on this issue prior to having a reasonable opportunity to fully scrutinize the proposal

11. In support of its position, the City proffers that it is a governmental entity and, to that end, is controlled by and subject to The Government in the Sunshine Law. Fla. Stat. §

286.001, *et. Seq.* The City is administered by a board of publicly elected officials (the City Council) who are charged with making executive decisions concerning the City's management including, *inter alia,* making a determination as to whether an assignment of the Lease as requested by the Receiver is appropriate and in the best interest of the City. Such a determination can only be appropriately vetted by the City Council meeting to address same. Any such meeting will invoke the provisions of the Sunshine Law which will require reasonable notice to the public and, accordingly, an extension of time to respond to Receiver's Motion. Florida courts hold that it was the Legislature's intent to extend application of the Sunshine Law to "any board or Council of the state or of any county or political subdivision over which it has dominion and control." *Times Pub. Co. v. Williams*, 222 So. 2d 470, 473 (Fla. 2d DCA 1969). To that end, CITY and CITY Council are compelled to comply with Florida's Sunshine Law which requires them to give "reasonable notice" of all meetings. Fla. Stat. § 286.011(1). The notice requirement is required even for individual Council member discussions regarding public issues. *See* AGO 90-56 and 71-346 (*available at: http://myfloridalegal.com/ago.nsf/Opinions*).

12. The Receiver's Motion and this Court's Order compelling the City to respond by December 28, 2009 fails to afford the City an opportunity to give "reasonable notice" to the public of the meeting to discuss the Receiver's Motion. This determination is heightened by the fact that City's response is due just three (3) days after the Christmas holiday, a time period when much of the public who would otherwise have an opportunity to appear and be heard at such a hearing are away with family or so encumbered with other obligations that an appearance is unlikely.[1] As recognized by Florida's Third District Court of Appeal, "[g]overnmental bodies

---

[1] In and of itself, scheduling a hearing just days before or after the Christmas holiday could be construed as "unreasonable" notice.

who hold unnoticed meetings do so at their peril." *Monroe County v. Pigeon Key Historical Park, Inc.*, 647 So. 2d 857, 869 (Fla. 3d DCA 1994).

13. The ramifications of failing to provide inadequate or unreasonable notice cannot be overstated insomuch as any action taken by the City Council without proper notice may, *inter alia*, (i) subject individual Council members to criminal charges, Fla. Stat. § 286.011(3)(b); (ii) lead to individual Council members being removed from office, Fla. Stat. § 286.011(3)(c); and most importantly here (iii) result in whatever action was undertaken by the CITY Council out of the Sunshine being declared *void ab initio*. *Town of Palm Beach v. Gradison*, 296 So. 2d 473, 477 (Fla. 1974) ("Mere showing that the government in the sunshine law has been violated constitutes an irreparable public injury so that the ordinance is *void ab initio*.")

14. While the City acknowledges that there is no case law addressing the novel issue of whether a public meeting noticed during the height of the holiday season is "reasonable", practicality certainly mandates that the City afford its constituency an opportunity to be heard as to this issue at a more reasonable time. Indeed, in keeping with this sensible determination, the City previously cancelled its scheduled, late-December meeting this year. *See* the City Council calendar *available at*: *http://www.venicegov.com/Calendar/Meetings/webcal.html*. This cancellation was wholly unrelated to the Receiver's Motion and is something the City has historically done.

15. Here, the City contends that the Receiver's desire to have a decision as quickly as possible must be mitigated by the City's significant interest to have open meetings at which the public has an opportunity for meaningful input. To that end, the City suggests that it needs additional time to not only give the public *reasonable* notice that this issue will be addressed by the City Council, but also additional time to properly undertake the due diligence referenced

above. Moreover, there is nothing in the record that reflects any particular significance with respect to the December 28, 2009 deadline requested by the Receiver in seeking approval of the relief requested in the Receiver's Motion and, under the circumstances described above, the City submits that enlarging the time through January 6, 2010 so as to allow the City to comply with applicable state law and the provision of the Minimum Standards and the Lease Agreement is a reasonable accommodation of the interests of all parties.

## IV. CERTIFICATE OF COUNSEL CONFERENCE

16. Undersigned counsel has conferred with counsel for the Receiver and represents to the Court that Receiver has declined to agree to the extension herein requested.

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP
P.O. Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660; (941) 366-3999 (fax)
mhildreth@slk-law.com (Mr. Hildreth's e-mail)
*Attorneys for CITY OF VENICE*

**/s/ *Mark D. Hildreth***
Mark D. Hildreth, Esquire
Florida Bar No. 454893
Hunter G. Norton, Esquire
Florida Bar No. 0030534

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 22nd day of December, 2009, a true copy of the foregoing *City of Venice's Motion For Enlargement Of Time To Respond To Receiver's Asset Sale Motion* has been furnished by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system. I further certify that a true and correct copy has been furnished via First Class United States Mail, postage pre-paid, to the following non-CM/ECF participant:

Arthur G. Nadel
Register No. 50690-018
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

                                                   */s/ Mark D. Hildreth*