302.G-12

# LEASE

This lease is made and executed on the 23rd day of ___May___, 2006, by and between the

CITY OF VENICE, a Florida municipality, herein referred to as "lessor", and VENICE JET

CENTER, LLC, a Florida limited liability company, herein referred to as "lessee".

WHEREAS, lessor is the owner and operator of the Venice Municipal Airport; and

WHEREAS, the premises are currently leased by the lessor to TRIPLE DIAMOND

ENTERPRISES, LLC pursuant to two leases dated September 26, 1995 and March 23, 1999, both

as amended; and

WHEREAS, the purpose of this lease is to consolidate the two leaseholds and to replace the

September 26, 1995 and March 23, 1999 leases with one lease.

NOW THEREFORE, in consideration of the covenants and promises contained herein, the

parties agree as follows:

## 1. DESCRIPTION OF PREMISES

Lessor leases to lessee and lessee rents from lessor, for the purpose of conducting business

as a fixed base operator, and for no other purpose, the following described premises located in

Venice, Florida:

Exhibit "A" attached hereto.

As used in this lease, the term "premises" refers to the real property described above and to any

improvement located on the property from time to time during the term of this lease.

## 2. TERM

The initial term of this lease shall be for 25 years, commencing on June 1, 2006 and ending

1

Dockets.Justia.com

on May 31, 2031. As used in this lease, the expression "term of this lease" refers to such initial term and to any renewal of the lease as outlined herein.

### 3. RENT

The lessee shall pay rent in the amount of $9,580.59 per month, in advance, on the first day of each month beginning on June 1, 2006 and continuing on the first day of each and every month thereafter throughout the term of this lease and subject to the rent adjustments provided for herein. The rent shall be paid to lessor without notice or demand and without abatement, deduction, or setoff. A late charge equal to 5% of the rent payment shall be assessed for each rent payment paid ten or more days after its due date. In addition, Lessee shall pay sales tax on all rent payments.

The rent specified herein shall be net to lessor and all costs, expenses, and obligations of every kind related to the leased property which may arise or become due during the term of this lease shall be paid by lessee. Lessor shall be indemnified by lessee against such costs, expenses and obligations.

The total annual rent for subsequent years of the term of this lease shall be adjusted every three years commencing on June 1, 2009 based on fluctuations in the Consumer Price Index for Urban Wage Earners and Clerical Workers as promulgated by the Bureau of Labor Statistics of the United States Department of Labor. Said adjustment shall be made on June 1 and shall be effective for the ensuing three year period. Each rental adjustment shall be the result obtained by multiplying the then existing total annual rent by a fraction, the numerator of which shall be the Index for the month preceding the month in which the adjustment is made and the denominator of which shall be the Index for the month three years preceding the month from which the Index used in the numerator was chosen.

2

It is the parties intent that the total annual rent shall be increased by the same percent amount as the percent increase in the Index during the three year period preceding the adjustment. In no event shall the total annual rent ever be decreased.

Should the Bureau of Labor Statistics change the manner of computing the subject Index, the Bureau shall be requested to furnish a conversion factor designed to adjust the new Index to the one previously in use, and adjustment to the new Index shall be made on the basis of such conversion factor. Should publication of the subject Index be discontinued by the Bureau of Labor Statistics, then whichever Index published by the United States Government most nearly approximating said discontinued Index shall be used in making the adjustments provided for herein.

### 4. WARRANTIES OF TITLE AND QUIET POSSESSION

Lessor covenants that lessor is seized of the leased premises in fee simple and has full right to make this lease and that lessee shall have quiet and peaceable possession of the leased premises during the term of this lease.

### 5. DELIVERY OF POSSESSION

If, for any reason whatsoever, lessor cannot deliver possession of the leased premises to lessee at the commencement of the lease term, as specified above, this lease shall not be void or voidable, nor shall lessor be liable to lessee for any loss or damage resulting from the inability to deliver possession; in that event there shall be a proportionate reduction of rent covering the period between the commencement of the lease term and the time when lessor can deliver possession.

### 6. USES PROHIBITED

Lessee shall not use or permit the leased premises, or any part of them, to be used for any purposes other than the purposes for which the premises are leased. No use shall be made or

permitted to be made of the premises, or acts done, that will cause a cancellation of any insurance policy covering the building located on the premises, or any part of the premises; nor shall lessee sell, or permit to be kept, used, or sold, in or about the premises, any article prohibited by the standard form of fire insurance policies. Lessee shall, at its sole cost, comply with all requirements, pertaining to the leased premises, of any insurance organization or company, necessary for the maintenance of insurance, as provided in this lease, covering any building and appurtenances at any time located on the leased premises.

## 7. WASTE AND NUISANCE PROHIBITED

During the term of this lease, lessee shall comply with all applicable laws affecting the leased premises. Lessee shall not commit or suffer to be committed any waste on the leased premises, or any nuisance.

## 8. ABANDONMENT OF PREMISES

Lessee shall not vacate or abandon the premises at any time during the term of this lease. If lessee abandons, vacates, or surrenders the leased premises, or is dispossessed by process of law, or otherwise, any personal property belonging to lessee and left on the premises shall be deemed to be abandoned, at the option of lessor, except such property as may be encumbered to lessor.

## 9. LESSOR'S RIGHT OF ENTRY

Lessee shall permit lessor and the agents and employees of lessor to enter the leased premises at all reasonable times for the purpose of inspecting them, or for the purpose of posting notices of nonresponsibility for alterations, additions, or repairs, without any rebate of rent and without any liability to lessee for any loss of occupation or quiet enjoyment of the premises.

4

## 10. ENCUMBRANCE OF LESSEE'S LEASEHOLD INTEREST

Lessee may encumber by mortgage or deed of trust, or other proper instrument, its leasehold interest and estate in the leased premises, together with all buildings and improvements placed by lessee on the premises, as security for any indebtedness of lessee. The execution of any mortgage, or deed of trust, or other instrument, or the foreclosure of the instrument, or any sale under the instrument, either by judicial proceedings or by virtue of any power reserved in the mortgage or deed of trust, or conveyance by lessee to the holder of such indebtedness, or the exercising of any right, power, or privilege reserved in any mortgage or deed of trust, shall not be held as a violation of any of the terms or conditions of this lease, or as an assumption by the holder of such indebtedness personally of the obligations of this lease. No such encumbrance, foreclosure, conveyance, or exercise of right shall relieve lessee from its liability under this lease.

If lessee shall encumber its leasehold interest and estate in the leased premises, and if lessee or the holder of the indebtedness secured by the encumbrance shall give notice to lessor of the existence of the encumbrance and the address of the holder, then lessor will mail or deliver to the holder, a duplicate copy of all notices in writing which lessor may, from time to time, give to or serve on lessee under and pursuant to the terms and provisions of this lease. Copies shall be mailed or delivered to the holder at, or as near as possible to, the same time the notices are given to or served on lessee. Holder may, at its option, at any time before the rights of lessee shall be terminated as provided in this lease, pay any of the rents due under this lease, or pay any taxes and assessments, or do any other act or thing required of lessee by the terms of this lease, or do any act or thing that may be necessary and proper to be done in the observance of the covenants and conditions of this lease, or to prevent the termination of this lease. All payments so made, and all things so done and

5

performed by the holder shall be as effective to prevent a foreclosure of the rights of lessee under the lease as they would have been if done and performed by lessee.

## 11. SUBLETTING AND ASSIGNMENT

Lessee shall not assign this lease, or any interest in this lease, or sublet the leased premises, or any part of the premises, or any right or privilege appurtenant to it, or allow any person other than lessee and lessee's agents and employees to occupy or use the premises or any part of them, without first obtaining lessor's written consent, which consent shall not be unreasonably withheld. Lessor's consent to one assignment, sublease, or use shall not be a consent to any subsequent assignment or sublease, or occupancy or use by another person. Any unauthorized assignment or sublease shall be void, and shall terminate this lease at the lessor's option. Lessee's interest in this lease is not assignable by operation of law without lessor's written consent.

## 12. NOTICES

All notices, demands, or other writings in this lease provided to be given or made or sent, or which may be given or made or sent, by either party to this lease to the other, shall be deemed to have been fully given or made or sent when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

TO LESSOR: City Clerk, Venice City Hall, 401 W. Venice Ave., Venice, FL 34285

TO LESSEE: 1618 Main Street, Sarasota, FL 34236

The address to which any notice, demand, or other writing may be given or made or sent to any party mentioned above may be changed by written notice given by the party mentioned above.

