# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

        Defendants,

CASE NO.: 8:09-cv-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

        Relief Defendants.
_____/

## RECEIVER'S MOTION FOR APPROVAL OF SALE OF ASSETS OF HOME FRONT HOMES, LLC AND AGREEMENT WITH M&I BANK

Pursuant to 28 U.S.C. § 754, Fed. R. Civ. P. 66, and Rule 3.01 of the Local Rules of the Middle District of Florida, Burton W. Wiand, as Receiver (the "Receiver"), moves the Court for an order approving the sale of certain assets of Receivership Entity Home Front Homes, LLC ("HFH") in accordance with the terms of the Asset Purchase Agreement

(the "HFH Agreement") attached hereto as Exhibit 1.[1] Simultaneously with the sale of these assets, the Receiver negotiated the disposition of HFH's obligations to M&I Bank ("M&I"), as set forth in the Agreement Regarding Claims and Obligations (the "M&I Agreement") attached hereto as Exhibit 2, and the Receiver also moves the Court for an order approving that agreement.

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent the Defendants from further defrauding investors of hedge funds operated by them. That same day, the Court entered an order appointing Mr. Wiand as Receiver for Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). (*See generally* Order Appointing Receiver (Doc. 8).)

The Court subsequently granted six motions to expand the scope of the receivership and appointed the Receiver as receiver over additional entities including Home Front Homes, LLC (*See* Order, Aug. 10, 2009 (Doc. 172)).

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of

---

[1] Following the sale of the assets covered by the HFH Agreement, HFH will be left with several assets valued at less than $5,000 each, including a pick-up truck, two small free standing storage structures, and a telephone system. The Receiver is close to finalizing the sale of those items but, in accordance with the March 24, 2009, Order (Doc. 97), he does not intend to seek approval for the sale of those items.

the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver at 1-2.) In particular, the Receiver was directed to:

> [t]ake immediate possession of all property, assets and estates of every kind of the [Receivership Entities], whatsoever and wheresoever located belonging to or in the possession of the [Receivership Entities], including but not limited to all offices maintained by the [Receivership Entities], rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the [Receivership Entities] wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court . . . .

(*Id.* at 2.) In accordance with that Order, the Receiver has taken possession of the assets of HFH and seeks this Court's permission to sell certain of those assets. Specifically, the Receiver seeks the Court's approval of the sale of the assets identified in Exhibit A of the HFH Agreement in accordance with the terms of that agreement. *See* Exhibit 1.

I. **HFH**

HFH was engaged in the business of manufacturing, marketing, and selling energy-efficient panelized homes. (*See* Declaration of Burton W. Wiand, as Receiver, in Support of the Receiver's Motion for Approval of Sale of Assets of Home Front Homes, LLC and Agreement with M&I Bank being filed along with this Motion ("Receiver's Decl."), ¶4). On August 10, 2009, the Court expanded the Receivership to include HFH (*see* Doc. 172).

Receiver's Marketing Efforts for the Sale of HFH's Assets

The Receiver's marketing efforts to secure the sale of HFH, including advertising on the Receivership's website, produced several interested buyers. On or about August 4, 2009,

the Receiver entered into an agreement with one of these potential buyers to sell HFH as a going concern in exchange for $800,000. (Receiver's Decl. ¶9.) At that time, HFH was an operating business but was quickly deteriorating, and the potential buyer agreed to take over and fund the business operations almost immediately. (*See* Receiver's Decl. in Support of Resp. In Opp. To William F. Bishop's Mot. To Intervene ¶¶5-6 (Doc. 205).)

In September 2009, that potential buyer notified the Receiver that it refused to close the transaction. (*Id.* at ¶7.) Thus, that buyer walked away from the transaction, and the Receiver was left without sufficient personnel to operate the business or capital to meet the company's operational demands. As a result, the Receiver determined that it was in the best interest of the Receivership to close HFH and cease all business operations.

Since HFH is no longer a going concern, the entirety of its current value is derived from its assets, which are encumbered by a loan from M&I. The Receiver received offers from three potential buyers interested in purchasing HFH's assets, and the Receiver believes that it was in the best interest of the receivership estate to enter into the HFH Agreement to sell certain of HFH's assets to South American Development Corporation ("SADC"), contingent upon this Court's approval. The Receiver hereby requests this Court's approval to sell HFH's assets pursuant to the HFH Agreement.

