## ASSET PURCHASE AGREEMENT

**THIS AGREEMENT**, effective as of December 18, 2009 (the "Effective Date"), by and between **SOUTH AMERICAN DEVELOPMENT, CORP.**, a Florida corporation (the "Buyer") and **BURTON W. WIAND** ("Seller"), as Receiver of HOME FRONT HOMES, LLC, a Florida limited liability company (the "Company"). Buyer, Seller and Company are collectively referred to herein as the "Parties" and each is a "Party."

## RECITAL

**WHEREAS**, the United States District Court for the Middle District of Florida, Tampa Division (the "Court"), appointed Burton W. Wiand on January 21, 2009, and reappointed Mr. Wiand on June 3, 2009, as Receiver of several receivership entities (collectively, the "Receivership"), and the Company became part of the Receivership on August 10, 2009, in the action styled *Securities and Exchange Commission v. Arthur Nadel, et al.*, Case No: 8:09-cv-87-T-26TBM (the "Action").

**WHEREAS**, the Company owns certain assets (collectively, the "Assets"). The Assets are more particularly described on **Exhibit A** and Section 1(a) below.

**WHEREAS**, Seller desires to sell and Buyer desires to purchase the Assets pursuant to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## OPERATIVE TERMS

1.      Sale and Transfer of Assets.

        (a)      Seller shall sell, transfer, and deliver to Buyer, pursuant to the Order (as defined herein) from the Court, and Buyer shall purchase from Seller:

                (i)      *Tangible Personal Property.* All of Seller's rights, title, and interest in the Assets as further described on **Exhibit A**, free and clear of all liens, claims, encumbrances, and restrictions as specified in the Order; and

                (ii)      *Intellectual Property.* All of Seller's rights, title, and interest at common law, if any and to the extent assignable, in the Intellectual Property used in the Company's business operations immediately prior to its ceasing to do business. It is Seller's understanding that the Company does not own, and has never owned, any federally registered trademark(s) or patent(s), whether issued or pending to be issued, or has any application outstanding with the United States Patent and Trademark Office for a federally registered trademark or patent, and Buyer expressly acknowledges and agrees that Seller makes no representations or warranties regarding its ownership of any Intellectual Property by the Company,

**EXHIBIT 1**

and that Seller will not defend, indemnify and hold Buyer harmless from any loss, damage, or injury arising out of or based upon any claims, demands or lawsuits alleging in whole or in part in violation of the Intellectual Property or conversion of the Intellectual Property or any part thereof.

(b) **The Assets are sold on an "AS IS" "WHERE IS" BASIS, WITH ALL FAULTS AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE ASSETS FOR ANY USE, AND WITHOUT WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE ASSETS FOR ANY USE, AND WITHOUT RECOURSE, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, SAVE AND EXCEPT THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 8 HEREOF.**

2. <u>Contingencies</u>. This Agreement is contingent only upon Seller obtaining approval of the Court (the "<u>Order</u>") to sell Buyer Assets described on <u>Exhibit A</u> free and clear of all liens, claims, encumbrances, and restrictions.

3. <u>Purchase Price</u>.

(a) The purchase price to be paid by Buyer to Seller for the Assets shall be the sum of Two Hundred Fifty Thousand Dollars and No/100 ($250,000) (the "<u>Purchase Price</u>").

(b) The Purchase Price shall be paid at the Closing (hereinafter defined) as follows:

(iii) Cash or its equivalent in the amount of One Hundred Fifty Thousand Dollars and No/100 ($150,000); and

(iv) Delivery of a duly signed Promissory Note (the "<u>Note</u>") in the amount of One Hundred Thousand Dollars and No/100 ($100,000) substantially in the form attached hereto as **<u>Exhibit B</u>**.

4. <u>Closing</u>. The closing of the transaction contemplated by this Agreement and delivery of the Bill of Sale (hereinafter defined) (the "<u>Closing</u>") shall occur by the Closing Date (hereinafter defined). The Closing shall be conducted at such location as the Parties may mutually agree in writing.

