UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

                 CASE NO.: 8:09-cv-0087-T-26TBM

     Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

     Relief Defendants.

_____/

**DECLARATION OF BURTON W. WIAND, AS RECEIVER, IN SUPPORT OF
THE RECEIVER'S MOTION FOR APPROVAL OF SALE OF ASSETS
OF HOME FRONT HOMES, LLC AND AGREEMENT WITH M&I BANK**

Burton W. Wiand declares as follows:

  1.  This Court appointed me Receiver for Home Front Homes, LLC ("HFH") on August 10, 2009.

2. I have personal knowledge of, or have obtained knowledge through my investigation of matters during the course of this Receivership, regarding the matters asserted herein and transactions and agreements entered into with third parties concerning these entities; I am competent to testify thereto.

3. HFH is a Florida limited liability company, formed in 2006.

4. HFH was a going concern engaged in the business of manufacturing, marketing, and selling energy-efficient panelized homes until approximately September 2009.

5. The street address of HFH's principal office is 752 Autumncrest Drive, Sarasota, Florida, 34232.

6. HFH owns a variety of assets including vehicles, tools and machinery, office equipment, inventory, and intellectual property. The specific assets are more fully described in Exhibit A of the Asset Purchase Agreement attached to the Motion for Approval of Sale of Assets of Home Front Homes, LLC and Agreement with M&I Bank as Exhibit 1.

7. HFH's assets are encumbered by a lien held by M&I Bank ("M&I"), as a result of a loan made by M&I to HFH on April 15, 2008 which had a principle of $3 million and an interest rate of 5.2%. The maturity date of that loan was April 14, 2009.

8. Prior to entering into negotiations with South American Development Corporation ("SADC") for the sale of HFH's assets, extensive marketing efforts were undertaken to find a buyer that would present the most beneficial offer to the Receivership.

9. In August 2009, I entered into an agreement with a potential buyer of HFH. The potential buyer intended to buy HFH as a going concern for $800,000, fund the business, and immediately take over its business operations.

10. In September 2009, the potential buyer notified me that it refused to satisfy its obligations under the agreement, and it walked away from the transaction.

11. The financial conditions of HFH were very poor and, following the collapse of its sale, I lacked appropriate personnel and capital to operate the business. As a result, I believed it was in the best interest of the Receivership to cease all of HFH's business operations.

12. Because HFH is no longer a going concern, its only value is in the assets it owns. I believe that it is in the best interest of the Receivership to sell all of these assets.

13. The HFH assets were listed on the receivership website, www.nadelreceivership.com, in an "Assets for Sale" section, and their sale was also publicized by word of mouth. As a result of these efforts, I was contacted by four prospective purchasers.

14. Eventually, I received three offers to purchase some or all of HFH's assets.

15. SADC has agreed to purchase the assets of HFH according to the terms set forth in the Asset Purchase Agreement attached to the Motion for Approval of Sale of Assets of Home Front Homes, LLC and Agreement with M&I Bank as Exhibit 1.

16. SADC will: (1) pay $150,000 cash at closing and (2) execute a secured promissory note, bearing zero interest, in the amount of $100,000 payable one year from the date of closing.

17. I, on behalf of HFH, have agreed to sell and transfer all rights in the assets described in Exhibit A of the Asset Purchase Agreement, attached to the Motion for Approval of Sale of Assets of Home Front Homes, LLC and Agreement with M&I Bank as Exhibit 1, without making any warranties of any kind.

18. As part of my negotiations to sell HFH's assets, I have reached an agreement with M&I, which will alleviate significant debt obligations of the Receivership Estate.

19. The details of the agreement with M&I are set forth in the Agreement to Settle Claims and Obligations attached to the Motion for Approval of Sale of Assets of Home Front Homes, LLC and Agreement with M&I Bank as Exhibit 2.

20. As a result of that agreement, M&I is waiving over $3,000,000 of debt obligations, and the Receivership will gain over $95,000 from the sale of HFH's assets to SADC.

21. I believe that this result is in the best interest of the receivership estate given the current situation of HFH.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated this 5th day of January, 2010.

_____
Burton W. Wiand