UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                                  Case No. 8:09-cv-0087-T-26TBM

ARTHUR NADEL;
SCOOP CAPITAL, LLC;
SCOOP MANAGEMENT, INC.

       Defendants,

SCOOP REAL ESTATE, L.P.;
VALHALLA INVESTMENT PARTNERS, L.P.;
VALHALLA MANAGEMENT, INC.;
VICTORY IRA FUND, LTD.;
VICTORY FUND, LTD.;
VIKING IRA FUND, LLC;
VIKING FUND, LLC; AND
VIKING MANAGEMENT, LLC,

       Relief Defendants.
_____/

## RECEIVER'S MOTION FOR LEAVE TO PAY CIVIL
## FILING FEES DIRECTLY FROM RECEIVERSHIP ESTATE

Pursuant to Rule 66 of the Federal Rules of Civil Procedure and Rule 3.01 of the Local Rules of the Middle District of Florida, Burton W. Wiand, as Receiver (the "Receiver"), moves for leave to pay civil filing fees for lawsuits he will commence shortly directly from funds in the Receivership Estate. Those lawsuits are part of the Receiver's efforts to recover money and other assets for the Receivership Estate so that they may be re-

distributed in an equitable manner to investors who were injured by the fraudulent scheme underlying this case and to other creditors.

On January 21, 2009, the Securities and Exchange Commission (the "SEC") initiated this suit alleging that Defendant Arthur Nadel orchestrated a fraudulent investment scheme through Defendants Scoop Capital, LLC, and Scoop Management, Inc., and overstated the value of purported investments by approximately $300 million. (Compl. ¶ 2 (Doc. 1).) The SEC brought this suit to "halt [an] ongoing fraud, maintain the status quo, and preserve investor assets . . . ." (*Id.* ¶ 7.) Mr. Wiand was appointed Receiver for Defendants Scoop Management and Scoop Capital and for Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory IRA Fund, Ltd; Victory Fund, Ltd; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC. (Order Appointing Receiver at 1-2 (Doc. 8).) Mr. Wiand also subsequently was appointed Receiver for Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; the Laurel Mountain Preserve Homeowners Association, Inc.; The Guy-Nadel Foundation, Inc.; Lime Avenue Enterprises, LLC; A Victorian Garden Florist, LLC; Viking Oil & Gas, LLC; and Home Front Homes, LLC (all of the entities in receivership are referred to collectively as the "Receivership Entities").

Pursuant to the Order Reappointing Receiver (Doc. 140), the Receiver has the duty and authority to:

> Investigate the manner in which the affairs of the Receivership Entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors as the Receiver deems necessary against those individuals, corporations,

partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including against their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in the Receivership Entities; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute §726.101, et. seq. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order."

Order Reappointing Receiver ¶ 2.

In fulfillment of his responsibilities, shortly the Receiver will commence lawsuits to recover assets for the Receivership Estate (the "Receiver's lawsuits"). At this time, the Receiver anticipates filing approximately 150 lawsuits, the vast majority of which will be filed against investors who received transfers from Receivership Entities that exceeded the amounts those investors invested – *i.e.*, against investors who enjoyed false profits (or "profiteers") – and will seek to recover those false profits. *See, e.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 757-59 (7th Cir. 1995) (noting that receiver may recover Ponzi-scheme investor's false profits under fraudulent transfer statute); *Terry v. June*, 432 F. Supp. 2d 635, 642-43 (W.D. Va. 2006) (noting that it "has been widely accepted by courts" that under fraudulent transfer statute receiver can recover Ponzi-scheme investor's false profits). The remaining handful of lawsuits will be brought against parties whose factual circumstances differ significantly from those of the profiteers and warrant efforts by the Receiver to recover additional sums of money.

In the aggregate, the Receiver's lawsuits against profiteers would seek to recover approximately $40 million, and the handful of additional lawsuits would seek to recover

many more millions. Thus, if successful those lawsuits would generate significant assets for the Receivership Estate and, in turn, for investors injured by Arthur Nadel's scheme, including the significant number of investors who suffered losses (*i.e.*, investors who received from Receivership Entities no transfers or received transfers in an amount that was lower than the amount they invested).

