AGREEMENT OF SALE AND PURCHASE

BY AND BETWEEN

BURTON W. WIAND, Receiver for
Scoop Real Estate, L.P.,
a Delaware limited partnership ("Seller")

AND

CANDLER FOOD LLC # 136 LLC,
a Georgia limited liability company
("Purchaser")

EXHIBIT 1

# AGREEMENT OF SALE AND PURCHASE

THIS **AGREEMENT FOR SALE AND PURCHASE** (the "Agreement") is made effective as of November 19, 2009 (the "Effective Date") by and between **CANDLER FOOD LLC # 136**, a Georgia limited liability company, (the "Purchaser") and **BURTON W. WIAND** (the "Seller"), as Court-appointed Receiver for Scoop Real Estate, L.P., a Delaware limited partnership (the "Company") (Purchaser and Seller are sometimes collectively referred to herein as the "Parties").

**WHEREAS**, the United States District Court for the Middle District of Florida, Tampa Division (the "Court"), appointed Burton W. Wiand on January 21, 2009, and reappointed Mr. Wiand on June 3, 2009, as Receiver of Scoop Real Estate, L.P., a Delaware limited partnership, among other receivership entities, in the action styled *Securities and Exchange Commission v. Arthur Nadel, et al.*, Case No: 8:09-cv-87-T-26TBM;

**WHEREAS**, the Company owns a real property located in Newnan, Coweta County, Georgia, as more particularly described in **Exhibit "A"** attached hereto, consisting of one (1) building with approximately 3,500 square feet of leasable area on an approximately two (2) acres of land (the "Land"), together with all rights whatsoever, including easements, right-of-way, interests and appurtenances benefitting the Land which is part of such Property, and all other Improvements thereon and Fixtures therein (collectively, the "Property"); and

**WHEREAS**, Seller desires to sell and Purchaser desires to purchase the Property pursuant to the terms and conditions set forth herein;

**NOW, THEREFORE**, for and in consideration of the mutual covenants and obligations contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Seller agree as follows:

## OPERATIVE TERMS

### ARTICLE I.
### DEFINITIONS

As used herein (including any Exhibits attached hereto), the following terms shall have the meanings indicated:

"Business Day(s)" shall mean calendar days other than Saturdays, Sundays and legal holidays.

"Closing" shall mean the consummation of the sale and purchase of the Property as provided for herein, to be conducted at such location as the Parties may mutually agree in writing.

"Closing Date" shall mean the actual day on which the transaction contemplated hereby is closed with the transfer of title to the Properties to Purchaser. The Parties agree that the Closing Date shall be a date on or before January 15, 2010; provided, however, if Seller is unable

1

to satisfy the Contingency prior to January 15, 2010, the Parties agree that the Closing Date shall be extended to five (5) business days after the court order is delivered to Purchaser.

"Deed" shall mean a limited warranty deed in content, form and substance reasonably acceptable to the Parties and complying with local law executed by Seller, as grantor, in favor of Purchaser or its permitted assignee, as grantee, conveying the Property to Purchaser.

"Earnest Money Deposit" shall mean the earnest money deposits to be delivered to Wiand Guerra King P.L. (hereinafter, in such capacity, "Escrow Agent") as contemplated by Section 3.02.

"Fixtures" shall mean all permanently affixed equipment, machinery, fixtures, and other items of real and/or personal property, including all components thereof, now and hereafter located in, on or used in connection with, and permanently affixed to or incorporated into the Improvements, and owned, in each instance, by Seller, including, without limitation, all furnaces, boilers, heaters, electrical equipment, heating, plumbing, lighting, ventilating, refrigerating, incineration, air and water pollution control, waste disposal, air-cooling and air-conditioning systems and apparatus, sprinkler systems and fire and theft protection equipment, all of which, to the greatest extent permitted by law, are hereby deemed by the Parties hereto to constitute real estate, together with all replacements, modifications, alterations and additions thereto, but *specifically excluding* all items of personal property or trade fixtures leased by Seller and property owned by tenant(s) under any tenant lease(s) encumbering the Property.

