103.50
1,760.00
3,080.00

12/98

Return To: K4G
#1/2 KIRK PINKERTON
P.O. Box 3798
Sarasota, Florida 34230

$1.00

**This Instrument Prepared By:**
Krystal L Payne
Wells Fargo Equity Direct
7185 Vista Drive, Augusta Building
West Des Moines, IA 50266

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2006096987 12 PGS
2006 MAY 24 05:30 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
DCATHEY   Receipt#789404
Doc Stamp-Mort:   3,080.00
Intang. Tax:     1,760.00

State of Florida's Documentary Stamp Tax required by law in the amount of $ __3,080.00__ has been paid to the Clerk of the Circuit Court (or the County Comptroller, if applicable) for the County of __Sarasota__, State of Florida.

2006096987

**After Recording Return To:**
Wells Fargo Bank N.A.
Wells Fargo Services
Consumer Loan Servicing
P.O. Box 31557
Billings, MT 59107

——— State of Florida ——— Space Above This Line For Recording Date ———

**MORTGAGE**   65018707241998
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust ("Security Instrument") is 23 May 2006 and the parties, their addresses and tax identification numbers, if required, are as follows:

   **MORTGAGOR:**
   NEIL V. MOODY, individually and as Trustee of the Neil V. Moody Revocable Trust Agreement dated February 9, 1995, and joined by his spouse, SHARON G. MOODY

   whose address is 464 GOLDEN GATE POINT #7C, SARASOTA, FL  34236-0000

   **LENDER:** Wells Fargo Bank N.A.
   420 Montgomery Street
   San Francisco, CA  94104

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:
   See attached Exhibit A

**FLORIDA - MASTER FORM MORTGAGE**
LEFL1 (0403)

Page 1 of 10
VMP Mortgage Solutions (800)521-7291

20060111443000

**EXHIBIT G**

The property is located in Sarasota ............... at 464 GOLDEN GATE POINT #7C .....
................................................(County)
................................................ , SARASOTA ................................ Florida 34236-0000
....(Address)........................................(City)........................................(ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 880,000.00 .............. . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt dated 5/23/2006 , together with all amendments, extensions, modifications or renewals. The maturity date of the Secured Debt is 5/23/2046 .
   B. All future advances from Lender to Mortgagor under such evidence of debt, whether obligatory or discretionary. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances which exceed the amount in Section 3. Any such commitment must be agreed to in a separate writing.
   C. All sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested

by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument. Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents due or to become due directly to Lender after such recording. However, Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor in writing of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the property is a until in a Condominium Project or is part of a Planned Unit Development ("PUD"), Mortgagor agrees to the following:

   A. Obligations. Mortgagor shall perform all of Mortgagor's obligations under the Constituent Documents. The "Constituent Documents" are the: (I) Declaration or any other document which creates the Condominium Projects or PUD and any homeowners association or equivalent entity ("Owners Association"); (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Mortgagor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

   B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project or PUD which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then Mortgagor's obligation under Section 19 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Mortgagor shall give Lender prompt notice of any lapse in required hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to Property, whether to the unit or to common elements, any proceeds payable to Mortgagor are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to Mortgagor.

   C. Flood Insurance. Mortgagor agrees to maintain flood insurance for the life of the Secured Debt which is acceptable, as to form, amount and extent of coverage to Lender.

   D. Public Liability Insurance. Mortgagor shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

   E. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Mortgagor in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 18.

   F. Lender's Prior Consent. Mortgagor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management by the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

      G. Remedies. If Mortgagor does not pay condominium or PUD dues and assessments when due, then Lender may pay them. Any amount disbursed by Lender under this section shall become additional debt of Mortgagor secured by this Security Instrument. Unless Mortgagor and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Secured Debt rate and shall be payable, with interest, upon notice from Lender to Mortgagor requesting payment.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lenders' rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or

contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
  A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
  B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
  C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
  D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the

scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument. In the event any section in this Security Instrument directly conflicts with any section of a certain revolving line of credit agreement or promissory note referenced in Section 4, the terms and conditions of the revolving line of credit agreement or promissory note (as applicable), the arbitration agreement, and the agreement to provide flood/property insurance, all of which Mortgagor agrees to by signing this Security Instrument, the terms and conditions of said documents and not the Security Instrument shall control.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**FLORIDA - MASTER FORM MORTGAGE**
LEFL7 (0403)                                        Page 7 of 10                                        **20060111443000**

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.
26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    [X] **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    [ ] **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

    [ ] **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    [X] **Additional Terms.**
    Third Party Rider

    [ ] Payment of this note or mortgage is subject to the terms of a home improvement installment contract of even date between maker and payee or mortgagor and mortgagee.

