UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

        Defendants.               CASE NO.: 8:09-cv-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

        Relief Defendants.
_____/

**RECEIVER'S MOTION TO APPROVE THE
SALE OF THE WOODLAND HEIGHTS SUBDIVISION
LOCATED IN THOMASVILLE, GEORGIA AND
AGREEMENT WITH THOMASVILLE NATIONAL BANK**

Pursuant to 28 U.S.C. § 754, Fed. R. Civ. P. 66, and Rule 3.01 of the Local Rules

of the Middle District of Florida, Burton W. Wiand, as Receiver (the "Receiver"),

respectfully moves the Court for entry of an order, in substantially the form attached hereto

Dockets.Justia.com

as Exhibit A, approving the sale of Receivership property known as the Woodland Heights Subdivision located in Thomasville, Georgia (the "Property"), in accordance with the terms of the Agreement of Sale and Purchase (the "Sale Agreement") between the Receiver and Mark Harmon ("Harmon"), as assignor to EAGH, LLC, attached to the Declaration of Burton W. Wiand, as Receiver, in Support of the Receiver's Motion to Approve the Sale of the Woodland Heights Subdivision Located in Thomasville, Georgia and Agreement With Thomasville National Bank (the "Receiver's Declaration") as Exhibit 1. The Receiver also moves the Court for an order approving the Agreement Regarding Claims and Obligations (the "Settlement Agreement") between the Receiver and Thomasville National Bank ("TNB"), attached to the Receiver's Declaration as Exhibit 2, releasing any claims or liens TNB has related to the Property.

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent the defendants from further defrauding investors of hedge funds operated by them. That same day, the Court entered an order appointing Burton W. Wiand as Receiver for Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). (*See generally* Order Appointing Receiver (Doc. 8).)

The Court subsequently granted several motions to expand the scope of the Receivership to include other entities owned or controlled by Arthur Nadel. (*See generally*

Docs.17, 44, 68, 81, 153, 172.)  All of the entities and the trust in receivership are hereinafter referred to collectively as the "Receivership Entities."

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors."  (Order Appointing Receiver at 1-2.)  In particular, the Receiver was directed to:

> [t]ake immediate possession of all property, assets and estates of every kind of the [Receivership Entities], whatsoever and wheresoever located belonging to or in the possession of the [Receivership Entities], including but not limited to all offices maintained by the [Receivership Entities], rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the [Receivership Entities] wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court . . . .

(*Id.* at 2.)  In accordance with that Order, the Receiver has taken possession of the Property located on Land Lot 38 of the 13th Land District of Thomas County, Georgia, known as the Woodland Heights Subdivision, in Thomasville, Georgia, and more fully described in Exhibit 3 attached to the Receiver's Declaration.  Now the Receiver seeks to convey that Property by quitclaim deed, in accordance with the terms of the Sale Agreement.

## WOODLAND HEIGHTS SUBDIVISION

The Property was purchased by Receivership Entity Scoop Capital, LLC on January 5, 2007, for $285,000 with proceeds from Nadel's scheme which underlies this case. (*See* Receiver's Declaration ¶3.) The Property consists of approximately fourteen acres of land divided into 45 lots, 44 of which are undeveloped. *Id.* at ¶4. At the time the Property was purchased by Scoop Capital, it essentially had no infrastructure. Since Scoop Capital purchased the Property, the Property has been improved with asphalt paved roads, street lights, utilities, city water, and sewage. *Id.* Further, there is one newly constructed residential home on the Property located at 200 Grandview Trail (the "Home"). *Id.*

In 2007 and 2008 Scoop Capital obtained two loans totaling over $740,000 from TNB. *Id.* at ¶5. The purpose of these loans was to fund the development of the Property, including the roads, lighting and utilities mentioned above, and to construct the home at 200 Grandview Trail. As collateral for these loans, Scoop Capital signed Deeds to Secure Debt giving TNB a security interest in the Property and the Home. *Id.* at ¶6. As of February 23, 2010, Scoop Capital owes more than $759,000 to TNB, and the Property remains encumbered by the Deeds to Secure Debt. *Id.* at ¶7.

