UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

        CASE NO.: 8:09-cv-0087-T-26TBM

        Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

        Relief Defendants.

_____/

**DECLARATION OF BURTON W. WIAND, AS RECEIVER, IN SUPPORT OF THE RECEIVER'S MOTION TO APPROVE THE SALE OF THE WOODLAND HEIGHTS SUBDIVISION LOCATED IN THOMASVILLE, GEORGIA AND AGREEMENT WITH THOMASVILLE NATIONAL BANK**

Burton W. Wiand declares as follows:

    1.    This Court appointed me Receiver for Scoop Capital, LLC ("Scoop Capital") on January 21, 2009.

Dockets.Justia.com

2.  I have personal knowledge of, or have obtained knowledge through my investigation of matters during the course of this Receivership, regarding the matters asserted herein and transactions and agreements entered into with third parties concerning these entities; I am competent to testify thereto.

3.  Scoop Capital purchased property located on Land Lot 38 of the 13th Land District of Thomas County, known as the Woodland Heights Subdivision, in Thomasville, Georgia (the "Property"), and more fully described in Exhibit 3 attached hereto, on January 5, 2007, for $285,000 with proceeds from Nadel's scheme which underlies this case. The Property was conveyed to Scoop Capital by a Warranty Deed from Woodlands of Thomasville, LLC, which deed is recorded in Deed Book 1365, Pages 316-317, Thomas County, Georgia.

4.  The Property has been improved with asphalt paved roads, street lights, utilities, and city water/sewer and consists of approximately fourteen (14) acres of land divided into 45 lots, 44 of which are undeveloped. There is one newly constructed residential home on the Property located at 200 Grandview Trail (the "Home").

5.  In 2007 and 2008 Scoop Capital obtained two lines of credit totaling over $740,000.00 from Thomasville National Bank, Inc. ("TNB"). The money from these loans was used to fund the improvement of the Property.

6.  Scoop Capital, through Arthur Nadel, signed two Deeds to Secure Debt giving TNB a security interest in the Property and the Home as collateral for the lines of credit. The first Deed to Secure Debt, in connection with Tract 1 (9.40 acres), Tract 2 (4.21 acres), and Tract 3 (0.74 acres), is dated July 2, 2007, and is recorded in Deed Book 1418 at Page 140,

Thomas County, Georgia. The second Deed to Secure Debt, in connection with Lot No. 45 of the Property, is dated March 5, 2008, and is recorded in Deed Book 1478 at Page 108, Thomas County, Georgia.

7. As of February 23, 2010, TNB is owed $759,916.16 on the loans secured by the Property. I believe that, due to the amount of these loans and the costs associated with sales transactions, there is currently no equity in the Property. In addition, the total costs to maintain the Property since the commencement of this receivership have exceeded $15,000.

8. The Property has been marketed to potential buyers through several channels including my website, www.nadelreceivership.com, mailing nine information packets with Mutual Confidentiality Agreements to potential buyers and realtors provided by TNB, and listing with Coldwell Banker Commercial NRT and a local realtor in Thomasville.

9. In response to these marketing efforts, two signed Mutual Confidentiality Agreements were returned, and I received an offer in January of 2010 from Mark Harmon ("Harmon") for $725,000. I believe that this amount fairly represents the current value of the property, and therefore, I have entered into an agreement with Harmon, contingent upon Court approval, to sell the property. *See* Exhibit 1.

10. Harmon, by amendment to the Purchase and Sale Agreement, has assigned his right to purchase the Property to EAGH, LLC. *See* Exhibit 1.

11. The sale price is insufficient to satisfy Scoop Capital's obligations to TNB. Consequently, I have negotiated with TNB and reached a compromise as to the amount owed on the lines of credit.

12. I have also negotiated a reduction of the commissions to be paid to the real estate brokers in this transaction. TNB has also agreed to these reduced commissions which will be paid out of the purchase price of the Property.

13. TNB has agreed to a "short sale" of the Property for net proceeds of $695,000.00 to be paid from the purchase price of $725,000. $30,000 of the purchase price will be taken and divided equally to pay the commissions of the three real estate brokers involved in the transaction. TNB will receive the remaining $695,000 and in return will waive any claims it may have against the Receivership Estate. *See* Exhibit 2. This agreement with TNB will alleviate significant debt obligations of the Receivership Estate.

14. Because the Property offers no prospects to provide the Receivership with any benefit in the foreseeable future, and requires Receivership money to be maintained, I believe that the agreements between myself, Harmon, TNB and the real estate brokers are in the best interest of the Receivership Estate.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated this 23rd day of February, 2010.

Burton W. Wiand