DRAFT VERSION

## AGREEMENT REGARDING CLAIMS AND OBLIGATIONS

**THIS AGREEMENT REGARDING CLAIMS AND OBLIGATIONS** (the "Agreement") is made and entered into as of the 23ʳᵈ day of February, 2009 (the "Effective Date"), by and between **THOMASVILLE NATIONAL BANK**, (the "Bank") and **BURTON W. WIAND**, as Court-appointed Receiver (the "Receiver") in the action styled *Securities and Exchange Commission v. Arthur Nadel, et al.*, Case No: 8:09-cv-87-T-26TBM (the "Action") (the Bank and the Receiver are sometimes collectively referred to herein as the "Parties" and each is a "Party").

### WITNESSETH

**WHEREAS**, the United States District Court for the Middle District of Florida, Tampa Division (the "Court"), appointed Burton W. Wiand as Receiver in the Action for a number of entities, including Scoop Capital, LLC, a Florida limited liability company (the "Company"). All of the receivership entities in the Action are collectively referred to as the "Receivership."

**WHEREAS**, through the Company, the Receivership has certain liabilities outstanding with the Bank subject to the Bank's liens, as generally described in Exhibit A.

**WHEREAS**, EAGH, LLC desires to purchase certain property owned by the Company, and the Receiver desires to sell the property owned by the Company to EAGH, LLC (the purchase of the Company's property contemplated by EAGH, LLC is referred to herein as the "Transaction"); and

**WHEREAS**, in consideration of the terms of the Transaction, and with the approval of the Court, the Bank and the Receiver desire to fully settle any and all claims on the outstanding liabilities, as they relate to the transaction, and claims involving the Receivership, pursuant to the terms and conditions set forth herein;

**NOW, THEREFORE**, for and in consideration of the mutual promises, covenants and agreements contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Receiver agree as follows:

### OPERATIVE TERMS

Section 1.    Contingency.   The Bank and the Receiver understand and agree that the obligations of the Parties to perform as set forth in this Agreement are contingent upon a final order of the Court approving the Transaction and this Agreement (the "Contingency").

Section 2.    Settlement Proceeds.   Upon execution and delivery of this Agreement and satisfaction of the Contingency, and in consideration for the Bank's execution and delivery of this Agreement, the Receiver agrees that, upon closing of the Transaction, the Bank shall be entitled to, and will receive from the Receiver at the

## EXHIBIT 2

Dockets.Justia.com

Closing Date (as defined in the Purchase and Sale Agreement by and between the Receiver and EAGH, LLC dated as of January 21, 2010 and Amendment #1 thereto (the "Purchase and Sale Agreement") of the Transaction), $725,000 less $30,000 and any and all applicable closing costs and fees.  Said $30,000 shall be paid in equal parts to the brokers identified in the Purchase and Sale Agreement at the time of closing, to wit: Remax of Thomasville (Buyer's Broker); Century 21 / Broadway Associates (Seller's Co-Broker); Coldwell Banker Commercial NRT (Seller's Co-Broker).

Section 3.    Bank Release.  Upon execution and delivery of this Agreement and in consideration of the Settlement Proceeds, as well as satisfaction of the Contingency, except as otherwise provided in this Agreement, the Bank hereby releases, waives, and forever discharges the Receiver and the Company of any claims, including any deficiency claim, and debts related to the loans set forth on Exhibit A.  Additionally, Bank shall release its lien on the Assets (as defined in the Purchase and Sale Agreement) that are the subject of the Transaction.

Section 4.    Costs and Fees.  To the extent not described in this Agreement, each Party shall bear its or his own costs, attorney's fees, and other expenses.

