UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

        Defendants.               CASE NO.: 8:09-cv-87-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC.

        Relief Defendants.
_____/

**RECEIVER'S UNOPPOSED MOTION TO
CONVEY PROPERTY LOCATED AT 512 PAUL
<u>MORRIS DRIVE, ENGLEWOOD, FLORIDA</u>**

Pursuant to 28 U.S.C. § 754, Fed. R. Civ. P. 66, and Rule 3.01 of the Local Rules of the Middle District of Florida, Burton W. Wiand, as Receiver (the "Receiver"), respectfully moves the Court for entry of an order, in substantially the same form as attached

hereto as Exhibit 1, conveying title to Receivership property located at 512 Paul Morris Drive, Englewood, Florida 34223, Lot 81 of the Morris Industrial Park (the "HFH Property"), and titled in the name of Receivership Entity Home Front Homes, LLC ("HFH"), to William F. Bishop, as Trustee of the William F. Bishop Revocable Trust u/a/d 6/12/08 ("W. Bishop"). The Receiver believes the conveyance of the HFH Property to W. Bishop is in the best interests of this Receivership because:

- the Receiver does not believe there is any equity in that property;
- it will eliminate claims of over $790,000 which are secured by that property;
- it will resolve a currently pending Eleventh Circuit Appeal; and
- it will save the Receivership the ongoing costs of maintaining the HFH Property.

## BACKGROUND

On January 21, 2009, the Securities and Exchange Commission ("Commission") initiated this action to prevent the defendants from further defrauding investors of hedge funds operated by them. That same day, the Court entered an order appointing Burton W. Wiand as Receiver for Defendants Scoop Capital, LLC ("Scoop Capital") and Scoop Management, Inc. ("Scoop Management") and Relief Defendants Scoop Real Estate, L.P.; Valhalla Investment Partners, L.P.; Valhalla Management, Inc.; Victory Fund, Ltd.; Victory IRA Fund, Ltd.; Viking IRA Fund, LLC; Viking Fund, LLC; and Viking Management, LLC (the "Order Appointing Receiver"). (*See generally* Order Appointing Receiver (Doc. 8).)

The Court subsequently granted six motions to expand the scope of the receivership and appointed the Receiver as receiver over additional entities including HFH (*see* Order, Aug. 10, 2009 (Doc. 172).)

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to: "administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors." (Order Appointing Receiver at 1-2.) In particular, the Receiver was directed to:

> [t]ake immediate possession of all property, assets and estates of every kind of the [Receivership Entities], whatsoever and wheresoever located belonging to or in the possession of the [Receivership Entities], including but not limited to all offices maintained by the [Receivership Entities], rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the [Receivership Entities] wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court . . . .

(*Id.* at 2.) In accordance with that Order, the Receiver sought the Court's approval to sell most of HFH's assets in a Motion filed on January 5, 2010. (*See* Motion for Approval of Sale of Assets of Home Front Homes, LLC and Agreement with M&I Bank (Doc. 291).) On January 6, 2010, the Court approved the sale of those assets. (*See* Order (Doc. 293).) Now, the Receiver seeks this Court's approval to convey a parcel of real property that was owned by HFH, located at 512 Paul Morris Drive, Englewood, Florida 34223, Lot 81 of the Morris Industrial Park, to W. Bishop.

I. **HFH PROPERTY**

A mortgage on the HFH Property was given by Brian Bishop ("B. Bishop") and Jeanne Bishop on August 24, 2004, to William Bishop, as Trustee under Declaration of Trust

3

of Mitzi T. Bishop (the "Mortgage"). The Mortgage was given to secure a Promissory Note for $760,000.00 signed by B. Bishop and Jeanne Bishop on June 1, 2004 (the "Note"). B. Bishop originally held a 40% equity interest in HFH, and that interest was reduced to 20% in 2007 as part of a reorganization of HFH. B. Bishop later departed from HFH and transferred his remaining interest to the Receiver and another HFH stakeholder, Connell Holdings, LLC, as part of a Stipulation of Settlement to resolve litigation between HFH and B. Bishop.

