UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                                  CASE NO:  8:09-cv-87-T-26TBM

ARTHUR NADEL; SCOOP CAPITAL, LLC;
and SCOOP MANAGEMENT, INC.,

    Defendants,

SCOOP REAL ESTATE, L.P.;
VALHALLA INVESTMENT PARTNERS, L.P.;
VALHALLA MANAGEMENT, INC.;
VICTORY IRA FUND, LTD.; VICTORY FUND, LTD.;
VIKING IRA FUND, LLC; VIKING FUND, LLC;
and VIKING MANAGEMENT, LLC,

    Relief Defendants.
_____/

**O R D E R**

    Before the Court is the Receiver's Motion to Expand the Scope of Receivership to Include Quest Energy Management Group, Inc. (Dkt. 993), Quest Energy Management Group, Inc.'s Memorandum in Opposition (Dkt. 1003), and the Receiver's Reply. (Dkt. 1004.) After careful consideration of the motion, the applicable law, and the entire file, the Court concludes that the motion should be granted.

## RELEVANT BACKGROUND

This is the tenth motion to expand the scope of the receivership in the four-and-one-half-year span of this proceeding.[1] The Receiver now seeks to include Quest Energy Management Group, Inc. (Quest), a Texas-headquartered oil and gas exploration and production company, holding oil and gas leases by production.[2] Quest was identified as an entity in which Viking Oil & Gas, LLC (Viking Oil)[3] and Neil and Chris Moody (the Moodys), invested $4 million between February 2006 and April 2007.[4] Valhalla Investment, Partners, L.P. (Valhalla), a Relief Defendant, also loaned Quest $1.1 million of scheme proceeds as evidenced by a promissory note executed November 30, 2007, and amended July 29, 2008.[5] In total, Viking Oil, Valhalla and the Moodys invested at least $5.1 million in Quest.[6]

In the founding of Quest, the funding predominantly consisted of scheme proceeds from defrauded investors. Two months after the Downeys had initially raised $750,000

---

[1] The Receiver lists the entities included in the expansion of the receivership. See docket 993 at 3.

[2] See docket 1003, Exh. A at para. 3.

[3] The fifth motion expanded the receivership to include Viking Oil. See docket 153.

[4] See docket 152 at 7, para. 19 and docket 994, Exhs. C & D.

[5] See docket 1003, Exh. A at paras. 43 & 44 and docket 994, Exhs. E & F. Quest claims that it has paid $545, 936.69 under the promissory note, paying a total of $440,617.86 to the Receiver.

[6] See docket 994, Exh. G.

from 23 investors for the initial acquisition of four oil and gas leases in 2005,[7] the first $3 million was invested by the Moodys, representing 80% of Quest's initial funding.  Even after the additional $1.6 million received from Viking Oil[8] and Valhalla,[9] and after other investors had contributed $1.4 million and Quest had received a bank loan of $500,000,[10] 63% of Quest's funding came from the Moodys, Viking Oil, and Valhalla through 2007.  Although beginning in 2008 Quest raised additional capital, obtained bank financing, made a corporate note offering, and made an equity offering[11] to raise approximately $15 million from other investors,[12] the initial funding overwhelmingly consisted of scheme proceeds.

Although attempts were made by the Receiver to settle with Quest, Quest never paid the $2.3 million payment pursuant to the compromise agreement and therefore no settlement was ever approved by this Court.[13]  Quest did, however, make interest payments to the Receiver on the $1.1 million promissory note until January 2013.  After

---

[7]   See docket 1003, paras. 17-19, and docket 994, Exh. C.

[8]   Viking Oil gave $1 million to Quest in April 2007.  See docket 1003, para. 20.

[9]   Valhalla loaned $600,000 pursuant to the promissory note in November 2007.  See docket 994, Exh. E.  (The addition $500,000 pursuant to the note was not loaned until July 2008.  See docket 994, Exh. F.).

[10]  See docket 1003, paras. 21 & 22.

[11]  See docket 1003, paras. 21, 22, 25 & 26.

[12]  See docket 1003, para. 29.

[13]  See docket 994, para. 25.

Quest defaulted on the note, the Receiver filed the instant motion seeking to include Quest in the receivership estate.

