UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                                  CASE NO:  8:09-cv-87-T-26TBM

ARTHUR NADEL; SCOOP CAPITAL, LLC;
and SCOOP MANAGEMENT, INC.,

    Defendants,

SCOOP REAL ESTATE, L.P.;
VALHALLA INVESTMENT PARTNERS, L.P.;
VALHALLA MANAGEMENT, INC.;
VICTORY IRA FUND, LTD.; VICTORY FUND, LTD.;
VIKING IRA FUND, LLC; VIKING FUND, LLC;
and VIKING MANAGEMENT, LLC,

    Relief Defendants.
_____/

**O R D E R**

Before the Court is the Receiver's Motion (1) for Determination that Wells Fargo Bank, N.A.'s Failure to Comply with this Court's Claims Administration Process Extinguished its Purported Interests in Receivership Properties, and (II) for Release of Proceeds of Sale of Sarasota Property (Dkt. 1209), the Response of Wells Fargo Bank, N.A. (Wells Fargo) in Opposition and Request for Oral Argument (Dkts. 1216 & 1217), and the Receiver's Reply Brief and Opposition to Request for Oral Argument (Dkt.

1221). After careful consideration of the Motion, the submissions of the parties,[1] and the applicable law, the Court concludes the motion should be granted.

## BACKGROUND

Three loans were given by Wells Fargo to receivership entities: the Rite Aid loan, the Laurel Preserve loan, and the second priority Moody loan. The loans were secured by the two properties referred to as the Laurel Mountain and Sarasota properties, which are the subject of the pending motion. The Laurel Mountain property became part of the receivership by order of February 11, 2009.[2] The Receiver initially contacted Wells Fargo about marketing the Laurel Mountain property, and Wells Fargo began sending loan statements in May 2009 for payment past due to the Receiver.[3] Possession of and title to the Sarasota property was granted to the Receiver by order dated January 28, 2010,[4] and the order was recorded in Sarasota County on February 25, 2010.[5] At this time, the Laurel Mountain property is encumbered by Wells Fargo's lien for a loan in the

---

[1] Finding the paper submissions more than sufficient to decide the pending motion, the Court denies Wells Fargo's Request for Oral Argument (Dkt. 1217) as unnecessary.

[2] See docket 44.

[3] See docket 1210, Exh. A (invoice). Wells Fargo was in communication with the Receiver regarding the Receiver's marketing of the property as evidenced by exchanged emails in June 2009. See docket 1210, para. 10 (citing docket 713-7, pp. 5 & 9).

[4] See docket 327.

[5] See docket 756-1.

amount of $1.9 million,[6] and the Sarasota property sold in April 2015 with proceeds of $2,147,993.69.[7]

On April 21, 2010, this Court entered an order establishing a deadline for filing a Proof of Claim Form and setting a Claim Bar Date of September 2, 2010.[8] On March 2, 2012, this Court entered an order approving the determination of certain claims and claim priorities, among other things, including the approval of a plan of distribution and a proper objection procedure.[9] In the March 2012 order, this Court reserved ruling on Wells Fargo's dispute with the Receiver over the Sarasota and the Laurel Mountain properties,[10] including the motion for determination that filing proofs of claim was unnecessary to preserve state law property rights in the properties, until Wells Fargo's motion to disqualify the Receiver and his law firm was decided.[11] The March 2012 order did not alter the Claim Bar Date of September 2, 2010.

---

[6] See docket 1210, para. 6.

[7] See docket 1177 (Order approving sale of Sarasota property entered April 29, 2015) and docket 1181, Exh. B, p. 8 (Receiver's Eighteenth Interim Report stating Sarasota property sold June 1, 2015, and attaching Exhibit B showing the amount of proceeds).

[8] See docket 391.

[9] See docket 776.

[10] On February 8, 2012, Wells Fargo filed a motion for a determination that filing proofs of claim was unnecessary to preserve secured creditors' state law security interests regarding certain properties including the Laurel Mountain and Sarasota properties. See docket 740.

[11] See docket 776, para. 9.

As part of the claims administration process, the Receiver would mail a claims packet, which contained a Proof of Claim Form,[12] to "each investor who, according to the Receiver's records, is associated with each pertinent account."[13]  For creditors who were not investors, such as Wells Fargo regarding the Laurel Mountain and Sarasota properties, the Notice of Deadline Requiring Filing of Proofs of Claim provides that such non-investors must provide to the Receiver the amount claimed due, together with supporting documents, by the Claim Bar Date.[14]

In accordance with the claims administration process, the Receiver mailed one claims packet to Wells Fargo (then Wachovia) at its Atlanta, Georgia, address.[15]  The Receiver used the address listed in the documents provided by Wells Fargo on its loan invoices for the both the Laurel Preserve and Rite-Aid loans.  The Laurel Preserve loan documents provide for notice by mail or delivery to one of two Roanoke, Virginia,

---

[12]   The Proof of Claim Form was approved and referenced in the April 2010 order setting the Claim Bar Date.  See docket 391 ("4.  The Claims Administration Procedure as set forth in the Motion and Proof of Claim Form as attached to the Motion as Exhibit A are approved in all respects.") and docket 390, Exh. A (Proof of Claim Form).

