## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION

      Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.,

      Defendants,                    CASE NO.:  8:09-0087-T-26TBM

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD.,
VICTORY FUND, LTD.,
VIKING IRA FUND, LLC.,
VIKING FUND, LLC., and
VIKING MANAGEMENT, LLC.

      Relief Defendants.
_____/

### RECEIVER'S OBJECTION TO WELLS FARGO'S MOTION
### DIRECTING RECEIVER TO TURN OVER RENTS FROM RITE-AID PROPERTY

      Burton W. Wiand, as Receiver (the "**Receiver**") for the above-captioned case, hereby files

this objection to Wells Fargo Bank, N.A.'s ("**Wells Fargo**") motion for turnover of approximately

$1,322,923.20 in rents from the Rite-Aid property (the "**Turnover Motion**") (Doc. No. 1332), and

in support of this Objection, the Receiver states as follows:

### SUMMARY OF THE ARGUMENT

      The relief requested by Wells Fargo simply misses the mark and ignores black letter law—

that a creditor is only entitled to payment of its claim and no more. Wells Fargo filed its claim in

the amount of $2,655,000, which was secured by property commonly referred to as the Rite-Aid Property. During the Receivership case, the Court authorized the Receiver to sell the Rite-Aid Property. The sale order provided that all claims arising from the Wells Fargo loan would attach to the sale proceeds and have been disbursed to Wells Fargo. The Rite-Aid sale proceeds were $2,224,563.15, thus leaving Wells Fargo, before Receivership fees and costs, with an unsecured claim of approximately $430,436.85.

By its Turnover Motion, Wells Fargo is demanding approximately $1,322,923.20 of rent collected by the Receiver on the Rite-Aid property. Wells Fargo's new claims include approximately $1,131,454.34 of interest and $387,145.33 attorney's fees. At the expense of the Investor Class, Wells Fargo's demand ignores the limitations on claims that were set forth in the Claims Bar Date Order, the Claims Order, and the Rite-Aid Sale Order—these orders all barred future claims in order to facilitate a timely claims resolution and equitable distribution process. Unlike Investors who will not recover their full investment, Wells Fargo has already recovered more than their loan—they have recovered $2,910,513.37.

### FACTUAL BACKGROUND

On January 21, 2009 (the "**Receivership Date**"), the Securities and Exchange Commission initiated the Receivership Case to prevent the defendants from further defrauding investors of hedge funds operated by them— the Nadel Ponzi scheme and his related entities. That same day, the Court entered an order appointing the Receiver (the "**Order Appointing Receiver**") (Doc. No. 8). The Court subsequently granted several motions to expand the scope of the Receivership to include other entities owned or controlled by Arthur Nadel.[1] All of the entities in receivership are hereinafter collectively referred to as (the "**Receivership Estate**"). As a result of the Order

---

[1] *See generally* Doc. Nos. 17, 44, 68, 81, 153, 172, and 454.

Appointing Receiver, the Receiver took possession of a commercial building located at 841 South Main Street in the City of Graham, Alamance County, North Carolina (the "**Rite-Aid Property**").

Pursuant to the Order Appointing Receiver, the Receiver has the duty and authority to administer and manage the business affairs, funds, assets, and any other property of the Defendants and Relief Defendants; marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors. In addition, the Receiver is responsible for reviewing and resolving all claims against the Receivership Estate and making recommendations to the Court regarding the plan of distributions of assets to qualifying claimants.

## COURT ORDERS

The Receiver's fiduciary duties are ultimately to marshal and distribute liquidated assets to the investors and creditors with allowed claims. As such, this Court has entered a number of orders that promote the fair and equitable administration of the Receivership Estate, including the Claims Dar Date, the Claim Order, and the Rite-Aid Sale Order, all of which are defined and discussed below.

### A.    Claims Bar Date Order

The Receiver sought an order establishing a deadline for all claimants to file claims arising in any way out of the activities of the Receivership Entities to facilitate a timely claims resolution and distribution process. On April 21, 2010, the Court entered an order establishing a claims administration process by which potential claimants could file their claims against the Receivership Estate (the "**Claims Bar Date Order**") (Doc. No. 391). The claims bar date for claims against the Receivership Entities was September 2, 2010 (the "**Claims Bar Date**").