## 13. TAXES AND ASSESSMENTS

a.      Taxes as additional rent. As additional rent under this lease, lessee shall pay and

6

discharge as they become due, promptly and before delinquency, all taxes, assessments, rates, charges, license fees, municipal liens, levies, excises, or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever. This includes all governmental charges regardless of name, nature, or kind, which may be levied, assessed, charged, or imposed, or which may become a lien or charge on or against the leased premises, or any part of the premises, the leasehold of lessee here, the premises described here, any building or buildings, or other improvements now or which will be made in the future, on or against lessee's estate which may be a subject of taxation, or on or against lessor by reason of its ownership of the fee underlying this lease, during the entire term of this lease, excepting only those taxes specifically excepted below.

b.     Assessments affecting improvements. Specifically and without in any way limiting the generality of the above, lessee shall pay all special assessments, levies or charges made by any municipal or political subdivision for local improvements. They shall be paid in cash as they are due and before they become delinquent. They shall be paid as required by the act and proceedings under which any assessments, levies or charges are made by any municipal or political subdivision. If the right is given to pay either in one sum or in installments, lessee may elect either mode of payment, and its election shall be binding on lessor. If, by making any such election to pay in installments, any of the installments shall be payable after the termination of this lease or any extended term of this lease, the unpaid installments shall be prorated as of the date of termination, and amounts payable after such date shall be paid by lessor. All of the taxes and charges under this Section 13 shall be prorated at the commencement and expiration of the term of this lease.

c.     Contesting taxes. If lessee shall in good faith desire to contest the validity or amount of any tax, assessment, levy, or other governmental charge agreed to be paid by lessee, lessee shall

7

be permitted to do so, and to defer payment of such tax or charge, the validity or amount of which lessee is so contesting, until final determination of the contest, on giving to lessor written notice prior to the commencement of any such contest, which shall be at least ten days prior to delinquency, and on protecting lessor on demand by a good and sufficient surety bond against any such tax, levy, assessment, rate, or governmental charge, and from any costs, liability, or damage arising out of any contest.

      d.     Receipts. Lessee shall obtain and deliver receipts or duplicate receipts for all taxes, assessments, and other items required under this lease to be paid by lessee, promptly on payment of them.

## 14. USE OF PREMISES

Lessee may conduct any commercial aeronautical activity permitted under the Minimum Standards for Commercial Aeronautical Activities at Venice Municipal Airport and for which it meets all of the general operational requirements and the applicable minimum standards. A copy of such standards is attached hereto as Exhibit "B". Lessee shall abide by and conform to all laws, rules, regulations, and requirements applicable now, and as may be adopted in the future, to the demised premises and to any activities conducted thereon.

## 15. REPAIRS AND DESTRUCTION OF IMPROVEMENTS

      a.     Maintenance of improvements. Lessee shall, throughout the term of this lease, at its own cost, and without any expense to lessor, keep and maintain the premises, including all buildings and improvements of every kind that may be a part of the premises, and all appurtenances to the premises, including sidewalks adjacent to the premises, in good, sanitary, and neat order, condition and repair, and, except as specifically provided in this lease, restore and rehabilitate any

8

improvements of any kind that may be destroyed or damaged by fire, casualty, or any other cause whatsoever. Lessor shall not be obligated to make any repairs, replacements, or renewals of any kind, nature, or description whatsoever to the leased premises or any other buildings or improvements on it. Lessee shall also comply with and abide by all federal, state, county, municipal, and other governmental statutes, ordinances, laws, and regulations affecting the premises, the improvements on the premises, or any activity or condition on or in such premises.

b. Damage to and destruction of improvements. The damage, destruction, or partial destruction of any building or other improvement that is part of the premises shall not release lessee from any obligation under this lease, except as expressly provided below. In case of damage to or destruction of any such buildings or improvement, lessee shall at its own expense promptly repair and restore the building or improvement to a condition as good or better than that which existed prior to the damage or destruction. Without limiting such obligations of lessee, it is agreed that the proceeds of any insurance covering the damage or destruction shall be made available to lessee for repair or replacement.

## 16. UTILITIES

Lessee shall fully and promptly pay for all water, gas, heat, light, power, telephone service, and other public utilities of every kind furnished to the premises throughout the term of this lease, and all other costs and expenses of every kind whatsoever of or in connection with the use, operation, and maintenance of the premises and all activities conducted on the premises. Lessor shall have no responsibility of any kind for any of such costs and expenses.

## 17. LIENS

a. Lessee's duty to keep premises free of liens. Lessee shall keep all of the premises and

every part of the premises and all buildings and other improvements at any time located on the premises free and clear of any and all mechanics', materialmen's, and other liens for or arising out of or in connection with work or labor done, services performed, or materials or appliances used or furnished for or in connection with any operations of lessee, any alteration, improvement, or repairs or additions which lessee may make or permit or cause to be made, or any work or construction, by, for, or permitted by lessee on or about the premises, or any obligations of any kind incurred by lessee. Lessee shall at all times promptly and fully pay and discharge any and all claims on which any lien may or could be based, and shall indemnify lessor and all of the premises and all buildings and improvements on the premises against all liens and claims of liens and suits or other proceedings pertaining to those liens. Lessee shall give lessor written notice no less than thirty days in advance of the commencement of any construction, alteration, addition, improvement, or repair estimated to cost in excess of $5,000 in order that lessor may post appropriate notices of lessor's nonresponsibility.

b. Contesting liens. If lessee desires to contest any lien, it shall notify lessor of its intention to do so within ten days after the filing of the lien. In such a case, and provided that lessee shall on demand protect lessor by a good and sufficient surety bond against any lien and cost, liability, or damage arising out of such contest, lessee shall not be in default under this lease until ten days after the final determination of the validity of the lien, within which time lessee shall satisfy and discharge the lien to the extent held valid. However, the satisfaction and discharge of any such lien shall not, in any case, be delayed until executions had on any judgment rendered on it, and such delay shall be a default of lessee under this lease. In the event of any such contest, lessee shall protect and indemnify lessor against all loss, expense, and damage resulting from the contest.

10

## 18. INDEMNIFICATION OF LESSOR

Lessor shall not be liable for any loss, injury, death, or damage to persons or property which at any time may be suffered or sustained by lessee or by any person who may at any time be using or occupying or visiting the leased premises or be in, on, or about the premises, whether the loss, injury, death, or damage shall be caused by or in any way result from or arise out of any act, omission, or negligence of lessee or of any occupant, subtenant, visitor, or user of any portion of the premises, or shall result from or be caused by any other matter or thing. Lessee shall indemnify lessor against all claims, liability, loss or damage whatsoever on account of any such loss, injury, death, or damage. Lessee waives all claims against lessor for damages to the building and improvements that are now on or will later be placed or built on the premises and to the property of lessee in, on, or about the premises, and for injuries to persons or property in or about the premises, from any cause arising at any time. The three preceding sentences shall not apply to loss, injury, death, or damage arising by reason of the negligence or misconduct of lessor, its agents, or employees.

## 19. ATTORNEYS' FEES

If any action at law or in equity shall be brought to recover any rent under this lease, or for or on account of any breach of, or to enforce or interpret any of the covenants, terms, or conditions of this lease, or for the recovery of the possession of the leased premises, the prevailing party shall be entitled to recover from the other party as part of the prevailing party's costs, reasonable attorneys' fees, the amount of which shall be fixed by the court and shall be made a part of any judgment or decree rendered.

## 20. OPTION TO RENEW

Lessor grants to lessee, subject to the conditions set forth below, the right and option to renew this lease for a period of five years, beginning on June 1, 2031, and expiring on May 31, 2036, at the rent amount in effect at the end of the initial term as provided for in Section 3 of this lease, and otherwise subject to and on all of the terms and conditions herein contained including the rent adjustments as provided for in Section 3 of this lease. This option must be exercised by the giving to lessor, on or before December 31, 2030, a written notice to exercise this option by lessee, but lessee shall in no event be entitled to renew the term of this lease, even though notice is timely given, unless lessee shall have timely performed all of its obligations under this lease, and shall not be in default in the performance of any of its obligations, on the date of the expiration of the initial term of this lease.

## 21. REDELIVERY OF PREMISES

Lessee shall pay the rent and all other sums required to be paid by lessee under this lease in the amounts, at the times, and in the manner provided in this lease, and shall keep and perform all the terms and conditions of this lease on its part to be kept and performed, and at the expiration or sooner termination of this lease, lessee shall peaceably and quietly quit and surrender the premises to lessor in good order and condition subject to the other provisions of this lease. In the event of the non-performance by lessee of any of the covenants which lessee has undertaken, this lease may be terminated as provided in this lease.

## 22. REMEDIES CUMULATIVE

All remedies conferred on lessor shall be deemed cumulative and no one exclusive of the other, or of any other remedy conferred by law.

## 23. INSURANCE

Lessee shall, at all times during the term of this lease and at lessee's sole expense, maintain the following insurance coverages:

a.    General Liability:    Coverage for premises and operations, products and completed operations, collapse, underground and explosion coverage, owner's and contractor's protective, contractual and personal injury coverage, or commercial general liability or comprehensive general liability containing same with limits no less than One Million Dollars ($1,000,000.00) combined single limit.

b.    Airport Premises Liability with limits no less than One Million Dollars ($1,000,000.00) combined single limit.

c.    Hangars Keepers Liability with limits equal to or greater than actual exposure.

d.    Aircraft Liability with limits no less than One Million Dollars ($1,000,000.00) combined single limit.

e.    Property Insurance on Buildings:    Fire and Common "Special Form" perils with limits no less than agreed value of building and improvements. Windstorm with limits no less than agreed value of building and improvements. Flood with limits no less than agreed value of building and improvements.

f.    Storage Tank Liability with limits no less than One Million Dollars ($1,000,000.00) combined single limit.

The policies of insurance shall be primary and written on forms acceptable to lessor and placed with insurance carriers approved and licensed by the State of Florida.