<u>The HFH Agreement</u>

SADC has agreed to purchase certain of HFH's assets pursuant to the terms set forth in the HFH Agreement. *See* Exhibit 1. The salient parts of that agreement provide that SADC will pay the sum of $250,000 in return for specified HFH assets: it will pay the Receiver $150,000 in cash at closing and will deliver a zero interest promissory note to the

Receiver for the $100,000 balance, secured by the assets themselves (*see* Promissory Note and Security Agreement, Exhibit B of the HFH Agreement), and due one year from the date of closing.

In return, the Receiver agrees to sell and transfer all rights to the assets listed in Exhibit A to the HFH Agreement on an "As Is" "Where Is" basis, without any warranties of any kind, and without any indemnification provisions of any kind. *See* Exhibit 1.

The Receiver believes that the terms of the HFH Agreement, along with the resolution of HFH's obligations to M&I, described below, provide greater value to the Receivership than any other offer received for the purchase of HFH's assets.

## II. M&I AGREEMENT

As part of the negotiations with SADC to sell HFH's assets, it was necessary for the Receiver to negotiate regarding certain obligations owed by HFH to M&I. The Receiver has reached an agreement whereby M&I will execute a release of its lien on the assets SADC will purchase, and M&I will forego any deficiency claims against the receivership estate. *See* M&I Agreement, attached hereto as Exhibit 2. In return, the Receiver has agreed to disburse to M&I 65% of the cash and note proceeds (following receipt of payment by the Receiver) from the sale of the assets, after $12,000 has first been disbursed from the cash proceeds to the Receiver for expenses incurred (i.e., the Receiver will disburse to M&I $154,700 out of the $250,000 sale price). The agreement reached with M&I Bank resolves the following obligations:

- M&I made a loan on April 15, 2008 to HFH ("HFH Loan") in the amount of $3,000,000, and bearing 5.2% interest, that matured on April 14, 2009.

- The HFH loan is secured by HFH's assets.

The Receiver has reviewed these obligations and the banking activities in order to bring the sale of HFH's assets to fruition. Following negotiations, the Receiver and M&I have reached the following agreement, as set forth more fully in Exhibit 2.

- M&I will release the Receiver from any claims or deficiency owed on the HFH Loan. In addition, M&I will release its lien on the assets covered by the HFH Agreement.
- The Receiver, upon closing the sale of assets to SADC, agrees to transfer $89,700 of the cash due at closing to M&I within three business days of the closing. Further, the Receiver will transfer $65,000 to M&I at the time when the note is paid in full by SADC.

As a result of this agreement, M&I is waiving over $3,000,000 of debt obligations due on the HFH Loan, and the Receivership will gain over $95,000 from the sale of HFH's assets. The Receiver believes that the proposed agreement with M&I is in the Receivership's best interests because it provides funds for the Receivership and alleviates significant obligations the Receivership would otherwise owe. Accordingly, the Receiver asks that this Court enter an order approving the transaction reflected in the M&I Agreement. *See* Exhibit 2.

### III. <u>MEMORANDUM OF LAW</u>

The Court's power to supervise an equity receivership and to determine the appropriate actions to be taken in the administration of the receivership is extremely broad. *Securities Exchange Comm'n v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992); *Securities*

*Exchange Comm'n v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566; *Securities Exchange Comm'n v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982). The relief sought by the Receiver falls squarely within those powers. This relief includes approval of the disposition of assets and settlement of claims.

WHEREFORE, Burton W. Wiand, as Receiver, respectfully requests this Court to enter an Order:

(1) Approving the sale of certain of HFH's assets to South American Development Corporation as provided in the Asset Purchase Agreement attached as Exhibit 1; and

(2) Approving the agreement between the Receiver and M&I Bank as reflected in the M&I Agreement attached as Exhibit 2.

## LOCAL RULE 3.01(G) CERTIFICATION OF COMPLIANCE

Counsel for the Receiver has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

7

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

Arthur G. Nadel
Register No. 50690-018
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY  10007

s/ Gianluca Morello
Gianluca Morello, FBN 034997
gmorello@wiandlaw.com
WIAND GUERRA KING P.L.
3000 Bayport Drive
Suite 600
Tampa, FL  33607
Tel.:   (813) 347-5100
Fax:   (813) 347-5155
ATTORNEY FOR THE RECEIVER, BURTON W. WIAND