5. <u>Closing Date</u>. Buyer and Seller agree that Closing shall occur on December ____, 2009.

6. <u>Buyer's Deliveries at Closing</u>. At the Closing, Buyer shall deliver the following items to Seller:

(c) the Purchase Price for the Assets, payable in the manner described in

Section 3(b) above;

      (d)    a duly signed Note substantially in the form attached hereto as **Exhibit B**.

      (e)    a certified copy of the resolutions of the Board of Directors of Buyer authorizing the transactions contemplated by this Agreement; and

      (f)    such other documents and certificates as Seller may reasonably and timely request.

7.    <u>Seller's Deliveries at Closing</u>.  At the Closing, Seller shall deliver the following items to Buyer:

      (g)    a Bill of Sale in the form attached as **Exhibit C** hereto, duly signed by Seller;

      (h)    an Order from the Court approving the sale of the Assets; and

      (i)    such other documents and certificates as Buyer may reasonably and timely request.

8.    <u>Seller's Representations, Warranties and Covenants</u>.  Seller represents, warrants, and covenants to Buyer as follows:

      (j)    <u>Valid and Enforceable Agreement</u>.  This Agreement constitutes a valid and binding agreement of the Seller enforceable in accordance with its terms.

      (k)    <u>Title</u>.

          (i)    Seller acquired title to the Assets in the Action as described in **Exhibit A**, pursuant to the terms and condition of this Agreement and with the approval of the Court, the Assets shall be sold, to the extent transferable, to Buyer as evidenced by the Bill of Sale, substantially in the form attached hereto as **Exhibit C**, free and clear of all liens, claims, encumbrances, and restrictions.

          (ii)    The Assets are sold on an **"AS IS" "WHERE IS" BASIS, WITH ALL FAULTS AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE ASSETS FOR ANY USE, AND WITHOUT WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE ASSETS FOR ANY USE, AND WITHOUT RECOURSE, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, SAVE AND EXCEPT THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS SECTION 8.**

      (l)    <u>Authority</u>.  The execution, delivery, and performance of this Agreement

and any documents incidental thereto, and the consummation of the transactions contemplated hereby have been duly authorized and approved by the Court, and Seller has all requisite corporate powers and authority to consummate this transaction.

(m)  General.  None of the representations or warranties by Seller in this Agreement contains any untrue statement of a material fact, or omits to state any material fact necessary to make statements or facts contained therein not misleading.

9.  Buyer's Representations and Warranties.  Buyer represents and warrants to Seller as follows:

(n)  Organization.  Buyer is a limited liability company duly organized and validly existing and is in good standing under the laws of the State of Florida.

(o)  Authority.  The execution, delivery, and performance of this Agreement and any documents incidental thereto, and the consummation of the transactions contemplated hereby have been duly authorized and Buyer has all requisite corporate powers and authority to consummate this transaction.

(p)  Valid and Enforceable Agreement.  This Agreement constitutes a valid and binding agreement of Buyer enforceable in accordance with its terms.  Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby violates or conflicts with the Articles of Organization or Operating Agreement of Buyer or, subject to obtaining necessary consents, any agreement or other restriction of any kind or character to which Buyer is a party or by which Buyer is bound.

(q)  Due Diligence.  Buyer has conducted and completed any and all due diligence it deems or deemed necessary prior to completing the purchase contemplated herein.

(r)  Absence of Warranties from Seller.  Buyer acknowledges that Seller has made no warranties with respect to the Assets.  Buyer is purchasing the Assets on an **"AS IS" "WHERE IS" BASIS, WITH ALL FAULTS AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE ASSETS FOR ANY USE, AND WITHOUT WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE ASSETS FOR ANY USE, AND WITHOUT RECOURSE, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, SAVE AND EXCEPT THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 8 ABOVE.**

(s)  General.  None of the representations or warranties by Buyer in this Agreement contains any untrue statement of a material fact, or omits to state any material fact necessary to make statements or facts contained therein not misleading.