Aside from being authorized by the Order Reappointing Receiver, the Receiver's efforts are consistent with the overarching equitable nature of this proceeding. "Equality is equity,"[1] and for the Receiver to treat similarly situated investors equally he must proceed with lawsuits against profiteers who have not agreed to return false profits to the Receivership Estate. Since his appointment, the Receiver and professionals whom he has retained have worked to gather and analyze information to identify all recipients of transfers of scheme proceeds. As previously reported, in April 2009 the Receiver sent letters to approximately 85 profiteers to try to resolve the Receiver's claims without the expense of litigation. *See, e.g.*, The Receiver's Fourth Interim Report at 46 (the "Interim Report") (Doc. 240).[2] Since that time, the Receiver and his professionals have continued to gather and review information to identify additional profiteers. To avoid unnecessary litigation expenses, the Receiver has sent letters to those additional profiteers. Although in response to all of the letters sent by the Receiver a number of profiteers have settled with the Receiver

---

[1] *SEC v. Elliott*, 953 F.2d 1560, 1570 (11th Cir. 1992) (citation omitted).

[2] As indicated in interim reports, the recipients of the 85 letters sent by the Receiver in April accounted for approximately $16 million of the approximately $40 million of false profits enjoyed by investors. *See, e.g.*, Interim Report at 46.

and agreed to return 90% of their false profits,[3] the majority of profiteers have not contacted the Receiver to try to amicably resolve these matters.

Not pursuing the Receiver's lawsuits would be against the best interests of the Receivership Estate and inequitable both to investors with losses and to profiteers who have agreed to return false profits. As previously noted, the Receiver's lawsuits could generate a significant amount of money for the Receivership Estate. As such, not pursuing those suits would significantly decrease the potential money available to distribute through a claims process to investors who suffered losses.[4] Further, not pursuing suits against profiteers would be inequitable to those profiteers who have agreed to return false profits because effectively they would be penalized for agreeing to return the money (and thus helping to conserve receivership resources) as the non-settling profiteers would be able to keep their false profits.

The Receiver has no choice but to proceed with the bulk of the Receiver's lawsuits at this time because a statute of limitation for one of the claims available to the Receiver is close to expiring. However, the Receiver recognizes the benefit to the Receivership Estate of working to recover from as many prospective defendants as possible before instituting

---

[3] To date, the Receiver has entered into 27 settlements for an aggregate sum of $2,319,776.88.

[4] Notably, even if the Receiver's lawsuits against profiteers are successful, those profiteer-defendants would, in all likelihood, still enjoy a more favorable outcome from Nadel's scheme than the investors who suffered losses. This likely would be the case because, at worst for the profiteer-defendants, they would be left with no gains and no losses while it is unlikely the investors who suffered losses would receive sufficient sums of money through the claims process to recompense them for their full investment losses.

litigation against them, and thus for profiteers who are currently engaged in serious discussions with the Receiver aimed at resolving the Receiver's claims, or who will enter such discussions before suit is filed against them, if necessary the Receiver has offered to enter into tolling agreements to allow some more time to conclude those discussions. Indeed, although the Receiver currently anticipates filing approximately 150 lawsuits, the final number could deviate based on the success of and information gathered during those discussions.

Pursuant to 28 U.S.C. § 1914, the commencement of the Receiver's lawsuits will require payment of filing fees of $350 per action. In light of the anticipated large volume of lawsuits, the filing fees would amount to approximately $52,000 and thus be significant (despite the amount of those fees, the Receiver believes it is in the best interests of the Receivership Estate to proceed with those lawsuits in light of the merits of the claims that would be asserted and the potential recovery). Pursuant to paragraph 4 of the Order Reappointing Receiver, the Receiver seeks leave to pay those fees directly out of accounts held by Receivership Entities.[5] *See SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992) ("The district court has broad powers and wide discretion to determine relief in an equity receivership.").

---

[5] In relevant part, that paragraph authorizes the Receiver to pay all reasonable expenses associated with "exercising the power granted by" the Order Reappointing Receiver subject to the Court's approval.

Without approval from the Court, the filing fees would have to be paid by the Receiver's and his counsel's law firm (which would then seek reimbursement). Consistent with the law firm's policy requiring clients to directly pay significant costs, the Receiver seeks leave to pay the filing fees directly out of the Receivership Estate.

WHEREFORE, the Receiver respectfully requests that the Court grant him leave to pay the civil filing fees for the Receiver's lawsuits directly from funds in the Receivership Estate.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for the Receiver has conferred with counsel for the SEC and is authorized to represent to the Court that the SEC does not object to the relief requested in this motion.

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

> Arthur G. Nadel
> Register No. 50690-018
> MCC New York
> Metropolitan Correctional Center
> 150 Park Row
> New York, NY 10007

>                                     /s Gianluca Morello
>                                     Gianluca Morello, FBN 034997
>                                     gmorello@wiandlaw.com
>                                     WIAND GUERRA KING P.L.
>                                     3000 Bayport Drive, Suite 600
>                                     Tampa, FL 33607
>                                     Tel. 813.347.5100
>                                     Fax 813.347.5155
>                                     Attorneys for the Receiver, Burton W. Wiand