"Lender" shall mean Fidelity Bank or such other financial institution selected by Purchaser and acceptable to Seller.

"Improvements" shall mean all buildings, improvements, structures and Fixtures, now or on the Closing Date to the extent owned by Seller and located on the Land, including, without limitation, landscaping, parking lots and structures, roads, drainage and all above ground and underground utility structures, equipment systems and other so-called "infrastructure" improvements to the extent any of same may be owned by Seller.

"Property" shall mean, collectively, the Land, Fixtures and the Improvements and all rights, titles, and appurtenant interests thereto owned by Seller. As used in the foregoing, "appurtenant interests" shall mean those interests which permissibly pass by operation of law with the conveyance by Seller of the fee simple estate in the Land, Fixtures and Improvements.

"Purchase Price" shall mean the amount of One Million Seven Hundred Twenty-Five Thousand Dollars and No/100 ($1,725,000).

"Title Company" shall mean Specialized Title Services, Inc. or such other title company selected by Purchaser and acceptable to Seller.

## ARTICLE II.
## AGREEMENT TO SELL AND PURCHASE

Section 2.01  Agreement to Sell and Purchase. On the Closing Date, Seller shall sell, convey, assign, transfer and deliver to Purchaser and Purchaser shall purchase, acquire, have

conveyed unto it and accept from Seller, the Property, for the Purchase Price and subject to the terms and conditions of this Agreement.

Section 2.02  Condition of Property. Purchaser acknowledges and agrees to purchase the Property on an "AS IS" "WHERE IS" BASIS, WITH ALL FAULTS AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO THE SUITABILITY OF THE PROPERTY FOR ANY USE, AND WITHOUT WARRANTIES, OTHER THAN LIMITED WARRANTIES OF TITLE CONTAINED IN THE LIMITED WARRANTY DEED, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE PROPERTY FOR ANY USE, AND WITHOUT RECOURSE, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, SAVE AND EXCEPT THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 4.01 HEREOF.

Section 2.03  Purchaser's Right of Inspection.

(a)  Seller does hereby grant to Purchaser, its agents, engineers, surveyors and other representatives the right, at Purchaser's risk and at Purchaser's sole cost and expense, during the 45 day period from the Effective Date, to exam the title to the Property and to enter upon the Property to inspect, examine and survey the Property and otherwise do that which, in the opinion of Purchaser, is reasonably necessary to determine the boundaries and acreage of the Property, the suitability of the Property for the uses intended by Purchaser, topographical conditions, the presence or absence of hazardous or toxic materials or oil, and the presence or absence of subsurface water and rock, and to make tests of determine the physical condition of the Property. Purchaser agrees to indemnify and hold Seller harmless from and against any damages arising directly or indirectly from Purchaser's inspection and testing of the Property. Purchaser shall promptly deliver to Seller, copies of the results of all of Purchaser's tests and inspections.

(b)  If, in the sole opinion of Purchaser, any adverse matter is revealed by any inspection, examination or studies of the Property as set forth above, Purchase shall notify Seller of such adverse matter and the Parties hereto will diligently work together at Purchaser's sole cost and expense to clear said adverse matter; provided, however, if said adverse matter cannot be cleared prior to January 15, 2010, the Parties agree that the Closing Date shall be extended to five (5) business days after the date said adverse matter is cleared.

ARTICLE III.
PURCHASE PRICE AND EARNEST MONEY DEPOSITS

Section 3.01  Payment of Purchase Price. The Purchase Price shall be paid by Purchaser in cash or other immediately available funds at Closing, subject to the adjustments and prorations provided for herein.

Section 3.02  Earnest Money Deposit. Within three (3) banking days after the Effective Date hereof, Purchaser shall deliver to Escrow Agent earnest money in the amount of One Hundred Thousand Dollars and No/100 ($100,000.00). The Earnest Money Deposit shall, if Purchaser closes on the purchase of the Property as contemplated hereby, be credited toward the Purchase Price at the Closing, but shall, upon satisfaction of the Contingency, be deemed immediately fully earned by Seller and otherwise become non-refundable to Purchaser, except as otherwise specifically set forth in this Agreement. Any interest earned on the Earnest Money Deposit shall be the property of Escrow Agent as reimbursement for administrative expenses associated with maintaining the Earnest Money Deposit with no credit given toward the Purchase Price.