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

In witness whereof, the parties have signed this document on this __23__ day of __May__, 20 __06__.

_____    _____
Witness:                                                                      individually and Borrower
                                                                               NEIL V. MOODY, Trustee aforesaid

_____    _____
Witness:                                                                                                         Borrower
                                                                               SHARON G MOODY

_____    _____
                                    Borrower                                                              Borrower


_____    _____
                                    Borrower                                                              Borrower


_____    _____
                                   -Borrower                                                             -Borrower

**FLORIDA - MASTER FORM MORTGAGE**
LEFL9 (0403)                                Page 9 of 10                                20060111443000

ACKNOWLEDGMENT:

State of FL_____ ), ss.

County of Sarasota_____ ), ss.

The foregoing instrument was acknowledged before me this _23rd day of May, 2006_____ (date) by NEIL V. MOODY, individually and as Trustee of the Neil V. Moody Revocable Trust Agreement dated February 9, 1995, and joined by his spouse, SHARON G. MOODY

(Name of Person Acknowledging), who is personally known to me or who has produced _____ as identification.

Kelly A. Glausman
My Commission DD___
Expires Aug___

_____
(Signature of Person Taking Acknowledgment)

_____
(Named Typed, Printed or Stamped)

(Seal)

Kelly A. Glausman
My Commission DD235323
Expires August 20, 2007

_____
(Title)

My commission expires: _____

FLORIDA - MASTER FORM MORTGAGE
LEFL10 (0312)     Page 10 of 10     20060111443000

# THIRD PARTY RIDER

**REFERENCE #:** 20060111443000
**ACCOUNT #:** 65018707241998

THIS THIRD PARTY RIDER is made on 5/23/2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("the Security Instrument") given by the undersigned Trustee(s) to secure the Secured Debt from
NEIL V. MOODY, AS TRUSTEE of the Neil V. Moody Revocable Trust Agreement dated February 9, 1995, individually and joined by his spouse, SHARON G. MOODY

(the "Debtor") to Lender.
With respect to the Trust, this Security Instrument constitutes a third party mortgage/deed of trust and grant of security interest by the undersigned as Trustee(s) of said Trust in the Property described in this Security Instrument to secure the Note of the Debtor to the Lender.

Consequently, references in the text to "Borrower" refer to the undersigned Trustee(s) and the Debtor if the context in which the term is used so requires. Without limiting the generality of the foregoing, the use of the term "Borrower" in the context of warranties, representations and obligations pertaining to the Property shall refer to the undersigned Trustee(s). The use of the term "Borrower" in the context of the requirements under the Note shall refer to the Debtor.

Except with respect to the obligation(s) of the undersigned as individuals, and not as Trustee(s), with respect to the Secured Debt before the date first set forth herein above and the obligation(s) of the undersigned as individuals with respect to Secured Debt prior to the transfer of the Property into the Trust, the Trust and the undersigned, as Trustee(s), are not liable for the debt evidenced by the Note and are a party hereunder except insofar as their interest in the Property is made subject to the Security Instrument.

Further, revocation of the Trust, distribution of trust assets, or death of any Debtor shall constitute an event of default under the Secured Instrument.

_____    _____
NEIL V. MOODY, Trustee as aforesaid  Date    SHARON G MOODY                        Date
and individually

_____    _____
                            Date                                 Date

_____    _____
                            Date                                 Date

_____    _____
                            Date                                 Date

TPRIDER  060704

## LEGAL DESCRIPTION

Unit 703, **LA BELLASARA**, a Condominium, according to the Declaration of Condominium recorded in Official Records Instrument No. 2006061218, as amended, and as per Plat thereof recorded in Condominium Book 39, Pages 15, 15A to 15K, inclusive, of the Public Records of Sarasota County, Florida.