The Receiver's efforts to sell the Property have revealed that, due to the loans encumbering the Property and costs associated with sale transactions, there is currently no equity in the Property to be recovered. *Id.* In addition, the ongoing costs of maintaining the property, in excess of $15,000 so far, are a burden upon the Receivership. *Id.* In consideration of the significant debt encumbering the property, the ongoing costs to maintain the Property, the likelihood that the Property will not increase in value in the foreseeable

future as a result of current economic conditions, and the lack of other interested buyers, the Receiver believes that the disposition of the Property described below is in the Receivership's best interest.

The Receiver has marketed the Property to potential purchasers, including through his website, www.nadelreceivership.com, in a specific "Assets for Sale" section. *Id.* at ¶8. The Receiver was also provided with a list of prospective buyers by TNB, and the Property was listed through a realtor at Coldwell Banker Commercial Realty who partnered with a local realtor in the Thomasville area. *Id.* The Receiver mailed nine information packets describing the Property to prospective buyers and realtors along with Mutual Confidentiality Agreements. *Id.* The Receiver received signed Mutual Confidentiality Agreements from two prospective buyers. *Id.* at ¶9.

In response to his marketing efforts, the Receiver received an offer for the Property and the Home from Harmon, one of the prospective buyers who returned a Mutual Confidentiality Agreement, in January of 2010 for $725,000. *Id.* at ¶9. Based on his efforts to sell the Property, the Receiver believes that the offer by Harmon fairly represents the current value of the Property. *Id.* However, the sale price is insufficient to satisfy the amounts owed to TNB. Therefore, the Receiver has negotiated with TNB to reach a compromise on the amount owed on the loans to free the Property of encumbrances without subjecting the Receivership Estate to claims from TNB based on its loans secured by the Property. That compromise is set forth in the Settlement Agreement attached as Exhibit 2 to the Receiver's Declaration.

As part of the compromise with TNB, the Receiver has also negotiated a decrease in the commissions to be paid to the real estate brokers involved in the sale of the Property. As a result of these negotiations, the real estate brokers have agreed to accept a reduced commission in this transaction. The details of the agreements between Harmon, TNB, and the real estate brokers are described below.

Under the Settlement Agreement negotiated by the Receiver, TNB has agreed to the sale price of $725,000 for the Property. TNB and the real estate brokers have agreed that out of the $725,000 purchase price, $30,000 in commissions will be divided equally among the three realtors. *See* Receiver's Decl. Ex. 2. TNB will accept the balance of the purchase price in full settlement of the amounts still owed on the loans, the Deeds to Secure Debt will be cancelled, and TNB will waive any claim it may have against the Receivership Estate. *Id.* In addition, upon the sale of the Property the Receivership will no longer be required to expend assets to maintain the Property. Because the Property has no prospects for appreciating in value in the foreseeable future and requires Receivership money to be maintained, the Receiver believes that both the Sale Agreement with Harmon, as assignor to EAGH, LLC, and the Settlement Agreement with TNB are in the best interests of the Receivership. Accordingly, the Receiver respectfully requests that this Court enter an order approving the sale of the Property pursuant to the Sale Agreement and the Settlement Agreement in substantially the form attached hereto as Exhibit A.

## ARGUMENT

The Court's power to supervise an equity receivership and to determine the appropriate actions to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566; *SEC v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982). Those powers include the power to order the sale of property. *See SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996) (abrogated on other grounds). The relief sought by the Receiver falls squarely within those powers. Furthermore, the relief sought is in furtherance of the duties and authorities bestowed upon the Receiver by the Order Appointing Receiver.

WHEREFORE, Burton W. Wiand, as Receiver, respectfully requests this Court to enter an Order approving the sale of the Property pursuant to the Sale Agreement attached to the Receiver's Declaration as Exhibit 1, and approving the Settlement Agreement attached to the Receiver's Declaration as Exhibit 2, in substantially the form attached hereto as Exhibit A.

## CERTIFICATE UNDER LOCAL RULE 3.01(g)

Undersigned counsel has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 25, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants.

>Arthur G. Nadel
Register No. 50690-018
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

>s/Gianluca Morello
Gianluca Morello, FBN 034997
gmorello@wiandlaw.com
WIAND GUERRA KING P.L
3000 Bayport Drive
Suite 600
Tampa, FL 33607
Tel: 813-347-5100
Fax: 813-347-5199

>Attorney for the Receiver, Burton W. Wiand