Section 5.    Notices.  Any notice, request, information or other document to be given hereunder to any Parties by any other party shall be in writing and shall have been deemed to have been given (i) when personally delivered, sent by facsimile (with hard copy to follow) or sent by reputable overnight express courier (charges prepaid), or (ii) five (5) days following mailing by certified or registered mail, postage prepaid and return receipt requested.   Unless another is specified in writing, notices, demands and communications to the Receiver and The Bank shall be sent to the addresses indicated below:

(a) If intended for the Receiver:

Burton W. Wiand, Receiver
Scoop Capital, LLC
3000 Bayport Drive, Suite 600
Tampa, Florida 33607
Attention:  Burt W. Wiand

(b) If intended for The Bank:

THOMASVILLE NATIONAL BANK
301 North Broad Street
Thomasville, GA 31792
Attn:  Charles H. Hodges, III

With copy to:

DAVID M. WOLFSON, P.C.
1010 Williams Street
Valdosta, Georgia 31601
Attn: David M. Wolfson, Esq.

Any party may change the address to which notices hereunder are to be sent by giving written notice of such change of address as provided above.

Section 6.    Entire Agreement; Amendments.    This Agreement and the instruments delivered pursuant hereto constitute the entire agreement between the Parties hereto and supersede all prior written agreements and understanding, oral or written, between the Parties relating to the subject matter hereof.  Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the Party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.  This Agreement, although initially drawn by one of the Parties hereto, shall not be construed for or against either party as a result thereof in any dispute pertaining to this Agreement or the transaction contemplated hereby, but this Agreement shall be interpreted in accordance with language hereof in an effort to reach the result intended thereby.

Section 7.    Governing Law and Jurisdiction.    This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Florida.  This Agreement shall be subject to the exclusive jurisdiction of the United States District Court, Middle District of Florida, Tampa Division, in Hillsborough County in the State of Florida to the exclusion of the courts of any other state or country, and the Bank hereby irrevocably submit to the jurisdiction of the Court with respect to any claim arising out or in connection with this Agreement.

Section 8.    Venue.    In the event litigation should arise to enforce or interpret this Agreement, the Bank hereby agrees that the proper venue shall be in the United States District Court, Middle District of Florida, Tampa Division, in Hillsborough County in the State of Florida.

Section 9.    Captions.    The captions in this Agreement are inserted for convenience of reference only and in no way define, describe, or limit the scope or intent of this Agreement or any of the provisions hereof.

Section 10.    Binding Effect.    This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns; provided, however the

delivery of the Agreement by one party shall not be binding upon either until both Parties have fully executed same.

Section 11.   Waiver.  No waiver by either party hereto of any condition or any breach of any term, covenant, representation or warranty contained in this Agreement shall be deemed or construed as a further or continuing waiver of such condition or breach or waiver of any other or subsequent condition or the breach of any other term, covenant, representation or warranty contained in this Agreement.

Section 12.   Severability.  If any provision of this Agreement is determined to be illegal or unenforceable, such provision will be deemed amended to the extent necessary to conform to applicable law or, if it cannot be so amended without materially altering the intention of the Parties, it will be deemed stricken and the remainder of the Agreement will remain in full force and effect.

Section 13.   Attorneys' Fees.  In any action or dispute, at law or in equity, that may arise under or otherwise relate to this Agreement, the prevailing party will be entitled to, from the non-prevailing party, reimbursement of its attorneys' fees (including, but not limited to, attorneys' fees, paralegals' fees and legal assistants' fees), costs and expenses incurred in the preparation for and in connection with any trial, appeal or bankruptcy proceeding.

Section 14.   Counterparts.  Any number of counterparts of this Agreement may be executed and each such executed counterpart shall be deemed to be an original.

[Signature Page Next]

DRAFT VERSION

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed as of the date first above written.

**THOMASVILLE NATIONAL BANK**

By: _____

Name: Charles H. Hodges, III

Its: Executive Vice President

**BURTON W. WIAND,** as Court-appointed Receiver in the action styled *Securities and Exchange Commission v. Arthur Nadel, et al.,* Case No: 8:09-cv-87-T-26TBM