The HFH Property was sold to HFH by B. Bishop on May 24, 2006 without the prior written consent of William Bishop, as was required by the Mortgage. (*See* Declaration of Burton W. Wiand, as Receiver, in Support of Unopposed Motion to Convey Property Located at 512 Paul Morris Drive, Englewood, Florida ("Receiver's Decl.") ¶3.) Subsequently, five monthly payments owed on the Note from September 2006 to January 2007 were delinquent. *Id.* at ¶4. On February 23, 2007, HFH and William Bishop entered into an agreement whereby William Bishop waived the defaults on the Note in return for a lump sum payment of the delinquent payments. *Id.* Under that Agreement, William Bishop also agreed to reinstate the loan and consented to the May 24, 2006 sale of the HFH Property to HFH. *Id.* HFH also assumed and became liable for payment of all future monthly payments on the Note held by William Bishop. *Id.* at ¶5. On June 12, 2008, William Bishop, as Trustee Under Declaration of Trust of Mitzi T. Bishop, assigned the Mortgage and Note to William Bishop, as Trustee of the William F. Bishop Revocable Trust. *Id.*

After being appointed Receiver of HFH and taking possession of the HFH Property, the Receiver contracted to sell HFH, including the HFH Property, as a going concern (*see* Receiver's Declaration in Support of Motion for Approval of Sale of Assets of HFH, LLC

and Agreement with M&I Bank at ¶9 (Doc. 292).) In response, W. Bishop filed a Motion to Intervene citing to the fact that he had filed a foreclosure action on July 14, 2009, against HFH for default on the Note and Mortgage. (*See* William F. Bishop's Motion to Intervene Pursuant to Rule 24 Fed. R. Civ. P. at ¶3 (Doc. 193).) The Court denied this Motion finding that intervention was barred by 15 U.S.C. §78u(g). (*See* Order (Doc. 207).) W. Bishop has appealed the denial of his motion to intervene to the Eleventh Circuit Court of Appeals, and that appeal is currently pending. (*See* Appeal No. 09-16007-H.)

The Receiver subsequently located buyers for all of HFH's assets, except for the HFH Property. (*See* Motion for Approval of Sale of Assets of HFH, LLC and Agreement with M&I Bank (Doc. 291).) As such, the Receiver still has possession of and title to the HFH Property. The Receiver has considered and investigated several courses of action regarding the HFH Property to determine what would be in the best interests of the Receivership. After considering the following facts, the Receiver has ultimately decided that conveying the HFH Property to W. Bishop in exchange for a release of all claims against this Receivership, including all claims arising from the Mortgage and Note, is in the best interests of the Receivership.

First, the HFH Property is subject to both a first and second mortgage and encumbered by over $790,000 in debt. The first mortgage on the HFH Property is held by Regions Bank ("Regions"). The balance owed to Regions, as of January 6, 2010, to satisfy the first mortgage, including principal, interest, and late charges, is $86,300. (Receiver's Decl. ¶7). The second mortgage on the HFH Property is held by W. Bishop, as discussed above. As of January 8, 2010, the balance owed to W. Bishop to satisfy the second

mortgage, including principal, interest, late fees, attorneys' fees and costs, and unpaid property taxes, is $704,195.37. *Id.* As such, the HFH Property currently secures over $790,000 of debt.

Second, upon reviewing several appraisals of the HFH Property, the Receiver does not believe there is any equity in the HFH Property. The Receiver sought a preliminary appraisal of the HFH Property in September 2009. That preliminary appraisal determined the value of the HFH Property to be approximately $840,000. *Id.* at ¶6. However, while the preliminary appraisal obtained by the Receiver indicated there was equity in the HFH Property, around the same time, W. Bishop provided the Receiver with an appraisal of the HFH Property with a significantly lower value. That appraisal indicated that the value of the HFH Property was only $700,000. *Id.* In addition, the Sarasota County Property Appraiser's 2009 assessed market value for the HFH Property was $583,800. *Id.* Although values assessed by the County Property Appraiser tend to be conservatively low, the significant difference between that value and those estimated by both the Receiver's and W. Bishop's appraiser strongly suggests that the HFH Property value is less than the value estimated by the appraisals. After considering these appraisals relative to the debt encumbering the HFH Property, especially in light of the expenses necessary to maintain and, if possible, sell the HFH Property as discussed below, the Receiver does not believe there is any equity in the HFH Property, and, in fact, rather than holding the HFH Property, it is in the best interest of this Receivership if that property is transferred to W. Bishop.