## JURISDICTION

Quest's argument that service of process is necessary for this Court to exercise personal jurisdiction over it is unpersuasive. In this receivership proceeding, the receiver's compliance with 28 U.S.C. § 754 bestows jurisdiction over the property and assets of Quest in this district court in this case, and service of process to secure personal jurisdiction over Quest is unnecessary given the due process protections provided in the summary procedure and the judicial efficiency in conducting the receivership.[14] Section 754 allows the receiver to employ summary proceedings by filing copies of the complaint and the order appointing the receiver in each district in which property is located to obtain complete jurisdiction and control of property in different federal districts. See SEC v. Elliott, 953 F. 2d 1560, 1566-67 (11th Cir. 1992); SEC v. Hardy, 803 F. 2d 1034, 1038 (9th Cir. 1986); SEC v. TLC Invs. & Trade Co., 147 F. Supp. 2d 1031, 1034-35 (C.D. Cal. 2001). Whether a summary procedure violates due process, or notice and an opportunity to be heard, depends on the particular case. See TLC Investments, 147 F. Supp. 2d at

---

[14] When obtaining personal jurisdiction is required, 28 U.S.C. § 1692 in conjunction with §754 and Federal Rule of Civil Procedure 4(k)(1)© provide the means of effectuating service nationwide, see SEC v. Vision Communications, Inc., 74 F. 3d 287, 387 (D.C. Cir. 1996); however, service of process need not be effectuated in many SEC receivership cases. See SEC v. Wencke, 783 F. 2d 829, 833 n. 5, 836 & 837 n. 9 (9th Cir. 1986) (holding that summary procedure adequately safeguards the claimant's interests without the requirement of an independent action in SEC receivership case and finding personal jurisdiction over non-party claimants).

1034 (noting the "general rule that the process due varies according to the nature of the right and type of proceedings").

Quest relies on SEC. v. Ross, 504 F.3d 1130 (9th Cir. 2007), for the proposition that summary proceedings may not be used in cases such as this one. Ross is distinguishable, however, in that 1) the commissions made by the non-party in Ross were not located in a district for which the receiver had properly filed under § 754, and 2) the non-party in Ross was not a nominal defendant because he was accused of wrongdoing in obtaining the commissions. Here, the Receiver has complied with § 754 in filing in the proper districts in Texas, and summary proceedings are warranted because Quest is not charged with any wrongdoing but only the use of the scheme proceeds in the establishment of its business.[15]

## ALTER EGO

Quest need not be determined to be an alter ego of Valhalla or Viking Oil to be included in this receivership. Quest's use of scheme proceeds to purchase the oil and gas

---

[15] There is no question that Quest received actual notice and an opportunity to be heard and therefore due process. See, e.g., SEC v. Wencke, 783 F. 2d 829, 835-36 (9th Cir. 1986) (affirming use of summary procedure in receiver's disgorgement proceedings); In re San Vicente Med. Partners, Ltd., 962 F. 2d 1402, 1408 (9th Cir. 1992) (concluding that district court may include non-party's property in SEC receivership order "as long as the non-party . . . receives actual notice and an opportunity for a hearing."); Warfield v. Alaniz, 453 F. Supp. 2d 1118, 1133 (D. Ariz. 2006) (incorporating non-party's assets into receivership estate would not violate due process where non-party had adequate notice and opportunity to be heard); SEC v. Abbondante, 2012 WL 2339704, * 2 (D.N.J. 2012) (quoting New Hampshire Fire Ins. v. Scanlon, 362 U.S. 404, 406-07, 80 S. Ct. 843, 845, 4 L. Ed. 2d 826 (1960), that summary procedures may be conducted "on short notice, without summons and complaints"). Quest was represented by two attorneys in this case and has filed a response.