[13]   See docket 390, p. 8.

[14]   See docket 390, Exh. B, p. 4 ("If you were not an investor, but believe you are or may be a creditor of one or more of the Receivership Entities, you must provide to the Receiver by the Claim Bar Date (1) the amount you contend you are owed from any Receivership Entity; (2) any amounts received from any Receivership Entity; and (3) legible copies of all documents on which you base your claim (i.e., all invoices for services or goods provided, loan documents, etc.) or, if any such documents are not available, a detailed explanation as to why such documents are not available.")

[15]   See docket 1216, p. 13, and docket 713, para. 23, Exh. 10.

addresses for Wachovia Bank.[16] Although Wells Fargo received a claims packet from the Receiver, it never submitted a proof of claim with respect to either the Laurel Mountain or Sarasota properties. The Receiver informed Wells Fargo on April 5, 2011, that he had not received a proof of claim regarding the Laurel Mountain property, and that "its interest will not be considered by the Receiver" unless Wells Fargo "believes there are circumstances that justify its failure to file a Proof of Claim" and submits a proof of claim "and an explanation for the delay and any other materials or information which it deems appropriate."[17] The Receiver reminded Wells Fargo of the passage of the Claim Bar Date of September 2, 2010.

## ARGUMENT

Wells Fargo argues, first, that the state property rights of a secured creditor trump a federal equitable receivership in that a secured creditor need not file a proof of claim in the receivership to maintain its priority interest, and any extinguishment of Wells Fargo's security interests would violate the Fifth Amendment as an unconstitutional taking. Second, Wells Fargo argues that it should be permitted to file late proofs of claim for the Laurel Mountain and Sarasota properties as timely under Federal Rule of Civil Procedure 60(b)(1), and, in any event, Wells Fargo has shown excusable neglect for failing to file them earlier. The Receiver argues that Wells Fargo's failure to file a proof of claim in the receivership results in the extinguishment of not only its rights to a cash distribution but

---

[16] See docket 740-4, pp. 8 & 24 (Composite Exh. D attached to Wells Fargo's Motion for Determination that Filing Proofs of Claim Not Necessary, filed February 8, 2012).

[17] See docket 713-8, Exh. 8.

to its secured interests as well. The Court agrees with the Receiver and finds that Wells Fargo's security interests in the properties at issue were not preserved in this receivership because of its failure to file a proof of claim, its Rule 60(b) request filed before the March 2012 order was untimely, and the Receiver's failure to send more than one claims packet to Wells Fargo does not constitute excusable neglect under Rule 60.

## ANALYSIS

The Court need look only to the conduct of Wells Fargo (formerly Wachovia) after the receivership was created in 2009, not before that time. The *sole* issue this Court will address is whether Wells Fargo was required to timely file a proof of claim to preserve its security interests in the two particular properties in these receivership proceedings.[18] This Court has already established, however, that "each person or entity that asserts a claim against the Receivership" must submit a proof of claim by the Claim Bar date of September 2, 2010, and that "any person or entity that fails to submit" a proof of claim "shall be forever barred and precluded from asserting any claim."[19] This means that a secured creditor must file a proof of claim before the Claim Bar Date.

---

[18] The Court is well aware that the Receiver generally takes property subject to liens and encumbrances. Wells Fargo, however, seems to argue on the one hand that it should be allowed to seek redress to its collateral in these receivership proceedings, which would be subject to the claims administrative process, and on the other hand, that the proper procedure is to seek an order from this Court requesting the Receiver release the collateral or the injunction be set aside to enforce Wells Fargo's state law remedies against the collateral. See docket 1216, p. 10, citing Clark on Receivers and two cases. It appears from its submissions that Wells Fargo seeks to be excused from failing to file proofs of claim in the receivership proceedings.

[19] See docket 1174 (Order Denying Turnover of Sales Proceeds of Fairview Property to BB&T).

Wells Fargo is not excused as a secured creditor from filing a proof of claim in this federal equitable receivership under the conduct of the proceedings established in this Court. As in the case of BB&T in this Court's prior order, the burden rests on Wells Fargo "to protect its rights pursuant to the framework clearly set forth in the conduct of this receivership."[20] Wells Fargo disagrees with this Court's prior order, arguing that a secured creditor's *in rem* rights to the collateral are distinct from its right to receive a cash distribution from the liquidation of general receivership assets. See SEC v. Spongetech Delivery Sys., 98 F.Supp.3d 530, 533 (E.D.N.Y. 2015);[21] SEC v. Madison Real Estate Group, LLC, 647 F.Supp.2d 1271, 1276 (D. Utah 2009). While this may generally be true, a secured creditor must follow the dictates for protecting its rights to its collateral in the receivership proceedings by following the format outlined in the claims administration process for making a claim. The administrative process here requires both secured and unsecured creditors to comply with the process by filing a proof of claim.