The Claims Bar Date Order also barred any claims asserted after that date and approved the Proof of Claim Form attached to the motion.[2] The Proof of Claim Form similarly stated, in bold print, that claims filed after the Claims Bar Date were forever barred and the "information provided in this Proof of Claim Form will be used to calculate your distribution, if any, from the Receivership."[3]

### B.      The Claim Order—Claims Determination and Claim Priority

On December 7, 2011, the Receiver filed a proposed plan for claims determination and priority of claims ("**Claims Motion**") (Doc. No. 675). After reviewing 504 claims filed in this case, the Receiver determined that each claim fell into one of five categories—

(1) Investor Claims and Tax Lien Claims which should be allowed;
(2) Investor Claims which should be allowed in part;
(3) Non-Investor Secured Claims which should be allowed in part;
(4) Non-Investor Unsecured Claims which should be allowed (in whole or in part); and
(5) claims which should be denied.

Pursuant to the Claims Motion, the highest priority is given to all allowed investor claims and tax lien claims ("Class 1").  Claimants holding a Class 1 claim receive a pro rata share of their respective claim's allowed amount from the total aggregate distribution.  Second priority is given to non-investor secured claims ("Class 2").  However, these claimants are allowed to recover only from proceeds of the sale of the asset securing their respective claims up to the lesser of the outstanding principal amount of the debt (i) at the time of the Receiver's appointment or (ii) at the time of sale of the pertinent asset, as applicable, less fees and costs incurred by the Receivership to maintain and sell the asset.  Class 2 claims have priority over all other classes with respect to the proceeds of the sale of the asset securing each of the respective secured claims.  The Claims Motion also provided that secured creditors were not allowed to recover post-receivership interest

---

[2] *See* Doc. No. 391, §2.
[3] Doc. No. 390, *see* Exhibit A to the motion.

on their loans, since payment of interest would unfairly diminish funds available to pay the claims of innocent defrauded investors.[4] Third priority is afforded to non-investor Unsecured Claims ("Class 3"). Claimants holding Class 3 claims will only participate in a distribution of Receivership assets after all allowed amounts for Class 1 claims have been satisfied in full.

Since the Claims Bar Date had passed, the Claims Motion also sought an order (1) confirming that no further claims will be considered and (2) barring any future claims against Receivership Entities, Receivership property, the Receivership estate, or the Receiver, and any proceedings or other efforts to enforce or otherwise collect on any lien, debt, or other asserted interest in or against Receivership Entities, Receivership property, or the Receivership Estate.

After written submissions and oral arguments, the Court entered its order on the Claims Motion (the "**Claim Order**") (Doc. No.776). The Claim Order granted the Claims Motion but reserved ruling on Wells Fargo objections (Doc. Nos. 689, 690 and 719) until after the resolution of Wells Fargo's motion to disqualify the Receiver and his law firm (Doc. No. 766). Wells Fargo's objections did not object to the Claims Motion's proposed treatment of Class 2 non-investor secured creditors.

It is important to note that the Claims Order provided that secured creditor claims were not entitled to recover post-receivership interest on their loans[5] and

> [t]o bring finality to these matters and to allow the Receiver to proceed with distributions of Receivership assets, any and all further claims against Receivership Entities, Receivership property, the Receivership estate, or the Receiver by any Claimant taxing authority, or any other public or private person or entity and any and all proceedings or other effects to enforce or otherwise collect on any lien, debt, or other asserted interest in or against Receivership

---

[4] *See* Doc. No. 675, pgs. 17-18.
[5] "The Receiver's determination of claims and claim priorities as set forth in the motion and in Exhibits B - J attached to the motion is *fair and equitable and is approved*." Claims Order Doc No. 776 ¶ 3. Emphasis added.

Entities, Receivership property, or the Receivership estate are *hereby barred and enjoined absent further order from this Court*.[6]

**C.**      **Rite-Aid Sale Order**

One of the Relief Defendants, Scoop Real Estate, L.P. ("**SRE**"), purchased the Rite-Aid Property in May 2005 by executing a promissory note with Wells Fargo (formerly Wachovia Bank) in the amount of $2,655,000 (the "**Rite-Aid Note**"). The Rite-Aid Note required interest-only payments with principal and any accrued interest due on May 23, 2009.  The Rite-Aid Note was secured by a Deed of Trust and Security Agreement (the "**Rite-Aid Security Agreement**" and together with the Rid-Aid Note, the "**Loan Documents**").