All policies required herein are to be written on an occurrence basis and shall name the

13

lessor, its Agents and Employees as additional insured, shall provide for any loss to be payable to lessor and lessee as their interest may appear, shall require any loss adjustment to have the written consent of lessor and lessee, and the insurer(s) shall agree to waive all rights of subrogation against the lessor, its Agents and Employees. Each policy required by this Agreement shall:

1.  Apply separately to each insured against whom claim is made and suit is brought, except with respect to the limits of the insurer's liability.

2.  Be endorsed to state that coverage shall not be suspended, voided, or canceled by either party, reduced in coverage or in limits except after 30 days prior written notice by certified mail, return receipt requested, has been given to lessor.

The procuring of such required policy or policies of insurance shall not be construed to limit lessee's liability nor to fulfill the indemnification provisions and requirements of this lease. Notwithstanding said policy or policies of insurance, lessee shall be obligated for the full and total amount of any damages, injury or loss caused by lessee's negligence or neglect connected with this Lease.

## 24. PROHIBITION OF INVOLUNTARY ASSIGNMENT

Neither this lease nor the leasehold estate of lessee nor any interest of lessee under the lease in the demised premises or in the building or improvements on the premises shall be subject to involuntary assignment, transfer, or sale, or to assignment, transfer, or sale by operation of law in any manner whatsoever, except through statutory merger, consolidation, devise or intestate succession. Any such attempt at involuntary assignment, transfer, or sale shall be void and of no effect.

302.G-12

## 25. NOTICE OF DEFAULT

Except as to the provisions of Section 11 of this lease, lessee shall not be deemed to be in default under this lease in the payment of rent or the payment of any other moneys required in this agreement, or in the furnishing of any bond or insurance policy when required unless lessor shall first give to lessee written notice of the default and lessee fails to cure the default within five days.

Except as to the provisions or events referred to in the preceding sentence of this section, lessee shall not be deemed to be in default under this lease unless lessor first gives to lessee written notice of the default, and lessee fails to cure the default within a ten-day period or, if the default is of such a nature that it cannot be cured within ten days, lessee fails to commence to cure the default within such period of ten days or fails to proceed to the curing of the default with all possible diligence.

## 26. DEFAULT

In the event of any breach of this lease by lessee, lessor, in addition to the other rights or remedies it may have, shall have the immediate right of re-entry and may remove all persons and property from the premises; such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of lessee. Should lessor elect to re-enter, as provided in this agreement, or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, lessor may either terminate this lease or it may from time to time, without terminating this lease, re-let the leased premises or any part of the premises for such term or terms, which may be for a term extending beyond the term of this lease, and at such rent or rents and on such other terms and conditions as lessor in its sole discretion may deem advisable with the right to make alternations and repairs to the leased premises. On each such re-letting:

(a)     Lessee shall be immediately liable to pay to lessor, in addition to any indebtedness other than rent due under this lease, the expenses of re-letting and of any alterations and repairs, incurred by lessor, and the amount, if any, by which the rent reserved in this lease for the period of re-letting, up to but not beyond the term of this lease, exceeds the amount agreed to be paid as rent for the leased premises for the period of re-letting; or

(b)     At the option of lessor, rents received by lessor from re-letting shall be applied, first, to the payment of any indebtedness, other than rent due under this lease from lessee to lessor; second, to the payment of any expenses of re-letting and of any alterations and repairs; third, to the payment of rent due and unpaid under this lease; and the remainder, if any, shall be held by lessor and applied in payment of future rent as the rent may become due and payable under this lease.

If lessee has been credited with any rent to be received by re-letting under above option (a), and the rent shall not be promptly paid to lessor by the new tenant, or if rentals received from re-letting under above option (b) during any month is less than that to be paid during that month by lessor under this lease, lessee shall pay any deficiency to lessor. The deficiency shall be calculated and paid monthly. No re-entry or taking possession of the leased premises by lessor shall be construed as an election on the part of lessor to terminate this lease unless a written notice of such intention is given to lessee or unless the termination of the lease is decreed by a court of competent jurisdiction.

Notwithstanding any re-letting without termination, lessor may at any time after that elect to terminate this lease for any previous breach. Should lessor at any time terminate this lease for any breach, in addition to any other remedy it may have, lessor may recover from lessee all damages incurred by reason of the breach, including the cost of recovering the premises, and including the

16

worth at the time of the termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this lease for the remainder of the stated term over the then reasonable rental value of the premises for the remainder of the stated term, all of which amounts shall be immediately due and payable from lessee to lessor.

## 27. LESSOR'S RIGHT TO PERFORM

In the event that lessee by failing or neglecting to do or perform any act or thing provided for in this lease, defaults under this lease and the failure continues for a period of ten days after written notice from lessor specifying the nature of the act or thing to be done or performed, then lessor may, but shall not be required to, do or perform or cause to be done or performed such act or thing, entering on the leased premises for such purpose, if lessor shall so elect, and lessor shall not be or be held liable or in any way responsible for any loss, inconvenience, annoyance, or damage resulting to lessee on account of it and lessee shall repay to lessor on demand any expenses, including compensation to the agents and employees of lessor. Any act or thing done by lessor pursuant to the provisions of this section shall not be construed as a waiver of any such default by lessee, or as a waiver of any covenant, term, or condition contained in this lease or the performance of it, or of any other right or remedy of lessor. All amounts payable by lessee to lessor under any of the provisions of this lease, if not paid when the amounts become due as in this lease provided, shall bear interest from the date they become due until paid at the rate of ten percent per year, compounded annually.

## 28. EFFECT OF EMINENT DOMAIN

a.      Effect of total condemnation. In the event the entire leased premises shall be appropriated or taken under the power of eminent domain by any public or quasi-public authority, this lease shall terminate and expire as of the date of the taking, and lessee shall then be released

17

from any liability accruing under this lease after that date.

b. Effect of partial condemnation. In the event a portion of the leased premises shall be so appropriated or taken and the remainder of the property shall not be suitable for the use then being made of the property by lessee, or if the remainder of the property is not one undivided parcel of property, lessee shall have the right to terminate this lease as of the date of the taking on giving to lessor written notice of the termination within ten days after lessor has notified lessee in writing that the property has been appropriated or taken.

In the event of partial taking and lessee does not terminate this lease, this lease shall continue in full force and effect as to the part not taken, and the rent to be paid by lessee during the remainder of the term, subject to adjustment as provided in the rent adjustment provisions of Section 3 of this lease, shall be determined in the manner provided for above in the rent adjustment provisions. That determination shall not affect or change the times at which lessor may require an adjustment in rent under the provisions; however, the words "which in no event shall be less than the rent then being paid by lessee" appearing in the rent adjustment provisions shall not apply with respect to the determination, but shall apply with respect to any subsequent adjustment under the provisions.

c. Condemnation award. In the event of the termination of this lease by reason of the total or partial taking of the premises by eminent domain, then in any condemnation proceedings lessor and lessee shall be free to make claim against the condemning or taking authority of the amount of any damage done to them, respectively, as a result of the taking.

In the event of a partial taking of the premises and this lease is not terminated, then lessee shall have the right to make claim against the condemning or taking authority for only the unamortized cost of the improvements placed on the leased premises by lessee and located on the

18

premises at the time of the taking or appropriation, which improvements shall be deemed to amortize in equal annual amounts over the period commencing with the date of completion of the improvements and ending twenty years thereafter.

## 29. SURRENDER OF LEASE

The voluntary or other surrender of this lease by lessee, or a mutual cancellation of this lease, shall not work a merger, and shall, at the option of lessor, terminate all or any existing subleases or sub-tenancies, or may, at the option of lessor, operate as an assignment to it of any or all such subleases or sub-tenancies.

## 30. DISPOSITION OF IMPROVEMENTS ON TERMINATION OF LEASE

On termination of this lease for any cause, lessor shall become the owner of any building or improvements on the leased premises.

## 31. WAIVER

The waiver by lessor of, or the failure of lessor to take action with respect to any breach of any term, covenant, or condition contained in this lease shall not be deemed to be a waiver of such term, covenant, or condition, or subsequent breach, or of any other term, covenant, or condition contained in the lease. The subsequent acceptance of rent under this lease by lessor shall not be deemed to be a waiver of any preceding breach by lessee of any term, covenant, or condition of this lease, other than the failure of lessee to pay the particular rental so accepted, regardless of lessor's knowledge of the preceding breach at the time of acceptance of rent.

## 32. EFFECT OF LESSEE'S HOLDING OVER

Any holding over after the expiration of the term of this lease, with consent of lessor, shall be construed to be a tenancy from month to month, at the same monthly rent as required to be paid

by lessee for the period immediately prior to the expiration of the term of this lease, and shall otherwise be on the terms and conditions specified in this lease, so far as applicable.

## 33. PARTIES BOUND

The covenants and conditions contained in this lease shall, subject to the provisions as to assignment, transfer, and sub-letting, apply to and bind the heirs, successors, executors, administrators, and assigns of all of the parties to this lease; and all of the parties to this lease shall be jointly and severally liable under the lease.

## 34. TIME OF THE ESSENCE

Time is of the essence of this lease, and of each and every covenant, term, condition, and provision of this lease.