10.  Expenses and Taxes.  Each party hereto shall pay its own expenses and costs

incident to the preparation of this Agreement and the consummation of the transactions contemplated hereby, including but are not limited to, attorney fees or broker commissions. If any portion of the transactions to be effected pursuant hereto shall be determined to be subject to sales or use or any other taxes, Buyer shall be liable therefore and shall promptly pay the same.

11.    <u>Amendments</u>.  This Agreement may only be amended or modified by written instrument executed by the parties hereto.

12.    <u>Notices</u>.  Any notice, request, information or other document to be given hereunder to any parties by any other party shall be in writing and shall have been deemed to have been given (i) when personally delivered, sent by facsimile (with hard copy to follow) or sent by reputable overnight express courier (charges prepaid), or (ii) five (5) days following mailing by certified or registered mail, postage prepaid and return receipt requested. Unless another is specified in writing, notices, demands and communications to Seller and Buyer shall be sent to the addresses indicated below:

      (a)    <u>If as to Seller</u>:

           Burton W. Wiand, Receiver
           Home Front Homes, LLC
           3000 Bayport Drive, Suite 600
           Tampa, Florida 33607
           Attention:  Burt Wiand

      (b)    <u>If as to Buyer</u>:

           South American Development Corp.
           2721 Executive Park Drive, Suite 4
           Weston, Florida 33331
           Attention: Mr. Jerry Gillman

Any party may change the address to which notices hereunder are to be sent by giving written notice of such change of address as provided above.

13.    <u>Waiver</u>.  No waiver by either party hereto of any condition or any breach of any term, covenant, representation or warranty contained in this Agreement shall be deemed or construed as a further or continuing waiver of such condition or breach or waiver of any other or subsequent condition or the breach of any other term, covenant, representation or warranty contained in this Agreement.

14.    <u>Severability</u>.  If any provision of this Agreement is determined to be illegal or unenforceable, such provision will be deemed amended to the extent necessary to conform to applicable law or, if it cannot be so amended without materially altering the intention of the parties, it will be deemed stricken and the remainder of the Agreement will remain in full force and effect.

15.    <u>Counterparts</u>.  Any number of counterparts of this Agreement may be executed and each such executed counterpart shall be deemed to be an original.

16.     Binding Agreement.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, successors, and assigns.

17.     Entire Agreement.  This Agreement and the instruments delivered pursuant hereto constitute the entire agreement between the parties hereto and supersede all prior written agreements and understanding, oral or written, between the parties relating to the subject matter hereof.

18.     Governing Law and Jurisdiction.  This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Florida.  This Agreement shall be subject to the exclusive jurisdiction of the United States District Court, Middle District of Florida, Tampa Division, in Hillsborough County in the State of Florida, and all parties hereby irrevocably submit to the jurisdiction of such courts with respect to any claim arising out or in connection with this Agreement.

19.     Venue.  In the event litigation should arise to enforce or interpret this Agreement, Buyer and Seller agree that the proper venue shall be in the United States District Court, Middle District of Florida, Tampa Division, in Hillsborough County in the State of Florida.

20.     Remedy.  In the event that the Court does not approve of the sale of the Assets, i.e., if the Contingencies are not satisfied on or before the Closing Date, Buyer acknowledges and agrees that its sole and exclusive remedy is to terminate this Agreement.  This Agreement, when duly executed by the Parties, constitute the express waiver in writing of any other remedy, whether legal or equitable, that may be available to the Buyer.

21.     Indemnification.  Buyer expressly acknowledges and agrees that Seller provides **NO** indemnification from and against any loss, claim and/or damage arising under any circumstance related to the Assets or this Agreement, and that Section 20 sets forth the Buyer's sole and exclusive remedy under this Agreement.

22.     Broker's Commissions.  Seller and Buyer represent and warrant each to the other that they have not dealt with any real estate broker, sales person or finder in connection with this transaction.  In the event of any claim for broker's or finder's fees or commissions by any party, each party shall indemnify and hold harmless the other party from and against any such claim based upon any statement, representation or agreement of such party.  This provision shall survive the consummation of the transactions contemplated hereby.