Section 3.03  Contingency. Notwithstanding any other term, provision, or condition contained herein to the contrary, Purchaser will be able to terminate this Agreement and receive a full refund of the Earnest Money Deposit in the event that Seller is unable to obtain approval of the UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, in Hillsborough County in the State of Florida to sell the Property free and clear of all liens, claims, encumbrances, and restrictions.

ARTICLE IV.
REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS

Section 4.01  **Representations and Warranties of Seller.** Seller, subject to the other terms and conditions of this Agreement, represents and warrants to Purchaser as follows:

(a)  Seller will convey, transfer and assign to Purchaser, good and marketable title to the Property, free and clear of liens, encumbrances, and other matters affecting title of the Property.

(b)  Seller shall have, as of Closing, full right, power and authority to consummate the transactions provided for herein, and to Seller's knowledge, the joinder of no person or entity is or will be necessary to sell the Property to Purchaser at Closing.

(c)  Seller will, on or before the Closing Date, obtain approval from the Court to sell the Property free and clear of all liens, claims, encumbrances, and restrictions.

(d)  Seller has granted no option or Contract to any other person or entity to purchase the Property.

Purchaser expressly acknowledges that Seller has made no warranties with respect to the Property, other than the limited warranties of title contained in the Limited Warranty Deed. Purchaser is purchasing the Property on an "AS IS" "WHERE IS" BASIS, WITH ALL FAULTS AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO THE SUITABILITY OF THE PROPERTY FOR ANY USE, AND WITHOUT WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE PROPERTY FOR ANY USE, AND WITHOUT RECOURSE, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, SAVE AND EXCEPT THE EXPRESS

REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS SECTION 4.01. All other representations and warranties set forth in Section 4.01 shall not survive Closing, however, Seller shall reaffirm such representations and warranties at Closing.

Section 4.02  **Representations and Warranties of Purchaser.**  Purchaser represents and warrants to Seller that:

(a) Purchaser has duly and validly authorized and executed this Agreement, and has full right, power and authority to enter into this Agreement and to consummate the transactions provided for herein, and the joinder of no person or entity other than Lender will be necessary to purchase the Property from Seller at Closing.

(b) The execution by Purchaser of this Agreement and the consummation by Purchaser or its permitted assigns of the transactions contemplated herein do not, and at the Closing will not, result in any breach of any of the terms or provisions of or constitute a default or a condition which upon notice or lapse of time or both would ripen into a default under any indenture, agreement, instrument or obligation to which Purchaser is a party; and does not and at the Closing will not constitute a violation of any order, rule or regulation applicable to Purchaser or of any federal or state or municipal regulatory body or administrative agency or other governmental body having jurisdiction over Purchaser.

(c) On or before the Closing Date, Purchaser will have conducted and completed any and all due diligence it deems or deemed necessary prior to completing the purchase contemplated herein.

Purchaser expressly acknowledges that Seller has made no warranties with respect to the Property. Purchaser is purchasing the Property on an "AS IS" "WHERE IS" BASIS, WITH ALL FAULTS AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO THE SUITABILITY OF THE PROPERTY FOR ANY USE, AND WITHOUT WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, INCLUDING BUT NOT LIMITED TO, SUITABILITY OF THE PROPERTY FOR ANY USE, AND WITHOUT RECOURSE, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE, SAVE AND EXCEPT THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 4.01 ABOVE.

ARTICLE V.
CONDITIONS TO THE SELLER'S AND PURCHASER'S OBLIGATIONS

Section 5.01  Conditions to the Purchaser's Obligations.  The obligations of Purchaser to purchase the Property from Seller and to consummate the transactions contemplated by this Agreement are subject to the satisfaction, at all times prior to and as of the Closing, of each of the following conditions:

(a) The representations and warranties of Seller set forth in this Agreement shall be true in all material respects at all times prior to, at and as of the Closing.