_____

DRAFT VERSION

## EXHIBIT A

## COMPANY LIABILITIES
## WITH
## THOMASVILLE NATIONAL BANK

[To be provided by the Bank]

| | | |
|---|---|---|
| SCOOP CAPITAL, LLC<br>1618 MAIN STREET<br>SARASOTA, FL 34236 | THOMASVILLE NATIONAL BANK<br>301 N. Broad St.<br>P. O. Box 1999<br>Thomasville, GA 31799 | Loan Number #1014731<br>Date 12-22-2008<br>Maturity Date 12-22-2009<br>Loan Amount $ 141,516.00<br>Renewal Of #1014731 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of <u>one hundred forty one thousand five hundred</u> <u>sixteen and no/100</u> _____ Dollars $ 141,516.00

☒ **Single Advance:** I will receive all of this principal sum on <u>12-22-2008</u> . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
____ I will receive the amount of $ _____ and future principal advances are contemplated.
____ **Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
____ all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from <u>12-22-2008</u> at the rate of <u>5.500</u> %
per year until <u>12-22-2008</u> .

☒ **Variable Rate:** This rate may then change as stated below.
☐   ☒ **Index Rate:** The future rate will be <u>equal to</u> the following index rate: <u>U.S. prime rate is the base rate on corporate loans</u>
<u>posted by at least 75% of the 30 largest U.S. banks. The result of this calculation will be rounded to the nearest 0.125</u>

☐   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
☐   ☒ **Frequency and Timing:** The rate on this note may change as often as <u>every day beginning 12-22-2008</u>
____ A change in the interest rate will take effect <u>On the same day</u>
☐   ☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ <u>N/A</u>% or less than
_____ <u>5.500</u> %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a <u>Actual/360</u> basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than _____ <u>10</u> _____ days after it is due, I agree to pay a late charge of <u>5.000% of the payment amount</u>
<u>with a min of $5.00 and a max of $50.00</u>

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: <u>LOAN FEE $150.00</u>

**PAYMENTS:** I agree to pay this note as follows:
I payment of $149,407.48 on 12-22-2009. This is a variable rate loan and the final payment amount may change.

☐ If checked, and this loan is secured by a first lien on real estate, then any accrued interest not paid when due (whether due by reason of a
____ schedule of payments or due because of lenders demand) will become part of the principal thereafter, and will bear interest at the interest rate in
____ effect from time to time as provided for in this agreement.
**ADDITIONAL TERMS:** LOAN IS SECURED BY THE 1ST MTG. OF PROPERTY KNOWN AS 200 GRAND VIEW TRAIL THOMASVILLE, THOMAS COUNTY, GEORGIA AS
PER DEED TO SECURE DEBT DATED 03-05-08. LOAN IS ALSO SECURED BY ALL MATERIALS EXISTING OR HEREAFTER ACQUIRED AS PER SECURITY AGREEMENT
DATED 03-05-08. LOAN IS ALSO SECURED BY THE UNLIMITED PERSONAL GUARANTYS OF ARTHUR NADEL DATED 03-05-08 AND MARGUERITE J. NADEL DATED
12-22-08.

| | |
|---|---|
| ☐ **SECURITY:** This note is separately secured by (describe separate<br>document by type and date):<br><br><br>This section is for your internal use. Failure to list a separate security document does not mean the<br>agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is RENEW TNB #1014731<br>_____<br>**SIGNATURES AND SEALS:** IN WITNESS WHEREOF, I HAVE SIGNED<br>MY NAME AND AFFIXED MY SEAL ON THIS <u>22nd</u> DAY OF<br><u>December, 2008</u> . BY DOING SO, I AGREE TO<br>THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I HAVE<br>RECEIVED A COPY ON TODAY'S DATE.<br>SCOOP CAPITAL, LLC |

Signature for Lender _____     _(signature)_ (Seal)
   **ARTHUR NADEL, MEMBER**

_____ (Seal)

Thomas A. Rosser _____

_____ (Seal)

_____ (Seal)

UNIVERSAL NOTE    V09.10
✗perss® ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-GA 3/4/2002         _(page 1 of 2)_

**DEFINITIONS:** As used on page 1, "IX" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Georgia will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree

to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default under any other instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies.
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not suing any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay attorney's fees of 15 percent of the principal and interest then owed, plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest);
(3) give notice that amounts due have not been paid (notice of dishonor); or
(4) give me notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure a commercial transaction.