Third, research by the Receiver has revealed that the market for industrial real estate in the area continues to decline. According to reports, leasing and sales revenue for

industrial real estate are declining and the amount of vacant industrial space continues to grow. *Id.* at ¶9. The decrease in leasing and sales revenue is a function of both decreasing property values and negative absorption. *Id.* In addition, there is no certainty regarding when, or if, the industrial real estate market will begin to recover. These market trends further support the Receiver's belief that there is no equity in the HFH Property, there is no short term prospect for an increase in that property's value, and that it is in the Receivership's best interest to transfer the HFH Property sooner rather than later.

Fourth, W. Bishop is dependent upon the mortgage payments of the HFH Property for his living expenses and, as such, is both unable and unwilling to make concessions as to the amounts owed on the Note. *Id.* at ¶10. Therefore, the Receiver has not been able to negotiate a settlement of the Note and Mortgage held by Bishop in a manner that could generate value for the Receivership.

Fifth, to market and sell the HFH Property would impose certain costs upon the Receivership. In addition, as previously noted, W. Bishop has appealed the denial of his Motion to Intervene. Conveyance of the HFH Property to W. Bishop will resolve that appeal and avoid the additional costs that would be incurred defending the appeal and marketing and selling the HFH Property.

In sum, the Receiver has considered, among other things: 1) the market value of the HFH Property; 2) the substantial debt encumbering the HFH Property; 3) the current trends in the industrial real estate market; 4) W. Bishop's unwillingness to negotiate a settlement of the Mortgage and Note; 5) the costs that would be associated with marketing and selling the HFH Property; and 6) the costs to defend W. Bishop's appeal. The Receiver has determined

that there is no equity in the HFH Property to be recovered for the benefit of the Receivership, and that it is in the best interest of the Receivership to convey the HFH Property to W. Bishop in exchange for a release of any and all claims he may have against the Receivership, including claims arising from the Mortgage and Note.

To maximize the benefit to the Receivership, the Receiver intends to convey the HFH Property to W. Bishop by transferring title to him free of all claims of HFH, and all other non-governmental claims, other than the mortgage held by Regions Bank. In return, William Bishop will waive all of his claims against the receivership estate, both personally and as Trustee of the William F. Bishop Revocable Trust u/a/d 6/12/08, assume responsibility for past and present property taxes owed on the HFH Property, and abandon his pending Eleventh Circuit appeal. This agreement will minimize the costs and other burdens imposed upon the Receivership and provide the most benefit to the investors.

## II.   **MEMORANDUM OF LAW**

The Court's power to supervise an equity receivership and to determine the appropriate actions to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566; *SEC v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982). Those powers include the power to order the sale of property. *See SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996) (abrogated on other grounds). The relief sought by the Receiver falls squarely within those

powers. Furthermore, the relief sought is in furtherance of the duties and authorities bestowed upon the Receiver by the Order Appointing Receiver.

WHEREFORE, Burton W. Wiand, as Receiver, respectfully requests this Court to enter an Order, in substantially the same form as attached hereto as Exhibit 1, conveying title to the HFH Property to W. Bishop.

### CERTIFICATE UNDER LOCAL RULE 3.01(g)

Undersigned counsel has conferred with counsel for the SEC and is authorized to represent to the Court that this motion is unopposed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

I FURTHER CERTIFY that I will mail the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant on March 2, 2010:

> Arthur G. Nadel
> Register No. 50690-018
> MCC New York
> Metropolitan Correctional Center
> 150 Park Row
> New York, NY 10007

> **s/Gianluca Morello**
> Gianluca Morello, FBN 034997
> gmorello@wiandlaw.com
> WIAND GUERRA KING P.L
> 3000 Bayport Drive
> Suite 600
> Tampa, FL 33607
> Tel: 813-347-5100
> Fax: 813-347-5199
>
> *Attorney for the Receiver Burton W. Wiand*