leases and to profit from the land subjects it to inclusion by virtue of the Receiver's need to take possession of the property and assets.  The Court agrees with the Receiver that analogous cases authorizing a receiver to take possession of and sell land and residences purchased or improved with scheme proceeds apply to this case.  See, e.g., SEC v. Lauer, 2009 WL 812719, at *3 (S.D. Fla. 2009) (holding that the proceeds from sale of condominium that was maintained with tainted funds are also tainted by the fraud); In re Fin. Federated Title & Trust, Inc., 347 F. 3d 880 (11th Cir. 2003) (establishing constructive trust on property which was purchased with over 90% funds from Ponzi scheme); SEC v. Kirkland, 2006 WL 2639522 * 2-3 (M.D. Fla. 2006) (finding, on motion to expand receivership, that property was purchased with funds from receivership entities and therefore included in estate); Commodity Futures Trading Comm'n v. Hudgins, 620 F. Supp. 2d 790, 795 (E.D. Tex. 2009) (imposing equitable lien and directing sale of condominium because innocent defrauder's girlfriend paid the mortgage off with Ponzi scheme funds).  The fact that not all of the funding for Quest originated from Valhalla, Viking Oil, or the Moodys, does not change the outcome.  The vast majority of the initial funding in the first four months, 80%, was tainted, and through 2007, 63% was tainted.  Although the funds raised between 2008 and 2013 were not tainted, Quest did not use the additional funds to pay its obligations under the note or refund the $5.1 million scheme proceeds it received.  Even after reaching a settlement agreement with the Receiver, Quest was unable to make the settlement payment.

**PROMISSORY NOTE**

Quest asserts that the $1.6 million loaned pursuant to the promissory note is not due because the payments were indefinitely extended by the Moodys, and Quest has a claim against the Moodys, Valhalla, and Viking Oil for approximately $4.8 million. Again, Quest takes the position that its due process rights would be denied in these summary proceedings if the Receiver is allowed to enforce the preferred lien in favor of Valhalla pursuant to the terms of the note without filing a separate lawsuit. Based on the reasons discussed previously in this order, the Court finds that expanding the scope of the receivership to include Quest by way of summary procedure best enables the Receiver to administer the receivership estate and does not deny due process to Quest.

Quest's defenses and objections may be handled by summary procedure. A default under the note occurred at the very least in January 2013 when Quest failed to make its interest payment. Even assuming Quest's defense of indefinite extension as true, when the Receiver, on behalf of Valhalla as payee, demanded both principal and interest payment due under the note, any prior agreement ceased. With respect to Quest's claim of set off of the $4.8 million owed by Viking Oil, the Receiver sent Quest a Notice to Creditors and Proof of Claim form on June 4, 2010.[16] Quest nevertheless failed to file a claim by the deadline of September 2, 2010.[17] Consequently, Quest appears to have no defenses to inclusion in the receivership estate.

It is therefore **ORDERED AND ADJUDGED** as follows:

---

[16] See docket 1007, Exh. A.

[17] See docket 1002, Order on Motion to Modify Order Disallowing Claim of potential creditor.

(1)   The Receiver's Motion to Expand the Scope of Receivership to Include Quest Energy Management Group, Inc. (Dkt. 993) is **GRANTED**.

(2)   The scope of the receivership created in this case is expanded to include Quest Energy Management Group, Inc., (Quest) and all outstanding shares of stock of Quest are hereby transferred to the Receiver for the benefit of the Receivership estate.  This entity is specifically included within the ambit of the Court's previous orders appointing and reappointing Burton W. Wiand as the Receiver in this case.

(3)   Upon notice of this Order, Paul Downey and Jeff Downey (the Downeys) and any other Quest shareholders shall deliver to the Receiver any and all share certificates in their possession, custody, or control together with fully executed assignments of those shares and such other documents as may be requested by the Receiver.

(4)   The Downeys and all other present or former officers, directors, and employees of Quest shall refrain from any act which harms Quest's business or business relationships, including but not limited to, any act which would interfere with its referral sources, existing customers or prospective customers, or business opportunities and prospects.

(5)   The Downeys and all other present or former officer, directors, and employees of Quest take all reasonable steps to preserve Quest's assets, property, records, or other materials relating to Quest's business and make

       same available to the Receiver upon request, and refrain from removing any such items from Quest's offices or any other location where Quest maintains or stores any such items.

(6)    Failure to abide by the provisions of this order will subject the non-complying party to contempt of this Court.

**DONE AND ORDERED** at Tampa, Florida, on May 24, 2013.

                s/*Richard A. Lazzara*
              **RICHARD A. LAZZARA**
              **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record