Wells Fargo contends that the failure to file a proof of claim, at most, may prohibit its receiving payment for a deficiency claim. In making this argument, Wells Fargo further urges this Court to find a violation of the Takings Clause of the Fifth Amendment. The Receiver is correct that the Fifth Amendment is triggered by governmental action,[22]

---

[20] See docket 1174, p. 7.

[21] The Spongetech was not brought to this Court's attention when it issued the order on BB&T on April 15, 2015, as Spongetech was decided just two weeks earlier on March 31, 2015.

[22] See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537, 125 S.Ct. 2074, 2081, 161 L.Ed.2d 876 (2005).

not the actions of a private receiver marshaling private assets to pay private parties. See United States v. Beszborn, 21 F.3d 62, 68 (5th Cir. 1994) (holding that receiver Resolution Trust Corporation acts as "private, non-governmental entity, and is not the Government"). Moreover, the taking must be for a public use. See Scott v. Jackson County, 297 F. App'x 623, 625-26 (9th Cir. 2008). No case has been cited to the Court that would subject the actions of a receiver in a federal equitable receivership to the Takings Clause.

Wells Fargo asks this Court to permit it to file a late proof of claim, because on February 8, 2012, it filed a motion for determination of whether the filing of a proof of claim was necessary or, in the alternative, for leave to file a late claim.[23] By filing the motion before the March 2012 order, Wells Fargo argues, it met the one-year deadline under Rule 60(b)(1). Wells Fargo relies on a prior order of this Court for the proposition that the start date of the one-year deadline began March 2, 2012.[24] The relevant start date of the one-year period for Wells Fargo's claims, however, was not determined by the order denying the turnover of funds to BB&T. The prior order of this Court considering the turnover of funds to BB&T did not discuss any start date other than the date of the March 2012 order, because the parties did not argue an earlier date to the Court.[25]

---

[23] See docket 740.

[24] See docket 1174 (Order denying BB&T's Motion for Turnover of Sale Proceeds of Fairview Property Subject to Mortgage Interest).

[25] The Court did not consider and reject the position that Rule 60's one-year period began prior to March 2012 on the Claim Bar Date in September 2010.

Here, the Receiver argues that the start date for purposes of Rule 60's one-year period falls on the Claim Bar Date of September 2, 2010. Consequently, the Receiver contends that Wells Fargo was required to file its Rule 60 motion by September 2, 2011. Wells Fargo, however, did not file its motion until February 2012. Between Wells Fargo's incorrect reliance on the prior BB&T order regarding the start date and the Receiver's choice of September 2, 2010, the Claim Bar Date, the Court finds for purposes of this motion, Rule 60's one-year period began to run on the Claim Bar Date.

With respect to excusable neglect, Wells Fargo argues that the Receiver mailed only one claims packet, despite the three separate loans given by Wells Fargo. It contends that the Receiver should have sent three separate claims packets, one for "each" account, and the Receiver should have mailed a claims packet for the Laurel Mountain property to one of two Roanoke, Virginia, addresses in accordance with the Laurel Preserve loan documents.[26] Wells Fargo returned only one completed Proof of Claim Form before the bar date for the purpose of a claim relating to a loan to Scoop Real Estate, L.P., secured by property in Graham, North Carolina (the Rite-Aid property), which is different from the Laurel Mountain property.[27] The Court finds that the claims administrative process did not require the Receiver to send separate claims packets for each of the loans, which involved a non-investor creditor. Despite notice and many communications with the Receiver regarding the Laurel Mountain and Sarasota properties

---

[26] See docket 740-4, pp. 8 & 24 (Composite Exh. D attached to Wells Fargo's Motion for Determination that Filing Proofs of Claim Not Necessary, filed February 8, 2012).

[27] See docket 713, para. 25, Exh. 11.

before the Claim Bar Date, Wells Fargo's failure to file timely proofs of claims by the Claim Bar Date, and even one year thereafter, is not excused by the Receiver's neglect in filing separate claims packets for each loan.

It is therefore **ORDERED AND ADJUDGED** that the Receiver's Motion (1) for Determination that Wells Fargo Bank, N.A.'s Failure to Comply with this Court's Claims Administration Process Extinguished its Purported Interests in Receivership Properties, and (II) for Release of Proceeds of Sale of Sarasota Property (Dkt. 1209) is **GRANTED** to the extent that this Court finds that Wells Fargo failed to comply with the claim administrative process and its failure did not constitute excusable neglect for purposes of Rule 60.

It is further **ORDERED AND ADJUDGED** that this order shall not become final until the time for filing a notice of appeal has expired and no notice of appeal was filed or, if a notice of appeal is timely filed, until the appellate process has terminated with an affirmance of this order.

**DONE AND ORDERED** at Tampa, Florida, on February 2, 2016.

    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record