From the Receivership Date until Rite-Aid Property was sold, the Receiver collected rent pursuant to the terms of the Rite-Aid lease and the tenant paid the real estate taxes and the insurance on the Rite-Aid Property. The Receiver also paid interest on the Rite-Aid Note of approximately $58,491.94 as directed by Wachovia Bank.[7] These interest payments covered the period from the Receivership Date through October 22, 2009, during which time the Receiver received rent from the Rite-Aid tenant of $297,657.72. While diligently working to sell the Rite-Aid Property, the Receiver obtained an appraisal of the Rite-Aid property using an appraiser recommended by the bank and stopped paying interest. During this time, the Receiver collected additional rent of $1,025,265.48 from the Rite-Aid Property's tenant.

On January 6, 2012, the Receiver filed a motion to approve the sale of the Rite-Aid Property (Doc. Nos. 706 and 823) free and clear of all liens. Over Wells Fargo's objection, the Court entered orders authorizing the sale of the Rite-Aid Property (the "**Rite-Aid Sale Order**") (Doc. Nos. 840 and 842).  In relevant part, the Rite-Aid Sale Order provided—

---

[6] Claims Order (Doc No. 776 ¶ 8, emphasis added.
[7] *See* Exhibit "B" attached hereto.

> Any and all *existing claims*, *liens, and encumbrances* relating to the property located in Alamance County, North Carolina (the "Property"), including any held by Wells Fargo Bank, N.A. as successor to Wachovia Bank, N.A., *arising from a loan* provided to Scoop Real Estate, L.P., *shall be transferred to the proceeds of the sale* ordered herein, and the Property shall become free and clear of any and all such existing claims, liens, and encumbrances.

After certain closing costs, the proceeds from the May 8, 2012 sale of the Rite-Aid Property were approximately $2,229,463.15 (the "**Rite-Aid Sale Proceeds**"). The Receiver has turned over to Wells Fargo the Rite-Aid Sale Proceeds consistent with the order granting an earlier settlement with Wells Fargo. (Doc. No. 1296). In addition, since the inception of the Rite-Aid Note, Wells Fargo (Wachovia) has recovered approximately $681,050.22[8] of its loan from Ponzi scheme funds and the Rite-Aid Sale Proceeds, for a total recovery of $2,910,513.37, which is $255,513.37 more than the initial principal amount of the Rite-Aid Note.

## I.   WELLS FARGO PROOF OF CLAIM

On September 2, 2010, Wells Fargo filed its proof of in the amount of $2,655,000 and was assigned claim number 502 by Receiver (the "**POC**"). Wells Fargo has not filed an amended POC. A copy of the POC is attached as <u>Exhibit A</u>. On June 12, 2017, the Court entered it order authorizing the Receiver to disburse the Rite-Aid Sale Proceeds of $2,229,463.15 to Wells Fargo. (Doc. No. 1296). On December 1, 2017, Wells Fargo filed a motion seeking turnover of $1,322,923.20 (the "**Turnover Motion**") (Doc. No. 1332) in rent collected from the Rite-Aid Property from the Receiver.

According to the Turnover Motion, Wells Fargo's claim has grown since the Claims Bar Date to approximately $4,171,531.64 less funds Wells Fargo received from the sale of the Rite-Aid Property of $2,224,563.15 (Doc. No. 1296), leaving a remaining claimed amount owed of

---

[8] *See* Wells Fargo Proof of Claim Form, Claim No. 502.

$1,955,876.52 (the "**New Claim**").[9] The New Claim consists of principal in the amount of $430,436.85, contract interest of $508,194.17, default interest of $623,260.17, appraisal fee of $6,840.00, and legal fees of approximately $387,145.33.[10] In addition to the Turnover Motion, Wells Fargo is now asserting entitlement to legal fees and costs of $568,622.74 to be paid as an administrative expense of the Receivership Estate (the "**Motion for Attorney's Fees**") (Doc. Nos. 1333 and 1334). The Receiver has filed a separate objection to the relief sought in that motion, but Wells Fargo's claimed legal fees in connection with the Rite-Aid Property they will be addressed in this objection.

### ARGUMENT AND MEMORANDUM OF LAW

Wells Fargo's demand for turnover of the rent collected by the Receiver on the Rite-Aid property of $1,322,923.20 coupled with the Rite-Aid Sale Proceeds of $2,229,463.15 would result in total payments from the Receivership Estate of $3,552,395.35, which significantly exceeds Wells Fargo's POC of $2,655,000. It is well established that a creditor, whether secured or unsecured, is entitled to the payment of its claim but no more.[11] While much of the Turnover Motion discusses Wells Fargo's entitlement to rent and that the Receiver has "maintained sufficient cash in his accounts to satisfy the Rite-Aid Claim," Wells Fargo ignores the fundamental principal that a secured creditor is entitled only to the payment of its claim, and no more.