## 35. SECTION CAPTIONS

The captions appearing under the section number designations of this lease are for convenience only and are not a part of this lease and do not in any way limit or amplify the terms and provisions of this lease.

## 36. NONDISCRIMINATION

The lessee for himself, his personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree that (1) no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over or under such land and the furnishing of services thereon, no person on the grounds of race, color, or national original shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination, (3) that the lessee shall use the premises in

20

compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally assisted programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights act of 1964, and as said Regulations may be amended.

That in the event of breach of any of the above nondiscrimination covenants, lessor shall have the right to terminate the lease and to reenter as if said lease had never been made or issued. The provision shall not be effective until the procedures of Title 49, Code of Federal Regulations, Part 21 are followed and completed, including exercise or expiration of appeal rights.

## 37. AIRPORT PROTECTION

It shall be a condition of this lease, that the lessor reserves unto itself, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the real property hereinafter described, together with the right to cause in said airspace such noise as may be inherent in the operation of aircraft, now known or hereafter used, for navigation of or flight in the said airspace, and for use of said airspace for landing on, taking off from or operating on the airport.

That the lessee expressly agrees for itself, its successors and assigns, to restrict the height of structures, objects of natural growth and other obstructions on the hereinafter described real property to such a height so as to comply with Federal Aviation Regulations, Part 77.

That the lessee expressly agrees for itself, its successors and assigns, to prevent any use of the hereinafter described real property which would interfere with or adversely affect the operation or maintenance of the airport, or otherwise constitute an airport hazard.

21

## 38. PROPERTY RIGHTS RESERVED

This lease and all provisions hereof are subject and subordinate to the terms and conditions of the instruments and documents under which the lessor acquired the subject property from the United States of America and shall be given only such effect as will not conflict or be inconsistent with the terms and conditions contained in the lease of said lands from the lessor, and any existing or subsequent amendments thereto, and are subject to any ordinances, rules or regulations which have been, or may hereafter by adopted by the lessor pertaining to the Venice Airport.

## 39. EXCLUSIVE RIGHTS

Notwithstanding anything contained herein to the contrary, the privileges and rights granted to the lessee under this lease are non-exclusive and the lessor reserves the authority to grant similar privileges and rights to another operator or to other operators on other parts of the airport.

## 40. FUEL FLOWAGE FEES

If the lessee elects to dispense fuel on the Airport as a term and condition of this lease, then he shall pay fuel flowage fees as provided herein.

The fuel flowage fees to be paid to the lessor shall be five cents ($0.05) per gallon. The flowage fees are required to be paid by the lessee to the lessor within ten (10) days of fuel delivery. The lessee agrees to pay a late charge of five (5%) percent of the bill if payment has not been rendered to lessor within the required time frame. The lessee agrees to provide the lessor with a copy of the fuel delivery receipt from the petroleum vendor indicating amount of product received.

## 41. SIGNS AND ADVERTISING

Lessee shall not erect and will not allow to be erected any outdoor advertising, sign, or poster or any other advertising device of whatever kind or nature without prior written approval of lessor,

which written approval shall not be unreasonably withheld, provided the business to be advertised

is the business of lessee situated on the demised premises and said sign does not violate the rules or

regulations of lessor, shall comply with applicable zoning regulations and shall be compatible in

appearance with the adjacent facilities and improvements.

### 42. OPERATION OF THE FACILITY

The lessee shall operate its business in the demised premises continuously, and without

interruptions, throughout the term of this lease. Lessee agrees to operate its fuel service continuously

from 8:00 a.m. to 5:00 p.m., seven (7) days a week, and to respond to customer calls within one (1)

hour at all other times. All other functions specified in Section 14 shall be provided by lessee during

regular work hours. The purpose of such covenant is to ensure to the lessor maximum revenue from

contracts setting charges for fuel flowage fees and other fees as well as to ensure to the public the

availability of the services to be rendered by lessee.

### 43. AERONAUTICAL ADVISORY STATIONS/UNICOM

During the business hours of the lessee, the Unicom must provide service to any aircraft

station, upon request, without discrimination and is an air/ground radio communication station to

provide airport information at public use airports where there is no tower. The Unicom station may

provide pilots, upon request, with weather information, wind direction, the recommended runway

or other necessary information. Its use is limited to the necessities of safe and expeditious operation

of aircraft and, secondarily, communications may be transmitted concerning ground transportation

requests. The Unicom station is licensed to the City of Venice by the Federal Communication

Commission for operation at the Venice Municipal Airport. The lessee is assigned the responsibility

and operation of the Unicom station in accordance with Federal Communication Commission, U.

23

S. Department of Transportation and Federal Aviation Administration Advisory Circulars pertaining to its function on behalf of the lessor. The relocation of the Unicom station for assignment of operation and/or responsibility may be only authorized by the lessor.

## 44. TRANSIENT AIRCRAFT PARKING

Parcels "C" and "D" at the Venice Municipal Airport are rented to the general public for the purposes of parking aircraft. The lessor has established lease forms, terms and conditions for the rental of such space and the lessee has personnel available at the Venice Municipal Airport to execute, administer and collect the rent for such aircraft parking. Therefore it is agreed that lessee shall, on behalf of the lessor, execute, administer and collect the rent for such aircraft ramp parking designated by lessor. All of the parking fees shall be executed and administered by the lessee on appropriate forms provided by the lessor and in accordance with the terms and conditions lawfully established by the lessor. The lessee shall provide the necessary tie-down ropes and/or chains for securing aircraft at the aircraft ramp lease locations. The lessee shall retain one-half of all rent due as its fee for services herein provided. The remaining one-half of any rent due to the lessor shall be paid to the lessor by the fifth (5th) day of each month, or a five percent (5%) late charge of the previous month's fee shall be assessed by the lessor. The lessee shall maintain a complete record concerning all rents due and the lessor shall have the right to inspect all such records. The lessee shall indemnify the lessor for any claims or liability resulting from the lessee's performance of or failure to perform accordingly.

The contents of this paragraph do not apply to tie-down parcels "A", "B", "F" and "G" as they are leased by lessor to lessee as part of this lease and are included in the rent pursuant to paragraph three of this lease.

24

## 45. DEMOLITION AND CONSTRUCTION OF IMPROVEMENTS

On or before May 31, 2011 the lessee shall, at lessee's sole expense, demolish the two aircraft hangars currently located on the premises; design, permit and construct an aircraft hangar consisting of at least 10,000 square feet; and apply a new Northern Mediterranean exterior finish to the administration building currently located on the premises.

The plans and specifications for these improvements shall be submitted to the lessor for lessor's approval and permitting and construction shall not commence until the lessee obtains written approval of the plans and specifications from the lessor.

LESSOR

CITY OF VENICE, FLORIDA

BY: _____

FRED HAMMETT_____, MAYOR

ATTEST:

LORI STELZER, City Clerk

**Approved By City Council**

**Date:** 5-23-2006

LESSEE

VENICE JET CENTER, LLC

BY: _____

ARTHUR NADEL, MEMBER

Colleen E. Wile

25

+ Lemonde AND Co. Inc. +

SURVEYORS OF LAND

2210 S. TAMIAMI TRAIL, SUITE 8
VENICE, FLORIDA 34293

302.G -12

FAX: 941-497-5160

TEL: 941-493-8000

# PARCEL A

## LEGAL DESCRIPTION:

COMMENCE AT THE SOUTHEAST CORNER OF BLOCK 375, ACCORDING TO THE PLAT OF "VENICE AIRPORT SUBDIVISION", AS RECORDED IN PLAT BOOK 20, PAGES 7, 7-A AND 7-B, OF THE PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA FOR A POINT OF COMMENCEMENT; THENCE, ALONG THE NORTH RIGHT-OF-WAY LINE OF AIRPORT AVENUE (80 FOOT RIGHT-OF-WAY), NORTH 89° 22' 48" WEST, 187.97 FEET; THENCE SOUTH 00° 49' 48" WEST, 80.00 FEET TO AN INTERSECTION WITH THE SOUTHERLY RIGHT-OF-WAY LINE OF AIRPORT AVENUE, (80 FOOT RIGHT-OF-WAY), SAID POINT BEING THE POINT OF BEGINNING; THENCE SOUTH 89° 22' 48" EAST, 340.90 FEET; THENCE SOUTH 00° 49' 48" WEST, 394.02 FEET; THENCE NORTH 89° 10' 12" WEST, 450.40 FEET; THENCE NORTH 00° 49' 48" EAST, 165.18 FEET; THENCE NORTH 89° 10' 12" WEST, 530.81 FEET; THENCE NORTH 0° 37' 12" EAST, 166.82 FEET; THENCE SOUTH 89° 37' 12" EAST, 531.42 FEET; THENCE NORTH 0° 49' 48" EAST, 60.37 FEET TO THE SOUTHERLY RIGHT-OF-WAY LINE OF ABOVE DESCRIBED AIRPORT AVENUE, (80 FOOT RIGHT-OF-WAY); THENCE SOUTH 89° 22' 48" EAST. ALONG SAID RIGHT-OF-WAY LINE, 109.50 FEET TO THE POINT OF BEGINNING. ALL LYING IN AND BEING A PART OF SECTION 19, TOWNSHIP 39 SOUTH, RANGE 19 EAST, SARASOTA COUNTY, FLORIDA. CONTAINS: 6.1025 ACRES, MORE OR LESS.