23.     Survival of Representations and Warranties.  All of the respective representations and warranties of the parties to this Agreement shall survive the consummation of the transactions contemplated hereby.

24.     Further Assurances.  Buyer and Seller shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement.

25.     Attorneys' Fees and Costs.  In any action or dispute, at law or in equity, that may arise under or otherwise relate to this Agreement, the prevailing party will be entitled to, from the non-prevailing party, reimbursement of its attorneys' fees (including, but not limited to,

attorneys' fees, paralegals' fees and legal assistants' fees), costs and expenses incurred in the preparation for and in connection with any trial, appeal or bankruptcy proceeding.

[Signature Page Next]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the date first above written.

BUYER:

SOUTH AMERICAN DEVELOPMENT, CORP.

By: _____

Name: _____

Title: _____

SELLER:

BURTON W. WIAND, RECEIVER OF
HOME FRONT HOMES, LLC

_____

BURTON W. WIAND, as Receiver

42443100v2

**Exhibit A**

**Assets**

(see attached)

**Home Front Homes**
**Asset List**
**As "Exhibit A" to the**
**Asset Purchase Agreement**

<u>**Equipment and Inventory**</u>

- Union Roller Coater Glue Machine (1)
- 20' Roller Feeder Conveyor (1)
- Water Activation Misting Station and platform (1)
- Complete Vacuum station system including bags (6), frames (6), winches (6), vacuum tank pumps (2) and air compressors (1).
- Shop table (1)
- Floor platforms (6)
- Hot knives and transformers (1)
- Motorized cutting table (1), saw (1) and mounting beam including a dust collector system(1)
- Moveable table saw (1)
- Chop saws with tables (2)
- 2006 F-650 24' Flatbed truck (Vin# 3FRNF65E75V115594) (1)
- 24' dual axel trailer (Model Champion CH03710) (1)
- Yale 2004 forklift (Model GLP090LJNGBV085 with Serial No. E813V02025B) (1).
- Any other items related to the manufacturing of SIPS panels, including:
  - Any equipment manuals
  - Maintenance records
  - Vendor list
  - Customer list
  - Brochures
  - Cd disk and stored data about the product
  - Product awards and plaques
  - Product newspaper articles or any other marketing data
- All:
  - Computers (9)
  - Printers (4)
  - Programs and data files- both hard copy and digital including any accounting information concerning production cost

<u>**EXCLUDED**</u> from this Asset List:

- SIPS Panels specifically manufactured and intended for Habitat for Humanity.

<u>**Intellectual Property**</u>

- Names may have been utilized by the Company prior to its ceasing business operation:
  - Home Front Homes

- o Home Front
- o Green Building Systems
- o Home Front Panelized Construction System
- o All trade names or other names and other product names used by Home Front, and names applied for and pending

- All:
    - o Home Front Product rights
    - o Technology rights
    - o Proprietary technology rights
    - o Process and intellectual property rights pertaining to the manufacturing and installation and/or building system of the Home Front SIPS panels and home products
    - o Installation details
    - o Engineering data
    - o Testing data and product approvals applied for and issued
    - o Building department product approvals

**Exhibit B**

**Promissory Note**

(see attached)

# PROMISSORY NOTE
### (SOUTH AMERICAN DEVELOPMENT, CORP.)

Tampa, Florida
December 18, 2009

$100,000

**FOR VALUE RECEIVED, the undersigned, SOUTH AMERICAN DEVELOPMENT, CORP.,** a Florida corporation ("Maker"), hereby promises to pay to the order of Burton W. Wiand, as Court-appointed Receiver of HOME FRONT HOMES, LLC, a Florida limited liability company ("Payee"), the principal sum of One Hundred Thousand Dollars and No/100 ($100,000) (the "Principal Amount"). Subject to the provisions of this Note, the Principal Amount shall be due and payable in its entirety, at ZERO PERCENT (0%) interest rate, by Maker on December 18, 2010 (the "Maturity Date"). This Note has been issued by Maker pursuant to a Asset Purchase Agreement between Maker and Payee dated as of December 18, 2009. Maker and Payee are each a "Party," and are collectively referred to as "Parties."