(b)     Seller shall have delivered, performed, observed and complied with, in all material respects, all of the items, instruments, documents, covenants, agreements and conditions required by this Agreement to be delivered, performed, observed and complied with by it prior to, or as of, the Closing.

Section 5.02    Failure of Conditions to Purchaser's Obligations. In the event any one or more of the conditions to Purchaser's obligations are not satisfied in whole or in part at any time prior to or as of the Closing Date, and provided such event is not caused by Purchaser's actions or default(s) hereunder, Purchaser, at Purchaser's option, shall be entitled to: (a) terminate this Agreement by giving written notice to Seller and Purchaser shall have no further obligations or liabilities hereunder, except those expressly surviving termination of this Agreement; or (b) waive any and all default(s) not cured and proceed to Closing.

Section 5.03    Condition to the Seller's Obligations. The obligations of Seller to sell the Property to Purchaser and to consummate the transaction contemplated by this Agreement are subject to the satisfaction at all times prior to and, as applicable, at closing of each of the following:

(a)     All of the representations and warranties of Purchaser set forth in this Agreement shall be true at all times prior to, at, and as of the Closing.

(b)     Purchaser shall have delivered, performed, observed and complied with, in all material respects, all of the items, instruments, documents, covenants, agreements and conditions required by this Agreement to be delivered, performed, observed, and complied with by it prior to, and as of the Closing.

(c)     Purchaser shall have delivered the Earnest Money Deposit and has otherwise, on or before the Effective Date, delivered to the Title Company the balance of the Purchase Price due and owing Seller at Closing and same have been delivered to Seller.

Section 5.04    Risk of Loss. Risk of loss up to and including the Closing Date shall be borne by Seller.

## ARTICLE VI.
## PROVISIONS WITH RESPECT TO THE CLOSING

Section 6.01    Seller's Closing Obligations. At the Closing, Seller shall furnish or as applicable execute and deliver to the Title Company for delivery to Purchaser, the following with respect to the Property:

(a)     The Deeds duly executed and acknowledged by Seller;

(b)     All keys, combinations, codes and security information to all locks on the Property in the possession of Seller;

(c)     Such other instruments or documents as are reasonably necessary or reasonably required by Purchaser or the Title Company to consummate the transaction

contemplated hereby, including to evidence the status and capacity of Seller to consummate this transaction and the authority of the person or persons who are executing the various documents on behalf of Seller in connection with the purchase and sale transaction contemplated hereby, including Seller's authority to execute and deliver the closing documents;

(d) A closing statement itemizing the Purchase Price and all adjustments thereto as provided herein;

(e) A limited warranty bill of sale and instrument of transfer and assignment in form mutually acceptable to the Parties, assigning all of Seller's right, title and interest in and to all of the tangible and intangible personal property constituting a portion of the Property and listed therein; and

(f) All files, including all permits and licenses for operation of the Property, to the extent in Seller's possession.

Section 6.02 <u>Purchaser's Closing Obligations</u>. At the Closing, Purchaser shall execute and/or deliver to the Title Company for delivery to Seller:

(a) Wired funds payable to the order of the Seller representing the balance of the Purchase Price due in accordance with Section 3.01 and other applicable provisions herein;

(b) Such instruments as are necessary or reasonably required by Seller or the Title Company to consummate the transaction contemplated hereby, including evidence of authority of Purchaser to consummate the purchase and sale transaction contemplated hereby and to execute and deliver the closing documents on the Purchaser's part to be delivered;

(c). A closing statement itemizing the Purchase Price and all adjustments thereto as provided herein.

## ARTICLE VII.
## EXPENSES OF CLOSING

Section 7.01 <u>Closing Prorations</u>. The following items shall be prorated and adjusted between the Seller and the Purchaser as of midnight on the day preceding the Closing Date:

(a) *Rents*. All rents and other receipts actually received in and applicable to the month in which the Closing occurs shall be prorated as of the Closing, other than rents from Purchaser, based on twelve thirty (30) day months.