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without altering my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1 of this agreement. I agree to inform you in writing of any change in my address. I will give you notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |



(page 2 of 2)

Experi® ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-GA 3/4/2002

When recorded return to:
THOMASVILLE NATIONAL BANK
301 N. Broad St.
P. O. Box 1999
Thomasville, GA  31799

THOMAS COUNTY
CLERK OF COURT
GEORGIA HUTCHENS JR.

2008 MAR -7  PM 4: 30

——— State of Georgia ———                                ——— Space Above This Line For Recording Data ———

# DEED TO SECURE DEBT
### (With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Deed to Secure Debt (Security Instrument) is 03-05-2008............................
    The parties and their addresses are:

    GRANTOR:  SCOOP CAPITAL, LLC, A LIMITED LIABILITY COMPANY
              1618 MAIN STREET
              SARASOTA, FL  34236

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and
       acknowledgments.

    GRANTEE:  THOMASVILLE NATIONAL BANK
    ("Lender")  Organized and existing under the laws of the United States of America
              301 N. Broad St.
              P. O. Box 1999  Thomasville, GA  31799

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
    secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably
    grants, bargains, transfers, conveys and sells to Lender, with power of sale, the following described property:
    ALL THAT TRACT OR PARCEL OF LAND SITUATE LYING AND BEING KNOWN AS 200 GRAND VIEW TRAIL THOMASVILLE, THOMAS COUNTY,
    GEORGIA AS FURTHER DESCRIBED IN EXHIBIT 'A' WHICH IS ATTACHED HERETO AND PART HEREOF.

    The property is located in THOMAS.................................... at 200 GRAND VIEW TRAIL.....................
                                       (County)
    ............................................., THOMASVILLE ........................., Georgia  31792..............
                (Address)                              (City)                                    (ZIP Code)

    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
    rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
    now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
    not exceed $ ....Unlimited........................... . This limitation of amount does not include interest and other fees
    and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under
    the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this
    Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt
       described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below
       it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
       CONSTRUCTION LINE OF CREDIT IN THE NAME OF SCOOP CAPITAL, LLC IN THE AMOUNT OF $128,216.00.
       TERMS: 9 MONTHS.

GEORGIA - DEED TO SECURE DEBT  (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                            *(page 1 of 4)*
©1994 Wolters Kluwer Financial Services - Bankers Systems™ Form RE-DSD-GA  5/9/2006      1478  108

Over

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission. Release of any part of the Secured Debt or of any part of the Property will not affect the borrower's personal liability under any instrument secured by this Security Instrument or this Security Instrument's priority.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, bargain, transfer, convey, and sell the Property to Lender, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, deed to secure debt, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Grantor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, bargains, transfers, conveys and sells to Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument. Grantor agrees that this assignment is effective as to third parties on the recording of this Security Instrument. Upon default, Lender may enforce this assignment by notice and demand to Grantor's tenants that all future Rents be paid directly to Lender, by commencement of an action or proceeding for sequestration of rents, or as the law otherwise provides. Upon default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

©1994 Wolters Kluwer Financial Services - Bankers Systems™ Form RE-DSD-GA 5/9/2008

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Lender designates. Lender shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the property and to the extent not prohibited by law, Lender shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Lender shall apply the proceeds of the sale in the following order; (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

If the Property is sold pursuant to this section, Grantor, or any person holding possession of the Property through Grantor, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Grantor or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. Where the Secured Debt is collected by or through an attorney after maturity, Grantor agrees to pay 15 percent of the principal and interest owing as attorneys' fees. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, deed to secure debt, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give

(page 3 of 4)

1478 110

over

to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

25. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all homestead and other exemption rights provided for by the constitution and laws of Georgia relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

  ☒ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

  ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

  ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
    ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ...........................................

  ☒ **Affirmative Statement.** Grantor and Lender agree, by this affirmative statement pursuant to O.C.G.A. 44-14-80, to establish a perpetual or indefinite security interest in the Property conveyed to secure the Secured Debts.