    **i.**    **Wells Fargo's "New Claim" is Untimely and Fails to Provide Adequate Information**

Wells Fargo filed its Proof of Claim Form in the amount of $2,655,000 on the Claims Bar Date. The issue for the Court to consider is whether Wells Fargo's New Claim, which includes

---

[9] Turnover Motion Doc No. 1332 pg. 9 ¶2.
[10] *See* Turnover Motion, Doc. No. 1332, fn 12.
[11] *Gamble v. Wimberly*, 44 F.2d 329, 331–32 (4th Cir. 1930)

post-receivership interest of $1,131,454.34 ($508,184.17 claimed as contract interest and $623,260.17 claimed as default rate interest), attorney's fees of $387,145.33, and appraisal fee of $6,840.00—all totaled approximately $1,525,440—is barred as a result of the Claim Bar Date Order, the Claim Order, the Rite-Aid Sale Order, or other equitable considerations.  If so, then Wells Fargo holds, at best, an unsecured claim, before Receivership fees and costs incurred in connection with the Rite-Aid Property, of $430,436.85 and not $1,322,923.20 as demanded by Wells Fargo in the Turnover Motion.

As a preliminary objection, Wells Fargo's New Claim should be denied as untimely since it was asserted after the date set forth in the Claims Bar Date Order. In addition, Wells Fargo's New Claim should be disallowed for failure to provide adequate detailed documentation to support amounts claimed as interest and attorney's fees. Here, Wells Fargo is demanding payment of more than $1.1 million of interest and $387,145.33 by simply dropping these amounts into a footnote.

### ii.      Wells Fargo is Not Entitled to Post-Receivership Interest

Although Wells Fargo is claiming contract interest and default interest of $1,131,454.34, by its POC Wells Fargo has acknowledged that interest on the Wells Fargo Note was current through October 27, 2009, therefore the New Claim must be as a result of interest claimed after the Receivership Date.

"A district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."[12] The date to which interest is to be allowed on claims of creditors is a matter to be settled by the receivership court.[13] The general rule is that interest is not allowed on

---

[12] *S.E.C. v. Elliott*, 953 F.2d 1560, 1569–70 (11th Cir. 1992)
[13] *Hatch v. Morosco Holding Co.*, 19 F.2d 766, 769 (2d Cir. 1927), *aff'd sub nom. Riehle v. Margolies*, 279 U.S.218 (1929) (citing *Thomas v. Western Car Co.*, 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663)).

claims after the appointment of a receiver where assets are insufficient to pay the debts so as to treat all creditors equally.[14] The reasoning behind this rule is—

> [i]f all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. *As this delay was the act of the law*, no one should thereby gain an advantage of suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt.[15]

Like investors who may not recover false paper profits, interest, or lost opportunity costs on their "investment," it is not fair or equitable to allow Wells Fargo to recover $1,131,454.34 of post-receivership interest on their loan. Courts have routinely rejected attempts by creditors to enhance or otherwise increase their claim amounts by seeking entitlement to interest, inflation, or other various categories.[16]

The Claims Order provided that "the Receiver's determination of claims and claim priorities as set forth in the motion . . . is fair and equitable and is approved." The Claims Order clearly provided that two other secured creditors, Branch Banking & Trust Company ("**BB&T**") and Bank of Coweta ("**Coweta**"), were not entitled to recover post-receivership interest on their loans.[17] The Claim Order capped BB&T and Coweta's distributions to the allowed amount of their claims—"the principal amount of the loan outstanding at the time of the Receiver's appointment."[18] Since BB&T (40% of the principal loan balance) and Coweta (20% of the

---

[14] *Am. Iron & Steel Mfg. Co. v. Seaboard Air Line Ry.*, 233 U.S. 261, 266 (1914).

[15] *Id*.

[16] *In re Bernard L. Madoff Inv. Securities LLC*, 779 F.3d 74, 83 (2d Cir. 2015*), cert. denied sub nom. Peshkin v. Picard*, 136 S. Ct. 218 (2015)(an interest adjustment to customer net equity claims is impermissible).

[17] *See* the Claim Motion, Doc. No. 675, pg. 52 and the Claim Order, Doc. No. 776 ¶3.