SUBJECT TO EASEMENTS AND RESTRICTIONS OF RECORD.

NOTE: BEARINGS AS SHOWN HEREON REFER TO THE PLAT OF "VENICE AIRPORT SUBDIVISION", AS PER PLAT THEREOF RECORDED IN PLAT BOOK 20, PAGES 7, 7-A AND 7-B, OF THE PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA.

CERTIFIED AS TO DESCRIPTION ONLY.
NOT A BOUNDARY SURVEY.

FOR: VENICE AVIATION SERVICES.
DATE: FEB. 4, 2003.
FILE NO: 83-08-15-03

DANIEL E. LEMONDE, P.L.S.
STATE OF FLORIDA CERT. NO. 2909

EXHIBIT "A"



302.G-12

LEMONDE AND CO. INC.
SURVEYORS OF LAND
2210 S. TAMIAMI TRAIL, SUITE 8
VENICE, FLORIDA 34293

TEL: 941-493-8000

FAX: 941-497-5160

S 0° 49' 48" W    394.02'

"PARCEL" "A"

CONTAINS: 6.1025 ACRES, ±

340.90'

450.40'

POINT OF COMMENCE

SOUTHEAST CORNER OF BLOCK 375, "VENICE AIRPORT SUB" P.B. 20 - PGS. 7, 7-A & 7-B SARASOTA COUNTY, FLORIDA.

40'   40'

181.97'

S 89° 22' 48" E

N 89° 10' 12" W

POINT OF BEGINNING

S 0° 49' 48" W

(BEARING BASIS PER PLAT)
N 89° 22' 48" W

80.00'

109.50'

N 0° 49' 48" E
60.37'

165.18'
N 0° 49' 48" E

531.42'

530.81'

S 89° 10' 12" E

N 89° 10' 12" W

SCALE
1" = 100'

"NOT A BOUNDARY SURVEY"

SHEET 2 OF 2 SHEETS

N 0° 37' 12" E
166.82'

S 0° 37' 12" W
36.35'

203.17'

S 0° 37' 12" W
58.42'

285.50'

285.50'

NOT INCLUDED

S 89° 22' 48" E

N 89° 22' 48" W

40'    N 0° 37' 12" E    261.59'

AVENUE

AIRPORT

80' PUBLIC RIGHT-OF-WAY

RIGHT-OF-WAY LINE

DATE: FEB. 4, 2003
FILE NO.: B3-08-15-03

302.G-12

# SKETCH & DESCRIPTION

COCKRILL STREET

E. RIGHT OF WAY LINE

BLOCK 361
"VENICE AIRPORT SUBDIVISION"
PLAT BOOK 20, PAGES 7 TO 7-B

POINT OF COMMENCEMENT
SOUTHWEST CORNER OF BLOCK 361
AND THE NORTHEAST CORNER OF
COCKRILL STREET AND AIRPORT AVE.

N. RIGHT OF WAY LINE

50'

80'

80.00'
S.00°38'32"W.

AIRPORT AVENUE
80' PUBLIC RIGHT OF WAY

S.89°22'48"E.    S.89°22'48"E.  216.72'
169.54'

SOUTHERLY RIGHT OF WAY LINE

P.O.B.

N.00°49'38"E.  201.00'

S.00°49'38"W.  201.00'

LOT 3
BLOCK 383

Existing Building

LOT 3 & 4

LEASE PARCEL
1 ACRE
OR
43,560 SQ. FT.

LOT 4
BLOCK 383

N.89°22'48"W.  216.72'

"VENICE AIRPORT SUBDIVISION"
PLAT BOOK 20, PAGES 7 TO 7-B

N

SCALE 1" = 100'

0  25 50  100         200         300         400

DESCRIPTION OF LEASE PARCEL FOR "WASS AIR"
AT THE "VENICE AIRPORT", CITY OF VENICE,
SARASOTA COUNTY, FLORIDA

A LEASE PARCEL LYING AND BEING IN SECTION 19, TOWNSHIP 39 SOUTH, RANGE 19
EAST, SARASOTA COUNTY, FLORIDA, AND BEING A PART OF LOTS 3 & 4, BLOCK 383,
ACCORDING TO THE PLAT OF "VENICE AIRPORT SUBDIVISION" AS RECORDED IN PLAT BOOK
20 AT PAGES 7 TO 7-B, INCLUSIVE, OF THE PUBLIC RECORDS OF SARASOTA COUNTY,
FLORIDA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:
COMMENCE AT THE NORTHEAST CORNER OF AIRPORT AVENUE AND COCKRILL STREET,
BEING THE SOUTHWEST CORNER OF BLOCK 361, ACCORDING TO THE PLAT OF "VENICE
AIRPORT SUBDIVISION" AS RECORDED IN PLAT BOOK 20 AT PAGES 7 TO 7B OF THE
PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA,; THENCE S.00°38'32"W., A DISTANCE
OF 80.00 FEET TO A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF AIRPORT AVENUE,
A 80' WIDE PUBLIC RIGHT OF WAY AS SHOWN ON THE SAID PLAT OF "VENICE AIRPORT
SUBDIVISION"; THENCE S.89°22'48"E., ALONG THE SAID SOUTHERLY RIGHT OF WAY LINE
OF AIRPORT AVENUE A DISTANCE OF 169.54 FEET TO THE POINT OF BEGINNING; THENCE
S.89°22'48"E., CONTINUE ALONG THE SAID SOUTHERLY RIGHT OF WAY LINE OF AIRPORT
AVENUE A DISTANCE OF 216.72 FEET; THENCE S.00°49'38"W., A DISTANCE OF 201.00
FEET; THENCE N.89°22'48"W., A DISTANCE OF 216.72 FEET; THENCE N.00°49'38"E., A
DISTANCE OF 201.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 43,560 SQUARE
FEET OR 1.00 ACRES, MORE OR LESS.

RAYMOND T. BRIGHAM
PROFESSIONAL LAND SURVEYOR NO. 2670
STATE OF FLORIDA

NOTE: THIS IS NOT A BOUNDARY SURVEY.
DATE: FEBRUARY 15, 1999

EXHIBIT "B"

PREPARED BY: BRIGHAM SURVEYING, INC.
LAND SURVEYORS
712 SHAMROCK BLVD.
VENICE, FLORIDA  34293
PH. (941) 493-4430



Exhibit A3

MINIMUM STANDARDS FOR THE

VENICE MUNICIPAL AIRPORT

VENICE, FLORIDA

Approved by Resolution No. 99-3                    Dated: January 26, 1999

EXHIBIT "B"

302.G-12

# MINIMUM STANDARDS FOR THE VENICE MUNICIPAL AIRPORT
## VENICE, FLORIDA

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| Part I. | | General Information | 1 |
| | Section 1 | Introduction | 1 |
| | Section 2 | Definitions | 1 |
| | Section 3 | General Philosophy | 2 |
| | Section 4 | Insurance | 3 |
| | Section 5 | Construction and Site Development Standards | 3 |
| | Section 6 | General Operational Requirements | 3 |
| | Section 7 | Operations, Facilities and Accommodations | 6 |
| | Section 8 | Lease Information | 6 |
| | Section 9 | Sub-Lease Requirements | 7 |
| | Section 10 | Waiver of Standards | 7 |
| Part II- | Section 1 | Category "A" - Flight Instruction and Aircraft Rental | 9 |
| | Section 2 | Category "B" - Aircraft Charter and Aircraft Rental Services | 10 |
| | Section 3 | Category "C" - Aircraft Maintenance and Repair Service | 11 |
| | Section 4 | Category "D" - Aviation Fuel Sales and Related Services | 12 |
| | Section 5 | Category "E" - Aircraft Sales and Service Facility | 14 |
| | Section 6 | Category "F" - Special Aircraft and Aeronautical Services | 15 |
| | Section 7 | Category "G" - Multiple Services | 16 |
| | Section 8 | Category "H" - Non-Aeronautical Activities | 17 |

# MINIMUM STANDARDS FOR COMMERCIAL AERONAUTICAL ACTIVITIES AT VENICE MUNICIPAL AIRPORT

Part I.       General Information

Section 1.    **Introduction:**

The Venice Municipal Airport is owned and operated by the City of Venice, a political subdivision of the State of Florida for the benefit of public use. These standards shall establish a minimum requirements to be met as a condition for any person(s) that propose(s) to conduct commercial aeronautical activities on the property located at the Venice Municipal Airport.

The City of Venice's goal in adopting these standards is to encourage the development of quality aeronautical services and to make the airport available for commercial aeronautical activities on a fair and reasonable term without unjust discrimination.

These standards are guidelines and are subject to be amended and modified from time to time at the discretion of the City of Venice or as conditions warrant. These are to be consistent with federal, state and local Rules and Regulations.