1.     **Terms of Payment.** Principal Amount shall be due and payable in its entirety without interest on the Maturity Date. For the avoidance of doubt, this Note is a balloon promissory note that requires that all indebtedness be paid in full on the Maturity Date. All payments shall be made in lawful money of the United States of America at the address provided by Payee, or at such other place as the holder hereof may from time to time designate in writing to Maker.

2.     **Default Interest Rate.** Upon an Event of Default (as hereafter defined), Payee, in his sole discretion and without notice or demand, may raise the rate of interest accruing on this Note to a rate equal to the maximum rate allowed by law, compounded monthly, independent of whether Payee elects to accelerate the unpaid principal balance as a result of such default. Such default interest rate shall continue, in Payee's s sole discretion, until all defaults are cured.

3.     **Voluntary Prepayment.** This Note may be prepaid in whole or in part at any time without premium or penalty.

4.     **Manner and Application of Payments.** All payments due hereunder shall be paid in lawful money of the United States of America which shall be legal tender in payment of all debts and dues, public and private, in immediately available funds. Any payment by check or draft shall be subject to the condition that any receipt issued therefore shall be ineffective unless the amount due is actually received by Payee. Each payment shall be applied first to the payment of any and all costs, fees and expenses incurred by or payable to Payee in connection with the collection or enforcement of this Note, and then to the payment of the unpaid Principal Amount.

5.     **Security; Related Matters.** Maker acknowledges and agrees that the repayment of this Note shall be secured by a first priority security interest in certain Collateral as such term is defined in, and in accordance with, that certain Security Agreement by and between Maker and Payee, in the form attached hereto as Exhibit A.

EXECUTION VERSION

6. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "<u>Event of Default</u>" under this Note:

      (a)    the failure of Maker to pay any sum due under this Note when due, whether by demand or otherwise, which failure has not been cured within five (5) days after written notice thereof from the Payee to the Maker;

      (b)    the failure of Maker to perform, observe or comply in any material respect with its obligations under this Note or the Asset Purchase Agreement within thirty (30) days of receiving notice of such default; or

      (c)    there shall have been instituted proceedings, whether voluntary or involuntary, or the taking of any corporate action in furtherance of, or the entry of any order or decree of a court of competent jurisdiction over the Maker with respect to any of the following (any such proceeding, an "Insolvency Proceeding"):

          (i)    bankruptcy, insolvency or reorganization, readjustment, arrangement, composition or similar relief under federal or state bankruptcy or insolvency statutes or related laws in respect of the Maker;

          (ii)    appointment of receiver, liquidator, trustee or assignee in bankruptcy or insolvency as to the Maker or any guarantor of this Note or a substantial part of the Maker's property; or

          (iii)    any assignment by the Maker of any of its assets for the benefit of creditors, or the winding up or liquidation of the affairs of the Maker, or the admission of the Maker in writing of its inability to pay its debts as they become due;

provided, that in the case of any Involuntary Proceeding, such proceeding or case shall continue undismissed or unstayed and in effect for a period of forty five (45) days.

7. **Rights and Remedies Upon Default.** Upon the occurrence of an Event of Default hereunder, Payee or his successor(s) or assign(s), in the sole discretion of Payee or his successor(s) or assign(s), and without notice to Maker, may: (a) declare the entire outstanding Principal Amount to be immediately due and payable, and the same shall thereupon become immediately due and payable without presentment, demand or notice; and (b) exercise any or all rights, powers and remedies now or hereafter existing at law, in equity, by statute or otherwise.