(b) *Taxes*. Real estate taxes, recurring assessments, and personal property taxes, if any, on all or any portion of the Property, based on the regular and supplemental tax bills for the calendar year in which the Closing occurs (or, if such tax bill has not been issued as of the date of Closing the regular and supplemental tax bill for the calendar year preceding that in which the Closing occurs) shall be prorated as of the

Closing. If any supplemental real estate taxes are levied for any period preceding the Closing, the Parties will, immediately after the closing or the issuance of the supplemental real estate tax bill (whichever last occurs), prorate between themselves, in cash, without interest and to the date of the Closing Date, the supplemental real estate taxes shown by such bill. Purchaser and Seller agree that in the event the actual tax bill for the year 2009 is different than the tax bill upon which the closing prorations are based, Purchaser and Seller shall promptly reprorate such taxes based upon the actual 2009 tax bill.

(c) *Utilities*. All utilities, including gas, water, sewer, electricity, telephone and other utilities supplied to the Property shall, to the extent possible, be read as of the Closing Date, and Seller shall pay, prior to the Closing Date, all such amounts for which a bill has been received prior to the Closing Date, and received, to the extent applicable, a prorated amount as credit toward Closing.

(d) *Other Items*. All other proratable items, including without limitation licenses and permits being assumed by Purchaser (if any; provided that in no event shall Purchaser assume any indemnification obligations of Seller) and other income from, and expenses associated with, the Property shall be prorated between Purchaser and Seller as of the Closing.

Purchaser's and Seller's obligations to prorate shall survive the Closing for a period of one (1) year (unless within such time Purchaser or Seller makes a claim against the other party to this Agreement with respect to such obligation to prorate, in which case such obligation shall survive without limitation), and Purchaser and Seller shall use good faith efforts to conclude pertinent prorations as soon as practicable after the determination of the amounts thereof.

Section 7.02  Closing Costs.

(a) Purchaser shall pay: (i) all title examination fees and premiums for the Title Policy; (ii) the charges and costs of any Survey, environmental assessments, building assessments or other inspections which it may commission of the Property prior to the Closing Date; (iii) the charges for or in connection with the recording and/or filing of any instrument or document provided herein or contemplated by this Agreement or any agreement or document described or referred to herein; (iv) Purchaser's legal, accounting and other professional fees; (v) any and all transfer taxes payable in connection with the delivery for recording of any title transfer instrument or document by Seller provided in or contemplated by this Agreement or any agreement or commitment described or referred to herein; and (vi) any charges by the Escrow Agent for escrow services for the Earnest Money Deposits.

(b) Seller shall pay: (i) Seller's legal, accounting and other professional fees and expenses and the cost of all certificates, instruments, documents and papers required to be delivered, or to cause to be delivered, by Seller hereunder, including without limitation, the cost of performance by Seller of its obligations hereunder; and (ii) recording costs on documents necessary for Seller to clear title (to the extent such action is required).

(c) Except as otherwise prorated pursuant to Section 7.01 or expressly provided for in Section 7.02(b) and Section 7.03, Purchaser shall be responsible for any and all other costs and expenses, regardless of custom or practice in the county where the Property is located, in connection with the consummation of this Agreement.

Section 7.03 Improvement Liens. Certified, confirmed or ratified liens for governmental improvements fully due and payable for governmental improvements as of the Closing, if any, shall be paid in full by Seller, and pending liens or installment liens accruing after the Closing Date for governmental improvements completed as of the Closing shall be assumed by Purchaser.

## ARTICLE VIII.
## DEFAULT AND REMEDIES

Section 8.01 Seller's Default; Purchaser's Remedy.

(a) *Seller's Default.* Seller shall be deemed to be in default hereunder upon the occurrence of the following events: (i) any of Seller's warranties or representations set forth herein shall be materially untrue when made or at Closing; or (ii) Seller shall fail to meet, comply with, or perform any material covenant, agreement or obligation on its part required within the time limits and in the manner required in this Agreement and shall fail to cure same within ten (10) days after receipt of written notice from Purchaser.