  ☒ **Additional Terms.**

    It is the intention of the parties by the execution, delivery and acceptance of this instrument, to create a perpetual or indefinite security interest in the real property conveyed hereby and described herein, pursuant to O.C.G.A. Section 44-14-80 (a) (2), and the parties hereby agree that title to such real property shall not revert to the grantor or grantors thereof for a period of 20 years from the date of this conveyance.

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1. IN WITNESS WHEREOF, Grantor has signed and sealed this Security Instrument.

SCOOP CAPITAL, LLC

.............................................. 3 | 6 | 0 8 (Seal)    .............................................. (Seal)
(Signature) ARTHUR NADEL, MEMBER   (Date)     (Signature)    (Date)

Signed, sealed and delivered in the presence of:    Signed, sealed and delivered in the presence of:

..............................................    ..............................................
(Unofficial Witness)         (Unofficial Witness)

MICHELLE L. BELL
Comm# DD443645
Expires 5/27/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

..............................................    ..............................................
(Notary Public, ........................ Sarasota County, Georgia)    (Notary Public, ........................ County, Georgia)

©1994 Wolters Kluwer Financial Services - Bankers Systems™ Form RE-DSD-GA 5/9/2006    1478  111    (page 4 of 4)

EXHIBIT 'A'

Attached to and identified as part of the Security Deed from
Scoop Capital, LLC to Thomasville National Bank dated July 2, 2007.


All that tract or parcel of land situate, lying and being in Land Lot 38 of the 13th Land District of Thomas County, Georgia, in the City of Thomasville, and more particularly identified as Tract 1 containing 9.40 acres, Tract 2 containing 4.21 acres and Tract 3 containing 0.74 acres, as these tracts are more particularly shown on that plat of survey prepared for Ed Guy by Cary B. Wetherington, Georgia Registered Land Surveyor No. 2899, dated October 26, 2006, and recorded Plat Cabinet 4, Folio 154-E, among the deed records of Thomas County, Georgia, reference to which plat is made for a more particular description by metes and bounds, and courses and distances as set forth thereon (hereinafter referred to as the "Property").

_____
AN

| SCOOP CAPITAL, LLC<br>1618 MAIN STREET<br>SARASOTA, FL 34236 | THOMASVILLE NATIONAL BANK<br>301 N. Broad St.<br>P. O. Box 1999<br>Thomasville, GA 31799 | Loan Number #1012895<br>Date 12-22-2008<br>Maturity Date 12-22-2009<br>Loan Amount $ 571,966.00<br>Renewal Of #1012895 |
|---|---|---|
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, (jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of five hundred seventy one thousand nine hundred sixty six and no/100 Dollars $ 571,966.00

[X] **Single Advance:** I will receive all of this principal sum on 12-22-2008 . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $_____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

[ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

[ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 12-22-2008 at the rate of 5.500 % per year until 12-22-2008.

[X] **Variable Rate:** This rate may then change as stated below.

  [X] **Index Rate:** The future rate will be equal to the following index rate: U.S. Prime rate is the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks as published in the Wall Street Journal. The result of this calculation will be rounded to the nearest 0.125

  [ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

  [X] **Frequency and Timing:** The rate on this note may change as often as every day beginning 12-22-2008
    A change in the interest rate will take effect On the same day

  [X] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than N/A % or less than 5.500 %. The rate may not change more than _____ % each _____

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
  [ ] The amount of each scheduled payment will change.   [X] The amount of the final payment will change.
  [ ] _____

**ACCRUAL METHOD:** Interest will be calculated on a Actual/360 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  [X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
  [ ] at a rate equal to _____

[X] **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000% of the payment amount with a min of $5.00 and a max of $50.00

[X] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [X] are [ ] are not included in the principal amount above: LOAN FEE $150.00

**PAYMENTS:** I agree to pay this note as follows:

1 payment of $603,861.05 on 12-22-2009. This is a variable rate loan and the final payment amount may change.