[18] *Id. page 18 of Motion*

principal loan balance) received payments from scheme proceeds, and are better able to absorb losses compared to a typical investor, they were not entitled to post-receivership interest. For the same reasons that BB&T and Coweta were not entitled to recover post-receivership interest on their loans, it would be inequitable to treat similarly situated creditors differently by allowing Wells Fargo to accrue interest on its loan. Wells Fargo has already recovered $2,910,513.37, $681,050.22 of which was paid with proceeds from the Nadel Ponzi scheme.

In addition, the Rite-Aid Sale Order clearly provided that any and all *existing claims*, *liens*, *and encumbrances . . . arising from a loan . . . shall be transferred to the proceeds of the sale*, and the Property shall become free and clear of any and all such existing claims, liens, and encumbrances. This essentially capped all Wells Fargo's claims for interest and attorney's fees and rents collected and transferred those claims into the sale proceeds since those claims arise out of the loan. This is effectively the same treatment afforded BB&T and Coweta. Wells Fargo neither sought to clarify the Rite-Aid Sale Order or appeal it, and any such appeal at this time would be untimely.

Wells Fargo relies in the Eleventh Circuit opinion that arose from Receivership Case, *S.E.C.  v. Wells Fargo Bank, N.A.*,[19]  for the proposition that "a receivership court does not have the authority to extinguish a secured creditor's state law rights or security interests that were vested prior to the Receivership Proceeding." But such reliance is misplaced. There "[t]he sole issue in this appeal is whether the district court correctly determined that Wells Fargo's failure to file certain proofs of claim in accordance with the district court's procedures extinguished Wells Fargo's secured interest in the receivership properties."[20] Here the Rite-Aid Sale Order did not *extinguish* Wells Fargo's liens, but rather transferred such liens to the sale proceeds.  And, in any

---

[19] 848 F.3d 1339 (11th Cir. 2017).
[20] *Securities and Exch. Commn. v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1343 (11th Cir. 2017)

event, Wells Fargo did not appeal that order.  While Wells Fargo is attempting to collaterally attack the Rite-Aid Sale Order, it can only attack within the tight limits that Federal Rule of Civil Procedure 60(b) imposes on collateral attacks on civil judgments.

Assuming, *arguendo*, that the Court finds that Wells Fargo is entitled to post-receivership interest, such interest should be capped at the rate in which the Receivership Estate earns on its money market account and not at some disclosed rate used by Wells Fargo.

### iii.      The Rite-Aid Deed of Trust and Security Agreement Does Not Cover the Requested Attorney Fees

As an initial matter, the Motion for Attorney's Fees considers all fees related to four properties including the Rite-Aid Property. The Turnover Motion does not provide the detail of whether these Wells Fargo's New Claim for attorney's fees were also included in the Motion for Attorney's Fees, but are considered here since the Receiver takes the position that the fee requests in the Motion for Attorney's Fees are barred by the Claims Bar Date Order.

Wells Fargo's New Claim for attorney fees of $387,145.33 should be denied since the Loan Documents do not provide for recovery of the fees requested.  Contractual attorney fee provisions are strictly construed.[21]  A contractual provision awarding attorney fees must "'unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable . . ..'"[22]  "[I]n Florida, as in most jurisdictions, an ambiguous contract term is construed against the drafter. This principle applies with particular force where the language was selected to benefit the drafter."[23]

---

[21] *Succar Succar v. Safra Nat'l Bank of New York*, 237 Fed.Appx. 526, 528 (11th Cir. 2007)
[22] *Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*, 441 Fed.Appx. 644, 645 (11th Cir. 2011) (per curiam) (unpublished) (quoting *Sholkoff v. Boca Raton Cmty. Hosp., Inc.*, 693 So. 2d 1114, 1118 (Fla. 4th DCA 1997)).
[23] *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1329 n.2 (11th Cir. 2005).

In the Wells Fargo litigation, after citing the case law referenced immediately above, Magistrate Judge Jenkins denied Wells Fargo's motion for attorney fees under the Rite-Aid Deed of Trust.[24]  After construing the same provisions cited here by Wells Fargo in its Motion for Attorney's Fees, the court found:

> the Receiver's claims under FUFTA were to void the transfers and security interests and loan payments that were already transferred, not to enforce or collect any obligations as to any current or future indebtedness. The Bank's defense of these claims is not implicated by these provisions. Additionally, the provisions of the security agreements pertain to actions the Bank must take if SRE failed to comply with the mortgage terms or its obligations under the agreement; they do not apply to recovery of fees for defending fraudulent transfer claims. Accordingly, these provisions are not applicable to the Receiver's claims in this action.[25]

Like its fraudulent transfer litigation attorney fees, Wells Fargo's fees incurred in the Receivership Case were not incurred to "enforce or collect any obligations as to any current or future indebtedness."[26]  In fact, Wells Fargo was enjoined from taking action to enforce or collect any such obligations.[27]As in the Fraudulent Transfer Litigation, the fees requested here do not pertain to actions Wells Fargo was required to take because "SRE failed to comply with the mortgage terms or its obligations under the agreement."[28] Wells Fargo's fees were incurred asserting itself in the Receivership Case and preserving its positions while the Fraudulent Transfer Litigation proceeded.