Section 2.    **Definitions:**

A.    **Aeronautical Activities** - Any activity that involves, makes possible, or is required for the operation of aircraft, or contributes to or required for the safety of such operation. The following activities commonly conducted at the Airport are aeronautical activities but not limited to this definition:

- Charter Flights
- Flight Training
- Aircraft Rental
- Aircraft Rides/Tours
- Aerial Photography
- Aerial Surveying
- Carrier Operations
- Aircraft Sales & Services
- Sale of Petroleum Products
- Repair and Maintenance of Aircraft
- Sales of Aircraft Parts
- Any Other Activity which, because of their direct relationship to the operation of the aircraft can be appropriately regarded as an aeronautical activity.

B.  **Airport** - All property and improvements within the boundary lines of the Venice Municipal Airport, Venice, Florida.

C.  **Commercial Aeronautical Activity** - The operation of any business for exchange, trading, buying, hiring, selling or bartering of any commodities, goods, services or property of any kind or any other revenue producing activity, whether or not a profit is produced.

D.  **Commercial Aviation Operator** - Any person or organization engaged in a business of an aviation nature under the authority of a lease or permit from the City of Venice.

E.  **Fixed Base Operator** - Those commercial aviation Operators who furnish and engage in a full range of aeronautical services and activities for the public including line service, sales of aircraft, parts and supplies, maintenance, and repair of airframes and engines, aircraft charters and rentals.

F.  **F. A. A.** - Federal Aviation Administration of the United States of America, Department of Transportation.

G.  **F. A. R.** - Federal Aviation Regulations.

H.  **Person** - Any individual, partnership, firm, organization, association, company, corporation, it's agent, or duly authorized representative thereof.

Section 3.    **General Philosphy:**

A.  It is the intent of the City of Venice to offer the maximum variety of aviation related services in order to maximize the choice of service providers to the public using the airport.

B.  The City of Venice will provide a fair and reasonable opportunity without unjust discrimination for all qualified persons to compete for the right to construct, lease or sublease appropriate space on the Venice Municipal Airport in order to conduct commercial aeronautical activities.

C.  Prior to starting any operation, an Operator must enter into an agreement with the City of Venice. Such an agreement will indicate the terms and conditions under which the activity will be operated on the airport. Granting of such rights or privileges, however, shall not be construed in any manner as affording the Operator an exclusive or continuing right of use of the premises or facilities of the Airport other than premises which may be leased exclusively to the Operator in order to maximize the facility use and business opportunities.

A lease of this nature, at the City of Venice sole discretion, shall be considered to meet the minimum facility requirements as defined in Part II of these standards. The City of Venice further reserves the right to designate from time-to-time the specific areas where an individual

302.G-12

aeronautical service or a combination of aeronautical services may be conducted and determine whether or not there is sufficient appropriate or adequate space at the proposed site to meet the minimum requirements established. Such determination shall consider the nature and extent of the proposed operation and the site available for such a purpose that can be performed orderly, safely, consistently, and be an efficient operation for the airport.

Section 4.    **Insurances:**

A.    Every Operator shall procure, maintain and continue in effect for the duration of its activities upon the airport at the Operators sole expense, insurance of the type and at least such minimum amounts that are determined by the City of Venice. Such insurances shall be placed with the company or companies authorized to do business in the State of Florida and shall be satisfactory to the City of Venice. All required insurances shall include the City of Venice as an additional insured. All Operators insurance shall not be subject to cancellation or alteration until such written notice has been provided to the City of Venice. The City of Venice may vary the type and minimum of insurance coverage required based on the precise nature of the aeronautical activities to be conducted. Failure to secure and maintain the required insurance and any specific insurance required by the City of Venice shall be deemed a violation of the minimum standards. All persons using any part of the airport shall be held liable for any property damaged caused by carelessness and negligence on or over the airport.

Section 5.    **Construction and Site Development Standards**:

A.    Any proposed construction or facilities developed by the Operator will be subject to the approval of the Venice Municipal Airport and the City of Venice, respective representatives and/or codes and regulations subject thereto as required by federal, state and local codes. All improvements constructed on the airport shall become part of the land that belongs to the Venice Municipal Airport upon expiration, termination, or cancellation of the lease agreement between the Operator and the City of Venice covering such improvements. The Operator will be responsible for extending any such services such as pavement, taxiways, roadways, and/or utility services to the site at the Operators sole expense, unless otherwise negotiated by the City of Venice. All such services and improvements shall be constructed in full compliance with the City of Venice, Venice Municipal Airport and FAA standards as well as associated applicable codes.

Section 6.    **General Operational Requirements**:

A.    Operators shall employ trained personnel in such numbers as are required to meet the applicable Minimum Standards set forth herein in an efficient manner for each aeronautical activity or service being performed. Operator's personnel shall be on duty during the

Page 3 of 17 Pages

applicable operating hours. The Operator shall also provide a responsible person in the office, if required, to supervise the operations in the leased area and on the Airport, with authorization to represent and act for and on behalf of the Operator during all business hours. Operator shall provide the Venice Municipal Airport with information regarding qualified personnel who are available after normal business hours to respond to emergency situations involving Operator's activities.

B.   Operator shall control the conduct, demeanor and appearance of its employees. Operator shall train its employees and insure they possess such technical qualifications and hold the required certificates, permits, license and ratings to conduct Operator's business activities on the Airport. It shall be the responsibility of the Operator to maintain close supervision over its employees to assure a high standard of service to Operator's customers.

C.   No aircraft or other vehicle may be left unattended or parked, or any object or structure placed, built or left to remain at any point on the Airport where such object would protrude through any imaginary surface so as to create an obstruction under FAR or applicable City of Venice Ordinances or Codes.

D.   Operator personnel shall drive motor vehicles on the Airport only in strict accordance with the Airport Rules and Regulations and/or Airport Management direction, applicable federal, state and local laws, ordinances, codes or other similar regulations now in existence or as may be hereafter modified, amended or enacted.

E.   Operator shall permit the City of Venice to enter upon its leased premises at any reasonable time for any purpose necessary, incidental to, or connected with the operator's performance of its obligations with respect to these standards or the terms of its lease agreement or in the exercise of the City of Venice governmental functions; for fire protection or security purposes; to inspect or maintain the premises; to do any other task deemed necessary or desirable for the proper operation of the airport.

F.   The rates or charges for any and all activities and services of the Operator shall be determined by the Operator, and all such rates or charges shall be reasonable, equally and fairly applied to all users of the services.

G.   Operator shall provide prompt, courteous and efficient service to the public and provide an adequate means of contact to meet service demands. Operator shall adhere to the highest ethical and aviation service community standards in the conduct of its activities.

H.   Operator shall commit no unlawful nuisance, waste or injury on the leased premises and will refrain from doing anything which may result in the creation, commission or maintenance of such nuisance, waste or injury to property on the Airport.

I.    Operator shall refrain from doing anything which might interfere with the effectiveness of accessibility of the Airport's public utilities, drainage/sewer, stormwater management systems, fire protection services on or in Operator's leased premises. Operator shall refrain from doing any act upon the Airport which will invalidate or be in conflict with any fire, property or liability insurance policies covering the Airport.

J.    Operator shall remove or dispose of debris and other waste material such as solid or liquids arising from Operator's activities. Any garbage, debris or waste which may be temporarily stored in the open shall be kept in suitable garbage or waste receptacle, equipped with a tight-fitting cover of a design sufficient to contain whatever may be placed therein. Operator shall use extreme care when removing all such waste. Any hazardous waste generated, stored or disposed of shall comply with all applicable federal, state and local codes.

K.    Operator shall keep and maintain its leased premises and all improvements in a neat and orderly condition, and in good and substantial repair, condition and appearance. Operator shall keep mowed and in a sightly condition all landscaping and grass areas within its leased premises. Operator shall also maintain all aprons, ramps, taxilanes, roadways and parking lots that are constructed by Operator or reserved for the exclusive use of the Operator.

L.    The airport apron, taxiway facilities and runways are designed and constructed with specific geometric load limits. These are a function of necessary occurrences in accordance with FAA criteria and pavement structural support capacity for a safe and non-damaging operation of the airport facilities. The Operator shall be responsible to insure the aircraft having wingspans greater than published for this specific facility or a maximum weight exceeding those published do not operate on the aprons, taxiways, or runways accessible to and from the lease space where they exceed the criteria.

M.    Multiple uses of aircraft and personnel may be satisfactory. The practice of providing a variety of aeronautical activities by single Operator is beneficial to the Operator, the flying public and the Airport.

N.    The Venice Municipal Airport is located in a noise sensitive residential area. Therefore, the following Advisory is being issued to all pilots utilizing the Airport and should be posted in a prominent area of the Operator's facility: (1) All touch and goes are restricted between the hours of 10:00 p.m. and 7:00 a.m.; (2) Use Runway 22 (over the Gulf) when winds are permitting. Wind information available on AWOS 125.525; (3) If wind condition does not permit runway 22 departure, turn left as soon as possible after departure of Runway 31; and, (4) After take off, all jet aircraft should reduce power, as soon as it can be done safely, over residential areas.

The Operator is an important communication network to pilots and public users of the Airport. Their cooperation/assistance for Noise Abatement procedure adherence and education is required.