8. **Remedies Cumulative.** Each right, power and remedy of Payee hereunder, under the Asset Purchase Agreement or now or hereafter existing at law, in equity, by statute or otherwise shall be cumulative and concurrent, and the exercise or beginning of the exercise of any one or more of them shall not preclude the simultaneous or later exercise by Payee of any or all such other rights, powers or remedies. No failure or delay by Payee to insist upon the strict performance of any one or more provisions of this Note or of the Asset Purchase Agreement or to exercise any right, power or remedy consequent upon a breach thereof or default hereunder shall constitute a waiver thereof or preclude Payee from exercising any such right, power or remedy. By accepting full or partial payment after the due date of any amount of principal of or

42443025v2

interest on this Note, or other amounts payable on demand, Payee shall not be deemed to have waived the right either to require prompt payment when due and payable of all other amounts of principal of or interest on this Note or other amounts payable on demand, or to exercise any rights and remedies available to his in order to collect all such other amounts due and payable under this Note.

9. **Collection Expenses.** If this Note is placed in the hands of an attorney for collection following the occurrence of an Event of Default hereunder, Maker agrees to pay to Payee upon demand all out of pocket costs and expenses incurred by the Payee, including, without limitation, all attorneys' fees and court costs incurred by Payee in connection with the enforcement or collection of this Note (whether or not any action or other proceeding has been commenced by Payee to enforce or collect any amounts owing under this Note) or in successfully defending any counterclaim or other legal proceeding brought by Maker contesting Payee's right to collect the outstanding Principal Amount or interest hereunder. All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein or any default rate of interest provided herein, from the date on which the Maker's obligation to make payment is determined until same is paid in full.

10. **Transfer; Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Parties. Notwithstanding the foregoing, the Maker may not assign, pledge, or otherwise transfer this Note without the prior written consent of Payee, whose consent shall not be unreasonably withheld; provided that, however, the transferee designated by Maker shall provide proof that it has the wherewithal and ability to perform the Maker's obligations set forth in this Note, and Maker agrees that Payee shall retain the sole and exclusive right to make such a determination.

11. **Subsequent Holders.** In the event that any holder of this Note transfers this Note for value or the settlement of a claim, all subsequent holder(s) of this Note shall be subject to any claims or defenses which Maker may have against a prior holder (which claims or defenses are not waived as to prior holders).

12. **Maximum Rate of Interest.** Notwithstanding any provision of this Note to the contrary, Maker shall not be obligated to pay interest pursuant to this Note in excess of the maximum rate of interest permitted by the laws of any state determined to govern this Note or the laws of the United States applicable to loans in such state. If any provisions of this Note shall ever be construed to require the payment of any amount of interest in excess of that permitted by applicable law, then the interest to be paid pursuant to this Note shall be held subject to reduction to the amount allowed under applicable law and any sums paid in excess of the interest rate allowed by law shall be applied in reduction of the principal balance outstanding pursuant to this Note. Maker acknowledges that it has been contemplated at all times by Maker that the laws of the State of Florida will govern the maximum rate of interest that it is permissible to charge Maker pursuant to this Note.

13. **Certain Waivers by Maker.** Maker waives demand, presentment, protest and notice of demand, of non-payment, of dishonor and of protest of this Note.

14.     **Choice of Law; Forum Selection; Consent to Jurisdiction.**  This Note shall be governed by, construed and interpreted in accordance with the laws of the State of Florida (excluding the choice of law rules thereof).  Maker hereby (a) agrees that all disputes and matters whatsoever arising under, in connection with, or incident to this Note shall be litigated, if at all, in and before the United States District Court, Middle District of Florida, Tampa Division, in Hillsborough County in the State of Florida to the exclusion of the courts of any other state or country, and (b) irrevocably submits to the exclusive jurisdiction of the United States District Court, Middle District of Florida, Tampa Division in Hillsborough County in the State of Florida in any action or proceeding arising out of or relating to this Note, and hereby irrevocably waives any objection to the laying of venue of any such action or proceeding in any such court and any claim that any such action or proceeding has been brought in an inconvenient forum.  A final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law.