(b) *Purchaser's Remedy.* In the event Seller shall be deemed to be in continuing default hereunder after the expiration of the applicable cure period, Purchaser expressly acknowledges and agrees that its sole and exclusive remedy is to terminate this Agreement and seek return of the Earnest Money Deposit from Seller. This Agreement, when duly executed by the Parties, constitute the express waiver in writing of any other remedy, whether legal or equitable, that may be available to the Purchaser.

Section 8.02 Purchaser's Default; Seller's Remedies.

(a) *Purchaser's Default.* Purchaser shall be deemed to be in default hereunder upon the occurrence of the following events: (i) any of Purchaser's warranties or representations set forth herein shall be untrue when made or at Closing; or (ii) Purchaser shall fail to meet, comply with, or perform any material covenant, agreement or obligation on its part required within the time limits and in the manner required in this Agreement and shall fail to cure same within ten (10) days after written notice from Seller;

(b) *Seller's Remedy.* In the event Purchaser shall be in continuing default hereunder after the expiration of the applicable cure period, Seller shall be entitled to terminate this Agreement and, within three (3) business days, receive from the Escrow Agent upon written notice to it all monies held as Earnest Money Deposit (excluding interest, which shall be paid to the Escrow Agent) hereunder as liquidated damages in full and final settlement of all Seller's accrued rent or claims against Purchaser for the rental of the Property as of the Effective Date of this Agreement. Parties acknowledge and agree that a reasonable estimate of the total net detriment Seller would suffer in the event

of default not cured by Purchaser equals to the Earnest Money Deposit being held by the Escrow Agent, and the delivery of the Earnest Money Deposit to Seller as liquidated damages shall constitute Seller's sole and exclusive remedy under this Agreement (subject to those provisions of this Agreement which, by their express terms, survive a termination of this Agreement). Such liquidated damages are not intended as a forfeiture or penalty within the meaning of applicable law.

## ARTICLE IX.
## MISCELLANEOUS

Section 9.01 <u>Survival of Representations and Warranties</u>. All of the respective representations and warranties of the Parties to this Agreement shall survive the consummation of the transactions contemplated hereby. All other representations, warranties, covenants, agreements and indemnities of Seller and Purchaser contained in this Agreement shall be deemed to merge upon the acceptance of the Deed by Purchaser.

Section 9.02 <u>Broker's Commissions</u>. Seller and Purchaser represent and warrant each to the other that they have not dealt with any real estate broker, sales person or finder in connection with this transaction. In the event of any claim for broker's or finder's fees or commissions by any party, each party shall indemnify and hold harmless the other party from and against any such claim based upon any statement, representation or agreement of such party. This provision shall survive the consummation of the transactions contemplated hereby.

Section 9.03 <u>Indemnification</u>. Notwithstanding any provisions in this Agreement to the contrary, Purchaser expressly acknowledges and agrees that Seller provides **NO** indemnification from and against any loss, claim and/or damage arising under any circumstance related to the Property or this Agreement, and that Section 8.01(b) sets forth the Purchaser's <u>sole and exclusive remedy</u> under this Agreement.

Section 9.04 <u>Right of Assignment</u>. Purchaser shall have no right to assign this Agreement without the prior written consent of Seller, which consent shall not be unreasonably withheld or delayed.

Section 9.05 <u>Notices</u>. Any notice, request, information or other document to be given hereunder to any Parties by any other party shall be in writing and shall have been deemed to have been given (i) when personally delivered, sent by facsimile (with hard copy to follow) or sent by reputable overnight express courier (charges prepaid), or (ii) five (5) days following mailing by certified or registered mail, postage prepaid and return receipt requested. Unless another is specified in writing, notices, demands and communications to Seller and Purchaser shall be sent to the addresses indicated below:

(a) If intended for Seller:

Burton W. Wiand, Receiver
Scoop Real Estate, L.P.
3000 Bayport Drive, Suite 600
Tampa, Florida 33607
Attn: Burton W. Wiand, Esq.