[ ] if checked, and this loan is secured by a first lien on real estate, then any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of lenders demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:** THIS LOAN IS SECURED BY THE 1ST MTG. OF PROPERTY KNOWN AS TRACTS 1, 2 AND 3, LAND LOT 38 OF THE 13TH LAND DISTRICT, THOMAS COUNTY, GEORGIA AS PER DEED TO SECURE DEBT DATED 07-02-07. LOAN IS FURTHER SECURED BY ALL MATERIALS EXISTING OR HEREAFTER ACQUIRED AS PER SECURITY AGREEMENT DATED 07-02-07. LOAN IS ALSO SECURED BY THE UNLIMITED GUARANTYS OF ARTHUR NADEL AND MARGUERITE J. NADEL DATED 07-02-07.

[ ] **SECURITY:** This note is separately secured by (describe separate document by type and date):

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**Signature for Lender**

Thomas A. Rosser

**PURPOSE:** The purpose of this loan is RENEW TNB #1012895

**SIGNATURES AND SEALS:** IN WITNESS WHEREOF, I HAVE SIGNED MY NAME AND AFFIXED MY SEAL ON THIS 22nd DAY OF December, 2008 . BY DOING SO, I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I HAVE RECEIVED A COPY ON TODAY'S DATE.
SCOOP CAPITAL, LLC

_____ (Seal)
ARTHUR NADEL, MEMBER

_____ (Seal)

_____ (Seal)

_____ (Seal)

UNIVERSAL NOTE
Expert ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-GA 3/4/2002   V09.10   (page 1 of 2)

**DEFINITIONS:** As used on page 1, "☒" mea... .ne terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Georgia will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat these payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree

to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and our remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay attorney's fees of 15 percent of the principal and interest then owed, plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest);
(3) give notice that amounts due have not been paid (notice of dishonor); or
(4) give me notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure a commercial transaction.

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |



(page 2 of 2)

Experied ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-GA 3/4/2002

When recorded return to:
THOMASVILLE NATIONAL BANK
301 N. Broad St.
P. O. Box 1999
Thomasville, GA 31799

THOMAS COUNTY
CLERK OF COURT
DAVID HUTCHINGS JR.

2007 JUL 11  PM 2: 15

THE DEBT WHICH THIS INSTRUMENT WAS GIVEN TO SECURE HAVING
BEEN PAID IN FULL, THIS INSTRUMENT IS HEREBY CANCELLED AND
THE CLERK OF THE SUPERIOR COURT OF _____ COUNTY,
GEORGIA, IS HEREBY AUTHORIZED AND DIRECTED TO MARK IT
SATISFIED. THIS _26th_ _February_ 2008

THOMASVILLE NATIONAL BANK

_____ _____

State of Georgia ————————————— Space Above This Line For Recording Data —————————————

## DEED TO SECURE DEBT
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed to Secure Debt (Security Instrument) is 07-02-2007......................... .
The parties and their addresses are:

GRANTOR: SCOOP CAPITAL, LLC, A LIMITED LIABILITY COMPANY
1618 MAIN STREET
SARASOTA, FL 34236

☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

GRANTEE: THOMASVILLE NATIONAL BANK
("Lender") Organized and existing under the laws of the United States of America
301 N. Broad St.
P. O. Box 1999 Thomasville, GA 31799

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, transfers, conveys and sells to Lender, with power of sale, the following described property:
ALL THAT TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN LAND LOT 38 OF THE 13TH
LAND DISTRICT OF THOMAS COUNTY, GEORGIA, IN THE CITY OF THOMASVILLE, AND MORE
PARTICULARLY IDENTIFIED AS TRACT 1 CONTAINING 9.40 ACRES, TRACT 2 CONTAINING 4.21 ACRES
AND TRACT 3 CONTAINING 0.74 ACRES AS FURTHER DESCRIBED IN EXHIBIT 'A' WHICH IS ATTACHED
HERETO AND MADE A PART HEREOF.

The property is located in THOMAS ............................................. at TRACTS 1, 2 AND 3, LL 38 OF ...
                    (County)
THE 13TH LD ..............................., THOMASVILLE................................., Georgia .....................
      (Address)                     (City)               (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ........Unlimited....................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
CONSTRUCTION LINE OF CREDIT IN THE NAME OF SCOOP CAPITAL, LLC IN THE AMOUNT OF
$600,000.00.
TERMS: 18 MONTHS.