The language cited by Wells Fargo in its Motion for Attorney's Fees from § 1.11 of the Rite-Aid Deed of Trust refers to money advanced by Wells Fargo "to protect this Deed of Trust

---

[24] *See Wiand v. Wells Fargo Bank, N.A.*, 8:12-cv-00557-JDW-EAJ, 2015 WL 12839237, at *4–6 (M.D. Fla. June 10, 2015).
[25] *Id.* at *5 (citations omitted).
[26] *Id.*
[27] Order Appointing Receiver ¶ 15, Doc. No. 8.
[28] *Id.*

and the Note." The Receiver did not seek to attack Wells Fargo's security interest in this Receivership Case; he only sought to avoid it as a fraudulent transfer. And as referenced above, Wells Fargo's request for fees in that proceeding was denied. Any fees requested by Wells Fargo in this Motion were not incurred to "protect" the Rite-Aid Deed of Trust. As to §1.12, relating to costs of collection, this is not a collection proceeding. Wells Fargo was enjoined from commencing collection actions. Strictly construed, as required by applicable case law, any fees incurred by Wells Fargo in this Receivership Case do not fall within the referenced provisions.

### iv.    Other Considerations

Lastly, should the Court find that Wells Fargo is entitled to some portion of the rents collected during the Receivership Case, Wells Fargo is entitled only to its filed Proof of Claim. Under any circumstance, Wells Fargo only has a potential security interest in the rents up to the amount of deficiency owed by debtor under the Note. Under no circumstance is Wells Fargo entitled to ownership of <u>all</u> the rents. If the post-receivership rents collected by the Receiver are considered to be collateral securing Wells Fargo's secured claim, despite the clear language of the Sale Order, Wells Fargo could argue that it potentially has an unsecured claim of $430,436.85[29] (Wells Fargo Claim POC of $2,655,000 less Rite-Aid Sale Proceeds of $2,229,463.15). Prior to the sale of the Rite-Aid Property the Receiver made post Receivership interest payments of $58,491.94 to Wells Fargo, which should be deducted from any allowed claim along with other costs and fees incurred by the Receiver in connection with the Rite-Aid Property. If the Court determines that Wells Fargo still maintained an interest in the Rents despite the Sale Order's plain language, payment to Wells Fargo equal to its filed claim amount would comport with the treatment provided to other non-investor secured creditors in Class 2.

---

[29] Before Receivership fees and costs incurred in connection with the Rite-Aid Property, which the Receiver has not monetized in this Objection.

Further, equity also dictates that, at minimum, the Receiver is entitled to the rents collected while the Receiver was making the monthly payments required by the Rite-Aid Loan Documents. Prior to the sale of the Rite-Aid Property the Receiver collected $1,322,923.20 of rents, the Receiver made payments in accordance with Wells Fargo's request up through October 2009. Thus, Wells Fargo would not be entitled to $1,322,923.20 of rents, since $297,657.72 in rents were collected while the Receiver was keeping payments current and performing obligations under the Note and, thus rightfully belong to the Receivership Estate.

## Conclusion

WHEREFORE, the Receiver respectfully requests that the Court (i) sustain the Receiver's Objection to Wells Fargo Turnover Motion, (ii) deny Wells Fargo's New Claim for post-receivership interest, attorney's fees, and costs; and (iii) grant such other and further relief as this Court deems just and proper.

*/s/ Susan Heath Sharp*
Susan Heath Sharp (FBN 716421)
Matthew B. Hale (FBN 110600)
Stichter Riedel Blain & Postler, P.A.
110 E. Madison St., Ste. 200
Tampa, FL 33602
Telephone:      813-229-0144
Facsimile:      813-229-1811
Email: ssharp@srbp.com
           mhale@srbp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2017, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system.

<u>/s/Susan Heath Sharp</u>
Attorney