## Section 7.    Operations, Facilities, and Accommodations.

A.  No person shall use the airport or any portion thereof or any of its improvements or facilities for commercial, business or aeronautical activities without first complying with these Standards and obtaining the required approval and written consent associated with those activities by entering into such agreement as may be prescribed by the City of Venice. Except as provided for herein, each Aeronautical Service Operator shall provide and maintain an office located upon the Airport which shall be available to the public by appointment during business hours posted in a prominent place at the Operator's place of business. The office must include appropriate furnishings, separate restrooms for men and women, and adequate facilities to conduct the business it is intended for and shall be suitably provided with heating and air conditioning.

B.  Unless otherwise provided, the activities of the Operator shall be conducted on an area, or areas of sufficient size to accommodate all services which the Operator has been approved to perform. The Operator shall conduct its business operations strictly within the areas assigned by the Airport and its operations shall not in any way interfere with the operations of other Operators, agencies, or other businesses operating on the airport; i.e. the use of the airport by the general public or with any common use areas.

C.  The Operators shall not use any common areas except as authorized by these Standard, the Airport Rules and Regulations, and/or Airport Management.

D.  All aviation and/or aeronautical business shall at a minimum conduct operations for eight (8) consecutive hours, five (5) days a week excluding recognized holidays. Exceptions are commercial activities, non-aviation activities and/or specialized aeronautical services subject to the Airport approval, since the hours of operation may not be appropriate to the specific services being rendered.

## Section 8.    Lease Information

A.  Any person or Operator will meet the Minimum Standards as set forth herein per the categories  to expand its operations or become an Operator at the Venice Airport. All Operators shall not engage in any business or activity on the Venice Municipal Airport other than that which has been specifically authorized. Any Operator desiring to extend its operations into additional categories or discontinue operations in a category shall provide written request to the Venice Airport for authorization to perform same, setting forth in detail, criteria and conditions of such request. The City shall then grant or deny the request on such terms and conditions as the City deems prudent and proper under the circumstances. Proposed or existing Operators, may be required to provide evidence of past experience, financial capability and technical ability to perform the proposed services.

B.   Regarding evidence of financial capability to perform and provide the services, the City of Venice shall be the sole judge of what constitutes adequate finances and the procedure to base financial information. If the Operator or proposed Operator does not, in the opinion of the City of Venice, exhibit adequate financial responsibility to undertake the proposed services, the City of Venice may deny any requested activity.

## Section 9.      Sub-lease Requirements

The Operator shall not sublease said premise or any part thereof without the consent of the City first having been obtained.   To sublease space to another person the following conditions must apply:

A    The Operator must meet all of the Minimum Standards established by the City of Venice for the category or categories of services to be furnished. The standards  may be meet in combination by the Operator or the sublease Operator. The sublease agreement shall be specifically confined to those services authorized by the Operator.

The sublease Operator shall enter into an agreement with the Operator. The agreement document to be executed shall be a standard lease developed by the City of Venice for Operators to utilized. The sublease Operator shall provide evidence of minimum insurance coverage as determined by the City of Venice for the services being performed. The agreement shall be subject to the City of Venice approval based on the Minimum Standards of the Operator lease and must be applicable to all codes and ordinances of the City of Venice.

The agreement can be executed on behalf of the City of Venice by the City Manager.

## Section 10.      Waiver of Standards

The City of Venice in its sole discretion may waive all or any portion of these standards for the benefit of the Venice Municipal Airport:

A.   1.   General Public in time of emergency.
     2.   Performing public service to the aircraft industry or performing a non-profit emergency medical or rescue service for the general public by means of aircraft.
     3.   Fire prevention or fire fighting operations.
     4.   Police enforcement or safety operations.
     5.   The City of Venice may further waive or reduce these standards for non-governmental Operators where such waiver or reduction is in the best interest or welfare of the airports operations.

B.  Waiver Procedure

If the requirement of a standard applicable to a lease is unreasonable or affecting his business, the Operator/Proposed Operator may request special consideration and action by the City of Venice. The appeal must be in writing and filed through the Airport Management Such appeal shall be reviewed by the Airport Management and provide a recommendation to the Airport Advisory Board for their recommendation to the Venice City Council. Venice City Council may consider waiver of any portion of the standards for the benefit of the aviation community and/or the Venice Municipal Airport.

302.G-12

**Minimum Standards Category Criteria:**

Category "A" - **Flight Instruction and Aircraft Rental**: Flight Training Operator engages in instructing pilots and flight training of aircraft provides such related ground school instructions as required by FAA or categories of pilot licensing and ratings involved. This Operator may also rent aircraft for use by students and other pilots.

A.   Land: The Operator shall lease from the City of Venice, an area not less than 21,780 square feet of land to provide space for building, automobile parking, storage and parking of aircraft and area for utility and support facilities.

B.   Building: A building must be leased or constructed having a minimum of 1,000 square feet with floor space to provide for classroom, briefing room, pilot lounge, office space, restrooms, and telephones.

C.   Access: Operator shall provide for aircraft parking and operating area on leased premise and shall provide paved access from facility to taxiway system. Such taxiway access shall meet all applicable FAA, Airport standards for the largest aircraft type anticipated to use the operators facility. The Operator shall provide adequate automobile parking spaces within the leased area to satisfy the needs of the tenant employees, students, and general public.

D.   Personnel: The Operator shall employ or have available a sufficient number of properly rated instructor/pilots certified by FAA to provide the type of training desired.

E.   Aircraft: The Operator shall have available aircraft for use in flight training either owned or leased to the Operator not less than two (2) properly certified aircraft equipped to support the classification of the services provided.

F.   Hours of Operation: The Operator shall make provisions for someone to be in attendance in the office at all time during the posted business hours. Operators who do not post regular business hours shall provide an adequate means of contacting the Operator to arrange for an appointment and must contact the potential customer not more than 24 hours after the initial service inquiry.

Page 9 of 17 Pages

Category "B" - **Aircraft Charter and Aircraft Rental Services**: The Operator shall be engaged in the business of air transportation to the general public for hire on demand, or on an scheduled basis under the requirement of FAR Part 135.

A.  Land: The Operator shall lease from the City of Venice an area not less than 21,780 square feet to provide space for a building, automobile parking, storage and parking of aircraft and area for utility and support facilities.

B.  Building: The Operator shall lease or construct a minimum 3,000 square feet building and office space to provide for aircraft storage, lounge, restrooms, telephones and sufficient space to adequately process passenger's freight and luggage.

C.  Access: Operator shall provide for aircraft parking an operating area on leased premise and shall provide paved access from facility to taxiway system. Such taxiway access shall meet all applicable FAA and Airport standards for the largest aircraft type anticipated to use the operators facility. The Operator shall provide adequate automobile parking spaces within the leased area to satisfy the needs of the tenant employees, students and general public.

D.  Personnel: The Operator shall employ and have on duty during the operating hours trained personnel in such numbers as may be required to meet the standards in a safe and efficient manner, depending upon the type of aircraft used, that have valid FAA commercial pilots certification with the appropriate ratings to permit flight activity offered by the Operator.

E.  Aircraft: The Operator shall have available for use either owned or leased to the Operator sufficient certified aircraft equipped to support the classification of the serviced

F.  Hours of Operation: The Operator shall make provisions for someone to be in attendance in the office at all time during the posted business hours. Operators who do not ost regular business hours shall provide an adequate means of contacting the Operator to arrange for an appointment and must contact the potential customer not more than 24 hours after the initial service inquiry.

G.  Special Provisions: The Operator shall provide evidence in the form of current FAA Part 135 certificate or other evidence required by the City of Venice to show documentation that the Operator is in compliance with the category.

Category "C" - **Aircraft Maintenance and Repair Service**: An Operator in this category is authorized to operate an aircraft engine, propeller and accessory or maintenance and overhaul facility. This category also provides for the non-exclusive sale of aircraft parts and accessories.

A.  Land: The Operator shall lease from the City of Venice, an area not less than 32,670 square feet of land to provide space for building, automobile parking, storage and parking of aircraft and area for utility and support facilities.

B.  Building: A building must be leased or constructed having a minimum of 5,000 square feet with floor space to provide for office space, restrooms, shop space, lounge space and telephones.

C.  Access: The Operator shall provide for aircraft parking an operating area on leased premise and shall provide paved access from facility to taxiway system. Such taxiway access shall meet all applicable FAA and Airport standards for the largest aircraft type anticipated to use the operators facility. The Operator shall provide adequate automobile parking spaces within the leased area to satisfy the needs of the tenant employees, and general public use.

D.  Services and Equipment Provided: The Operator shall provide sufficient shop space and equipment, supplies and inventory for aircraft parts to perform aircraft maintenance as required by the FAA. The Operator shall provide emergency aircraft recovery services and equipment necessary to properly remove a disabled general aviation aircraft of the largest type normally utilizing the airport.

E.  Personnel: The Operator shall employ and have on duty during the appropriate business hours trained personnel in such a manner that are required to meet these standards in a safe and efficient manner but never less than one (1) person currently certified by FAA with the ratings appropriate for the work to be performed.

Category "D" - **Aviation Fuel Sales and Related Services**: The Operator is authorized to provide aviation fuel, lubricants and other services in support of aircraft operations on the airport.

A.    Land: The Operator shall lease from the City of Venice an area not less than 32,670 square feet of land to provide for building, automobile parking, storage and parking of aircraft and area for utility and support facilities.

B.    Building: The Operator shall lease or construct building with a minimum 1,000 square feet of office space for passengers, crew of aircraft, restrooms, lounge space and telephones.