15.     **Invalidity of Any Part.**  If any provision or part of any provision of this Note shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or any remaining part of any provision) of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained in this Note, but only to the extent of its invalidity, illegality or unenforceability.  In any event, if any such provision pertains to the repayment of the indebtedness evidenced by this Note, then and in such event, at Payee's option, the outstanding Principal Amount, together with all accrued and unpaid interest thereon, shall become immediately due and payable.

16.     **Service of Process.**  Maker hereby consents to process being served in any suit, action or proceeding instituted in connection with this Note by the mailing of a copy thereof to Maker, at the address for notice described in Section 17 immediately below, by certified mail, postage prepaid, return receipt requested.  Maker hereby irrevocably agrees that such service shall be deemed to be service of process upon Maker in any such suit, action or proceeding.  Nothing in this Note shall affect the right of Payee to serve process in any other manner otherwise permitted by law, and nothing in this Note will limit the right of Payee otherwise to bring proceedings against Maker in the courts of any other jurisdiction or jurisdictions.

17.     **Notice.**  Any notice, demand, request or other communication which Payee or Maker may be required to give hereunder shall be in writing, shall be effective and deemed received (i) on the next business day when sent by overnight mail or courier service with a nationally recognized courier (e.g., UPS or FedEx), or (ii) on the third business day after being deposited in first class United States mail, postage prepaid, and shall be addressed as follows, or to such other addresses as the parties may designate by like notice:

| | |
|---|---|
| If to Maker: | South American Development, Corp.<br>2721 Executive Park Drive, Suite 4<br>Weston, Florida 33331<br>Attn: Mr. Jerry Gillman |
| If to Payee: | Burton W. Wiand, Receiver of Home Front Homes, LLC<br>3000 Bayport Drive, Suite 600<br>Tampa, Florida 33607<br>Attn: Burt Wiand |

Either Party may change their address for delivery of notice hereunder by giving the other Party written notice of such change in address in accordance with the foregoing notice provisions.

18.  **Miscellaneous.**  The paragraph headings of this Note are for convenience only, and shall not limit or otherwise affect any of the terms hereof.  This Note constitutes the entire agreement between the parties with respect to their subject matter and supersede all prior letters, representations or agreements, oral or written, with respect thereto.  No modification, release or waiver of this Note shall be deemed to be made by Payee unless in writing signed by Payee, and each such waiver, if any, shall apply only with respect to the specific instance involved. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders.

**IN WITNESS WHEREOF,** Maker has duly executed this Note as of the day and year first hereinabove set forth.

SOUTH AMERICAN DEVELOPMENT, CORP.

By: _____
Name: _____
Title: _____





**Exhibit A**

**Security Agreement**

(see attached)

# SECURITY AGREEMENT
## (SOUTH AMERICAN DEVELOPMENT, CORP.)

THIS SECURITY AGREEMENT (the "Agreement"), effective as of December 18, 2009, is made and entered into by and between **SOUTH AMERICAN DEVELOPMENT, CORP.**, a Florida corporation ("Borrower"), and **BURTON W. WIAND**, as Court-appointed Receiver of Home Front Homes, LLC, a Florida limited liability company ("Secured Party").

WHEREAS, Borrower has executed and delivered a Promissory Note of even date herewith, in the original principal amount of One Hundred Thousand Dollars and No/100 ($100,000), in favor of Secured Party; and

WHEREAS, Borrower has agreed to grant to Secured Party a security interest in certain items of collateral as set forth more fully herein.

NOW, THEREFORE, in consideration of the mutual covenants, representations, warranties and agreements contained herein, and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the parties hereto, intending to be legally bound thereby, agree as follows:

1.  Security Interest.  Borrower hereby grants to Secured Party a security interest (the "Security Interest") in the items of collateral described on Exhibit A hereto and in all attachments, additions, replacements, substitutions, and accessions and in all proceeds thereof in any form now existing, after acquired and hereafter arising (hereafter called "Collateral").