(b) If intended for Purchaser:

Candler Food LLC #136
6142 Old Dixie Hwy
Forest Park, GA 30297
Attn: Shams Nanji

With copy to:

Weissmann Zucker & Euster, PC
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
Attn: Mark D. Euster, Esq.

Any party may change the address to which notices hereunder are to be sent by giving written notice of such change of address as provided above.

Section 9.06 Entire Agreement; Amendments. This Agreement and the instruments delivered pursuant hereto constitute the entire agreement between the Parties hereto and supersede all prior written agreements and understanding, oral or written, between the Parties relating to the subject matter hereof. Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the Party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument. This Agreement, although initially drawn by one of the Parties hereto, shall not be construed for or against either party as a result thereof in any dispute pertaining to this Agreement or the transaction contemplated hereby, but this Agreement shall be interpreted in accordance with language hereof in an effort to reach the result intended thereby.

Section 9.07 Applicable Law; Jurisdiction; Venue.

(a) THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF GEORGIA.

(b) Purchaser and Seller hereby (i) agree that all disputes and matters whatsoever arising under, in connection with, or incident to this Agreement shall be litigated, if at all, in and before the UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, in Hillsborough County in the State of Florida, to the exclusion of the courts of any other state or country, and (ii) irrevocably submits to the exclusive jurisdiction of the UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, in Hillsborough County in the State of Florida, in any action or proceeding arising out of or relating to this Agreement, and hereby irrevocably waives any objection to the laying of venue of any such action or proceeding in any such court and any claim that any such action or proceeding has been brought in an inconvenient forum. A final judgment in any such action or proceeding

shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law.

Section 9.08  Captions. The captions in this Agreement are inserted for convenience of reference only and in no way define, describe, or limit the scope or intent of this Agreement or any of the provisions hereof.

Section 9.09  Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns; provided, however the delivery of the Agreement by one party shall not be binding upon either until both Parties have fully executed same.

Section 9.10  Time is of the Essence. With respect to all provisions of this Agreement, time is of the essence. However, if the first date of any period which is set out in any provision of this Agreement falls on a day which is not a Business Day, then, in such event, the time of such period shall be extended to the next day which is a Business Day.

Section 9.11  Waiver. No waiver by either party hereto of any condition or any breach of any term, covenant, representation or warranty contained in this Agreement shall be deemed or construed as a further or continuing waiver of such condition or breach or waiver of any other or subsequent condition or the breach of any other term, covenant, representation or warranty contained in this Agreement.

Section 9.12  Severability. If any provision of this Agreement is determined to be illegal or unenforceable, such provision will be deemed amended to the extent necessary to conform to applicable law or, if it cannot be so amended without materially altering the intention of the Parties, it will be deemed stricken and the remainder of the Agreement will remain in full force and effect.

Section 9.13  No Recording. Purchaser shall not record this Agreement or any short form, memorandum or notice thereof in any public or governmental office.

Section 9.14  Attorneys' Fees. In any action or dispute, at law or in equity, that may arise under or otherwise relate to this Agreement, the prevailing party will be entitled to, from the non-prevailing party, reimbursement of its attorneys' fees (including, but not limited to, attorneys' fees, paralegals' fees and legal assistants' fees), costs and expenses incurred in the preparation for and in connection with any trial, appeal or bankruptcy proceeding.

Section 9.15  Counterparts. Any number of counterparts of this Agreement may be executed and each such executed counterpart shall be deemed to be an original.

[Signature Page Next]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the date first above written.

PURCHASER:

CANDLER FOOD LLC #136

By: _____ 12/02/09

Name: AMIN CHITALWALA

Its: MANAGER


SELLER:

BURTON W. WIAND, RECEIVER OF
SCOOP REAL ESTATE, L.P.