GEORGIA - DEED TO SECURE DEBT  (NOT FOR FNMA, FHLMC, FHA OR VA USE)
©1994 Wolters Kluwer Financial Services - Bankers Systems™ Form RE-DSD-GA 5/9/2006



(page 1 of 4)

over

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission. Release of any part of the Secured Debt or of any part of the Property will not affect the borrower's personal liability under any instrument secured by this Security Instrument or this Security Instrument's priority.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, bargain, transfer, convey, and sell the Property to Lender, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, deed to secure debt, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Grantor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, bargains, transfers, conveys and sells to Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument. Grantor agrees that this assignment is effective as to third parties on the recording of this Security Instrument. Upon default, Lender may enforce this assignment by notice and demand to Grantor's tenants that all future Rents be paid directly to Lender, by commencement of an action or proceeding for appointment of a receiver or for sequestration of rents, or as the law otherwise provides. Upon default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

 *(page 2 of 4)*

1418 141

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Lender designates. Lender shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the property and to the extent not prohibited by law, Lender shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Lender shall apply the proceeds of the sale in the following order; (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

If the Property is sold pursuant to this section, Grantor, or any person holding possession of the Property through Grantor, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Grantor or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. Where the Secured Debt is collected by or through an attorney after maturity, Grantor agrees to pay 15 percent of the principal and interest owing as attorneys' fees. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, deed to secure debt, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give

*(page 3 of 4)*

©1994 Wolters Kluwer Financial Services - Bankers Systems™ Form RE-DSD-GA 5/8/2006

1418  142

*over*

to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

25. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all homestead and other exemption rights provided for by the constitution and laws of Georgia relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☒ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☒ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
        ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other .....................................................

    ☒ **Affirmative Statement.** Grantor and Lender agree, by this affirmative statement pursuant to O.C.G.A. 44-14-80, to establish a perpetual or indefinite security interest in the Property conveyed to secure the Secured Debts.

    ☒ **Additional Terms.**

        It is the intention of the parties by the execution, delivery and acceptance of this instrument, to create a perpetual or indefinite security interest in the real property conveyed hereby and described herein, pursuant to O.C.G.A. Section 44-14-80 (a) (2), and the parties hereby agree that title to such real property shall not revert to the grantor or grantors thereof for a period of 20 years from the date of this conveyance.

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1. IN WITNESS WHEREOF, Grantor has signed and sealed this Security Instrument.

SCOOP CAPITAL, LLC

............................................................. 7/2/07 (Seal)        ............................................................. (Seal)
(Signature) ARTHUR NADEL, MEMBER    (Date)      (Signature)           (Date)

Signed, sealed and delivered in the presence of:      Signed, sealed and delivered in the presence of:

.............................................................        .............................................................
(Unofficial Witness)                (Unofficial Witness)

.............................................................        .............................................................
            My Commission Expires
(Notary Public, ................. April 28, 2008 .. County, Georgia)    (Notary Public, ................................ County, Georgia)

1418    143

EXHIBIT 'A'

Attached to and identified as part of the Security Deed from Scoop Capital, LLC to
Thomasville National Bank dated  March 5, 2008.

Lot #45, Woodland Heights Subdivision


        All that tract or parcel of land situate, lying and being in Land Lot
38 of the 13th Land District of Thomas County, Georgia, in the City of
Thomasville, and more particularly identified as Tract 1 containing 9.40 acres,
Tract 2 containing 4.21 acres and Tract 3 containing 0.74 acres, as these tracts are
more particularly shown on that plat of survey prepared for Ed Guy by Cary B.
Wetherington, Georgia Registered Land Surveyor No. 2899, dated October 26,
2006, and recorded Plat Cabinet 4, Folio 154-E, among the deed records of
Thomas County, Georgia, reference to which plat is made for a more particular
description by metes and bounds, and courses and distances as set forth thereon
(hereinafter referred to as the "Property").



_____
AN