C.    Access: Operator shall provide for aircraft parking and operating area on leased premise and shall provide paved access from facility to taxiway system. Such taxiway access shall meet all applicable FAA and Airport standards for the largest aircraft type anticipated to use the operators facility. The operator shall provide adequate automobile parking spaces within the leased area to satisfy the needs of the employees and general public.

D.    Services: The Operator shall provide a full range of approved retail fuel services including jet fuel and av gas. At least one (1) 8,000 gallon fuel storage tank for each grade of aviation fuel usually required for aircraft using the airport is to be provided. The operator shall provide metered, filter equipment dispensers, fixed and mobile, for dispensing the required grade of fuel. Operators in this category, at the discretion of the City of Venice, may not require the operator to provide two (2) separate grades of aviation fuel depending upon the available fuel on the airport via other Fixed Base Operators.

The Operator shall provide directly or indirectly minor repair service to aircrafts service needs on the ramp or apron parking areas but only within the premise leased of the Operator or other approved common parking areas of the airport. The Operator shall have such equipment as necessary to provide aircraft towing and re-charging/energizing aircraft batteries and starters. All equipment shall be maintained and operated in accordance with federal, state, local and Airport codes.

The Operator will maintain a fuel source facilities for subject to registration by the State of Florida and shall be required to purchase pollution liability insurance policy and the policy shall name the City of Venice as additional insured and shall be in such an amount as directed by the City of Venice. Conducting refilling operations, the Operator shall install and use adequate grounding facilities at fueling locations to eliminate hazardous static electricity and shall provide fire extinguisher and other equipment as approved by the National Fire Protection Association or as directed by the Venice Fire Department as to the type and quantities as required with the hazards of re-fueling and servicing aircraft.
The Operator shall provide for adequate and sanitary handling and disposal from the Airport, all trash, waste and other materials but not limited to used oil, solvents and other waste. The piling or storage of crates/boxes, barrels and other containers will not be permitted within the leased premise.

E.    <u>Hours of Operation</u>:  The Operator shall provide for aircraft fueling and oil dispensing service 8:00 a.m. to 5:00 p.m., seven (7) days a week. The Operator shall arrange for a such service during after hours on a call basis.

F.    <u>Personnel</u>: The Operator shall employ trained personnel in such number as required to meet the Minimum Standards as set forth in this category of services in an efficient manner. Said personnel shall be trained in the operation of all equipment to reduce potential hazards or pollution contamination.

Category "E" - **Aircraft Sales and Service Facility** - An aircraft sales Operator is entitled to engage in the sales of new and used aircraft.

A.    Land: The Operator shall lease from the City of Venice, an area not less than 21,780 square feet of land to provide space for building, automobile parking, storage and parking of aircraft and area for utility and support facilities.

B.    Building: The Operator will lease or construct a facility having a minimum of 3,000 square feet of aircraft storage, display space, office space, lounge, restroom and telephone.

C.    Access: Operator shall provide for aircraft parking an operating area on leased premise and shall provide paved access from facility to taxiway system. Such taxiway access shall meet all applicable FAA and Airport standards for the largest aircraft type anticipated to use the operators facility. The Operator shall provide adequate automobile parking spaces within the leased area to satisfy the needs of the tenant employees and general public.

D.    Service/Equipment Provided: The Operator will provide satisfactory arrangements for repair and servicing of aircraft sold but only for the duration of the sales guarantee. The Operator shall provide an adequate inventory of spare parts for the type of new aircraft intended for sale. Servicing facilities maybe provided.

E.    Dealerships: New aircraft dealer shall hold an authorized factory or sub-dealership. All aircraft dealers shall hold a current occupational license or permit and an operator engaged in used aircraft must conform to provisions of the FAA regulations and present valid dealer aircraft registration certificates. All aircraft dealers shall hold appropriate licenses and permits that may be required by any law or regulatory agency.

F.    Aircraft: The dealer of a new aircraft shall have available or on-call current model demonstrators per dealer agreement. Dealers of used aircraft shall have reasonable access to aircraft offered to sale for the purpose of demonstration.

G.    Personnel: The Operator shall employ and have on duty during the appropriate business hours trained personnel in such a manner as required to meet these standards in an efficient manner but no less than one (1) properly certified and qualified pilot to provide demonstration and check rides for aircraft operator appropriate for the type of aircraft to be demonstrated.

H.    Hours of Operation: The Operator shall make provisions for someone to be in attendance in the office at all times during posted operating business hours. The Operator shall arrange for such services during after business hours on a call basis.

I.    Aircraft and Equipment: The Operator shall comply with the aircraft requirements including equipment thereof in each aeronautical service being performed; however, multiple uses can be made of all aircraft utilized. The Operator shall provide the facility and equipment and services to meet the standards provided in this part for each aeronautical service the Operator is performing

Category "F" - **Special Aircraft and Aeronautical Services** - The Operator shall provide a variety of aeronautical activities that would fall within this category but are not meant to be inclusive or all restrictive:

    a.    The installation of or repair of avionics instruments, propellers and accessories, aircraft painting, upholstery and similar aircraft components and support services. This category allows the Operator to sell new or used aircraft radio, instruments, propellers, and accessories.

    b.    Storage of aircraft, rides, aerial photography, aerial surveying, and police activities.

A.    Land: The Operator shall lease from the City of Venice, an area not less than 21,780 square feet of land to provide space for building, automobile parking, storage and support facilities.

B.    Building: A building must be leased or constructed having a minimum of 3,000 square feet to provide office space, aircraft storage, restroom and telephone.

C.    Access: Operator shall provide for aircraft parking an operating area on leased premise and shall provide paved access from facility to taxiway system. Such taxiway access shall meet all applicable FAA and Airport standards for the largest aircraft type anticipated to use the operators facility. The Operator shall provide adequate automobile parking spaces within the leased area to satisfy the needs of the employees, customers and general public.

D.    Personnel: The Operator shall employ, properly certified by FAA, personnel to support the type of services and activities which will be offered under this category.

E.    Aircraft: The Operator shall have based on the leasehold at least one (1) aircraft owned or under written lease to the operator, aircraft shall be certified airworthy to meet the requirements of FAA with respect to the operations to be performed.

F.    Hours of Operation: The Operator will make provisions to have someone to be in attendance and in the office at all times during posted operating hours. The Operator who does not have posted business hours will provide for adequate means of contacting the Operator to arrange for appointments and must agree to contact potential customer in not less than 24 hours of the original inquiry of service.

G.    Special Provision: If aircraft painting is provided, the Operator shall provide adequate facilities to conduct the operation in accordance with applicable Airport Rules and Regulations, National Fire Protection Association recommendations, local fire protection and building codes and all other applicable safety regulations.

Category "G" - **Multiple Aeronautical Services**: A multi aeronautical service Operator is engaged in any two (2) or more of the aeronautical services as described in Part II of the Minimum Standards.

A.    Land: The Operator shall lease from the City of Venice, an area not less than 43,560 square feet, one (1) acre to provide space for building, automobile parking, storage and parking of aircraft, as applicable, and area for utility and support facilities.

B.    Building: A building must be leased or constructed having a minimum of 6,000 square feet for aircraft storage, shop area, office space, public facilities, restrooms and telephones. If aircraft maintenance and repair service is one of the multi service categories provided by the Operator, at least 10,000 square feet of aircraft storage, shop area and offices shall be provided. If flight training is one of the multi service offered, the operator shall provide classroom and briefing room facilities as required by the standards.

The City reserves the right to require the lease area or building space to be greater than the Minimum Standards if in the City's opinion such increase is necessary or desirable to properly satisfy the public need for services to be provided.

C.    Access: Operator shall provide for aircraft parking and operating area on lease premises and shall provide paved access from facility to taxiway system. Such taxiway access shall meet all applicable FAA and Airport standards for the largest aircraft type anticipated to use the operators facility. The Operator shall provide adequate automobile parking spaces within the leased area to satisfy the needs of employees, customer and general public use.

D.    Hours of Operation: The Operator shall adhere to the hours of operation required in the standards for each aeronautical service being performed.

E.    Personnel: The Operator shall have in its employ and on duty during the posted business hours, trained personnel in such numbers as required to meet the standards as provided for in this part for each aeronautical activity the Operator intends to provide. Multiple responsibilities may be assigned to meet the personnel requirements for aeronautical services being performed by the Operator.

F.    Aircraft and Equipment: The Operator shall comply with the aircraft requirements including equipment thereof in each aeronautical service being performed; however, multiple uses can be made of all aircraft utilized. The Operator shall provide the facility and equipment and services to meet the standards provided in this part for each aeronautical service the Operator is performing.

Developing Minimum Standards for every possible combination of services is not possible and the foregoing will serve as guidelines for the City to utilize for proposed lease agreements or existing lease agreements involving multiple service activities.

Category "H" - **Non-Aeronautical Activities**: All commercial activities not covered by the foregoing standards shall be subject to the approval of the City of Venice. Specific size of the leasehold facilities need to be consistent with commercial activities and of the proposed activity. It shall be the responsibility of the Operator to demonstrate that the proposed activity contains adequate land space, building facilities and suitability size exists for same to be conducted.