2.  Indebtedness Secured.  This Agreement and the Security Interest created by it secures payment of the indebtedness owing by Borrower to Secured Party under the Note, whether the indebtedness is, from time to time, reduced and thereafter increased or entirely extinguished and thereafter reincurred (the "Indebtedness").

3.  Default.  Borrower shall be in default under this Agreement upon the failure or omission to pay when due the Indebtedness of Borrower to Secured Party pursuant and subject to the terms and conditions of the Note.

4.  Secured Party's Rights and Remedies.  Upon the occurrence of any default or at any time thereafter:

    (a)    Secured Party may, at its option, declare all of the Indebtedness secured by this Agreement immediately due and payable.

    (b)    Secured Party shall have and may exercise, from time to time, any and all rights and remedies of a secured party under the this Agreement and the Uniform Commercial Code of Florida and any and all rights and remedies available to a secured party under any other applicable law.

5.    <u>Miscellaneous</u>.

(a)    Borrower authorizes Secured Party at Secured Party's expense to file any financing statement or statements relating to the Collateral (without Borrower's signature thereon) which Secured Party deems reasonably appropriate.

(b)    This Agreement and the rights hereunder shall not be assigned by either party without the prior written consent of the other party.

(c)    This Agreement may not be modified or amended nor shall any provision of it be waived except by a written instrument signed by Borrower and Secured Party.

6.    <u>Governing Law</u>.    This Agreement shall be governed by and construed in accordance with the laws of Florida, without reference to principles of choice or conflict of law thereunder.

7.    <u>Jurisdiction</u>.    The parties hereby agree that the United States District Court for the Middle District of Florida, Tampa Division, shall have exclusive jurisdiction to hear and determine any claims or disputes between the parties hereto pertaining directly or indirectly to this Agreement or to any matter arising therefrom.    The parties hereto expressly submit and consent in advance to such jurisdiction and venue.

[Signature Page Next]

IN WITNESS WHEREOF, the parties hereto have signed this Agreement effective as of the date first written above.

"Borrower"

**SOUTH AMERICAN DEVELOPMENT CORP.**

By: _____
Name: _____
Title: _____

"Secured Party"

**BURTON W. WIAND, RECEIVER OF HOME FRONT HOMES, LLC**

_____

**BURTON W. WIAND, as Receiver**



**Exhibit C**

**Bill of Sale**

(see attached)

# BILL OF SALE

1.    <u>Sale and Transfer of Assets</u>.  For good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, Burton W. Wiand, as Court-appointed Receiver for HOME FRONT HOMES, LLC, a Florida limited liability company ("<u>Assignor</u>"), hereby sells, transfers, assigns, conveys, grants and delivers to SOUTH AMERICAN DEVELOPMENT, CORP., a Florida corporation ("<u>Assignee</u>"), effective as the date hereof, all of Assignor's right, title and interest in and to all of the Assets (as defined in the Asset Purchase Agreement between Assignor and Assignee dated December 18, 2009).

2.    <u>Representations and Warranties</u>.  Assignor hereby covenants with Assignee that: (a) Assignor is the lawful owner of the Assets with the free and unrestricted right to sell the same; (b) the Assets are free and clear of all liens, claims and encumbrances of any nature whatsoever; (c) Assignor warrants and will defend title to the Assets hereby transferred against all claims and demands of all persons whomsoever; and (d) Assignor will execute and deliver such other documents and take such actions as Assignee may reasonably request from time to time to further evidence the transfer of the Purchased Assets as contemplated hereby.

3.    <u>Further Actions</u>. Assignor agrees to take all steps reasonably necessary to establish the record of Assignee's title to the Assets and, at the request of Assignee, to execute and deliver further instruments of transfer and assignment and take such other action as Assignee may reasonably request to more effectively transfer and assign to and vest in Assignee each of the Assets.

Assignor has executed this Bill of Sale as of _____, 2009.


Burton W. Wiand, Receiver of
Home Front Homes, LLC



_____

Burton W. Wiand, as Receiver


42442920v1