_____
BURTON W. WIAND, as Receiver

# EXHIBIT A

**Property Description**

**(see attached)**

# EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 22 and 23 of the 6th Land District of Coweta County, Georgia, and being more particularly described as follows:

BEGINNING at a concrete monument at the intersection of the northwesterly right-of-way of the off ramp from Interstate 85 and the northeasterly right-of-way of McCollum-Sharpsburg Road (State Route 154); said monument being the TRUE POINT OF BEGINNING; thence along said right-of-way of McCollum-Sharpsburg Road North 73 degrees 29 minutes 14 seconds West 80.28 feet to a concrete monument; thence North 25 degrees 40 minutes 57 seconds West 95.17 feet to a concrete monument; thence North 34 degrees 06 minutes 18 seconds West, 117.35 feet to a concrete monument; thence North 21 degrees 04 minutes 27 seconds West, 137.85 feet to an iron pin; thence North 69 degrees 15 minutes 47 seconds East 260.00 feet to an iron pin; thence departing said right-of-way South 20 degrees 44 minutes 13 seconds East 368.18 feet to an iron pin found on the northwesterly right-of-way of the off ramp from Interstate 85; thence along said off ramp along a curve to the left an arc distance of 50.72 feet, said curve having a radius of 1067.44 feet and a chord bearing South 60 degrees 41 minutes 31 seconds West, a distance of 50.71 feet to a concrete monument; thence South 59 degrees 06 minutes 05 seconds West 111.56 feet to a concrete monument which is the TRUE POINT OF BEGINNING. Said property contains 2.12 acres.

Said property being shown on that certain survey prepared for "Scoop Real Estate, LP, S & A Food & Gas, Inc., and First American Title Insurance Co." by J. Hugh Camp & Associates, J. Hugh Camp, Georgia Registered Land Surveyor No. 939, dated January 17, 2006.

TOGETHER WITH and benefiting the subject property, the easement as contained in that Easement Agreement by and between S & A Food, and Daniel F. Zavada, dated June 23, 2005, filed for record June 27, 2005 at 1:29 p.m., recorded in Deed Book 2762, Page 630, Records of Coweta County, Georgia.

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 22 and 23 of the 6th Land District of Coweta County, Georgia, and being more particularly described as follows:

BEGINNING at a concrete monument at the intersection of the northwesterly right-of-way of the off ramp from Interstate 85 and the northeasterly right-of-way of McCollum-Sharpsburg Road (State Route 154); said monument being the TRUE POINT OF BEGINNING; thence along said right-of-way of McCollum-Sharpsburg Road North 73 degrees 29 minutes 14 seconds West 50.28 feet to a concrete monument; thence North 25 degrees 40 minutes 57 seconds West 98.17 feet to a concrete monument; thence North 34 degrees 56 minutes 19 seconds West, 117.36 feet to a concrete monument; thence North 21 degrees 04 minutes 27 seconds West, 137.28 feet to an iron pin; thence North 68 degrees 18 minutes 47 seconds East 269.00 feet to an iron pin; thence departing said right-of-way South 20 degrees 44 minutes 13 seconds East 366.19 feet to an iron pin found on the northwesterly right-of-way of the off ramp from Interstate 85; thence along said off ramp along a curve to the left an arc distance of 80.72 feet, said curve having a radius of 1067.44 feet and a chord bearing South 86 degrees 41 minutes 31 seconds West, a distance of 80.71 feet to a concrete monument; thence South 69 degrees 04 minutes 36 seconds West 111.96 feet to a concrete monument which is the TRUE POINT OF BEGINNING. Said property contains 2.12 acres.

Said property being shown on that certain survey prepared for "Scoop Real Estate, LP, B & A Food & Gas, Inc., and First American Title Insurance Co." by J. Hugh Camp & Associates, J. Hugh Camp, Georgia Registered Land Surveyor No. 939, dated January 17, 2006.

TOGETHER WITH and benefiting the subject property, the easement as contained in that Easement Agreement by and between B & A Food, and Daniel F. Zavada, dated June 23, 2005, filed for record June 27, 2005 at 1:29 p.m., recorded in Deed Book 2782, Page 850, Records of Coweta County, Georgia.